IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| F. KENNETH SHOCKLEY M.D., et. al. Individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ADAMS GOLF, INC., et al. <br><br> Defendants. | ) ) ) ) ) ) ) ) ) Civil Action No. 99-371-KAJ ) ) ) ) ) |

## MEMORANDUM ORDER

**INTRODUCTION**

This securities class action is before me for resolution of two remaining issues affecting class certification. On May 17, 2005, following oral argument on the plaintiffs' motion for class certification (Docket Item ["D.I. 117"]; the "Motion"), I granted the Motion but reserved decision both as to the appropriate time period to use in defining the class of securities holders having a claim under section 11 of the Securities Act of 1933 (the "'33 Act"), 15 U.S.C. § 77k, and as to the nature of a subclass with respect to any liability under section 12(a)(2) of the '33 Act, 15 U.S.C. § 77l(a)(2), including the appropriate time period for defining that subclass.[1] After further review of the briefing, including supplemental

---

[1] The plaintiffs' Consolidated and Amended Complaint (D.I. 28; the "Amended Complaint") alleges violations of section 15 of the '33 Act, 15 U.S.C. § 77o, as well as violations of sections 11 and 12(a)(2). (See D.I. 28 at ¶¶ 77 -81.) Neither this court nor the Court of Appeals addressed the section 15 claim in the earlier opinions in this case. See 381 F.3d at 273 n.3 ("because the District Court dismissed the sections 11 and 12(a)(2) claims, it did not, nor need we, consider any issues related to control person liability [under section 15]"). Presumably because section 15 is "a form of derivative liability ... [that] permits investors to recover, on a joint and several basis, from 'control persons' who would be otherwise liable under sections 11 and 12(a)(2)[,]" id., none of

memoranda, I conclude that the time period for defining the section 11 class runs from July 10, 1998 to October 22, 1998. I further conclude that the section 12(a)(2) class is limited to those plaintiffs that purchased in the IPO on July 10, 1998 and that the defendants who may be subject to liability to that class include only the Underwriter Defendants, not the Adams Golf Defendants.[2]

## BACKGROUND

The factual background of this case, as developed in the context of the defendants' motions to dismiss, is set forth at length in the opinion addressing those motions, see *In re Adams Golf, Inc. Sec. Litig.*, 176 F. Supp. 2d 216, 219-22 (D. Del. 2001), and the opinion of the United States Court of Appeals for the Third Circuit affirming in part and reversing in part that earlier opinion, see 381 F.3d 267, 270-72 (3d Cir. 2004).

## DISCUSSION

### A. *The Section 11 Class*[3]

The Registration Statement for the offering of Adams Golf stock allegedly became effective on July 9, 1998 (D.I. 28 at ¶ 24), and the Prospectus bore that same date. *See*

---

the parties have seen a need to address how, if at all, the separate section 15 claim affects class certification.

[2]The terms "Underwriter Defendants" and "Adams Golf Defendants" have the same definition in this memorandum order that they had when used in this court's opinion on defendants' motions to dismiss, see 176 F. Supp. 2d at 218; other capitalized terms herein likewise have the same meaning they had in the earlier opinion. The Underwriter Defendants and the Adams Golf Defendants are referred to collectively as the "defendants."

[3]"To state a claim under section 11, plaintiffs must allege that they purchased securities pursuant to a materially false or misleading registration statement." *In re Adams Golf*, 381 F.3d at 273 (internal citations omitted).

2

176 F. Supp. 2d at 219. Nevertheless, it appears to be undisputed that the first day anyone could have purchased stock associated with the IPO was July 10, 1998. *See id.* ("On July 10, 1998, Adams Golf executed an IPO."). Hence, July 10, 1998 marks the beginning of the class period for purposes of the section 11 class.[4]

The parties vigorously dispute the proper date to mark the end point of the class. The defendants contend that the plaintiff class cannot be certified to extend beyond October 22, 1998, the date on which defendants allege that "Adams Golf announced that the gray marketing of its clubs had affected its third-quarter results, and thus overdisclosed and apprised the market of the risk that plaintiffs claim was missing from the Registration Statement and Prospectus."[5] (D.I. 144 at 16.) According to the defendants, the October 22, 1998 disclosure eliminates recovery beyond that date for two reasons: "(1) individual issues regarding investors' knowledge will predominate after this date because the question whether investors had actual knowledge of the widely disseminated press release will overwhelm common issues; and (2) any alleged omission was rendered immaterial by the disclosure." (*Id.* at 17.)

