# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: ADAMS GOLF, INC , SECURITIES LITIGATION | § §  § § § § | CIVIL ACTION NO 99-371-KAJ (CONSOLIDATED) |

## ADAMS GOLF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ENLARGEMENT OF TIME TO AMEND COMPLAINT

OF COUNSEL:

Paul R. Bessette
Jennifer R. Brannen
Christopher W. Ahart
Michelle A. Reed
Akin Gump Strauss Hauer & Feld LLP
300 W. 6th Street, Suite 2100
Austin, Texas 78701
(512) 499-6200

Jeffrey L. Moyer (#3309)
moyer@rlf com
Alyssa M. Schwartz (#4351)
schwartz@rlf com
Richards, Layton & Finger
920 North King Street
Wilmington, Delaware 19899
(302) 651-7700
  Attorneys for Defendants Adams Golf, Inc ,
  B H. Adams, Richard H. Murtland, Darl P.
  Hatfield, Paul F. Brown, Jr , Roland E.
  Casati, Finis F. Conner, and Stephen R.
  Patchin

Dated: July 12, 2005

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... ii

I.      INTRODUCTION .................................................................................... 1

II.     STATEMENT OF FACTS .......................................................................... 1

III.    ARGUMENT .......................................................................................... 5

        A.   Plaintiffs' Dilatory Discovery Investigation Does Not Justify
             Enlarging The Time Period For Leave To Amend ............................... 5

        B.   Plaintiffs' Hopes For Unwarranted Additional Discovery Do Not
             Justify Enlarging The Time Period For Leave To Amend ..................... 7

        C.   Defendants Will Suffer Prejudice If This Court Enlarges The
             Time Period For Leave To Amend ..................................................... 8

IV.     CONCLUSION ....................................................................................... 9

i

# TABLE OF AUTHORITIES

## CASES

*In re AOL Time Warner Sec. & ERISA Litig.*,
No. 1500, 02 Civ. 5575, 2003 WL 21729842 (S.D.N.Y. July 25, 2003) .................. 8

*In re Clorox Co. Sec. Litigation*,
238 F. Supp. 2d 1139 (N.D. Cal. 2002) ........................................ 8

*Kaiser Aluminum & Chemical Corp. v. Willis of Maryland, Inc.*, No. Civ. A. 02-0944,
2003 WL 21750631 (E.D. La. July 28, 2003) .................................. 7

*Koplove v. Ford Motor Co.*,
795 F.2d 15 (3d Cir. 1986) ................................................ 5

*In re Rockefeller Center Properties Sec. Litigation*,
311 F.3d 198 (3d Cir. 2002) ............................................... 8

*Schaeffer v. CC Investments*,
205 F.R.D. 158 (S.D.N.Y. 2002) .......................................... 8

*Tolliver v. Federal Republic of Nigeria*,
265 F. Supp. 2d 873 (W.D. Mich. 2003) .................................... 7

## STATUTES

Fed. R. Civ. P. 16(a) ...................................................... 5

Fed. R. Civ. P. 26(b)(1) ................................................... 7

## I.      INTRODUCTION

Apparently frustrated by their failure to find any support for the two narrow claims in their Consolidated Amended Complaint ("CAC"), plaintiffs now seek to extend the deadline for amending their complaint and to embark on a deliberate fishing expedition to obtain defendant Adams Golf's accounting documents—documents completely irrelevant to their current CAC. Plaintiffs contend they need more time to explore whether to add claims or parties. There is no reason for such a delay: defendants have diligently reviewed hundreds of boxes of documents and produced more than 40,597 pages to plaintiffs. The only documents not yet produced (specific distributor agreements) were requested on June 24, 2005, and defendants are diligently working with the Company to see if these documents even exist. The last five boxes of responsive documents were produced on June 17, 2005, nearly a month before plaintiffs' deadline to amend—ample time for them to review and determine what amendments, if any, they would propose at this late hour.

