EXHIBIT 12

# Berger&Montague,P.C.
ATTORNEYS AT LAW

| | |
|---|---|
| WRITER'S DIRECT DIAL | 215-875-3022 |
| WRITER'S DIRECT FAX | 215-875-4674 |
| WRITER'S DIRECT E-MAIL | Nmara@bm.net |

June 8, 2005

**VIA FED EX**
Ms. Jennifer Brannen, Esq.
Akin, Gump, Strauss, Hauer & Feld, LLP
300 West 6th Street, Suite 2100
Austin, TX 78701-2916

     **Re:**    **Adams Golf Securities Litigation**

Dear Ms. Brannen:

     The following items were requested of Adams Golf in Plaintiffs' First Set of Document Requests but were not produced:

## 1.   Board of Directors Meetings

     A.  Minutes and agendas for every Board of Directors ("BOD") Meeting in the second half of 1997 and 1998 except for the July 22, 1998 BOD meeting and the October 19, 1998 Special Meeting of the BOD.  This includes any Special Meetings of the BOD or Committees.

     B.  All monthly BOD Status Reports for the second half of 1997 and 1998, except for the October, 1998 and November, 1998 reports.

     C.  All documents/audio/videotapes presented at, or associated with all BOD meetings in second half of 1997 and 1998.

## 2.   Analyst Reports and Communications

     A.  All e-mails and facsimile transmissions (faxes) by and between Adams Golf and Lehman Brothers, Ferris Baker Watts, NationsBank Montgomery, and all other analysts.

     B.  All communications by and between Adams Golf and institutional and non-institutional investors from the date of the Initial Public Offering through the first quarter of 1999.

David Berger*§
Harold Berger
H  Laddie Montague. Jr.§
Merrill G  Davidoff*
Sherrie Raiken Savett
Daniel Berger
Todd S  Collins ‡
Carole A  Broderick
Russell D  Henkin'*
Stephen A. Whinston
Gary E  Cantor
Barbara A  Podell
Ruthanne Gordon
Martin I  Twersky
Peter R. Kahana
Susan Schneider Thomas
Jeanne A  Markey ‡‡
Gary L  Azorsky ‡‡
Lawrence Deutsch‡‡
Jonathan D  Berger
Peter Nordberg
Robin Switzenbaum**‡‡+
Jerome M. Marcus
Lawrence J  Lederer§
Robert A. Kauffman**
Bart D. Cohen
Michael T. Fantini§
David F. Sorensen
Arthur Stock
Jonathan Auerbach‡‡
Edward W. Millstein‡‡
Bret P. Flaherty
Charles Pearsall Goodwin‡‡
Eric L. Cramer*

---

Elizabeth W. Fox
Sheryl S  Levy
Kendall S. Zylstra
Neil F. Mara**
Peter Russell Kohn
Ellen T. Noteware
Phyllis M  Parker
Glen L. Abramson
Douglas M  Risen‡‡
Lane L. Vines‡‡
Darin R  Morgan‡‡
Michael C  Dell'Angelo‡‡
Neill W. Clark
Joy P. Clairmont
David A. Langer
Keino R  Robinson‡‡§§
Shanon J  Carson
Casey M  Preston
Daniel Simons‡‡
Jennifer MacNaughton-Wong

OF COUNSEL:
Stanley R  Wolfe
Jay Robert Stiefel
Carey R  D'Avino***

*  also admitted in NY
**  also admitted in FL
‡  also admitted in DE
‡‡  also admitted in NJ
††  also admitted in MD
§  also admitted in DC
§§  also admitted in IL
••  also admitted in CT
+  also admitted in CA
***  only admitted in NY

# Berger&Montague,P.C.
ATTORNEYS AT LAW

C. All transcripts, presentations, notes, or other documents and audio or video tapes of Adams Golf's 'Road Show.'

## 3.  Accounting Documents

A. The computerized Sales Register for the last two quarters of 1997, 1998, and first quarter of 1999, reflecting monthly sales by distributor and retailer.

B. The Sales Register reconciliation with the General Ledger for the same period.

## 4.  Communications with Authorized Retailers

A. All documents pertaining to communications between Adams Golf and its American distributors concerning gray marketing and the discontinuation of the distribution agreements when and where it occurred. Any documents that refer to trans-shipping, gray marketing, or double shipping in America. Defendant provided fairly extensive documentation of these issues in the international market. We need the same for America.

B. All distribution agreements between Adams Golf and each of its American distributors and/or retailers. Again, we received a considerable amount on this in the international context- we need the same domestically.

C. All documents referring to credit and return policies in America, including any special terms that may have existed for top accounts or other special accounts.

## 5.  Investigation of Gray Marketing

A. All documents related to King Par and any other distributors who participated in trans-shipping, double shipping, or gray marketing in America.

B. All notes, reports, correspondence, presentations, and meeting minutes or transcripts from the task force formed by Scott Blevens to investigate the gray market issue, including 1997.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

6. **E-mails from Adams Golf Personnel**

We need e-mails from everyone listed in our document request. In our December 22, 2004 letter we limited this request to those e-mails dealing with the subject of Requests 2, 4,8,11-14, 18-19, 21, 23, 26 and 27. It appears we received e-mails from Beebe, Gonsalves, and Puglielli, with little or none from the other employees listed. If all Adams employees were not using e-mail in 1998, we need to know this. Fax transmissions may be a reasonable substitute in the absence of e-mails.

7. **Mark Gonsalves' departure from the Company**

All documents detailing the reasons for, and procedure of, Mark Gonsalves' departure from his position with the Company, including documents in his personnel file referring to his departure. Also, all documents referring to the restructuring of the Sales Department in 1998.

We would like to confer telephonically with you about these requests as soon as possible. I or my colleague Liz Fox will contact you tomorrow morning to set up a mutually convenient time. Thank you for your attention to this matter, and please do not hesitate to call me at (215) 875-3022 with any questions or concerns.

