**ROSENTHAL, MONHAIT, GROSS & GODDESS, P. A.**
ATTORNEYS AT LAW
SUITE 1401, 919 MARKET STREET
P. O. BOX 1070
WILMINGTON, DELAWARE 19899-1070

JOSEPH A. ROSENTHAL
NORMAN M. MONHAIT
KEVIN GROSS
JEFFREY S. GODDESS
CARMELLA P. KEENER
EDWARD B. ROSENTHAL
JESSICA ZELDIN

TELEPHONE (302) 656-4433
FACSIMILE (302) 658-7567
E-MAIL RMGG@RMGGLAW.COM

December 21, 2005

**Via Electronic Filing and Hand Delivery**

The Honorable Kent A. Jordan
United States District Court
844 N. King Street
Wilmington, Delaware 19801

Re:   **In re: Adams Golf Litigation, C.A. No. 99-371-KAJ**

Dear Judge Jordan:

In anticipation of the teleconference scheduled for Friday, December 23, 2005 at 9:00 a.m., I write on behalf of plaintiffs, pursuant to the Court's November 29, 2004 Scheduling Order, to seek the Court's assistance regarding an important discovery dispute.

## Background of Dispute

Several months ago, plaintiffs learned that none of the underwriter defendants could or would produce any e-mails dating to the relevant discovery period (a time when they had and used e-mail). We were informed that defendant Lehman Brothers, Lead Underwriter for Adams' IPO, no longer possesses the hardware or software necessary to retrieve such e-mails, and that, even if it did, the tapes containing the e-mails are "corrupted" and will not permit retrieval. Counsel stated that Lehman was attempting to retrieve e-mails from backup tapes made on random (but not all) days of the relevant period, but that it could not guarantee finding any relevant documents. Counsel informed us that the electronic documents of the other underwriters either had been erased, or had not been archived.

Thus, it appears that some or all of the underwriters may have destroyed evidence of their underwriting of the IPO, their road show activities, their due diligence investigations, and their authorship of post-IPO research reports regarding Adams. Such evidence may well have reflected the underwriters' knowledge of and observation of the effects of gray marketing, and could have been probative as to the impact on Adams' stock price from post-IPO revelations about the gray marketing of Adams Golf clubs.

Plaintiffs' counsel advised the underwriter defendants that we believe that their destruction of

The Honorable Kent A. Jordan
December 21, 2005
Page 2

documents may give rise to serious sanctions on a number of bases, depending on the timing of the destruction and the circumstances thereof. We provided them with authorities demonstrating: (1) that it is sanctionable for a litigant to destroy evidence when it knew or should have known that the evidence is relevant to pending, imminent or reasonably foreseeable litigation; (2) that as broker-dealers, the underwriters were required by the SEC at the time of Adams' IPO to preserve all communications they sent or received relating to their "business as such," including electronic communications, for a period of not less than three years; and (3) that once this litigation was filed (within 11 months of Adams' IPO), additional document preservation obligations automatically applied under the Private Securities Litigation Reform Act.[1]

Because case law teaches that the appropriate sanctions to apply in the event of demonstrated spoliation of evidence depend on the culpability of the destroying party, measured by many factors, plaintiffs have not precipitously sought any sanctions. Instead, we proposed to defendants that they supply us voluntarily with affidavits explaining the full circumstances under which their electronic evidence became unavailable. Defendants refused to do so, asserting that they are not required to do so, and stating that they would proceed under the federal discovery rules. Plaintiffs thereupon served a single interrogatory upon each underwriter, asking for full details (including dates) regarding the loss of evidence. Defendants objected to the discovery on various grounds, and then gave non-responsive answers that were essentially verbatim the same "explanations" that had forced us to propound the interrogatories in the first place.

Plaintiffs have sought to resolve the dispute regarding defendants' inadequate response to these interrogatories and to related discovery. Defendants have refused plaintiffs' request for complete, responsive answers to the interrogatories unless plaintiffs waive in advance their right to conduct later Rule 30(b)(6) depositions on this subject matter. Defendants have insisted that plaintiffs proceed if at all by taking Rule 30(b)(6) depositions, but they have also insisted that plaintiffs take such depositions only after the expiration of a stipulated stay of deposition discovery.

## Plaintiffs' Position With Respect to the Dispute

Plaintiffs' position is simple: that the interrogatory discovery is necessary and appropriate to formulate plaintiff's position as to possible sanctions (including whether the underwriters should be precluded from any or all defenses). It is conceivable that full and complete interrogatory answers might obviate the need for later deposition discovery on the topic (they will almost surely shorten it). However, it is our position that interrogatories and depositions are non-exclusive tools for discovery, such that the use of one should not require the advance surrender of another.

---

[1] We will not recite these authorities here in light of the Court's stated preference regarding discovery disputes, but will be pleased to supply them to the Court upon request.

The Honorable Kent A. Jordan
December 21, 2005
Page 3

      It is plaintiffs' further position that whenever the interrogatories are fully answered, plaintiffs ought be permitted to schedule follow-up Rule 30(b)(6) depositions, if they prove necessary, whatever the status of merits deposition discovery at the time.[2] These depositions are not merits depositions, but would focus on facts relating to the issue of whether the underwriters should be sanctioned for the destruction of discovery. The depositions would therefore be unaffected by the Court's rulings on defendants' motions. It is plaintiffs' position that given the present posture of the case and defendants' refusal to answer fully plaintiffs' interrogatories, it would be inefficient and wasteful to delay further in developing facts that may obviate or reduce the need for merits discovery of the underwriters. The parties have reached impasse on this issue.

      Plaintiffs therefore respectfully ask this Court to require defendants to supply full and complete interrogatory answers, and to permit expeditious deposition discovery, to the extent necessary, to help the parties resolve this critically important collateral issue, if possible before merits depositions proceed.

                Respectfully submitted,

                /s/ Carmella P. Keener

                Carmella P. Keener (DSBA No. 2810)

CPK/jls

cc:    Jeffrey L. Moyer, Esquire (by electronic filing)
        Alyssa M. Schwartz, Esquire (by electronic filing)
        John E. James, Esquire (by electronic filing)
        Brian C. Ralston, Esquire (by electronic filing)
        Donald Lewis, Esquire (by electronic filing)
        Elizabeth Fox, Esquire (by electronic mail)
        Juli Desper, Esquire (by electronic filing)
        Neil Mara, Esquire (by electronic mail)
        Todd S. Collins, Esquire (by electronic mail)

---

[2] After defendants informed plaintiffs that they intended to move to dismiss claims asserted in plaintiffs' proposed amended complaint, the parties stipulated that once the stay imposed by the PSLRA went into effect, fact discovery would be stayed until the court either denied the motion for leave to amend or ruled on any motion to dismiss. Plaintiffs at or about the same time had stated that it was not their intention to take depositions before the PSLRA stay went into effect.