## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: ADAMS GOLF, INC., SECURITIES LITIGATION | § § § § § | CIVIL ACTION NO. 99-371-RRM (CONSOLIDATED) |

## THE ADAMS GOLF DEFENDANTS' ANSWER TO
## PLAINTIFFS' SECOND CONSOLIDATED AND AMENDED COMPLAINT

Defendants Adams Golf, Inc. ("Adams Golf" or the "Company"), B.H. (Barney) Adams, Darl P. Hatfield, Richard H. Murtland, Paul F. Brown, Jr., Roland E. Casati, Finis F. Conner and Stephen R. Patchin (collectively, the "Adams Golf Defendants") each hereby responds to plaintiffs' Second Consolidated and Amended Complaint ("SAC") for violations of the Securities Act of 1933, as amended (the "Act") as follows.

### PRELIMINARY STATEMENT

As stated in this Court's Order, filed April 11, 2006 (the "Order"), certain allegations in the SAC have been stricken in response to defendants' motions to dismiss. *See* Order at 1. Specifically, the Order dismissed plaintiffs' claims "associated with a lack of disclosure of alleged 'margin squeeze'," and those "associated with lack of disclosure regarding allegedly inadequate controls on product distribution." Order at 1.

Based on the Order, the Adams Golf Defendants need not respond, in whole or in part, to the dismissed allegations. Relying on the Order, the Adams Golf Defendants identify paragraphs 81 through 88 as relating solely to the dismissed allegations of retail oversupply, and therefore do not respond to these paragraphs. The Adams Golf Defendants also identify portions of paragraphs 22, 32, 33, 89 and 90 as relating to the dismissed allegations regarding "margin squeeze" and allegedly inadequate controls on product distribution, and therefore do not respond

to these portions of paragraphs 22, 32, 33, 89 and 90. Should the Court disagree with the Adams Golf Defendants' identification of dismissed allegations in the SAC, the Adams Golf Defendants reserve the right to amend this Answer.

Except for the dismissed allegations in paragraphs 81 through 88, and the relevant portions of paragraphs 22, 32, 33, 89 and 90 to which the Adams Golf Defendants do not respond as discussed above, the Adams Golf Defendants deny all allegations that are not expressly admitted as set forth below. The Adams Golf Defendants respond to each allegation of the SAC as follows:

1.    The Adams Golf Defendants lack sufficient information to either admit or deny the allegations in paragraph 1. To the extent that any response is required, however, the Adams Golf Defendants deny each and every allegation in paragraph 1.

2.    The Adams Golf Defendants admit that the SAC alleges a class action for violations of the federal securities laws against defendants on behalf of all investors who purchased Adams Golf shares in or traceable to Adams Golf's initial public offering ("IPO") between July 10, 1998 and October 22, 1998 ("Class Period"). The Adams Golf Defendants further admit that the IPO was consummated pursuant to a registration statement on Form S-1 ("Registration Statement"), which became effective on July 9, 1998 (the "Effective Date"), and the prospectus (the "Prospectus") incorporated as part of the Registration Statement, the contents of which speak for themselves.  The remaining allegations in paragraph 2 contain legal conclusions to which no response is required.  To the extent that any response is required, however, the Adams Golf Defendants deny the remaining allegations in paragraph 2.  Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 2.

2

3.      Paragraph 3 contains legal conclusions to which no response is required. To the extent that any response is required, however, the Adams Golf Defendants admit that plaintiffs purport to assert claims under §§ 11, 12(a)(2) and 15 of the Act. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 3.

4.      Paragraph 4 contains legal conclusions to which no response is required. To the extent that any response is required, however, the Adams Golf Defendants admit that plaintiffs purport to invoke the jurisdiction of this Court under § 22 of the Act and 28 U.S.C. § 1331. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 4.

5.      Paragraph 5 contains legal conclusions to which no response is required. To the extent that any response is required, however, the Adams Golf Defendants admit that plaintiffs purport to invoke venue in this District pursuant to § 22 of the Act. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 5.

6.      The Adams Golf Defendants admit that they use the means and instrumentalities of interstate commerce. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 6.

7.      The Adams Golf Defendants admit that on June 27, 2005 and August 3, 2005, the Court entered Orders, the contents of which speak for themselves. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 7.

8.      The Adams Golf Defendants admit that Adams Golf is a corporation organized under the laws of the State of Delaware. The Adams Golf Defendants further admit that at the time the SAC was filed, Adams Golf common stock traded on NASDAQ. As of May 22, 2003, however, Adams Golf's securities were no longer eligible for listing on NASDAQ. Adams

3

Golf's stock is now traded using the OTC Bulletin Board ("OTCBB").  The Adams Golf Defendants further admit that Adams Golf is a seller of golf clubs.  Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 8.

