# EXHIBIT 1

## ADAMS GOLF SECURITIES LITIGATION

Rebuttal Report of Edward Necarsulmer III

1. **Assignment**: I have been retained by counsel for the underwriter defendants in this action to opine as to the adequacy of the due diligence conducted by the underwriters in connection with the initial public offering of Adams Golf Inc. I have previously prepared and submitted a report in this connection. I have further been asked to comment on the plaintiffs' expert reports of R. Alan Miller and Christiana Ochoa.

2. **Materials Reviewed**. A list of materials reviewed in addition to those referenced in my original report is attached as Exhibit A.

3. **Summary of Opinions**: Miller and Ochoa have opined that the Adams S-1 Registration Statement was defective in that it did not reflect the issue of gray marketing in its enumeration of the risk factors affecting the Company. Ochoa specifically states:" This report has discussed above how the Company's business strengths could be damaged by gray market activity. These factors should reasonably have argued in favor of disclosure to investors even if the total volume of gray market sales was small relative to the total sales at the time of the initial public offering." To the extent that either expert is opining that the underwriters were unreasonable in concluding that a disclosure regarding gray marketing was not necessary, I disagree with that contention and believe, that after doing proper due diligence, the underwriters made a reasonable judgement related to disclosure of this issue.

A. In reviewing the underwriter's document production and depositions they had extensive discussions with Company management including the subject of gray marketing. Specifically, the underwriters had discussions with Adams Golf management and management stated that there were only a small number of clubs being sold by Costco, this was not a material issue, and the company was taking appropriate steps to address the issue. See for example: Pulido-Crowe deposition 29-30,47-48,79-80,Lantier deposition 42-43,Gonsalves deposition 102,Adams deposition 251-253,Walsh deposition 148-150.

B. As part of their due diligence the underwriters reviewed a significant number of documents related to Adams Golf business including sales and marketing materials. See for example: UND 4385-4395, 4986-4987, 5004-5005,5646-5647,5265-5303. The review of these materials did not give the underwriters any reason not to accept management's position that gray marketing was not a material issue.

C. The underwriters also conducted eleven telephonic interviews with Adams Golf customers, retailers, and suppliers, during which the underwriters solicited and received information regarding the sales and marketing of Adams clubs. See: UND 6019-6021,

300-315, 10906-10909,10644-10646,10443-10446,10638-10643. Also see:Walravens deposition 33-36 and Pulido-Crowe deposition 69-72. During these interviews the underwriters asked various questions, including "Are there any other issues (legal, contractual or otherwise) which you feel are important?" None of the individuals questioned mentioned gray marketing as an issue. Such interviews with independent parties are exactly the type of work underwriters should engage in to confirm discussions with company management. Further these interviews did not provide the underwriters with any reasons not to accept management's position that gray marketing was not a material issue.

D. I also note that the reasonableness of an underwriter's due diligence must be assessed based on the information that is reasonably available at the time of the offering. To the extent that Ochoa and Miller rely on events that occurred after the offering, I don't believe that it's reasonable to consider such points in this analysis.

E. Based on my assessment of the entire due diligence process performed by the underwriters, it's my opinion that they were reasonable in concluding that a disclosure of gray marketing was not necessary to make the registration statement complete and accurate.

F. Ochoa states in her report that Callaway Golf's reference to gray marketing in its 1997 Annual Report is "notable". While Ochoa's report is not clear on this point, although underwriters often review filings of other companies in the same industry, as they did here, the mention of a risk in such filings is not necessarily determinative of whether the risk needs to be included in the issuing company's registration statement. Each factual situation is different and the underwriters must evaluate appropriate disclosure on an individual basis.

4. <u>Summary.</u> As discussed in this rebuttal report and my initial report, and based on my long industry experience, and the information presented to me, it is my opinion that the underwriters conducted a complete and thorough due diligence process consistent with industry standards and practice. As a result of their investigation, the underwriters had reasonable grounds to believe that the statements in the registration statement were accurate and that there was no omission of a material fact that was needed for adequate disclosure. Note that my work on this matter is ongoing and that my opinions are subject to modification based on additional reports, depositions, or testimony that I might receive in the future.

July 26 2006

*Edward Necarsulmer III*
_____
Edward Necarsulmer III

## EXHIBIT A

## MATERIALS CONSIDERED
## IN CONNECTION WITH
## REBUTTAL REPORT

Expert Report of H. Stephen Grace

Expert Report of Christopher M. James

Expert Report of Ed J. Lynch

Expert Report of R. Alan Miller

Expert Report of Christiana Ochoa

Expert Report of Charles A. Sjoquist