IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE ADAMS GOLF, INC. | : | CONSOLIDATED |
| SECURITIES LITIGATION | : | C.A. NO. 99-371 KAJ |
| | : | |

## REBUTTAL EXPERT REPORT OF JILL FISCH

ROSENTHAL, MONHAIT & GODDESS, P.A.

By: /s/ Carmella P. Keener
Carmella P. Keener (DSBA No. 2810)
919 Market Street, Suite 1401
Citizens Bank Building
Wilmington, DE 19899-1070
(302) 656-4433
ckeener@rmgglaw.com
   *Delaware Liaison Counsel for Plaintiffs*

OF COUNSEL:

BERGER & MONTAGUE, P.C.
Todd Collins
Elizabeth Fox
Neil Mara
1622 Locust Street
Philadelphia, PA. 19103
(215) 875-3000

*Lead Counsel for Plaintiffs and the Class*

Dated: July 28, 2006

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| _____x |  |  |
| | : | CONSOLIDATED |
| IN RE ADAMS GOLF, INC. | : | C.A. No. 99-371 KAJ |
| SECURITIES LITIGATION | : |  |
| | : | CLASS ACTION |
| _____x |  |  |

## REPORT OF JILL E. FISCH

I have been retained by the law firm of Berger and Montague, attorneys for plaintiffs in the above-captioned proceeding, to testify as to the matters discussed herein. This report contains the disclosures required by Federal Rule of Civil Procedure 26(a)(2)(b). In addition to the analysis contained herein, I may offer additional testimony, including opinions and analysis, in one or more supplemental reports, by deposition or at trial, and in response to reports or testimony subsequently produced in this case.

I understand that plaintiffs have filed a securities class action suit against the defendants based on allegations that the defendants issued securities in an initial public offering using a materially false and misleading registration statement and prospectus. My understanding is that plaintiffs' claims are premised on the defendants' failure to disclose certain risks in connection with the offering, including in particular, for purposes of this report, the risk that Adams Golf's operating results had been and would in the future be distorted by "grey market" distribution of its products.

### Professional Background and Qualifications

I am T.J. Maloney Professor of Business Law and Director of the Center for Corporate, Securities and Financial Law at Fordham University in New York City, where I have been teaching courses in corporate law, securities regulation, and federal courts since 1989. I have also taught at Columbia Law School and Georgetown University Law Center. I have a B.A. in mathematics from Cornell University and a J.D. from the Yale Law School. I have written more than three dozen law review articles, focusing primarily on corporate governance and securities litigation. My scholarship has appeared in a variety of journals including the Yale Law Journal, the Harvard Law Review, the Columbia Law Review and the Cornell Law Review.

I have given speeches and presentations at law schools including the University of Pennsylvania, the University of California at Berkeley, the University of Virginia, the University of North Carolina, Columbia University, Georgetown Law Center, Northwestern, Boston University, Queens University (Canada) and the University of Sydney, among others. I have made *pro bono* presentations on corporate law and securities regulation in connection with a variety of practitioner-oriented programs including the Annual Meeting of the New York State Bar Association, the Bond Market Association Ethics Workshop, the Directors Roundtable, and the New York Inns of Court.

1

As Director of the Fordham Corporate Center I have also organized public programs, panel discussions and roundtables on a variety of corporate law issues involving expert practitioners, regulators and business persons.

I have testified before the Securities and Exchange Commission and the Third Circuit Task Force on the Selection of Class Counsel. I am a member of the American Bar Association and the American Law Institute. I am currently serving on the Task Force on the Role of Lawyers in Corporate Governance of the Association of the Bar of the City of New York. I am past chair of the Section on Business Associations of the Association of American Law Schools, and the ABCNY Committee on Corporation Law. My resume, which documents my qualifications and includes a list of my publications, is appended to this report as exhibit A.

I have submitted expert reports and affidavits on corporate law, securities law and litigation. A list of the matters in which I have recently appeared is appended to this report as exhibit B. I will be compensated for my time in this case at a rate of $600/hour.

In preparing this report, I have reviewed various documents, a list of which is appended to this report as exhibit C. These documents have been provided to me by counsel and I have assumed their authenticity. I have considered the information contained in these documents as an aid to understanding the context of my testimony, but I have not attempted to determine the truth of any factual matters that may be in controversy. I understand that discovery continues in this case and that I may review additional material in the future. I have also conducted such research as I have considered appropriate in standard and publicly available research materials. I have not yet created any exhibits to be used as a summary of or support for the testimony I may offer in this matter, although, if asked to do so, I may create such exhibits in the future and use them as a summary of or support for my testimony. I may also during my testimony refer to exhibits prepared by others or introduced at trial.