---

[4]The plaintiffs assert that the class period should begin on July 9, 1998. (*See* D.I. 117; D.I. 147 at 6.) They do not suggest, however, that the court was incorrect in its earlier statement that the IPO was executed on July 10, 1998. *See* 176 F. Supp. 2d at 219. Since a claim under section 11 can only be made by those who "purchased securities pursuant to a materially false or misleading registration statement," *In re Adams Golf*, 381 F.3d at 273, the proper start date is the date when shares could actually have been purchased.

[5]The defendants also note that, because of a pre-IPO press release related to gray marketing concerns, they believe they will ultimately be entitled to summary judgment. (D.I. 144 at 16 n.15.) Positions asserted by the Adams Golf Defendants opposing any class certification have been expressly adopted by the Underwriter Defendants. (D.I. 143.)

The plaintiffs respond that the October 22, 1998 press release was not a full disclosure of the gray marketing problem and that, in fact, the "[d]efendants minimized the potential impact of the gray marketing, citing 'continuing weakness in the golf equipment market' as the primary reason for the expectation that, in the December 1998 quarter, the Company's net income 'will be at or slightly above a break even level.'" (D.I. 147 at 6-7.) The plaintiffs contend that it was not until January 7, 1999, at the earliest, "that Adams Golf began to provide anything approaching full disclosure with respect to the risk posed by gray marketing." (*Id.*) On January 7, 1999, Adams Golf issued a press release in which it stated that its lower than expected sales were attributable "to continuing weakness in the golf equipment market and the gray market distribution of its products to a membership warehouse club." (D.I. 145 at Ex. 7.) The company also announced a new pricing structure that, according to the plaintiffs, was adopted "as a result of the serious impact of gray marketing." (D.I. 147 at 7.) The plaintiffs argue that any determination of whether the October 22, 1998 press release constituted an adequate disclosure to apprise the market of the risk of gray marketing is in the nature of decision on the merits and should await the completion of discovery. (*See id.* at 8.)

I conclude that the October 22, 1998 date must serve as the end point for the certification of the class because, as defendants assert, the press release on that date at a minimum means that the question of "whether investors had actual knowledge of the widely disseminated press release will overwhelm common issues" of the class. (*See* D.I. 144 at 17.) In short, typicality will be lacking in the class after that date. This is not a determination that those who purchased pursuant to the allegedly false and misleading Registration Statement after October 22, 1998 do not have a claim. Rather, it recognizes

4

that "a section 11 ... claim, which is based upon a lack of information, could not be typical of such a claim made by persons who possessed additional information[,]" *Klein v. A.G. Becker Paribas Inc.*, 109 F.R.D. 646, 652 (S.D.N.Y. 1986), at least not when the information is, as was the case here, expressly directed to the risk that plaintiffs claim was wholly undisclosed in the Registration Statement and Prospectus.[6]

### B. *The Section 12(a)(2) Class*[7]

In light of the opinion on the motions to dismiss, the law of this case is that only the Shockley plaintiffs have standing to assert a claim under section 12(a)(2). 176 F. Supp. 2d at 224-25. Implicit in that earlier ruling was an acceptance of the defendants' argument that "claims under § 12(a)(2) are limited to initial distributions of securities (in this case, the IPO) and, therefore, § 12(a)(2) claims that are brought by plaintiffs who purchased securities on the secondary market must be dismissed." *Id.* at 224. Hence, I agree with

---

[6] Among other things, the October 22, 1998 press release quoted Adams Golf's CEO as saying, "we anticipate our sales will be further impacted by the recent gray market distribution of our products to a membership warehouse club. While we are working diligently to identify and stop the unauthorized distribution of our products to this retailer, we anticipate this process will take at least through the end of the year." (D.I. 145 at Ex. 6.) In relation to a sales promotion that offered a "high quality golf bag" for free to consumers who purchased any two of Adams Golf's clubs, the CEO is further quoted as saying, "we believe this promotion will help stimulate sales and reduce gray market distribution as the free bag is available only to customers who purchase ... clubs through authorized Adams Golf retailers." (*Id.*)

The plaintiffs' reliance on *In re WorldCom, Inc. Securities Litigation*, 219 F.R.D. 267 (S.D.N.Y. 2003) is misplaced. As with all class certification questions, the inquiry here is fact specific.