This is an attempt to force defendants to spend considerable time and expense re-reviewing documents under entirely new time parameters and is a thinly veiled attempt to fish for an accounting claim. This tactic should be rejected, particularly in light of the recent order limiting the class period to October 23, 1998. Plaintiffs' dilatory discovery investigation and belated hopes for additional discovery do not justify an extension of time to amend that would be prejudicial to defendants. The Court should deny plaintiffs' motion.

## II.     STATEMENT OF FACTS

Plaintiffs' original complaint alleged that defendants failed to disclose (1) the existence of a gray market for its golf clubs and (2) an industry-wide oversupply of golf clubs. After remand from the Third Circuit Court of Appeals, the case proceeded to discovery based on one narrow claim: the alleged omission of a gray market for Adams Golf's clubs in the registration

1

statement and prospectus  This Court's recent class-certification order further limited plaintiffs' claims by restricting the class period to July 10, 1998 through October 23, 1998.

The parties established the scope and parameters of discovery on January 28, 2005, and at great expense, defendants reviewed hundreds of boxes of documents in approximately five months  Defendants completed their production about one month before the deadline to amend, and more than four months before the close of discovery  As detailed below, defendants were vigilant in responding to each of plaintiffs' requests:

- **December 22, 2004** – Plaintiffs' counsel requested that defendants respond to Plaintiffs' First Request for Production of Documents, originally prematurely served on February 2, 2000. (Ex. 1)

- **January 10, 2005** – Plaintiffs requested that defendants produce documents "identified on behalf of Adams Golf in your initial disclosures." (Ex. 2)

- **January 18, 2005** – Defendants responded that the initial disclosures included "a description by category and location" as required by Rule 26(a)(4)(B) and that if plaintiffs wanted something more, they should make a document request. (Ex. 3)

- **January 24, 2005** – Defendants served their Objections and Responses to Plaintiffs' First Request for Production of Documents

- **January 28, 2005** – The parties conducted a meet-and-confer teleconference to resolve defendants' objections  Plaintiffs therein agreed that the relevant time period was January 1, 1998 through June 11, 1999 and that they would specify in the future which distributor agreements, if any, they sought because production of hundreds of distributor agreements was unduly burdensome.

- **February 7, 2005** – To avoid later disputes, defendants wrote a letter to plaintiffs summarizing the meet-and-confer teleconference  In this letter, defendants explained that "it is most efficient to agree on the scope of discovery early in the discovery process to prevent any need to re-review the documents later" and noted the parties' agreement on the relevant time period  Plaintiffs did not respond to this letter  (Ex. 4)

- **February 22, 2005** – Plaintiffs inquired why defendants "have delayed so long in producing the documents." (Ex. 5)

- **February 28, 2005** – Defendants responded that they were producing documents within the four weeks agreed upon in the meet-and-confer teleconference. (Ex 6.)

- **March 1, 2005** – Defendants produced the first set of documents to plaintiffs, which included relevant Board of Directors materials, SEC communications, IPO documents, correspondence regarding gray marketing, lists of U.S. and international distributors, monthly operating analyses that list sales by month to the top distributors, and many other documents. (Ex. 7.)

- **March 28, 2005** – Defendants informed plaintiffs that there were 54 boxes of documents with sales, credit, and shipping records from 1998 at Adams Golf's warehouse and provided plaintiffs with an opportunity to review these documents and select the ones they wanted to copy to avoid incurring unnecessary copying expense. (Ex. 8.)

- **March 28, 2005** – Defendants produced the second set of documents to plaintiffs, which included distributor correspondence, analyst reports, conference call scripts, press releases, more SEC communications, and many other documents. (Ex. 9.)

- **April 20, 2005** – Defendants produced the third set of documents to plaintiffs, which included conference call audio tapes and scripts, correspondence with the underwriters, budgets, Board of Directors reports, monthly management summaries, and documents related to Adams Golf's Canadian distributor, who first reported the appearance of Adams Golf's clubs in Costco. (Ex. 10.)