Sincerely,

Neil Mara

NFM/cn
C:\LssWork\383429_05 wpd

EXHIBIT 13

# AKIN GUMP
# STRAUSS HAUER & FELD LLP

▬▬▬▬▬▬▬ Attorneys at Law

**MICHELLE A. REED**
(512) 499-6269/fax: (512) 499-6290
mreed@akingump.com

June 13, 2005

VIA FEDERAL EXPRESS

Ms. Liz Fox
Mr. Neil Mara
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103

Re: *In re Adams Golf Securities Litigation*

Dear Liz & Neil:

Per our conversation this morning, I enclose the documents Bates labeled ADAMS 024105-025641. As with previous waves of production, these documents are in response to Plaintiffs' First Request for Production and in support of defendants' defenses. We will continue to produce documents in a rolling production and will provide a privilege log at the end of the production.

I will enclose an invoice for the copying costs with the final production set.

Very truly yours,

*Michelle A Reed*

Michelle A. Reed

MAR/mrk

Enclosures

cc: Theodore McEvoy

# EXHIBIT 14

# AKIN GUMP
# STRAUSS HAUER & FELD LLP

━━━━━━━━━━ Attorneys at Law

MICHELLE A. REED
(512) 499-6269/fax: (512) 499-6290
mreed@akingump.com

June 13, 2005

VIA FEDERAL EXPRESS

Ms. Liz Fox
Mr. Neil Mara
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103

Re:    *In re Adams Golf Securities Litigation*

Dear Liz & Neil:

Per our conversation this morning, I enclose the documents Bates labeled ADAMS 024105-025641. As with previous waves of production, these documents are in response to Plaintiffs' First Request for Production and in support of defendants' defenses. We will continue to produce documents in a rolling production and will provide a privilege log at the end of the production.

I will enclose an invoice for the copying costs with the final production set.

Very truly yours,

*Michelle A Reed*

Michelle A. Reed

MAR/mrk

Enclosures

cc:  Theodore McEvoy

EXHIBIT 15

# AKIN GUMP
# STRAUSS HAUER & FELDLLP

▬▬▬▬▬▬ Attorneys at Law

JENNIFER R. BRANNEN
512 499 6258/fax: 512 499 6290
jbrannen@akingump com

June 14, 2005

VIA EMAIL AND REGULAR MAIL

Ms. Liz Fox
Berger & Montague
1622 Locust Street
Philadelphia, PA  19103

      Re:   Adams Golf Securities Litigation

Dear Liz:

The purpose of this letter is to respond to Neil Mara's letter dated June 8, 2005 and to memorialize the parties' agreements and disagreements discussed during our meet-and-confer telephone conference on June 13, 2005.

## PRODUCTION SCOPE & TIMING

Defendants explained that their document production was nearly complete and that the remainder of the documents will be sent later on this week.  The privilege log for Arter & Hadden's documents will be sent by next week, and the privilege log for defendants' documents will be sent approximately one week following final production.

Plaintiffs agreed with the scope of defendants' production, as articulated in defendants' February 7, 2005 letter:  that is, defendants will produce documents to the extent they are relevant to plaintiffs' only remaining claim—the gray-market allegation, broadly construed for production purposes to include purported documents that may include any alleged overselling to distributors, returns or discounts allegedly allowed in response to gray marketing, or any other subject matter that bears on potential gray-market problems.

After our first meet-and-confer call in January, the parties agreed that the relevant time period for plaintiffs' requests was January 1, 1998 through June 11, 1999 and that defendants would review and produce documents created during this period.  Six months later, plaintiffs informed us that one unidentified witness claims that there was a gray-market problem in the U.S. in the second half of 1997.  Defendants requested more specific information about this allegation before considering a modification of the relevant time period for the entire document production, but plaintiffs stated that they would only reveal such information in a motion to compel.  To facilitate agreement, defendants have agreed to review board of directors minutes from June 1997 to December 1997 and to produce any minutes or materials that are responsive to

AKIN GUMP
STRAUSS HAUER & FELDLLP
━━━━━━━━━ Attorneys at Law

Ms. Liz Fox
June 14, 2005
Page 2

plaintiffs' gray-market requests. The parties agreed that defendants did not need to review any other documents from this time period.

## GENERAL REQUESTS

### 1.    Board of Directors Meetings (RFP No. 4)

Plaintiffs requested all board of directors minutes, agendas, status reports, documents/audio/videotapes from June 1997 through December 1998. As explained in defendants' February 7, 2005 letter, defendants agreed to produce all board materials broadly relevant to gray market, but defendants will not produce irrelevant board materials even if they fall into this time period. Plaintiffs agreed that only those board materials broadly relevant to gray market need to be produced. To facilitate agreement, defendants agreed to review board materials from June 1997 to December 1997, although those materials were not included in plaintiffs' initial request. Defendants also informed plaintiffs that Adams Golf did not have audio or videotapes of board meetings.

### 2.    Analyst Reports & Communications (RFP Nos. 11, 12, 13)

Plaintiffs requested documents regarding analyst, institutional, and non-institutional investor communications and Road Show communications. Defendants explained that they have produced everything responsive to these requests subject to the gray-market limitation. Plaintiffs asked whether defendants had a pre-IPO Midtown Research Report, and defendants explained that they have not seen this report but would inquire with the Company about this document. Plaintiffs agreed that defendants' response to these requests was sufficient.

### 3.    Accounting Documents (RFP Nos. 14, 17)

Plaintiffs requested the computerized "sales register." Defendants explained that there is no sales register in the Adams Golf documents, and they further explained that any electronic register likely does not exist because the Company migrated from the Platinum system to People Soft in the first quarter of 1999 before the lawsuit was filed. Defendants informed plaintiffs that they were producing a document that lists notes from calls between retail accounts and sales representatives during 1998 and that they would overnight this document for plaintiffs to examine and determine if it contained sufficient information to satisfy this request. Defendants also agreed to contact the Company regarding existence of the sales register.

Plaintiffs further requested production of the report reconciling the "sales register" with the general ledger. Defendants explained that the general ledger and reconciliation report are completely irrelevant to plaintiffs' only remaining claim—alleged nondisclosure of the gray

AKIN GUMP
STRAUSS HAUER & FELDᴸᴸᴾ
▬▬▬▬▬▬ Attorneys at Law

Ms. Liz Fox
June 14, 2005
Page 3

market. Although plaintiffs assert that this document would show any alleged double shipping that occurred, they could not articulate how the reconciliation would show this information. Since plaintiffs have not alleged any accounting fraud, these documents are irrelevant under the Federal Rules. Plaintiffs believe that the reconciliation report is relevant, but agreed that if the sales register does not exist that this request would be moot.