9.    The Adams Golf Defendants admit that Adams Golf completed an internal reorganization in 1997 and during the Class Period conducted its operations through several direct and indirect wholly owned subsidiaries, including: (i) Adams Golf Holding Corp., a Delaware corporation, which held limited partnership interests of certain indirect subsidiaries of the Company; (ii) Adams Golf GP Corp., a Delaware corporation, which held capital stock or general partnership interests, as applicable, of certain indirect subsidiaries of the Company; (iii) Adams Golf Direct Response, Ltd., a Texas limited partnership, which operated the call-center and advertising activities; (iv) Adams Golf, Ltd., a Texas limited partnership, which operated the golf club design, assembly and sales business; (v) Adams Golf IP, L.P., a Delaware limited partnership, which held the intellectual property rights of the Company; and (vi) Adams Golf Management Corp., a Delaware corporation, which provided management and consulting services to certain of the Company's indirect subsidiaries.

10.    The Adams Golf Defendants admit that the following individual Adams Golf Defendants, listed in subparagraphs (a) through (g) of paragraph 10 of the SAC, each signed the Registration Statement: (a) Defendant B.H. (Barney) Adams ("Adams"), who founded Adams Golf and on the Effective Date was Chairman of the Board of Directors, Chief Executive Officer and President of the Company; (b) Defendant Darl P. Hatfield, who on the Effective Date was Senior Vice President-Finance and Administration and Chief Financial Officer of the Company; (c) Defendant Richard H. Murtland, who on the Effective Date was Vice President-Research and Development, Secretary and Treasurer of the Company; (d) Defendant Paul F. Brown, Jr., who

4

on the Effective Date was a director of the Company; (e) Defendant Roland E. Casati, who on the Effective Date was a director of the Company; (f) Defendant Finis F. Conner, who on the Effective Date was a director of the Company; and (g) Defendant Stephen R. Patchin, who on the Effective Date was a director of the Company.  The remaining allegations in paragraph 10 contain legal conclusions to which no response is required.  Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 10.

11.    The Adams Golf Defendants admit that Lehman Brothers Holdings Inc., Banc of America Securities LLC (formerly known as Nationsbanc Montgomery Securities LLC), and Ferris, Baker Watts, Incorporated (collectively, the "Underwriter Defendants") served as underwriters for the IPO as disclosed in the Registration Statement and Prospectus, the contents of which speak for themselves. The Adams Golf Defendants further admit that the Underwriter Defendants performed due diligence in connection with the IPO.  Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 11.

12.    The Adams Golf Defendants admit that plaintiffs have brought an action under Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons who purchased or otherwise acquired Adams Golf common stock issued in or traceable to the IPO (the "Class"). The remaining allegations in paragraph 12 contain legal conclusions to which no response is required.  To the extent that any response is required, however, the Adams Golf Defendants deny each and every remaining allegation in paragraph 12.

13.    The Adams Golf Defendants admit that on June 27, 2005 and August 3, 2005, the Court entered Orders, the contents of which speak for themselves.  Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 13.

5

14.     Paragraph 14 contains legal conclusions to which no response is required. To the extent that any response is required, however, the Adams Golf Defendants deny each and every allegation in paragraph 14.

15.     Paragraph 15, including subparagraphs (a) through (d), contains legal conclusions to which no response is required. To the extent that any response is required, however, the Adams Golf Defendants deny each and every allegation in paragraph 15.

16.     The Adams Golf Defendants lack sufficient information to either admit or deny the allegations in paragraph 16. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 16.

17.     The Adams Golf Defendants admit that Adams Golf designs, manufactures and markets premium quality, technologically innovative golf clubs. The Adams Golf Defendants further admit that on the Effective Date, Adams Golf represented that it believed its most successful product line to date, the Tight Lies fairway woods, employed technology and design that provided golfers with the ability to hit the ball from virtually any lie while maximizing distance. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 17.

18.     The Adams Golf Defendants admit that Adams Golf was founded by Adams in 1987 and that Adams Golf operated initially as a components supplier and contract manufacturer. The Adams Golf Defendants further admit that thereafter Adams Golf established its custom fitting operation, which as of the Effective Date, serviced a network of over 100 certified custom fitting accounts. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 18.

19.     The Adams Golf Defendants admit the allegations in paragraph 19.

6

20.    The Adams Golf Defendants admit the allegations in paragraph 20.

21.    The Adams Golf Defendants admit that as of the Effective Date, Adams Golf represented that it derived net sales primarily from sales to on- and off-course golf shops and selected sporting goods retailers and, to a much lesser extent, from direct sales to consumers, international distributors and the Company's custom fitting accounts.  Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 21.