Summary of Testimony

On the basis of the material that I have reviewed to date, I am prepared to offer testimony with respect to the nature and significance of the procedure by which the staff of the Securities and Exchange Commission (the "SEC staff") reviews and comments on an issuer's registration statement prior to its being declared effective. I offer this testimony in response to the expert report of Charles A. Sjoquist, dated July 14, 2006 (the "Sjoquist report"). Mr. Sjoquist states that the SEC staff had a reasonable basis at the time of its review of the Adams Golf registration statement to determine that the litigation against Costco relating to the grey market distribution of Adams Golf clubs (the "Costco matter") was not material. The Sjoquist report implies that, by failing to issue additional comments or halt the registration process, the SEC staff approved Adams Golf's failure to disclose the Costco matter and determined that the associated grey market sales were not a material risk factor. My opinion, based on a combined twenty years of practice, teaching and writing in corporate and securities law, is that the SEC staff made no determination of the materiality of the Costco matter and that, even if it had, such a determination, based on the information provided to the SEC staff at the time of its review, should be given no weight in the context of this litigation.

2

Discussion

The SEC staff, specifically, the staff of the Division of Corporation Finance, reviews a variety of corporate filings. These filings include registration statements, prospectuses, periodic reports, and proxy statements. The purpose of this review is to determine if there has been full and fair disclosure in accordance with the statutory requirements and the SEC rules. It is the practice of the SEC staff to provide filers with comments on the filings suggesting ways in which the disclosure can be improved. These comments can be provided orally or in writing, and filers typically respond by attempting to conform their disclosure to the staff suggestions or indicating why the suggested changes are not warranted.

Although sometimes colloquially described as "SEC approval," the review process does not constitute an official endorsement of the accuracy or completeness of the disclosure contained in the filing. This is the case for three reasons. First, the SEC staff comment process does not reflect approval of the registrant's disclosure. Second, the SEC staff review is based on the limited information available to the staff. Third, the comments conveyed as part of the review process reflect only the opinions of the SEC staff, and not the official position of the Commission.

Although the staff review process may cause the filer to revise its disclosure, it is well understood in the securities industry that the SEC staff review does not have the legal effect of an approval or endorsement of the filing. Indeed, sections 11 and 12 of the Securities Act of 1933 explicitly provide civil liability for persons who sell securities by means of a false or misleading registration statement or prospectus, despite the fact that such filings are subject to the SEC staff review process. The SEC views the legal effect of the review process to be so significant that it mandates explicit disclosure that the SEC has not approved the registrant's disclosure. Item 501(b)(7) of Regulation S-K requires the outside front cover of the prospectus to state that the SEC has not "approved or disapproved of the securities or passed upon the accuracy or adequacy of the disclosures in the prospectus. . . ." The Regulation goes on to make any contrary representation a criminal offense. Thus, Regulation S-K not only codifies the position that the SEC staff review does not constitute a determination of the accuracy or adequacy of the registrant's disclosure, but it requires that position to be clearly stated as part of every public offering.[1]

In addition, it would be impractical for the SEC to attempt to make a legal determination that the registrant's disclosure fully complies with the applicable legal rules. The SEC staff review is the product of the limited time and resources available to the SEC. As indicated above, the staff reviews thousands of filings every year. According to the National Venture Capital Association there were 337 IPOs alone in 1998. National Venture Capital Association, Venture-Backed IPO's Begin to Rebound in 4th Quarter, Jan. 7, 2002, available at http://www.nvca.org/nvca01_07_02.htm (citing statistics from Thomson Financial/Venture Economics & National Venture Capital Association). Moreover, the size and complexity of public offerings has grown tremendously. As then director of the SEC Division of Corporation Finance Brian Lane stated in 1999, from 1994 to

---

[1] Staff review of other securities filings is treated analogously. For example, 17 C.F.R. § 240.14a-9(b) provides:

The fact that a proxy statement, form of proxy or other soliciting material has been filed with or examined by the Commission shall not be deemed a finding by the Commission that such material is accurate or complete or not false or misleading, or that the Commission has passed upon the merits of or approved any statement contained therein or any matter to be acted upon by security holders. No representation contrary to the foregoing shall be made.

1998, U.S. firm commitment corporate securities offerings almost tripled from less than $700 billion in 1994 to more than $1.8 trillion in 1998. Brian Lane, Speech by SEC Staff: Views Into the Crystal Ball, Nov. 13, 1999, available at http://www.sec.gov/news/speech/speecharchive/1999/spch339.htm. This growth has dramatically increased the complexity of the SEC review process.