[7] "To state a claim under section 12(a)(2), plaintiffs must allege that they purchased securities pursuant to a materially false or misleading 'prospectus or oral communication.'" *In re Adams Golf*, 381 F.3d at 273.

5

the defendants that, "[a]ny section 12(a)(2) subclass ... must begin and end on July 10, 1998." (D.I. 144 at 15.)

I also agree with the Adams Golf Defendants' further argument that a section 12(a)(2) class may only be certified against the Underwriter Defendants. (D.I. 156 at 1.) Liability under section 12(a)(2) extends to those who transfer title, which in this case is apparently limited to the Underwriter Defendants, and it extends as well to "those who successfully solicit the purchase based on direct and active solicitation." 176 F. Supp. 2d at 223. The plaintiffs argue that the Amended Complaint includes allegations about solicitation that implicate all the defendants.[8] (D.I. 155 at 2.) A review of the Amended Complaint, however, demonstrates that are no "direct and active solicitation" allegations directed at the Adams Golf Defendants.

The plaintiffs do allege that the Adams Golf Defendants were among those who supplied information for the Prospectus and Registration Statement (see D.I. 28 at ¶¶ 69-71) and that the Adams Golf Defendants exercised their power and influence "to cause Adams Golf to issue the Registration Statement and Prospectus" (see id. at ¶ 10). But it is simply too much of a stretch to characterize the creation of required securities

---

[8]According to the plaintiffs,
>All Defendants were involved in soliciting investors to purchase Adams Golf stock in that (1) the Adams Golf Prospectus was a solicitation document; (2) Defendants participated in and/or supervised and controlled those who participated in the preparation and issuance of the Prospectus, Complaint ¶¶ 70-72; (3) the Adams Golf Defendants signed the Registration Statement as officers and/or directors of the issuer, Complaint ¶ 10; (4) the Adams Golf Defendants participated in road shows and otherwise promoted Adams stock in advance of the IPO; and (5) Defendants obtained direct and substantial financial benefits from the offering.

(D.I. 155 at 2.)

documents as "direct and active solicitation." To do so would be to eliminate any meaningful distinction between direct and indirect action or between active and passive participation. The Underwriter Defendants are clearly alleged to have directly and actively solicited purchasers. (*Id.* at ¶¶ 11, 72.) There are no remotely comparable allegations as to the Adams Golf Defendants. It thus would be contrary to law, including specifically the law of this case, to hold that a section 12(a)(2) class can be certified against the Adams Golf Defendants.

## **CONCLUSION**

Accordingly, and consistent with the ruling in open court on May 17, 2005, IT IS HEREBY ORDERED that the plaintiffs' motion for class certification (D.I. 117) will be GRANTED IN PART and DENIED IN PART. It will be granted to the extent that a section 11 class will be certified against all defendants and will include in the plaintiff class those who, from July 10, 1998 to October 22, 1998, inclusive, acquired the common stock of Adams Golf, Inc. pursuant to or traceable to the Registration Statement issued in connection with the July 10, 1998 IPO, and it is granted to the extent that a section 12(a)(2) subclass will be certified against the Underwriter Defendants and will include in the plaintiff class those who, on July 10, 1998, purchased the common stock of Adams Golf, Inc. pursuant to the Prospectus or oral communications issued in connection with the July 10, 1998 IPO. The certified classes shall exclude the defendants and members of their immediate families, any entities in which a defendant has a controlling interest, and the heirs, successors, and assigns of any such excluded individual or entity. Except as otherwise noted herein and in open court on May 17, 2005, the Motion will in all other respects be denied.

IT IS FURTHER ORDERED that Counsel for all parties shall confer with one another and submit to the court within ten days an agreed upon form of class certification order that complies in all respects with Federal Rule of Civil Procedure 23, including the designation of class and subclass lead counsel, and comports with the rulings set forth herein and in open court on May 17, 2005. Agreeing to the form of order shall not be construed as a waiver of any legal positions preserved by the parties in addressing the Motion for class certification.

[signature]
UNITED STATES DISTRICT JUDGE

June 27, 2005
Wilmington, Delaware