- **April 29, 2005** – Defendants produced the fourth set of largely unresponsive documents self-selected by plaintiffs in their review of the 54 boxes at the warehouse. (Ex. 11.)

- **June 8, 2005** – Plaintiffs first specifically requested the "sales register" and "reconciliation report," requested additional documents, and sought to extend the production period to the second half of 1997. (Ex. 12.)

- **June 13, 2005** – The parties conducted a second meet-and-confer teleconference. Defendants clarified that the only documents not already produced were either non-existent or never previously requested by plaintiffs.[1] All other documents detailed in plaintiffs' letter had already been produced. Defendants explained that the absence of any such records from the production means that the documents do not exist. (Ex. 13.)

- **June 13, 2005** – Defendants produced the fifth set of documents, which included the customer notes register. (Ex. 14.)

---

[1] As of June 17, 2005, defendants had not produced only a small number of documents, which either did not exist or had not been previously requested: (1) the sales register and reconciliation report (because they don't exist); (2) documents regarding Mark Gonsalves' departure from Adams Golf (because they were not previously requested); (3) distributor agreements (because plaintiffs had never specified a list of distributors, as promised in the January meet-and-confer teleconference); and (4) responsive Board of Directors documents from 1997 (because they were not previously requested).

- **June 14, 2005** – Defendants memorialized the recent meet-and-confer teleconference in a letter, explaining that they did not intend to re-review all documents based on plaintiffs' vague and unsubstantiated assertion that *one unidentified witness* claimed that there was a gray-market problem in the second half of 1997. (Ex. 15.)

- **June 17, 2005** – Defendants produced the sixth and final set of documents. Contrary to plaintiffs' representation, these documents did not differ in any material way from the prior productions. (Ex. 16.)

- **June 24, 2005** – Plaintiffs served their Second Request for Production of Documents. Plaintiffs also specified for the first time which distributor agreements they sought and reiterated their requests for the sales register, reconciliation report, MidTown Research report, and Board materials from 1997. (Ex. 17.)

- **June 30, 2005** – Defendants produced their privilege log. (Ex. 18.) Defendants also informed plaintiffs that: (1) as a courtesy, they would review Board minutes from the second half of 1997;[2] (2) defendants did not possess the Midtown Research Report; (3) defendants would look for and produce any requested retailer agreements in the Company's possession when the lawsuit was filed; and (4) when the Company transitioned from the Platinum accounting software system to People Soft in January 1999—before the lawsuit was filed—Adams Golf ported over only high-level financial data (*i.e.*, rolled-up general ledger numbers) and therefore did not have the information described by plaintiffs as the "sales register" and the "reconciliation report." (Ex. 19.)

Confronted by an exhaustive document production that proves gray marketing was not a material risk before the IPO, plaintiffs seek to surreptitiously change their theory of the case by extending the deadline to amend with the hope of pursuing irrelevant discovery of accounting documents that simply do not exist (*i.e.*, the so-called sales register and reconciliation report) and did not exist before they filed suit. Plaintiffs' attempt to prolong the deadline for leave to amend to embark on an exploratory search of Adams Golf's accounting documents should not be countenanced.

---

[2] Defendants have since completed their review of Board documents from the second half of 1997, and there are no responsive documents to produce.

## III.    ARGUMENT

The Court's scheduling order "shall not be modified except upon a showing of good cause." FED R CIV P 16(a). The Third Circuit has held that Rule 16 "scheduling orders are at the heart of case management" and cannot be flouted. *Koplove v. Ford Motor Co.*, 795 F 2d 15, 18 (3d Cir 1986).

Plaintiffs have failed to show good cause because their vague assertions of defendants' alleged "failure to make timely production" (Mot. ¶ 1) are unsupported by the record: the only documents not yet produced either (1) do not exist or (2) were not formally requested until June 24, 2005 (*i e*, the retailer agreements and the Gonsalves personnel file). Defendants produced their final set of five boxes of production documents approximately a month before the deadline to amend, providing plaintiffs with ample time to review them and determine whether they supported adding claims or parties. This request is a continuation of plaintiffs' stall tactics designed to increase costs and thus coerce settlement—first by postponing the June 1 mediation at the last minute until November and now by seeking to extend their time to amend claims and parties.