### 4. *Communications with Authorized Retailers (RFP Nos. 14, 15)*

Plaintiffs requested all communications regarding gray marketing, distribution agreements with American distributors, and credit and return policies. Defendants explained that they have produced all communications regarding gray marketing and all documents regarding credit and return policies.

Defendants noted that this request was overly broad and unduly burdensome because Adams Golf had thousands of American retail accounts (as compared to international markets, which typically had only 1-2 distributors per country). Defendants further noted that plaintiffs had agreed during the January meet-and-confer call to identify the specific customers whose agreements they wanted produced (other than WDC Mackenzie), but plaintiffs have never identified specific distributors. Plaintiffs agreed that they would identify these customers, and defendants agreed to produce the specific distribution agreement and any special return policies, if such documents exist.

### 5. *Investigation of Gray Marketing (RFP Nos. 26, 27)*

Plaintiffs requested documents related to King Par and other distributors involved in gray marketing and documents related to the task force formed by Scott Blevins. Defendants explained that all documents responsive to these requests had already been produced.

### 6. *Emails from Adams Golf Personnel (RFP No. 34)*

Plaintiffs requested email from certain Adams Golf personnel. Defendants explained that they produced all relevant emails responsive to plaintiffs' requests that existed at the time of the lawsuit and that most Adams Golf employees, officers, and directors did not use email in 1998. Many facsimiles and memoranda have already been produced and plaintiffs agreed that this was a reasonable substitute.

### 7. *Mark Gonsalves's Departure from the Company*

Plaintiffs requested via their June 8, 2005 letter "all documents detailing the reasons for, and procedure of, Mark Gonsalves' departure from his position with the Company, including

AKIN GUMP
STRAUSS HAUER & FELD LLP
━━━━━━━━━━━ Attorneys at Law

Ms. Liz Fox
June 14, 2005
Page 4

documents in his personnel file referring to his departure." Defendants explained that plaintiffs
need to make a formal request for these documents since they have never been previously
requested.

Plaintiffs also requested all documents regarding the restructuring of the sales department
announced on or about October 28, 1998 and expressed their view that this request (RFP No. 36)
encompassed the documents related to Mark Gonsalves's departure from the Company.
Defendants explained that Mark Gonsalves left the Company in September 1998, so any
restructuring of the sales department occurred after his departure. Defendants noted that they
have produced documents related to the restructuring and are producing additional documents on
this topic in their final production.

Sincerely,

Jennifer R. Brannen

cc:    Theodore McEvoy, Esq.

# EXHIBIT 16

# AKIN GUMP
# STRAUSS HAUER & FELD LLP

━━━━━━━━━ Attorneys at Law

MICHELLE A. REED
(512) 499-6269/fax: (512) 499-6290
mreed@akingump com

June 17, 2005

VIA FEDERAL EXPRESS

Ms. Liz Fox
Mr. Neil Mara
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103

    Re:    *In re Adams Golf Securities Litigation*

Dear Liz & Neil:

    I enclose documents Bates labeled ADAMS 025642 – ADAMS 040597. These documents are in response to Plaintiffs' First Request for Production and in support of defendants' defenses. I enclose an invoice for the copying costs of this and the previous production set. Please remit payment for these copying costs directly to Akin Gump.

    As with previous productions, this production includes many documents that are drafts, even though those documents may not be labeled as such. In particular, most, if not all, of the financial documents contained in this production are drafts. The production also contains many documents and portions of documents that we have deemed irrelevant, but have included because of our obligations under the Federal Rules. Our production should not be deemed a waiver of any relevance objection at depositions or trial.

    Since this is the final production, we will produce the privilege log in the next week to ten days.

                            Very truly yours,

                            Michelle A. Reed

MAR/mrk

AKIN GUMP
STRAUSS HAUER & FELD LLP
━━━━━━━━━ Attorneys at Law

Ms. Liz Fox
Mr. Neil Mara
Page 2
June 17, 2005

Enclosures

cc: Theodore McEvoy

EXHIBIT 17

1622 LOCUST STREET  I  PHILADELPHIA. PA 19103-6305  I  phone 215/875-3000  I  fax 215/875-4604  I  www.bergermontague.com

# Berger&Montague,P.C.
ATTORNEYS AT LAW

| WRITER'S DIRECT DIAL | (215) 875-5806 |
| WRITER'S DIRECT FAX | (215) 875-4604 |
| WRITER'S DIRECT E-MAIL | efox@bm net |

ELIZABETH W. FOX

June 24, 2005

Jennifer Brannen, Esquire
**Akin, Gump, Strauss, Hauer & Feld, LLP**
300 West 6th Street, Suite 2100
Austin, TX 78701

Re:    **IN RE ADAMS GOLF, INC. SECURITIES LITIGATION**
       **Consolidated Civil Action No. 99-371-KAJ**

Dear Jenny:

This letter will respond to your letter of June 14, 2005, concerning the meet and confer telephone conference of June 13, 2005.

We received your last five boxes on June 21 and have not yet completed our review of the documents in them. We expect to receive defendants' final privilege log on or about June 29.

You are correct that we originally agreed, as an initial guideline, that the relevant period was January 1998 to June of 1999. We told you, however, that we had spoken with a potential witness who said the gray marketing problems began in 1997. You agreed to check the Board minutes and other Board documents from June 1997 to December 1997 and to produce any documents responsive to "gray marketing", broadly construed to include "any alleged overselling to distributors, returns or discounts allegedly allowed in response to gray marketing ..." as you define them in the third paragraph of your June 14, 2005 letter. We agreed to that as a first step, though we reserve the right to revisit this issue later.

With regard to our request for Board of Directors minutes and related documents, we also request that you review these documents for a) discussion of the reasons the stock price declined after the IPO even if gray marketing was not discussed; b) reasons Adams's sales were not as high as predicted after the IPO, even if gray marketing is not mentioned; and c) general discussion of sales and earnings trends. Because we also requested that you produce all document identified in your Rule 26 disclosures, you should have produced any Board minutes or other materials that support any of your defenses.