22.    Paragraph 22 contains legal conclusions to which no response is required.  To the extent that any response is required, however, the Adams Golf Defendants admit that the Registration Statement and incorporated Prospectus became effective July 9, 1998.    The allegations regarding "margin squeeze" and allegedly inadequate controls on product distribution have been dismissed by the Court, thus no response is needed.  Order at 1.  Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 22.

23.    Paragraph 23 contains legal conclusions to which no response is required.  To the extent that any response is required, however, the Adams Golf Defendants deny each and every allegation in paragraph 23.

24.    The Adams Golf Defendants admit that the phrase "gray market distribution" as used by plaintiffs generally refers to the distribution of Adams Golf's products to unauthorized retailers.  The Adams Golf Defendants lack sufficient information to either admit or deny that sales in the gray market are made at a substantial discount to the suggested retail price at which the Company's authorized retailers sell.  Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 24.

25.    The Adams Golf Defendants admit that instances of gray marketing occurred prior to the IPO.  The Adams Golf Defendants lack sufficient information to either admit or deny

7

what various sources may or may not have informed plaintiffs. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 25.

26.    The Adams Golf Defendants deny each and every allegation in paragraph 26.

27.    The Adams Golf Defendants deny each and every allegation in paragraph 27.

28.    The Adams Golf Defendants lack sufficient information to either admit or deny what various sources may or may not have told plaintiffs. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 28.

29.    The Adams Golf Defendants admit that on June 9, 1998, one month before the Effective Date, Adams Golf issued a press release announcing that, among other things, the Company had filed a Bill of Discovery against Costco. The Adams Golf Defendants further answer that the document speaks for itself. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 29.

30.    The Adams Golf Defendants answer that the Registration Statement and Prospectus speak for themselves. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 30.

31.    The Adams Golf Defendants answer that the Registration Statement and Prospectus speak for themselves. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 31.

32.    The Adams Golf Defendants answer that the Registration Statement and Prospectus speak for themselves. The allegations regarding "margin squeeze" and allegedly inadequate controls on product distribution have been dismissed by the Court, thus no response is needed. Order at 1. The remaining allegations contain legal conclusions to which no response

8

is required.  To the extent that any response is required, however, the Adams Golf Defendants deny the allegations in paragraph 32.

33.    Paragraph 33 contains legal conclusions to which no response is required.  The allegations regarding "margin squeeze" and allegedly inadequate controls on product distribution have been dismissed by the Court, thus no response is needed.  Order at 1.  To the extent that any response is required, however, the Adams Golf Defendants deny each and every allegation in paragraph 33.

34.    The Adams Golf Defendants answer that the Registration Statement and Prospectus speak for themselves.  Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 34.

35.    The Adams Golf Defendants answer that the Registration Statement and Prospectus speak for themselves.  Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 35.

36.    The Adams Golf Defendants deny each and every allegation in paragraph 36.

37.    The Adams Golf Defendants deny each and every allegation in paragraph 37.

38.    The Adams Golf Defendants admit that Adams Golf issued a press release on January 7, 1999 announcing that, among other things, the Company attributed lower-than-expected sales in the fourth quarter of 1998 to continuing weakness in the golf-equipment market and the gray-market distribution of its products to a membership warehouse club.  The Adams Golf Defendants further answer that the document speaks for itself.  Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 38.

39.    The Adams Golf Defendants admit that Adams Golf issued a press release on February 3, 1999 announcing that, among other things, the Company's fourth-quarter net sales in

9

1998 had been reduced by a $4.3 million credit given to retailers. The Adams Golf Defendants further answer that the document speaks for itself. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 39.

40.    The Adams Golf Defendants admit that Adams Golf's 1998 Form 10-K Report, filed with the SEC in March 1999, disclosed that, among other things, despite the Company's efforts to limit distribution to selected retailers, the Company did not believe that gray marketing of its products could be totally eliminated. The Adams Golf Defendants further answer that the document speaks for itself. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 40.

41.    Paragraph 41 contains legal conclusions to which no response is required. To the extent that any response is required, however, the Adams Golf Defendants deny each and every allegation in paragraph 41.

42.    Paragraph 42 contains legal conclusions to which no response is required. To the extent that any response is required, however, the Adams Golf Defendants deny each and every allegation in paragraph 42.

43.    The Adams Golf Defendants admit that Mark Gonsalves was employed by Adams Golf from July 20, 1995 to September 30, 1998, and worked for some part of that time as Vice President of Sales. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 43.

44.    The Adams Golf Defendants lack sufficient information to either admit or deny what various sources may or may not have told plaintiffs. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 44.

10

45.    The Adams Golf Defendants admit that Costco had acquired some Adams Golf clubs prior to the IPO. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 45.