At the same time, the SEC has faced other demands on its limited staff resources. Eminent practitioner Robert Mundheim observed in the context of delivering the 1999 Abraham Pomerantz Lecture at Brooklyn Law School that

> [T]he SEC has been withdrawing resources from pre-effective date review of registration statements. The adequacy of disclosure and management, director, and accountant adherence to the due diligence standards for preparing registration statements has to be tested in some way. The most likely test is going to be private shareholder litigation.

Robert H. Mundheim, Commentary: The Social Meaning of Shareholder Suits, 65 Brooklyn L. Rev. 55, 58 (1999).

The SEC staff conducts its review of securities filings on the basis of limited information, relying in large part on documentation supplied by the registrant. To my knowledge, the Costco matter was raised by the SEC staff only in an oral comment, and the defendants provided no written materials in response to that comment. To my knowledge, the SEC staff was not provided with any detailed information regarding the extent to which Adams Golf products were being distributed on the grey market or on the effect that grey market distribution was having and might have in the future on Adams Golf's operating results. The Sjoquist report states that the SEC staff had information "to provide a reasonable basis for concluding that . . . disclosure of the Costco Matter was not material . . . ." In my opinion, the Sjoquist report identifies no information upon which the staff could have based such a determination.

In addition, the comments provided during the review process, and the resolution of any issues raised by those comments, only reflect opinions and determinations by the SEC staff. The Commission itself does not evaluate the filings. The SEC has explicitly stated that the comments sent to a registrant as part of the staff review process "do not constitute an official expression of the Commission's views." SEC Press Release, SEC Staff to Publicly Release Comment Letters and Responses, June 24, 2004, available at http://www.sec.gov/news/press/2004-89.htm. Reflecting this fact, the SEC has recently extended its requirement of so-called "Tandy letters" to all companies whose filings are reviewed by the SEC staff. *Id.* In a Tandy letter, the registrant formally represents, in writing, that it will not use the SEC's comment process as a defense in any securities litigation.

Finally, even if the SEC comment process reflected an official determination of materiality with respect to disclosure issues considered in that process, that determination would be entitled to little or no weight in the context of civil litigation. The SEC review process is neither the equivalent of formal rule-making nor adjudication. At most, it would constitute the equivalent of an informal opinion by the SEC. The Second Circuit has explained that SEC informal opinions are "entitled to no deference beyond whatever persuasive value they might have." *Gryl ex rel. Shire*

4

*Pharms. Group PLC v. Shire Pharms. Group PLC*, 298 F.3d 136, 145 (2d Cir. 2002) (evaluating legal effect of SEC no-action letter). In one of the more extended analyses of the legal significance of SEC clearance in the context of proxy solicitation material, the court in *Gillette Co. v. RB Partners* found the defendant's advertisement violated Rule 14a-9 even though the court found that the SEC did not view the advertisement as materially false and misleading and had, in fact, given accelerated approval to its publication. 693 F. Supp. 1266, 1287 (D. Mass. 1988).

## Conclusion

In conclusion, based on my academic and practice experience, it is my opinion that any determination of the materiality of the alleged non-disclosures in the Adams Golf registration statement is a matter for the finder of fact in this case. The SEC staff does not appear to have made, and likely could not have made, any determination of the issue as part of its review of the Adams Golf registration statement. Even assuming arguendo that the staff had made such a determination, it would be entitled to no legal effect in the litigation context.

July 28, 2006

_____

Jill E. Fisch

Exhibit A

# Jill E. Fisch

Fordham Law School
140 West 62nd Street
New York, NY 10023
(212) 636-6865
FAX (212) 636-6899
jfisch@law.fordham.edu

## EDUCATION

| | |
|---|---|
| The Yale Law School | J.D. 1985 |
| Yale Law & Policy Review - senior editor | |
| Benjamin Cardozo Interschool Moot Court Competition | |
| Harlan Fiske Stone Moot Court Prize Competition | |

| | |
|---|---|
| Cornell University College of Arts & Sciences | B.A. 1982 |
| Major: College Scholar/mathematics | GPA: 3.95 |
| cum laude in mathematics with distinction in all subjects | Phi Beta Kappa |
| Dean's List - eight semesters | (junior year) |