### A.    Plaintiffs' Dilatory Discovery Investigation Does Not Justify Enlarging The Time Period For Leave To Amend.

Plaintiffs complain that they need more time because they do not have all the relevant documents in defendants' possession, but that is false. (Mot. ¶ 14.) With the exception of limited documents responsive to plaintiffs' June 24, 2005 request,[3] defendants completed their

---

[3] Plaintiffs have requested the personnel file of Mark Gonsalves, and defendants are producing that file two weeks earlier than the Federal Rules require to accommodate plaintiffs. Plaintiffs have not explained (because they cannot) how either this file or the retailer agreements could possibly provide them with information that would cause them to add new claims or parties.

document production on June 17, 2005. Plaintiffs cannot base their request for extension of time to amend on their own belated request for a few additional documents.

Plaintiffs also purport to need more time to amend based on their June 13 request to extend the relevant time period into 1997 (Mot. ¶ 8), even though defendants have already completed their review of hundreds of boxes of documents. Plaintiffs had more than six years to investigate their claims, but waited until six months of discovery had passed and one month before the deadline to amend to inform defendants of some unnamed witness who claims there might have been gray marketing in the second half of 1997. When defendants sought some substantiation of witness identity or other details regarding the alleged gray marketing, plaintiffs informed defendants that they would provide such details in their motion to compel. Having agreed to the January 1, 1998 through June 11, 1999 review period five months ago, plaintiffs now are not entitled to an extension because of a belated decision to revisit this issue, nor should they be allowed to needlessly increase defendants' costs by forcing them to re-review tens of thousands of documents.

Plaintiffs further imply that an extension is necessary because they believe they have not received all the requested documents based on the relatively limited number of documents regarding gray marketing in the United States before the IPO. (*See* Mot. ¶ 6.) The reason plaintiffs do not have more of these documents is because they do not exist—the pre-IPO gray market for Adams Golf's clubs was limited primarily to Costcos located in Canada. Plaintiffs are not entitled to an enlargement of time to amend simply because the responsive documents already produced do not support plaintiffs' claims.

Likewise, plaintiffs cannot be heard to complain that they need an extension "to compile and analyze extensive amounts of sales and financial information related to gray marketing."

(Mot. ¶ 14.)    Plaintiffs have possessed most of this data for months.    Plaintiffs' delay in reviewing and analyzing the data is not good cause for an enlargement of time.

The Court should deny plaintiffs' attempt to needlessly prolong discovery based on their own dilatory investigation and belated requests for additional documents.

**B.    Plaintiffs' Hopes For Unwarranted Additional Discovery Do Not Justify Enlarging The Time Period For Leave To Amend.**

Although defendants have already responded to all of plaintiffs' discovery requests, the tenor of plaintiffs' motion suggests that they intend to seek other unnamed documents.    The Federal Rules limit discovery to matters "relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1).    The 2000 amendments to Rule 26 narrowed the scope of discovery from "subject matter" to the "claims or defenses asserted in the pleadings."    The Advisory Committee Notes to Rule 26 state:

> The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action . . . . The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.[4]

In light of this narrowed scope of discovery, courts often reign in the sort of speculative discovery plaintiffs apparently seek here.  *See, e.g., Kaiser Aluminum & Chem. Corp. v. Willis of Maryland, Inc.*, No. Civ. A. 02-0944, 2003 WL 21750631, at *2-3 (E.D. La. July 28, 2003) (granting protective order quashing deposition notice seeking testimony "unrelated to the claims or defenses of either party"); *see also Tolliver v. Federal Republic of Nigeria*, 265 F. Supp. 2d 873, 880 (W.D. Mich. 2003) ("The mere hope that additional discovery may give rise to winning evidence does not warrant the authorization of wide-ranging fishing expeditions.").