Since production of these documents was not specifically discussed at the meet and confer, we will not move to compel them immediately, but ask that you produce all documents that support your defenses, including Board of Director minutes and related documents as requested many months ago.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

Jennifer Brannen, Esquire
**Akin, Gump, Strauss, Hauer & Feld, LLP**
June 24, 2005
Page 2

     With regard to General Request Number 2, plaintiffs requested that you go back to Adams Golf for more investor communications, Road Show materials and Analyst reports, including but not limited to the Midtown Research Report. This would include any drafts and notes and any documents that support defendants' claims.

     We will move to compel the computerized "sales register" as well as the reconciliation of the sales register with the general ledger. We are not asking for the general ledger itself, only its reconciliation with the amounts referenced in the sales register. Adams has now produced the computerized list of contacts with customers whose bills were in arrears, for 1998. This establishes that Adams's computer records from 1998 do exist.

     With regard to Communications with Authorized Retailers, plaintiffs requested distribution agreements between Adams and its customers. We agreed to accept, at least for now, correspondence and contracts with the largest distributors. We request that you produce documents concerning the following:

| | |
|---|---|
| Edwin Watts Golf Shops<br>Fort Walton Beach, FL | Create Products<br>Solano Beach, CA |
| Sports Authority<br>Ft. Lauderdale, FL | Martin's Golf<br>N. Myrtle Beach, SC |
| Dick's Sporting Goods<br>Corapolis, PA | Herrington Catalog<br>Londonberry, NH |
| George Takei<br>Solano Beach, CA | Golfsmith<br>Austin, TX |
| Golf Day<br>Revere, MA | Pete Carlson's Golf<br>Palm Desert, CA |
| Dunhams Sports<br>Waterford, MI | Palm Beach Golf Center, Inc.<br>Palm Beach, FL |
| Gart Sports<br>Denver, CO | Hank Haney Golf Ranch<br>Mckinney, TX |

# Berger&Montague,P.C.
ATTORNEYS AT LAW

Jennifer Brannen, Esquire
**Akin, Gump, Strauss, Hauer & Feld, LLP**
June 24, 2005
Page 3

| Liandro Tiribelli<br>Miami, FL | King Par<br>Flushing, MI |
|---|---|
| Manatee Golf<br>Bradenton, FL | One Up Golf Center<br>Tampa, FL |
| Golf Discount<br>St. Peters, MO | Somerton Springs<br>Ivyland, PA |
| Family Golf Center<br>Melville, NY | Pro Golf Discount, Atlanta<br>Norcross, GA |

Finally, I enclose a formal request for the personnel file of Mark Gonsalves, which will be served formally through Delaware counsel. In accordance with the confidentiality order in place in this case, we will keep these materials strictly confidential.

Sincerely,

Elizabeth W. Fox

EWF/sw

cc:    Ted McEvoy, Esq.
       Paul Bessette, Esq.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---

| IN RE ADAMS GOLF, INC. | CONSOLIDATED |
| SECURITIES LITIGATION | C.A. No. 99-371 KAJ |

---

## PLAINTIFFS' SECOND REQUEST FOR PRODUCTION OF
## DOCUMENTS FROM THE ADAMS GOLF DEFENDANTS

Plaintiffs hereby request that defendants Adams Golf, Inc. B.H. (Barney) Adams, Darl P.

Hatfield, Richard Murtland, Paul F. Brown, Roland E. Casati, Finis F. Conner, and Stephan R.

Patchin produce for inspection and copying the documents described herein which are in the

possession, custody or control of said Defendants, or their officers, agents, employees, accountants,

or attorneys, the production of which shall take place at such times and places as may be agreed upon

by counsel for the parties as authorized by Federal Rule of Civil Procedure 34. Defendants shall

further comply with Rule 34(b) by producing the documents as they are kept in the usual course of

business or shall organize and label them to correspond with the categories in this request.

Additionally, Defendants shall indicate from whose files the documents are produced. Defendants

shall supplement their own responses in accordance with the Federal Rules of Civil Procedure.

## I.    DEFINITIONS

1.    "Document" is used in the broadest possible sense and means, without limitation, any

written, printed, typed, photocopied, photographed, recorded, or otherwise reproduced or stored

communication or representation, whether comprised of letters, words, numbers, data, pictures,

sounds, or symbols, or any combination thereof. This definition includes copies or duplicates of

documents contemporaneously or subsequently created which have any non-conforming notes or

other markings. Without limiting the generality of the foregoing, "document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, accounts, analytical records, reports and/or summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes of minutes of meetings or of other communications of any type, including inter-office and intra-office communications, electronic mail/messages and/or "e-mail," electronically stored telephone messages and/or "voice-mail," questionnaires, surveys, charts, graphs, photographs, phonograph recordings, films, tapes, disks, data cells, print-outs of information stored or maintained by electronic data processing or word processing equipment, all other data compilations from which information can be obtained (by translation, if necessary, by you through detection devices into usable form), including, without limitation, electromagnetically sensitive storage media such as floppy disks, hard disks, and magnetic tapes, and any preliminary versions, as well as drafts or revisions of any of the foregoing, whether produced or authored by one of the defendants or anyone else.

2.    "All documents" means every document and every non-identical copy known to you and every such document or writing which you can locate or discover by reasonably diligent efforts, including, but not limited to, documents now in the possession, custody, or control of Adams Golf, its merged or acquired predecessors, its former and present directors, officers, counsel, agents, employees, and/or persons acting on its behalf and/or the individual defendants.

3.    "Adams Golf" means Adams Golf, Inc., and its predecessors, and includes any subsidiaries, affiliates, segments, or divisions thereof, any present and former members of the Board

2

of Directors of Adams Golf or its subsidiaries, affiliates, segments, or divisions, and any present or former officers, employees, agents, representatives, or other persons (as defined below) acting on behalf of Adams or its subsidiaries, affiliates, segments, or divisions, including but not limited to attorneys and accountants.

4.    "You" or "Your" means the Defendants responding to these Requests and any of their respective subsidiaries, divisions, affiliates, predecessors, officers, directors, employees, or agents, including, but not limited to, attorneys and accountants.

5.    "Concerning" means relating to, referring to, in connection with, pertaining to, describing, discussing, analyzing, reflecting, summarizing, evidencing, manifesting, embodying, or constituting.