46.    The Adams Golf Defendants deny each and every allegation in paragraph 46.

47.    The Adams Golf Defendants admit that on March 27, 1998, Mark Gonsalves wrote a memo to Richard Murtland. The Adams Golf Defendants further answer that the document speaks for itself. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 47.

48.    The Adams Golf Defendants admit that on April 15, 1998, Chris Beebe sent a memo to Mark Gonsalves, Barney Adams and Marc Puglielli. The Adams Golf Defendants further answer that the document speaks for itself. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 48.

49.    The Adams Golf Defendants admit that on May 18, 1998, Barney Adams wrote a letter to Jim Sinegal of Costco. The Adams Golf Defendants also admit that on June 1, 1998, Barney Adams wrote a letter to Patrick Callans of Costco. The Adams Golf Defendants also admit that on May 26, 1998 Barney Adams wrote a memorandum to Mark Gonsalves. The Adams Golf Defendants further answer that these documents speak for themselves. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 49.

50.    Paragraph 50 contains legal conclusions to which no response is required. To the extent that any response is required, however, the Adams Golf Defendants deny each and every allegation in paragraph 50.

51.    The Adams Golf Defendants admit that on October 8, 1998, Barney Adams wrote a memo to Paul Brown, Roland Casati, Finis Conner, Mark Mulvoy, Dick Murtland, and John

Simpson. The Adams Golf Defendants further answer that the document speaks for itself. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 51.

52.    The Adams Golf Defendants admit that Costco has produced a document in this litigation that purports to state the quantity of Adams Golf clubs that Costco had on certain dates prior to the IPO. The Adams Golf Defendants further answer that the document speaks for itself. The Adams Golf Defendants further admit that on October 8, 1998, Barney Adams wrote a memo to Paul Brown, Roland Casati, Finis Conner, Mark Mulvoy, Dick Murtland, and John Simpson. The Adams Golf Defendants further answer that this document speaks for itself Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 52.

53.    The Adams Golf Defendants deny each and every allegation in paragraph 53.

54.    The Adams Golf Defendants lack sufficient information to either admit or deny the location or timing of Costco's alleged acquisition of Adams Golf's clubs. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 54.

55.    The Adams Golf Defendants admit that WDC Mackenzie was the Company's distributor for Adams Golf products in Canada. The Adams Golf Defendants further answer that they lack sufficient information to either admit or deny what Vance Mackenzie might have thought or concluded. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 55.

56.    The Adams Golf Defendants lack sufficient information to either admit or deny what Vance Mackenzie may or may not have told plaintiffs. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 56.

12

57.    The Adams Golf Defendants admit that plaintiffs have produced a document in this litigation that purports to be a letter from Greg Pratt of WDC Mackenzie to Ed Maron of Costco Wholesale Canada on March 31, 1998. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 57.

58.    The Adams Golf Defendants admit that Chris Beebe received a letter dated April 13, 1998 from Greg Pratt of WDC Mackenzie. The Adams Golf Defendants further answer that the document speaks for itself. The Adams Golf Defendants further admit that the Company sold Tight Lies clubs to WDC Mackenzie for $235 Canadian in April 1998. The Adams Golf Defendants further answer that they lack sufficient information to either admit or deny the prices at which either WDC Mackenzie or Costco might have been selling Adams Golf clubs. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 58.

59.    The Adams Golf Defendants admit that Chris Beebe received a letter dated April 13, 1998 from Greg Pratt of WDC Mackenzie. The Adams Golf Defendants further answer that the document speaks for itself. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 59.

60.    The Adams Golf Defendants lack sufficient information to either confirm or deny the numbers of clubs that might or might not have been returned to WDC Mackenzie. The Adams Golf Defendants admit that Chris Beebe traveled to Canada on April 28, 1998 and returned April 30, 1998. The Adams Golf Defendants further admit that Chris Beebe sent a fax to Greg Pratt on April 23, 1998. The Adams Golf Defendants further answer that the document speaks for itself. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 60.

13

61.    The Adams Golf Defendants admit that on May 6, 1998, Chris Beebe sent a fax to all the Company's distributors. The Adams Golf Defendants further answer that the document speaks for itself. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 61.

62.    The Adams Golf Defendants admit that on May 29, 1998, Barney Adams sent a fax to Chris Beebe. The Adams Golf Defendants further answer that the document speaks for itself. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 62.

63.    The Adams Golf Defendants admit that on June 8, 1998, Chris Beebe sent a fax to WDC Mackenzie. The Adams Golf Defendants further answer that the document speaks for itself. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 63.

64.    Paragraph 64 contains legal conclusions to which no response is required. To the extent that any response is required, however, the Adams Golf Defendants deny each and every allegation in paragraph 64.