## CURRENT TEACHING POSITION

| | |
|---|---|
| Fordham University School of Law, New York, NY | 1989-Present |
| T. J. Maloney Professor of Business Law | |
| Director, Center for Corporate, Securities and Financial Law | |

| | |
|---|---|
| Georgetown University Law Center, Washington, DC | 2001-2002 |
| Sloan Research Fellow and Visiting Professor of Law | |

| | |
|---|---|
| Columbia Law School, New York, NY | Spring 1996 |
| Visiting Professor of Law | |

Courses Taught: Corporations & Partnerships, Securities Regulation, Advanced Corporate Law, Advanced Corporate Theory, Advanced Business Law Seminar, Federal Courts

Research Interests: Securities Regulation, Corporate Governance, Class Action Litigation, Federal Courts

## PROFESSIONAL EXPERIENCE

| | |
|---|---|
| Cleary, Gottlieb, Steen & Hamilton, New York, NY | 1987-89 |
| Associate (summer associate 1984 & 1985) | |

| | |
|---|---|
| United States Department of Justice | 1985-87 |
| Criminal Division - Honors Program | |
| Trial Attorney, Washington, DC | |
| Vice Presidential Organized Crime and Drug Enforcement | |
| Task Force (Alexandria, VA) | |
| Organized Crime Strike Force (Newark, NJ) | |

| | |
|---|---|
| Professor Stephen Carter, Yale Law School | 1984-84 |
| Research Assistant | |

6

New Haven State's Attorney's Office, New Haven, CT                                    1983-84
    Legal Intern

## PUBLICATIONS

### I. Articles

#### A. Federal Courts

*The Obligation of Precedent: The Implications of Transition Theory for Stare Decisis,* 13 J. Contemp. Legal Issues 93 (2003)

*Retroactivity and Legal Change: An Equilibrium Approach*, 110 Harv. L. Rev. 1055 (1997)

*Supreme Court Review: Post-Settlement Vacatur: A Case of Disappearing Decisions*, TRIAL, Feb. 1995, at 86

*The Vanishing Precedent: Eduardo Meets Vacatur*, 70 Notre Dame L. Rev. 325 (1994)

*Captive Courts: The Destruction of Judicial Decisions by Agreement of the Parties*, 2 N.Y.U. Envtl. L. J. 191 (1993) (colloquium issue)

*Rewriting History: The Eradication of Prior Decisional Law Through Settlement and Vacatur*, 76 Cornell L. Rev. 589 (1991)
    *cited in* U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 115 S.Ct. 386 (1994)

#### B. Corporate Governance and Litigation

*Measuring Efficiency in Corporate Law: The Role of Shareholder Primacy,* __ J. Corp. L. __ (forthcoming 2006)

*The "Bad Man" Goes to Washington: The Effect of Political Influence on Corporate Duty,* __ Ford. L. Rev. __ (forthcoming 2006)

*How Do Corporations Play Politics? The FedEx Story*, 58 Vand. L. Rev. 1495 (2005)

*Institutional Competition to Regulate Corporations: A Comment on Macey*, 55 Case W. Res. L. Rev. 617 (2005)

*The New Federal Regulation of Corporate Governance*, 28 Harv. J. L. & Pub. Pol. 39 (2004)

*Vultures or Vanguards?: The Role of Litigation in Sovereign Debt Restructuring*, 53 Emory L. J. 1043 (2004) (with Caroline Gentile)

*The Qualified Legal Compliance Committee: The SEC's effort to restructure Corporate Boards through the Attorney Conduct Rules*, 53 Duke L.J. 517 (2003) (with Caroline Gentile)

*Is there a Role for Lawyers in Preventing Future Enrons?* 48 Villanova L. Rev. 1097 (2003) (with Kenneth Rosen)

*Lawyers on the Auction Block: Evaluating the Selection of Class Counsel by Auction,* 102 Colum. L. Rev. 650 (2002)

*Taking Action Against Auctions: The Third Circuit Task Force Report*, 74 Temp. L. Rev. 813 (2002)

7

*Aggregation, Auctions and Other Developments in the Selection of Lead Counsel Under the PSLRA*, 64 Contemp. Probs. 53 (2001)

*The Peculiar Role of the Delaware Courts in the Competition for Corporate Charters*, 68 U. Cin. L. Rev. 1061 (2000)

*Teaching Corporate Governance Through Shareholder Litigation*, 34 Ga. L. Rev. 743 (2000)

*Class Action Reform, Qui Tam, and the Role of the Plaintiff*, 60 Contemp. Probs. 167 (1997)