---

[4] Advisory Committee Notes to the 2000 amendments to Rule 26, ¶¶ 25-26.

Discovery in this securities class action also must be considered in light of the PSLRA's mandatory discovery stay  Congress enacted the PSLRA in part to curb abusive discovery in securities cases  *In re Clorox Co. Sec. Litig.*, 238 F  Supp  2d 1139, 1143 (N D  Cal  2002) ("This purpose would be entirely thwarted if a plaintiff could obtain discovery on a litany of meritless assertions simply by attaching them to one narrow colorable allegation."); *see also In re Rockefeller Center Props. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir  2002) (noting from the legislative history that "The purpose of the Act was to restrict abuses in securities class-action litigation, including:  .  (3) the abuse of the discovery process to coerce settlements  .") (*citing* H R  Conf. Rep  No  104-369 at 31 (1995), *reprinted in* 1995 U S.C C A N  679, 730)

Unduly lifting the PSLRA mandatory discovery stay on claims not "clearly identified" in the CAC would thwart Congressional intent  *See Schaeffer v. CC Investments*, 205 F R D  158, 159 (S D N Y  2002) (denying plaintiffs discovery concerning issues "not clearly identified in the Amended Complaint"); *see also In re AOL Time Warner Sec. & ERISA Litig.*, No  1500, 02 Civ  5575, 2003 WL 21729842 at *1 (S D N Y  July 25, 2003) ("Congress enacted the mandatory stay of discovery, in part, to prevent plaintiffs from filing frivolous lawsuits and using it as a vehicle 'in order to conduct discovery in the hopes of finding a sustainable claim not alleged in the complaint '")

## C.    Defendants Will Suffer Prejudice If This Court Enlarges The Time Period For Leave To Amend.

Defendants have incurred substantial discovery costs over the past six months  Plaintiffs now seek to prolong discovery, truncate the time available for defendants to conduct discovery on any potential amended claims, and force defendants to spend more money on discovery in an attempt to raise the settlement value of the case  Any extension also would further delay the litigation by potentially staying discovery for fresh rounds of motion practice in September and

October 2005—the time during which discovery should be drawing to a close  Plaintiffs suffer no prejudice by adhering to the currently scheduled deadline—all documents have been produced and they have had the opportunity to investigate their claims informally for the last six years

## IV.    CONCLUSION

Plaintiffs have failed to show the "good cause" required under Federal Rule of Civil Procedure 16(b) to amend the Court's scheduling order, entered nearly eight months ago.  Now, more than six years after plaintiffs filed their complaint, they complain of not having enough time to determine whether they should amend it.  Such an extension would prejudice defendants by unnecessarily increasing discovery costs and further delaying this already six-year-old case. Plaintiffs' requested amendment deadline of August 29, 2005 would allow defendants less than one month of discovery on the potential added claims—discovery is currently scheduled to close on November 21, 2005, and the extension would require fresh rounds of motion practice in September and October 2005 (presuming a motion for leave to amend followed by a motion to dismiss).   For these reasons, defendants respectfully request that the Court deny plaintiffs' motion for enlargement of time to amend their CAC.

9

OF COUNSEL:

Paul R. Bessette
Jennifer R. Brannen
Christopher W. Ahart
Michelle A. Reed
Akin Gump Strauss Hauer & Feld LLP
300 W. 6th Street, Suite 2100
Austin, Texas 78701
(512) 499-6200

Jeffrey L. Moyer (#3309)
moyer@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger
920 North King Street
Wilmington, Delaware 19899
(302) 651-7700
    Attorneys for Defendants Adams Golf, Inc.,
    B.H. Adams, Richard H. Murtland, Darl P.
    Hatfield, Paul F. Brown, Jr., Roland E.
    Casati, Finis F. Conner, and Stephen R.
    Patchin

Dated: July 12, 2005

10