## II.    INSTRUCTIONS

1.    The following rules of construction shall apply to all requests:

(a)    All/Each/Any – The terms "all", "each", and "any" shall be construed as meaning both any and all;

(b)    And/or – The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope;

(c)    The use of the singular form of any word shall include the plural and vice versa; and

(d)    The masculine gender includes the feminine.

2.    A document shall be deemed to be in your control if you have the right to secure the document or copy thereof from another person or public or private entity having possession or

3

custody thereof. If any otherwise responsive document was, but is no longer, in existence or in your possession, custody, or control, or has been lost, discarded, or destroyed, said document shall be identified as completely as possible including but not limited to, the following information:

      (a)    the date of disposal or disposition from your possession, custody or control;

      (b)    the manner of disposal or disposition from your possession, custody or control;

      (c)    the reason for disposal or disposition from your possession, custody or control;

      (d)    the person authorizing disposal or disposition from your possession, custody or control;

      (e)    the document's current or last known custodian;

      (f)    the circumstances surrounding the document's disposition from your possession, custody or control;

      (g)    the generic category of the document, e.g., memo, letter, computer print-out, etc.;

      (h)    the type(s) of information contained in the document; and

      (I)    the identity of all persons having knowledge or who had knowledge of the contents of the document.

    3.    Unless otherwise indicated, the documents to be produced include all documents prepared, sent, dated, or received, or those which otherwise came into existence at anytime during the relevant period described herein.

4

4.    (a)    Where an objection is made to any document request under Fed. R. Civ. P. 34, the objection shall state with specificity all grounds. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be waived.

(b)    Where a claim of privilege, specifically including, without limitation, a claim based on the "work-product" doctrine, is asserted in objecting to any document demand, or sub-part thereof, and a document or part of a document is withheld on the basis of such assertion, you shall follow the procedures in Federal Rule of Civil Procedure 26(b)(5), making sure that the basis for privileged treatment is evident from the information on the privilege log.

5.    Notwithstanding the assertion of any objection to production, any document to which an objection is raised containing non-objectionable subject matter that is relevant or could lead to the discovery of relevant evidence must be produced, but that portion of the document for which the objection is asserted may be withheld or redacted provided that the information requested in ¶ 4(b) is furnished, and the redacted part is marked "redacted".

6.    This request is continuing, and all documents coming into your possession, custody or control that you would have been required to produce had they been available earlier shall be produced forthwith in accordance with the Federal Rules of Civil Procedure.

7.    Each document requested herein is requested to be produced in its entirety and without deletion or excisions, regardless of whether you consider the entire document to be relevant or responsive to these requests. If you have redacted any portion of a document, stamp the word "redacted" on each page of the document which you have redacted. Redactions should be included on the privilege log described in ¶ 4.

5

8.    The fact that a document is produced by one defendant does not relieve any other defendant of the obligation to produce his or its copy of the same document, even if the two documents are identical in all respects.

9.    In producing documents, you are requested to produce the original of each document requested together with all non-identical copies and drafts of that document. If the original of any document cannot be located, a copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

10.    All documents shall be produced in the file folder, envelope, or other container in which the documents are kept or maintained by you. If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

11.    Documents shall be produced in such fashion as to identify the department, branch or office in whose possession they were located and, where applicable, the natural person in whose possession they were found and the business address of each document's custodian(s).

12.    Documents attached to each other should not be separated.

13.    Documents not otherwise responsive to this discovery request shall be produced if such documents mention, discuss, refer to or explain the documents which are called for by this discovery request, or if such documents are attached to documents called for by this discovery request and constitute routing slips, transmittal memoranda, or letters, comments, evaluations or similar materials.

## III.    RELEVANT PERIOD

The relevant period for this document request, unless otherwise indicated, shall be from the time Mark Gonsalves began his employment at Adams Golf until January 1, 1999 and shall include

6

all documents and information which relate in whole or in part to such period, or to events or circumstances during such period, even though dated, prepared generated, or received before or after that period.

IV.    **REQUEST FOR PRODUCTION**

37.    All employment, personnel, or HR records or files concerning Mark Gonsalves, including documents concerning Mark Gonsalves's performance while employed at Adams Golf, including but not limited to: salary, benefits, and incentives; formal or informal performance evaluations, appraisals or assessments by any member of management, Adams Golf sales personnel or customers of Adams Golf; and documents concerning the departure of Gonsalves from his employment at Adams Golf.

*Carmella P. Keener*

ROSENTHAL, MONHAIT, GROSS
& GODDESS, P.A.
Carmella P. Keener (DSBA No. 2810)
919 N. Market Street, Suite 1401
P. O. Box 1070
Wilmington, DE 19899
(302) 656-4433
Ckeener@rmgglaw.com

PLAINTIFFS' LIAISON COUNSEL

BERGER & MONTAGUE, P.C.
Todd S. Collins
Elizabeth W. Fox
Neil Mara
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

PLAINTIFFS' LEAD COUNSEL

KELLER ROHRBACK, LLP
Elizabeth Leland
Juli F. Desper
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
(206) 623-1900

LAW OFFICES OF DONALD B. LEWIS
Donald B. Lewis
5 Cynwyd Road
Bala Cynwyd, PA 19004
(610) 668-0331

COUNSEL FOR PLAINTIFFS


DATED:   June 24, 2005

8

EXHIBIT 18

# AKIN GUMP
# STRAUSS HAUER & FELD LLP

━━━━━━━━━━━━━ Attorneys at Law

MICHELLE A. REED
(512) 499-6269/fax: (512) 499-6290
mreed@akingump.com

June 30, 2005

VIA FEDERAL EXPRESS

Ms. Liz Fox
Mr. Neil Mara
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103

Re:     *In re Adams Golf Securities Litigation*

Dear Liz & Neil:

I enclose the privilege log for Adams Golf's document production. I also enclose documents Bates labeled ADAMS 040598 – ADAMS 040679, which were inadvertently pulled for privilege and are responsive to Plaintiffs' First Request for Production or supportive of defendants' defenses.

As with previous productions, this production includes many documents that are drafts, even though those documents may not be labeled as such. The production also contains many documents and portions of documents that we have deemed irrelevant, but have included because of our obligations under the Federal Rules. Our production should not be deemed a waiver of any relevance objection at depositions or trial.