65.    The Adams Golf Defendants admit that on August 19, 1998, Greg Pratt of WDC Mackenzie sent a letter to Barney Adams. The Adams Golf Defendants further answer that the document speaks for itself. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 65.

66.    Paragraph 66 contains legal conclusions to which no response is required. The Adams Golf Defendants further answer that they lack sufficient information to assess the significance to their competitors of gray-marketing sales of their competitors' products. Except

14

as so expressly admitted and to the extent that any response is required, however, the Adams Golf Defendants deny each and every allegation in paragraph 66.

67.    The Adams Golf Defendants answer that the Form 10-K that Callaway filed with the United States Securities and Exchange Commission for 1997 is a matter of public record. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 67.

68.    The Adams Golf Defendants admit that on April 13, 1998, Greg Pratt of WDC Mackenzie wrote Chris Beebe of Adams Golf. The Adams Golf Defendants further answer that the document speaks for itself. The Adams Golf Defendants further admit that on May 29, 1998, Chris Beebe sent a memorandum to Barney Adams, Mark Gonsalves and Marc Puglielli. The Adams Golf Defendants further answer that the document speaks for itself. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 68.

69.    The Adams Golf Defendants lack sufficient information to either confirm or deny the allegations in paragraph 69. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 69.

70.    Paragraph 70 contains legal conclusions to which no response is required. To the extent that any response is required, however, the Adams Golf Defendants deny each and every allegation in paragraph 70.

71.    Paragraph 71 contains legal conclusions to which no response is required. To the extent that any response is required, however, the Adams Golf Defendants deny each and every allegation in paragraph 71.

15

72.    The Adams Golf Defendants lack information sufficient to either admit or deny what various sources may have told plaintiffs.  Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 72.

73.    The Adams Golf Defendants deny each and every allegation in paragraph 73.

74.    The Adams Golf Defendants lack information sufficient to either admit or deny what various sources may have told plaintiffs.  Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 74.

75.    The Adams Golf Defendants deny each and every allegation in paragraph 75. .

76.    The Adams Golf Defendants admit that on August 14, 1998, Barney Adams wrote a memorandum to Mark Gonsalves and Ric Jarrett.  The Adams Golf Defendants further answer that the document speaks for itself.  Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 76.

77.    The Adams Golf Defendants admit that on August 14, 1998, Barney Adams wrote a memorandum to Mark Gonsalves and Ric Jarrett.  The Adams Golf Defendants further answer that the document speaks for itself.  Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 77.

78.    The Adams Golf Defendants deny each and every allegation in paragraph 78.

79.    The Adams Golf Defendants admit that on August 14, 1998, Barney Adams wrote a memorandum to Mark Gonsalves and Ric Jarrett.  The Adams Golf Defendants further answer that the document speaks for itself.  Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 79.

80.    The Adams Golf Defendants deny each and every allegation in paragraph 80.

16

81. – 88.    The allegations in paragraphs 81 through 88 relate to claims of "margin squeeze" and allegedly inadequate controls on product distribution, which have been dismissed by the Court. Order at 1. Therefore, no response is required.

89.    Paragraph 89, including subparagraphs (a) through (d), contain legal conclusions to which no response is required. The Adams Golf Defendants further answer that Item 303 of SEC Regulation S-K ("Item 303") and Financial Accounting Standards Board Statement No. 5 ("FAS 5") speak for themselves. Moreover, the allegations regarding "margin squeeze" and allegedly inadequate controls on product distribution have been dismissed by the Court, thus no response is needed. Order at 1. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 89.

90.    Paragraph 90 contains legal conclusions to which no response is required. The allegations regarding "margin squeeze" and allegedly inadequate controls on product distribution have been dismissed by the Court, thus no response is needed. Order at 1. To the extent that any response is required, however, the Adams Golf Defendants deny each and every allegation in paragraph 90.

91.    Paragraph 91 contains legal conclusions to which no response is required. The Adams Golf Defendants further answer that Financial Accounting Standards Board Statement No. 48 ("FAS 48") speaks for itself. To the extent that any response is required, however, the Adams Golf Defendants deny each and every allegation in paragraph 91.

92.    The Adams Golf Defendants answer that Adams Golf's stock price is a matter of public record. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 92.

17

93.    The Adams Golf Defendants admit that the Company issued a press release on October 22, 1998. The Adams Golf Defendants further answer that the document speaks for itself. The Adams Golf Defendants further answer that Adams Golf's stock price is a matter of public record. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 93.

94.    The Adams Golf Defendants reallege and hereby incorporate their responses to paragraphs 1 through 93 above as though fully set forth here.

95.    The Adams Golf Defendants admit that plaintiffs purport to bring Count I under Section 11 of the Act against all defendants, on behalf of all persons who purchased or otherwise acquired Adams Golf's common stock in or traceable to the IPO between July 10, 1998 and October 22, 1998. Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 95.