*Can Internet Offerings Bridge the Small Business Capital Barrier?*, 2 J. Sm. & Emerging Bus. L. 57 (1998)
        *reprinted in* 40 Corp. Prac. Comm. 799 (1999)

*Class Action Reform: Lessons from Securities Litigation*, 39 Ariz. L. Rev. 533 (1997)

*Taking Boards Seriously*, 19 Cardozo L. Rev. 265 (1997)

*Questioning Philanthropy from a Corporate Governance Perspective*, 41 N.Y.L. Sch. L. Rev. 1091 (1997)

*The Buffett Board and Governance Reform*, 21 Directors & Bds. 22 (1997)

Review Essay: *Picking A Winner*, 20 J. Corp. L. 451 (1995)
(reviewing Roberta Romano, THE GENIUS OF AMERICAN CORPORATE LAW)

*Relationship Investing: Will it Happen? Will it Work?*, 55 Ohio St. L. J. 1009 (1994)

*Frankenstein's Monster Hits the Campaign Trail: An Approach to Regulation of Corporate Political Expenditures*, 32 Wm. & Mary L. Rev. 587 (1991)

        *reprinted in* Corporate Secretary's Guide (CCH) ¶ 48,197 at
        35,492 (July 31, 1991) *and excerpted in* 81 Corporate Directions
        (CCH) 131 (August 23, 1991)

*Turf Wars: Federal/State Cooperation and the Reverse Silver Platter Doctrine*, 23 Crim. L. Bull. 509 (1987)

### C. Securities Regulation

*Regulatory Reponses to Investor Irrationality: The Case of the Research Analyst*, 10 Lewis & Clark L. Rev. 57 (2006)

*Do Institutions Matter? The Impact of the Lead Plaintiff Provision of the Private Securities Litigation Reform Act*, 83 Wash. U. L. Rev. 869 (2005*)* (with Stephen Choi & A.C. Pritchard)

*How to Fix Wall Street: A Voucher Financing Proposal for Securities Intermediaries*, 113 Yale L.J. 269 (2003) (with Stephen Choi)

*The Securities Analyst as Agent: Rethinking the Regulation of Analysts*, 88 Iowa L. Rev. 1035 (2003) (with Hillary Sale)

*The Scope of Private Securities Litigation: In Search of Liability Standards for Secondary Defendants*, 99 Colum. L. Rev. 1293 (1999)

*From Legitimacy to Logic: Reconstructing Proxy Regulation*, 46 Vand. L. Rev. 1129 (1993)

*Imprudent Power: Reconsidering U.S. Regulation of Foreign Tender Offers*, 87 Nw. U. L. Rev. 523 (1993)

*As Time Goes By: New Questions About Statute of Limitations for Rule 10b-5*, 61 Ford. L. Rev. 801 (1993) (colloquium issue)

*Start Making Sense: An Analysis and Proposal For Insider Trading Regulation*, 26 Ga. L. Rev. 179 (1991)
        *reprinted in* 25 Sec. L. Rev. 353 (1993)

## II. Books

Coauthor - An Introduction to Jurisdiction
        (The Michie Co. Summer 1986)

Coauthor - Pamphlet on Securities Law (1990)
        ABA Young Lawyers Division, Committee on Securities Law

## III. Other Publications

Brief to the United States Supreme Court as *Amicus Curiae* on behalf of Trial Lawyers for Public Justice in *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, No. 93-714 (filed June 15, 1994)

Brief to the United States Supreme Court as *Amicus Curiae* on behalf of Trial Lawyers for Public Justice in *Izumi v. U. S. Philips Corp.*, No. 92-1123 (filed Apr. 23, 1993)

Comment Letters on behalf of the Ad Hoc Committee on Shareholder Derivative Legislation of the Association of the Bar of the City of New York re A. 8858-A (Dec. 1993 & May 1994)

Letter, *The Muddle of Insider Trading Regulation*, N.Y. Times (Forum) Oct. 24, 1991

## PAPER PRESENTATIONS, PANELS, AND SPEECHES

### I. Recent Paper Presentations

*The "Bad Man" Goes to Washington: The Effect of Political Influence on Corporate Duty,*
        Fordham Law School (Feb. 10, 2006)
        Rutgers-Camden Law School (Feb. 27, 2006)
        Florida State Law School (March 2, 2006)

*The Analyst as Fiduciary: A Misguided Quest for Analyst Independence?*
        Fordham Law School Murphy Conference (Nov. 4, 2005)

*Do Institutions Matter? The Impact of the Lead Plaintiff Provision of the Private Securities Litigation Reform Act*
        Loyola (Chicago) Law School (Sept. 13, 2005)
        Institute for Law & Economic Policy (April 8, 2005)