Very truly yours,

*[signature]*

Michelle A. Reed

MAR/mrk

Enclosures

cc: Theodore McEvoy

EXHIBIT 19

# AKIN GUMP
# STRAUSS HAUER & FELD LLP

━━━━━━━━━━ Attorneys at Law

JENNIFER R. BRANNEN
512 499 6258/fax: 512 499 6290
jbrannen@akingump com

June 30, 2005

VIA FACSIMILE & OVERNIGHT

Ms. Liz Fox
Berger & Montague
1622 Locust Street
Philadelphia, PA 19103

     Re:   Adams Golf Securities Litigation

Dear Liz:

     I write in response to your letter dated June 24, 2005. As you know, we have completed our production and have sent under separate cover defendants' privilege log and Arter & Hadden's privilege log. I respond to each of the concerns outlined in your June 24, 2005 letter in turn.

     As an initial matter, more than five months ago in our first meet-and-confer teleconference, defendants informed plaintiffs that any date and scope restrictions on plaintiffs' discovery requests should be addressed before production begins so as to minimize discovery burden and cost and to decrease the likelihood of unnecessary motion practice. *See* Brannen letter dated 2/7/2005 (summarizing meet-and-confer call). Defendants have reviewed hundreds of boxes of documents based on plaintiffs' own stated parameters and should not be obligated to re-review these documents based on an calculatedly vague assertion. Plaintiffs had more than six years to investigate their claims before discovery began and have only now—after the document production is complete—asserted the existence of an unidentified witness with unspecified claims of supposed gray marketing in 1997. Plaintiffs did not object or respond to any of the parameters outlined in my letter dated February 7, 2005, and therefore, defendants object to plaintiffs' belated attempt to extend the relevant time period.

     Without more information about the purported 1997 gray marketing, defendants' agreement to review the board of director minutes from the last six months of 1997 is not a "first step" but rather a final compromise. Defendants have produced all 1998 board minutes that fall under the broad definition of gray marketing agreed to by the parties. Defendants have also produced all 1998 board minutes that support their defenses and will do the same for the board minutes from the last six months of 1997.

AKIN GUMP
STRAUSS HAUER & FELDLLP
━━━━━━━━━━━━━ Attorneys at Law

Ms. Liz Fox
June 30, 2005
Page 2

As explained in our June 14, 2005 letter, defendants have already produced all responsive and relevant investor communications, road show materials, and analyst reports. Adams Golf does not possess any "Midtown Research Report."

Moreover, as explained in my June 27, 2005 message to Mr. Mara, the "sales register" and reconciliation report do not exist. On January 31, 1999, Adams Golf migrated from the Platinum system to PeopleSoft. In this data transfer, only high-level summary financial data was ported to PeopleSoft—monthly sales by distributor were not ported over. Plaintiffs' lawsuit was not filed until June 11, 1999, and thus defendants had no obligation to preserve the detailed sales records at the time of the data transfer. As you know, parties are not obligated to produce or create documents that do not exist.

Plaintiffs' claim that defendants' production of customer call records demonstrates that Adams Golf's "computer records from 1998 do exist" is illogical. Adams Golf ported over some but not all data into PeopleSoft. Defendants' production of the records that do exist simply underscores defendants' good-faith compliance with the Federal Rules.

Defendants have produced all correspondence broadly relevant to gray marketing. To the extent retailer agreements from 1998 existed at the time the suit was filed, defendants will produce such agreements for the retailers identified by plaintiffs.

Finally, defendants will respond to plaintiffs' latest discovery request under separate cover on the deadline mandated by the Federal Rules of Civil Procedure.

Sincerely,

*Jennifer R. Brannen / MGK with permission*

Jennifer R. Brannen

cc:    Theodore McEvoy, Esq.

# EXHIBIT 20

Not Reported in F Supp.2d
2003 WL 21729842 (S.D.N.Y.), Fed Sec L Rep P 92,470
(Cite as: 2003 WL 21729842 (S.D.N.Y.))

Page 2

**Motions, Pleadings and Filings**

United States District Court,
S.D. New York.
In re AOL TIME WARNER, INC SECURITIES &
"ERISA" LITIGATION
No. 1500, 02 Civ. 5575(SWK).

July 25, 2003

*OPINION AND ORDER*

KRAM, J

*1 Lead Plaintiff Minnesota State Board of Investment moves for disclosure of documents provided by Defendants to various government departments and agencies, including the Securities and Exchange Commission, the United States Department of Justice, any committee of the legislative branch of the United States government and/or any other entity of the executive branch of the United States government For the reasons set forth below, Lead Plaintiff's motion is denied

Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b)(3)(B), an automatic stay of discovery is in effect during the pendency of any motion to dismiss, "unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § § 77z-1(b)(1) and 78u-4(b)(3)(B). Recognizing that the "cost of discovery often forces innocent parties to settle frivolous securities class actions," H.R. Conf. Rep. No. 104-369, at 37 (1995), Congress enacted the mandatory stay of discovery, in part, to prevent plaintiffs from filing frivolous lawsuits and using it as a vehicle "in order to conduct discovery in the hopes of finding a sustainable claim not alleged in the complaint." S.Rep. No. 104-98, at 14 (1998); *see also In re Vivendi Universal, S.A., Sec. Litig.*, No. 02 Civ. 5571(HB), 2003 WL 21035383, at *1 (S.D.N.Y. May 6, 2003) "[U]nless exceptional circumstances are present, discovery in securities actions is permitted only after the court has sustained the legal

sufficiency of the complaint." *Vacold LLC v Cerami*, No. 00 Civ 4024(AGS), 2001 WL 167704, at *6 (S.D.N.Y. Feb. 16, 2001)