96.    Paragraph 96 contains legal conclusions to which no response is required. To the extent that any response is required, however, the Adams Golf Defendants deny each and every allegation in paragraph 96.

97.    The Adams Golf Defendants admit that Adams Golf is the registrant of the securities issued in the IPO. The remaining allegations contain legal conclusions to which no response is required. To the extent that any response is required, however, the Adams Golf Defendants deny each and every remaining allegation in paragraph 97.

98.    Paragraph 98 contains legal conclusions to which no response is required. To the extent that any response is required, however, the Adams Golf Defendants deny each and every allegation in paragraph 98.

18

99.    Paragraph 99 contains legal conclusions to which no response is required. To the extent that any response is required, however, the Adams Golf Defendants deny each and every allegation in paragraph 99.

100.    The Adams Golf Defendants answer that Adams Golf's stock price is a matter of public record. The remaining allegations contain legal conclusions to which no response is required. To the extent that any response is required, however, the Adams Golf Defendants deny each and every remaining allegation in paragraph 100.

101.    Paragraph 101 contains legal conclusions to which no response is required. To the extent that any response is required, however, the Adams Golf Defendants deny the remaining allegations in paragraph 101.

102.    Paragraph 102 contains a legal conclusion to which no response is required. To the extent that any response is required, however, the Adams Golf Defendants deny the allegation in paragraph 102.

103.    The Adams Golf Defendants reallege and hereby incorporate their responses to paragraphs 1 through 102 above as though fully set forth here.

104.    The Adams Golf Defendants admit that plaintiffs purport to bring Count II under Section 12(a)(2) of the Act against Lehman on behalf of all who bought Adams stock from Lehman in the IPO at $16 per share. The Adams Golf Defendants lack sufficient knowledge to admit or deny whether Patricia Craus ("Craus") bought Adams stock from Lehman in the IPO at $16 per share. To the extent that any response is required, however, the Adams Golf Defendants deny each and every allegation in paragraph 104.

19

105.    Paragraph 105 contains legal conclusions to which no response is required.  To the extent that any response is required, however, the Adams Golf Defendants deny each and every allegation in paragraph 105.

106.    Paragraph 106 contains legal conclusions to which no response is required.  To the extent that any response is required, however, the Adams Golf Defendants deny each and every allegation in paragraph 106.

107.    Paragraph 107 contains legal conclusions to which no response is required.  To the extent that any response is required, however, the Adams Golf Defendants deny each and every allegation in paragraph 107.

108.    Paragraph 108 contains legal conclusions to which no response is required.  To the extent that any response is required, however, the Adams Golf Defendants deny each and every allegation in paragraph 108.

109.    Paragraph 109 contains legal conclusions to which no response is required.  To the extent that any response is required, however, the Adams Golf Defendants lack sufficient knowledge to form a belief as to the allegations in paragraph 109.

110.    Paragraph 110 contains legal conclusions to which no response is required.  To the extent that any response is required, however, the Adams Golf Defendants lack sufficient information to either admit or deny whether Craus and other members of the Subclass acquired Adams Golf common stock.  Except as so expressly admitted, the Adams Golf Defendants deny each and every remaining allegation in paragraph 110.

111.    Paragraph 111 contains legal conclusions to which no response is required.  To the extent that any response is required, however, the Adams Golf Defendants deny each and every allegation in paragraph 111.

112.     The Adams Golf Defendants admit that at the time this action was filed, less than three years had elapsed from the time that the securities upon which plaintiffs' Count under Section 12(a)(2) of the Act was brought were sold to the public.  Except as so expressly admitted, the Adams Golf Defendants deny each and every allegation in paragraph 112.

113.     Paragraph 113 contains a legal conclusion to which no response is required.  To the extent that any response is required, however, the Adams Golf Defendants deny the allegation in paragraph 113.

114.     The Adams Golf Defendants reallege and hereby incorporate their responses to paragraphs 1 through 113 above as though fully set forth here.

115.     The Adams Golf Defendants admit that plaintiffs purport to bring Count III under Section 15 of the Act against the individual Adams Golf Defendants on behalf of all persons who purchased or otherwise acquired Adams Golf's common stock in or traceable to the IPO between June 10, 1998 and October 22, 1998.

116.     Paragraph 116 contains legal conclusions to which no response is required.  To the extent that any response is required, however, the Adams Golf Defendants deny each and every allegation in paragraph 116.

117.     Paragraph 117 contains legal conclusions to which no response is required.  To the extent that any response is required, however, the Adams Golf Defendants deny each and every allegation in paragraph 117.