*Regulatory Reponses to Investor Irrationality: The Case of the Research Analyst*
    Lewis & Clark Law School (Sept. 30, 2005)

*Measuring Efficiency in Corporate Law: The Role of Shareholder Primacy*
    Iowa Law School (Sept. 9, 2005)
    Boalt Hall School of Law (March 28, 2005)
    UCLA Sloan Conference (Jan. 29, 2005)
    Queens University, Ontario (Oct. 4, 2004)
    University of Wisconsin Law School (Sept. 10, 2004)

*How to Fix Wall Street: A Voucher Financing Proposal*
    American Law & Economics Association (Sept. 21, 2003)
    Vanderbilt Law School (March 31, 2003)
    AALS Section on Securities Regulation (Jan. 4, 2003)
    UCLA/USC Corporate Law Roundtable (Nov. 8, 2002)

*Corporations and the Lawmaking Process: The Case of Federal Express*
    University of Pennsylvania Law School (Sept. 20, 2004)
    Law & Society Annual Meeting (May 29, 2004)
    University of Virginia Law School (Jan. 12, 2004)
    Eugene P. and Delia S. Murphy Conference on Corporate Law (Fordham, Nov. 21, 2003)
    University of North Carolina, Faculty Workshop (Jan. 24, 2003)
    Sloan Conference on Case Study Methodology (Georgetown, Nov. 1-2, 2002)
    Georgetown University Law Center, Sloan Workshop (Jan. 11, 2002)
    The Federalist Society Fourth Annual Faculty Division Conference (Jan. 3, 2002)

## II. Selected Speeches, Symposia & Panels

*The Role and Responsibility of Corporate Counsel: What are Their Gatekeeping Obligations?*, New York City Bar (Feb. 28, 2006)

*Meador Lecture*, University of Alabama Law School (Oct. 20, 2005)

*Ruby R. Vale Distinguished Scholar Address*, Widener Law School Moot Court Honor Society (March 18, 2005)

*Keynote Address:* Australian Corporate Law Teachers Association Annual Meeting (Univ. of Sydney, Feb. 7, 2005)

*Corporate Governance: Directors vs. Shareholders?*, George A. Leet Business Law Symposium (Case School of Law, Oct. 1, 2004)

*Security Holder Director Nominations Roundtable*, The Securities and Exchange Commission (Washington, DC, March 10, 2004) (prepared remarks available at http://www.sec.gov/spotlight/dir-nominations/fisch031204.pdf)

*The Regulation of Corporate Responsibility and the Private Character of Corporate Law*, The Federalist Society National Student Symposium (Vanderbilt Law School, Feb. 21, 2004)

*Cutting Edge Procedural Issues Affecting Class Actions*, New York State Bar Association Annual Meeting, Commercial and Federal Litigation Section (New York, Jan. 28, 2004)

*Task Force on the Future of the Contingent Fee* – Tort Trial and Insurance Practice Section of the American Bar Association (Columbia Law School, Dec. 16, 2003)

*Corporate and Securities Litigation – Conference on Law and Business*, Paper Commentator (Vanderbilt Law School, March 28, 2003)

*Lawyer Conduct after Sarbanes-Oxley* - New York County Lawyers Association Inns of Court (Feb. 27, 2003)

*Ethical Issues in the Practice of Securities Laws* – The Bond Market Association (New York, Feb. 3, 2003)

International Symposium on Risk Management and Derivatives – Fordham Institute on Law and Financial Services (Oct. 8, 2002)

*The Private Securities Law Reform Act: Is it Working?* - Philip D. Reed Professorship in Civil Justice and Dispute Resolution Program (Fordham Law School, Feb. 5, 2002)

*Roundtable on ADR's, Proxy Voting and Foreign Issuers: Differences Between National Corporate Systems and U.S. Securities Market Practices*, The Conference Board Global Corporate Governance Research Center (New York, Oct. 30, 2001)

*Class Action Conference*, Advisory Committee on the Federal Rules of Civil Procedure (Univ. of Chicago Law School, Oct. 22-23, 2001)

*Testimony on Lead Counsel Auctions and Class Action Reform*, Third Circuit Task Force on Selection of Class Counsel (Philadelphia, PA March 16, 2001) (prepared statement available at http://www.ca3.uscourts.gov/classcounsel/Witness%20Statements/fisch.pdf)