Although recent decisions in this district and others have lifted the automatic stay prior to a ruling on the sufficiency of the complaint based upon a need for preservation of evidence or to prevent undue prejudice to a party, *see, e g , In re WorldCom, Inc. Sec. Litig.*, 234 F.Supp.2d 301 (S.D.N.Y.2002) (motion for partial lifting of automatic stay granted to allow discovery of documents provided to Department of Justice and SEC by related non-party); *In re Enron Corp Sec. Derivative & "ERISA" Litig*, No. MDL 1446, 2002 WL 31845114 (S.D.Tex. Aug. 16, 2002) (limited production allowed as to materials already made available to numerous governmental entities), upon further briefing from the parties the Court finds that the distinct circumstances present in those cases are not applicable to the current procedural posture of this matter. Defendants in this action have only recently filed their motion to dismiss the amended complaint It cannot be concluded that "evidence from discovery might not be the subject of controversy as to a claim in the complaint if leave to replead were granted." *In re Vivendi Universal, S.A., Sec. Litig.*, 2003 WL 21035383, at *1. Nor can it be assured that plaintiffs will not attempt to use the discovery materials in opposition to the recently filed motion. Additionally, although Lead Plaintiff asserts that settlement discussions between various Defendants and the government are currently on-going, in contrast to *In re Worldcom, Inc. Sec. Litig , supra*, where court-ordered settlement discussions had been scheduled and defendant had filed for bankruptcy, in this action Lead Plaintiff's assertions of an impending settlement that could prejudice plaintiffs' possible recovery are premature

*2 Moreover, Defendants have assured the Court that they will uphold their obligation under the PSLRA to preserve evidence. *See, e g ,* Mem. of Def Ernst & Young LLP in Supp. of Opp to Motion to Partially Lift Discovery Stay, dated May 16, 2003, at 5; Mem of Def Myer Berlow in Opp. to Motion to Lift PSLRA Discovery Stay, dated May 16, 2003, at 1; Mem. of Underwriter Defs in Opp. to Motion to Lift PSLRA Discovery Stay, dated May 16, 2003, at 2. The Court accepts these representations on the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 21729842 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,470
(Cite as: 2003 WL 21729842 (S.D.N.Y.))

part of Defendants.

  Accordingly, Lead Plaintiff has not demonstrated that exceptional circumstances are present in this case requiring production of documents previously produced to various government agencies, and the application to lift the PSLRA automatic stay of discovery pending resolution of the motion to dismiss is therefore denied.

  SO ORDERED.

  2003 WL 21729842 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,470

    **Motions, Pleadings and Filings (Back to top)**

  2003 WL 23724648 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law of Under Writer Defendants and Defendant Citigroup in Further Support of Their Motion to Dismiss the Amended Consolidated Complaint (Nov. 14, 2003)

  2003 WL 23724647 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Underwriter Defendants and Defendant Citigroup in Support of Their Motion to Dismiss the Amended Consolidated Complaint (Jul. 14, 2003)

  2003 WL 23724646 (Trial Motion, Memorandum and Affidavit) Memorandum of Underwriter Defendants in Opposition to Msbi's Motion to Lift the Pslra Discovery Stay (May 16, 2003)

        1:02CV05575           (Docket)
  (Jul. 18, 2002)

  END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F Supp 2d

2003 WL 21750631 (E D La )

**(Cite as: 2003 WL 21750631 (E.D.La.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E D. Louisiana
KAISER ALUMINUM & CHEMICAL
CORPORATION
v.
WILLIS OF MARYLAND, INC , et al
**No. Civ.A. 02-0944.**

July 28, 2003

*HEARING ON MOTION*

SHUSHAN, Magistrate J

APPEARANCES: Submitted on briefs

MOTION: KACC'S MOTION FOR PROTECTIVE ORDER (Rec doc 62)

GRANTED

*1 Before the undersigned is the motion of the plaintiff, Kaiser Aluminum & Chemical Corporation ("KACC"), for a protective order quashing the notice of deposition issued pursuant to Fed R Evid 30(b)(5) and (6) by the defendant, Monument Select Insurance Company ("Monument"), or in the alternative, limiting the discovery. After two of the three defendants settled the claims against them, the District Court continued the trial of KACC's claims against Monument and ordered the parties to re-notice their corporate depositions. Rec doc 57. Monument's notice seeks KACC's deposition on the following:

  1. The claims made on and payments by KACC insurers arising from the Gramercy plant

explosion and payments from those insurers designated under any first party or third party policies as rebuild income for the Gramercy project; including but not limited to those made and money paid as reimbursement for insurance expenses arising from or connected with the rebuild project

2 The negotiations of the Time and Materials Agreement and the Engineering, Procurement and Construction Agreement for Gramercy Re-Build Project ("EPC Agreement") between KACC and Kaiser Engineering

3. The modification of the EPC Agreement to limit the scope of the work and the responsibilities of Kaiser Engineers and the substitution of Fluor Daniel for Kaiser Engineering in all construction activities under

© 2005 Thomson/West No Claim to Orig. U S Govt Works.

Not Reported in F Supp 2d

2003 WL 21750631 (E D La )

**(Cite as: 2003 WL 21750631 (E.D.La.))**

the EPC Agreement

Exhibit A to Rec doc 62 KACC contends that these areas of examination are not relevant to the claims or defenses of any party Pursuant to Fed R Civ P 26(b)(1),

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence

*Id* The Advisory Committee Notes for the 2000 amendment states:

The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision

The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings

Fed Rule Civ P 26(b) Advisory Committee's Note, 2000 amendment

KACC's petition named Willis of Maryland, Inc. ("Willis") and Travelers Property Casualty Corporation ("Travelers") as defendants with Monument KACC alleges that, following an explosion at its Gramercy bauxite refining facility in July, 1999, it made the decision to rebuild the facility and selected Kaiser Engineers, Inc ("KE"), an unaffiliated company, as the engineering, procurement and construction contractor for the rebuild project KACC and KE entered into two contracts: (1) a Time and Materials Agreement, dated December 23, 1999, to rebuild the facility; and (2) the EPC Agreement dated April 17, 2000 KACC alleges that, pursuant to the terms of the latter contract, it was obligated to purchase builder's risk insurance and did so Under the contract, KE was obligated to purchase certain other insurance,

for example commercial general liability, with KACC being required to pay KE's premiums for this other insurance In February, 2000, KE invoiced KACC for the insurance it purchased under the EPC Agreement and KACC paid KE a total of $2,727,209 50 KACC alleges that in late December, 2000, it learned that $676,650 of the $2 7 million was for a second builder's risk policy issued by Travelers Monument was the reinsurer on the Travelers' policy and received $500,000 of the $676,650 [FN1]