118.     Paragraph 118 contains a legal conclusion to which no response is required.  To the extent that any response is required, however, the Adams Golf Defendants deny the allegation in paragraph 118.

21

119.    In response to plaintiffs' prayer for relief and judgment, the Adams Golf Defendants deny each and every allegation contained in plaintiffs' prayer for relief and judgment.

## AFFIRMATIVE DEFENSES

As separate and distinct affirmative defenses to the SAC, and to each purported cause of action alleged therein, the Adams Golf Defendants, and each of them, allege as follows:

### FIRST AFFIRMATIVE DEFENSE
(Failure to State a Claim)

120.    The SAC, and each purported cause of action alleged therein against each Defendant, fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE
(No Material Falsity or Omission)

121.    At the time the Registration Statement and Prospectus became effective, they did not contain any untrue statements of material fact or fail to state any material fact required to be stated therein or necessary to make the statements therein not misleading.

### THIRD AFFIRMATIVE DEFENSE
(Statute(s) of Limitation)

122.    The claims of plaintiffs and members of the Class and Subclass are barred in whole or in part by the applicable statute(s) of limitation.

### FOURTH AFFIRMATIVE DEFENSE
(No Materiality)

123.    Any allegedly untrue statement of material fact, omission of material fact, misleading statement, or other action allegedly made or taken by any of the Adams Golf Defendants was not material to the investment decisions of a reasonable investor.

## FIFTH AFFIRMATIVE DEFENSE
### (No Primary Liability)

124.    Plaintiffs' claims are barred in whole or in part because plaintiffs cannot establish the primary liability to assert control person liability.

## SIXTH AFFIRMATIVE DEFENSE
### (No Damages)

125.    Plaintiffs' claims are barred in whole or in part because plaintiffs and members of the Class and Subclass did not suffer any damages.

## SEVENTH AFFIRMATIVE DEFENSE
### (Mitigation of Damages)

126.    The Adams Golf Defendants allege that plaintiffs and members of the Class and Subclass did not exercise due care and failed to act reasonably to protect themselves from, or to mitigate, any damages they allegedly may have sustained by reason of, the alleged wrongful acts set forth in the SAC.

## EIGHTH AFFIRMATIVE DEFENSE
### (Speculative Damages)

127.    Plaintiffs' claims are barred because the alleged damages, if any, are speculative and thus are not recoverable.

## NINTH AFFIRMATIVE DEFENSE
### (Ratification)

128.    The Adams Golf Defendants allege that plaintiffs and members of the Class and Subclass have ratified, consented to and/or acquiesced in the acts, conduct and omissions alleged in the SAC.

## TENTH AFFIRMATIVE DEFENSE
### (Unjust Enrichment)

129.    The Adams Golf Defendants allege that plaintiffs and members of the Class and Subclass would be unjustly enriched if they were allowed to recover anything in this action.

## ELEVENTH AFFIRMATIVE DEFENSE
(Actual Knowledge)

130.    The Adams Golf Defendants allege that plaintiffs and members of the Class and Subclass had actual knowledge of the facts that were allegedly misrepresented or omitted by the Adams Golf Defendants.

## TWELFTH AFFIRMATIVE DEFENSE
(Constructive Knowledge)

131.    The Adams Golf Defendants allege that plaintiffs and members of the Class and Subclass should have known and/or had constructive knowledge of the facts that were allegedly misrepresented or omitted by the Adams Golf Defendants.

## THIRTEENTH AFFIRMATIVE DEFENSE
(Assumption of Risk)

132.    The Adams Golf Defendants allege that plaintiffs and members of the Class and Subclass had actual knowledge or constructive knowledge of the misrepresentations and omissions alleged in the SAC at the time they acquired their shares, and thus assumed the risk of a decline in the value of those shares.

## FOURTEENTH AFFIRMATIVE DEFENSE
(No Knowledge or Reasonable Grounds to Believe)

133.    Each and every one of the Adams Golf Individual Defendants alleged to be a control person under § 15 of the Act had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

## FIFTEENTH AFFIRMATIVE DEFENSE
(Conformity with SEC Rules & Regulations)

134.    Each and every act or omission alleged in the SAC was performed or omitted in good faith and in conformity with the rules and regulations of the Securities and Exchange

24

Commission and, therefore, pursuant to § 15 of the Act, there is no liability for any act or omission so alleged.

## SIXTEENTH AFFIRMATIVE DEFENSE
(Reasonable Investigation)

135.    Pursuant to Section 11(b)(3)(A) of the Securities Act, each of the individual Adams Golf Defendants had, after reasonable investigation, reasonable ground to believe and did believe, at the time the Registration Statement became effective, that the statements therein were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading.