*Regulation FD: Early Experience* - Albert A. DeStefano Lecture on Corporate, Securities & Financial Law, Program Organizer & Moderator (Fordham Law School, Feb. 12, 2001), *reprinted in* 6 Fordham J. Corp. & Fin. L. 273 (2001)

Daniel J. Dykstra Corporate Law Symposium, Commentator (UC Davis Law School, Feb. 9, 2001)

*ALI-ABA Corporate Governance Institute*, Panel on Corporate and Securities Litigation Today (Nov. 9-10, 2000)

*ALI-ABA Course of Study: Partnerships, LLCs and LLPs*, Lecturer on Substantive Partnership Law (annually, 1999-2004)

*Institutional Investors, Corporate Governance and the New Proxy Rules,* Program Organizer & Moderator (Association of the Bar of the City of New York, March 23, 1999)

*ALI Program on Corporate Governance: Current and Emerging Issues*, Panel on Corporate and Securities Litigation Today (Nov. 12-13, 1998)

*Corporate Social Responsibility: Paradigm or Paradox - A Public Policy Forum on Corporate*

11

*Responsibility*, Panel on Human Capital Investment and Societal Interests (Cornell Law School/Cornell Club, Nov. 6, 1998), transcript published in 84 Cornell L. Rev. 1282, 1323 (1999)

*Takeover Wars, Past and Future: What Difference Does the Law Make?*
Moderator (Association of the Bar of the City of New York, Oct. 10, 1996)

*An Introduction to Federal Securities Law*, American People Ambassador Program presentation to Delegation of Russian Business Executives (Fordham Law School, Dec. 15, 1995)

*Supreme Court Preview 1995-96*, (Bill of Rights Institute, Marshall-Wythe School of Law, College of William & Mary, Sept. 22-23, 1995) (Panels on business and commerce, criminal law and property rights)

*H.R. 10: Common Sense Legal Reform or Unequal Access to Justice* (Roundtable Discussion at the Association of the Bar of the City of New York, Feb. 7, 1995)

*Who is the Government Lawyer's Client?* Moderator, Fordham Stein Scholar Public Interest Program (Fordham Law School, Nov. 3, 1993)

## PROFESSIONAL ACTIVITIES

### Bar Association Activities

Association of the Bar of the City of New York
    Chair, Committee on Corporation Law (1996-1999)
    Member, Task Force on the Role of Lawyers in Corporate Governance (current)
American Bar Association

### Professional Service

Member, American Law Institute
    Members Consultative Group, Restatement of Agency Law
    Members Consultative Group, Law of Non-profit Organizations
    Members Consultative Group, Aggregate Litigation Project
Member, American Law & Economics Association
Board of Academic Advisors, Institute for Law & Economic Policy
Association of American Law Schools
    Chair, Section on Business Associations – Academic Year 2004-2005
Faculty, Civil Trial Advocacy Workshop, New York City Law Department (since 1990)

### Bar Admissions

| **State Courts:** | **Federal Courts:** |
| --- | --- |
| New York | United States Supreme Court |
| Connecticut | United States Court of Appeals |
| |     for the Fifth Circuit |
| | United States District Court |
| |     Southern District of New York |
| |     Eastern District of New York |

Exhibit B

RECENT EXPERT TESTIMONY, AFFIDAVITS AND REPORTS

Marshburn v. M.J. Whitman, et al. NASD Arb. No. 04-03086 (2005-2006) (fiduciary obligations and customary practices of officers and directors under NY and Delaware law)

United States of America Ex Rel. R.C. Taylor III, v. Gabelli, 03 Civ. 8762 (SAS) (S.D.N.Y. 2005) (description of business law methodologies for ascertaining control of a business entity)

In re Safety-Kleen Bondholders Litigation, Consol. Case No. 3-00-1145 17 (D. S. Car.) (2003) (evaluation of audit committee practices and procedures)

In re Charter Behavioral Health Systems LLC, et al., Chapter 11, Case Nos. 00-989 (MFW) through 00-089 (MFW) and Case Nos. 00-1555 (MFW) and 00-2231 (MFW) through 00-237 (MFW) (Jointly Administered Under Case No. 00-989 (MFW)) (Bankr. D. Del. 2001) (fee award methodology)

       I have been consulted as a potential expert witness in one or more other pending cases, and may testify in those cases before I testify in this case.