> FN1 The invoice for the insurance is Exhibit B to Rec doc 64

*2 In May, 2000, the EPC Agreement was amended and many of KE's responsibilities were assumed by Fluor Daniel In June, 2000, KE filed for bankruptcy and KE's remaining contractual obligations to KACC were assigned Hatch Associates, Inc ("Hatch") In August, 2000, the Traveler's builder's risk policy was canceled KACC alleges that a return premium of at least $393,134 was due KACC alleges it suffered damages for: (1) wrongful payment of the $675,650; (2) alternatively, loss of the unearned premium refund; and (3) wrongful payment of Willis' fees

KACC's first count is based on the contention that under La Civ Code Ann art 2315 the defendants had duties to exercise due care to avoid damage to KACC and they breached those duties The second count is based on the contention that under La Civ Code Ann art 2298 the defendants were unjustly enriched The third count is based on the contention that under La Civ Code Ann art 2299 the defendants received payments not owed to them and they are obligated to return them The fourth, fifth and sixth counts are against Willis for misrepresentation, detrimental reliance and breach of fiduciary duty The seventh count is against Travelers and Monument and is based on the contention that pursuant to provisions of the Louisiana Insurance Code, the unearned premium is owed to KACC with interest at the statutory rate Attachment to Rec doc 1 KACC describes its principal dispute as presenting the narrow issue of whether it is entitled to the return premium on the

© 2005 Thomson/West No Claim to Orig U S Govt Works

Not Reported in F Supp 2d

Page 3

2003 WL 21750631 (E D La )

**(Cite as: 2003 WL 21750631 (E.D.La.))**

canceled Travelers policy Rec doc 62 at p 6 It concedes, however, that it asserted a broader claim for a return of the $500,000 premium received by Monument *Id* at p 8, n 1

Monument denies the allegations and alleges that Travelers, KE, Willis and Hatch all may have a claim against Monument arising out of the builder's risk policy and further that Hatch asserts in KE's bankruptcy proceeding that it was the owner of the policy Rec doc 10 Monument raises the following additional defenses: (1) prescription; (2) KACC knew it was paying for a builder's risk policy when it paid the February 7, 2000 invoice from KE; (3) as a result of a 1999 agreement between KACC and KE requiring KACC to reimburse KE for the builder's risk deductible, there are no tort or quasi contract claims against Monument; (4) KACC failed to pursue claims against KE in bankruptcy so the quasi contract and unjust enrichment claims against Monument are barred; and (5) Louisiana law does not grant KACC the right to the return of the unearned premium

Monument's first area of examination concerns the payment to KACC from its insurers arising out of the Gramercy plant explosion, including any reimbursement for insurance expenses on the rebuild project Monument contends that if KACC received reimbursement from its insurers for builder's risk insurance on the rebuild project, it cannot have claims for unjust enrichment or a refund of an unearned premium. Assuming that Monument's statement of the effect of the collateral source rule is correct, which is denied by KACC, Monument ignores that KACC's petition alleges that it paid twice for the same coverage See paragraphs 10 and 19 of the petition attached to Rec doc 1 Even if insurance reimbursement for the explosion specifically included funds for a builder's risk policy, Monument does not contend that funds were provided for duplicate builder's risk policies Monument's first area of examination is unrelated to the claims or defenses of either party

**\*3** Monument's second and third areas of examination concern the negotiations between KACC and KE on the two contracts and the

substitution of Fluor Daniel for KE on the construction activities Monument contends that KACC substituted Fluor Daniel for KE as the de facto general contractor immediately after signing the EPC Agreement with KE on April 17, 2000 and that there were preliminary negotiations to take KE off of the job before the EPC Agreement was signed Monument argues that the EPC Agreement was not a fair and reasonable agreement because KACC retained the right to modify the agreement without cause For these reasons, KACC could choose not to enforce the agreement against KE or use the provisions of the agreement as the basis for its claims against Monument Monument, however, has not plead that the EPC Agreement is unenforceable Monument's second and third areas of examination are unrelated to the claims or defenses of either party

In effect Monument seeks leave to amend its answer to assert a new defense, the invalidity of the EPC Agreement, and conduct discovery related to that defense On July 12, 2002, there was a preliminary conference and the parties were granted until August 26, 2002, to amend Rec doc 9 KACC timely filed a motion for leave to amend Rec doc 14 Its amended complaint was filed on September 4, 2002 Rec doc 17 Monument did not file its supplemental answer until January 17, 2003 The District Court has not extended the deadlines for amending the pleadings The trial is set for November 13, 2003 Rec doc 57 In *S & W Enterprises, L L C v Southtrust Bank of Alabama, NA*, 315 F 3d 533 (5th Cir 2003), the Fifth Circuit held that Fed R Civ P 16(b) governs the amendment of pleadings after a deadline in a scheduling order has expired

> Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave

*Id* at 536 Monument has not demonstrated good cause for the discovery it seeks nor has it demonstrated any basis for leave to amend to assert the invalidity of the EPC Agreement Accordingly,

IT IS ORDERED that KACC's motion for protective order (Rec doc 62) is GRANTED and

© 2005 Thomson/West No Claim to Orig U S Govt Works

Not Reported in F.Supp 2d                                                 Page 4

2003 WL 21750631 (E.D.La.)

**(Cite as: 2003 WL 21750631 (E.D.La.))**


Monument's   notice   of   KACC's   deposition   is
quashed

2003 WL 21750631 (E.D.La.)

   **Motions, Pleadings and Filings (Back to top)**

• 2:02CV00944  (Docket)
                              (Mar. 28, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2005, I electronically filed with the Clerk of Court using

CM/ECF which will send notification of such filing(s) and Hand Delivered to the following:

Carmella P. Keener
Rosenthal, Monhait, Gross & Goddess
919 Market Street, Suite 1401
Wilmington, DE  19801

Robert K. Payson
John E. James
Potter Anderson & Corroon LLP
1313 North Market Street, Hercules Plaza
Wilmington, Delaware  19801

I hereby certify that on July 12, 2005, I have Federal Expressed the document(s) to the

following non-registered participants:

Todd S. Collins
Jacob A. Goldberg
Berger & Montague, PC
1622 Locust Street
Philadelphia, PA  19103

Michael J. Chepiga
Elaine M. Divelbliss
Theodore J. McEvoy
Simpson Thacher & Bartlett
425 Lexington Avenue
New York, NY  10017

Alyssa M. Schwartz (#4351)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
schwartz@rlf.com