## SEVENTEENTH AFFIRMATIVE DEFENSE
(No Transaction Causation)

136.    The Adams Golf Defendants allege that the alleged misstatements and omissions were not intended nor perceived as instrumental in effecting the alleged sale of Adams Golf stock to plaintiffs and members of the Class and Subclass. Therefore, there was no causal connection between the alleged misstatements and omissions and the alleged sale of Adams Golf stock to plaintiffs and members of the Class and Subclass.

## EIGHTEENTH AFFIRMATIVE DEFENSE
(No Loss Causation)

137.    The Adams Golf Defendants allege that any depreciation in the market price of Adams Golf common stock acquired by plaintiffs and members of the Class and Subclass resulted from factors other than the alleged misrepresentations and omissions set forth in the SAC.

## NINETEENTH AFFIRMATIVE DEFENSE
(Bespeaks Caution)

138.    The Adams Golf Defendants allege that the public documents issued by Adams Golf contained sufficient cautionary language to bespeak caution with respect to the subject matter of each misrepresentation or omission alleged in the SAC.

## TWENTIETH AFFIRMATIVE DEFENSE
(Contributory Negligence)

139.    The Adams Golf Defendants allege that plaintiffs and members of the Class and Subclass knew or in the exercise of reasonable care should have known of the alleged misrepresentations and omissions set forth in the SAC, and thus were negligent. This negligence was the cause in fact and proximate cause of the alleged damages asserted in the SAC, and thus plaintiffs' recovery is barred either in whole or in part.

## TWENTY-FIRST AFFIRMATIVE DEFENSE
(Intervening Causation)

140.    Plaintiffs' damages, if any, resulted from the acts or omissions of third parties over whom the Adams Golf Defendants had no control.   The acts of such third parties constitute intervening or superceding causes of the harm, if any, suffered by plaintiffs.

## TWENTY-SECOND AFFIRMATIVE DEFENSE
(Proportionate Liability)

141.    The Adams Golf Defendants allege that if plaintiffs and members of the Class and Subclass sustained any losses under the circumstances alleged in the SAC (which the Adams Golf Defendants deny), then each Defendant is liable only for that portion of damages that corresponds to his or its respective degree of fault and responsibility and is not liable for any damages attributable to the responsibility, negligence or fault of any other individual or entity.

RLF1-3011233-1

## TWENTY-THIRD AFFIRMATIVE DEFENSE
(Comparative Fault)

142.    Plaintiffs' claims, and each of them, are barred by, or the damages (if any) allegedly sustained by plaintiffs are reduced by, plaintiffs' contributory and/or comparative fault and/or the comparative fault, if any, of third parties.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE
(Public Information)

143.    Plaintiffs' claims are barred on the grounds that matters alleged to be the subject of misrepresentations and/or omissions were publicly disclosed and/or were in the public domain, and as such, were available to plaintiffs and/or the securities markets.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE
(Reservation of Defenses)

144.    Additional facts may be revealed by future discovery that supports additional affirmative defenses presently available to, but unknown to, the Adams Golf Defendants. Therefore, the Adams Golf Defendants reserve the right to assert additional defenses in the event that discovery and investigation indicate that additional defenses would be appropriate.

WHEREFORE, the Adams Golf Defendants respectfully request that judgment be entered dismissing the SAC herein with prejudice and without costs, together with such other and further relief as this Court may deem just and proper under the circumstances.

Of Counsel:

Paul R. Bissette
Michael J. Biles
Jennifer R. Brannen
Akin Gump Strauss Hauer & Feld LLP
300 W. 6th Street, Suite 2100
Austin, Texas 78701
Telephone: (512) 499-6200

Dated: May 5, 2006

Jeffrey L. Moyer (#3309)
moyer@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, Delaware 19899
Telephone: (302) 671-7700

Attorneys for the Adams Golf Defendants

27

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2006, I electronically filed with the Clerk of Court using

CM/ECF which will send notification of such filing(s) and Hand Delivered to the following:

Carmella P. Keener
Rosenthal, Monhait, Gross & Goddess
919 Market Street, Suite 1401
Wilmington, Delaware 19801

Robert K. Payson
John E. James
Potter Anderson & Corroon LLP
1313 North Market Street, Hercules Plaza
Wilmington, Delaware 19801

I hereby certify that on May 5, 2006, I have caused to be sent by Electronic Mail and

Federal Express the document(s) to the following non-registered participants:

Todd S. Collins
Jacob A. Goldberg
Berger & Montague, PC
1622 Locust Street
Philadelphia, Pennsylvania 19103

Michael J. Chepiga
Elaine M. Divelbliss
Theodore J. McEvoy
Simpson Thacher & Bartlett
425 Lexington Avenue
New York, New York 10017

Alyssa M. Schwartz (#4351)