13

Exhibit C

APPENDIX OF DOCUMENTS REVIEWED

| Date | Bates Range | Description |
|---|---|---|
| 07/14/2006 | | Expert report of Charles A. Sjoquist |
| 07/14/2006 | | Expert report of Christiana Ochoa |
| | | Adams Golf Second Consolidated and Amended Class Action Complaint |
| 07/09/1998 | (Ex. 72) | Adams Golf, Inc. prospectus |
| 04/21/1998 | ADAMS 007321-007322 | Letter from SEC to James Farrell Re: Adams Golf Anticipated Initial Registration Statement on Form S-1 |
| 06/05/1998 | ADAMS 007326-007333 | Comment Letter from the SEC to Adams Golf |
| 06/08/1998 | ADAMS 007334-00335 | Letter from Hoffman at Arter & Hadden to SEC responding to letter of comment dated June 5, 1998 |
| 06/08/1998 | ADAMS 007336-007337 | Letter from KPMG to Arter & Hadden |
| 06/09/1998 | ADAMS 001494 (Ex. 77) | Press Release "Adams Takes Legal Action Against Costco" |
| 06/10/1998 | ADAMS 007338-007366 | Letter from Arter & Hadden to SEC Re: Adams Golf Amendment No. 1 to Registration Statement on Form S-1 |
| 06/25/1998 | UND 02708 (Ex. 164 & 204) | Memo from Joe Hoffman to File Re: Adams Golf SEC Comments |
| 07/02/1998 | AH000005-000008 (Ex. 90) | Memo from Washburn at Arter & Hadden circulating an attached draft Response Letter to the SEC's oral comment given June 25, 1998 |
| 07/06/1998 | UND 2701-2703 (Ex.165) | Cover letter transmitted via Edgar to the SEC with Amendment No.2 to the Registration Statement on Form S-1 |
| 07/06/1998 | ADAMS 007372 | Letter from Lehman Brothers to SEC Re: Requesting acceleration of Adams Golf registration Statement |
| 07/06/1998 | ADAMS 007371 | Letter from Farrell of Adams Golf to the SEC requesting acceleration of its registration Statement |
| 07/08/1998 | ADAMS 007373 | Memo from D. Washburn of Arter & Hadden to the File Re: telephone call from Carolyn Kurr of the SEC |
| 07/10/1998 | | Letter to the SEC from Arter & Hadden transmitting the Rule 424(b)(4) prospectus |
| 07/10/1998 | | Letter to the SEC from Arter & Hadden transmitting the Rule 462(b) filing |

14

**Exhibit A**

I hereby acknowledge that I will be receiving Confidential Information pursuant to the terms of a Protective Order entered in the action entitled *In re Adams Golf, Inc. Securities Litigation.* I have been given a copy of, and have read and understand the Protective Order and I agree to be bound by the terms and conditions of that Order. I understand that: (i) I am to make no copies of any such Confidential Information except as is necessary for use in the above-referenced action; and (ii) such Confidential Information and any copies thereof are Confidential Information to remain in my personal custody until I have completed my assigned duties, whereupon they are to be returned to counsel who provided me with such Confidential Information. I agree not to disseminate any information derived from such Confidential Information to anyone, or make disclosure of any such information, except for the purposes of the above-referenced proceedings or as permitted by the Protective Order or by further Order of the Court.

Signature _____    Date _7/26/06_____

Print Name _Jill Finn_____

RLF1-2819089-1

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2006, I have caused the **REBUTTAL EXPERT REPORT OF**

**JILL FISCH** to be electronically filed with the Clerk of Court using CM/ECF, which will send notification

of such filing to the following:

Alyssa M. Schwartz, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19801

Robert K. Payson, Esquire
John E. James, Esquire
Potter, Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE 19801

and a copy has been served by electronic mail upon the following:

Theodore J. McEvoy, Esquire
Michael J. Chepiga, Esquire
Elaine Divelbliss, Esquire
Ryan A. Kane, Esquire
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
Email: tmcevoy@stblaw.com
Email: mchepiga@stblaw.com
Email: edivelbliss@stblaw.com
Email: rkane@stblaw.com

Paul R. Bessette, Esquire
Akin, Gump, Strauss, Hauer & Feld LLP
Three Embarcadero Center, Suite 2800
San Francisco, CA 94111-4066
Email: pbessette@akingump.com

Jennifer R. Brannen, Esquire
Akin, Gump, Strauss, Hauer & Feld, LLP
300 West 6th Street, Suite 2100
Austin, TX 78701-2916
Email: jbrannen@akingump.com

s/ Carmella P. Keener
Carmella P. Keener (DSBA No. 2810)
ROSENTHAL, MONHAIT & GODDESS, P.A.
919 N. Market Street, Suite 1401
Wilmington, DE 19801
(302) 656-4433
ckeener@rmgglaw.com