## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

IN RE: ADAMS GOLF, INC.,  §
SECURITIES LITIGATION  §

§
§
§
§

CIVIL ACTION NO. 99-371-KAJ
(CONSOLIDATED)

### AFFIDAVIT OF RICHARD H. MURTLAND

STATE OF TEXAS  §

§

COUNTY OF _Collin_  §

1.      My name is Richard H. Murtland.  I am over the age of twenty-one and am competent to make this affidavit.  All facts in this affidavit are stated based on my personal knowledge.

2.      I became Vice President of Operations in 1994 and a director of Adams Golf in November 1995.  At the time of the IPO, I became Vice President of Research and Development and continued to supervise operations.  I held this position and remained a director until I left the Company in December 2000.

3.      As Vice President of Operations, my primary responsibility was overseeing manufacturing, inventory control, procurement, shipping, and research and development.

4.      As part of my responsibilities, I frequently investigated issues with counterfeit clubs—the "black market."  At some point, I went to a Costco and confirmed that the clubs in that Costco were real Tight Lies, not counterfeit clubs.  In the Costco I visited, there were very few clubs—no more than 30 total.

5.      As part of our efforts to identify Costco's source or sources of clubs, if there was a particular customer that was suspected of diverting product, I would mark the clubs before shipping, for example, by putting paint at the top of the shaft, to see if we could later locate the product at Costco.

6.      I did not view the gray market as a significant issue because the number of clubs involved was so minor compared to the Company's sales.  It was aggravating because we could not figure out Costco's source or sources for the clubs, and it upset me that a retailer or retailers were violating their distribution agreement with the Company.  But it was a small-scale issue that we thought we could manage.  There was no objective evidence that would lead us reasonably to believe that it would become a major issue.

7.      I was aware before the IPO of the legal action against Costco that the Company filed on June 9, 1998.

8.      As part of my operations responsibilities, I had subordinates who kept me apprised of any issues that were out of the ordinary with returned clubs, or if we received a return of more than 20 clubs.  Most returns resulted from damaged product or shipment of the

wrong product, not retailer refusal of the order. Infrequently, a retailer would return an order, claiming that they had not ordered it. Those situations typically involved some sort of administrative error, such as shipment of some other retailer's order to the complaining retailer. If my department couldn't figure out the administrative reason that an order came back, they would bring it to my attention, and I would go to the head of sales to investigate further. Before the IPO, the only time that I remember going to Mark Gonsalves about a retailer return is the situation referred to in the memo that Mark Gonsalves wrote on March 27, 1998 (Ex. 255), explaining why King Par refused to accept an order for which there were valid purchase orders. Although I do not recall the specific conversation with Mark Gonsalves that led to that memo, it would have been my practice to ask him about the reason for the refused order when my subordinates let me know about it. I never saw any evidence of significant returns as a result of orders being refused by retailers because they claimed not to have placed an order at all.

9.    I reviewed drafts of the Adams Golf Prospectus, including the Risk Factors section of the Prospectus, before I signed the Registration Statement.

10.    As a director, I regularly attended board meetings and reviewed the Company's financial statements. The members of Adams Golf's Board of Directors met and discussed the Prospectus and had the opportunity to ask and did ask management any questions we had about the contents of the Prospectus before the IPO. I participated in these meetings. I relied on other members of management to keep me abreast of key issues in their areas of responsibility. I relied on KPMG for their expertise in preparing financial statements. I also appreciated the fact that the team of professionals that was involved with the IPO due-diligence process—the underwriters, their counsel, and the Company's counsel—were experienced and conducted a very thorough examination of all aspects of the Company's business

11.    As part of the IPO due-diligence process, myself and other members of management discussed all the issues related to Adams Golf's business with the underwriters, their counsel, and the Company's counsel before the IPO. Gray marketing was one of many business issues the Company was dealing with. No one believed that gray marketing was a material risk or should be included as a specific risk factor in the Prospectus.

12.    I did not believe at the time of the IPO that gray marketing should be included in the Prospectus as a specific risk factor. I believed at the time of the IPO that the Registration Statement and Prospectus was true and complete.

Further, affiant sayeth not.

_____
Richard H. Murtland

____SUBSCRIBED and SWORN TO BEFORE ME, the undersigned notary public, on this the 31st day of August, 2006.

ANN F. NEFF
MY COMMISSION EXPIRES
March 11, 2009

_____
Notary Public in and for the State of Texas
My Commission expires: March 11, 2006

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2006, I have caused the foregoing to be served by

Hand Delivery and Electronic Mail which has also been filed with the Clerk of Court using

CM/ECF which will send notification of such filing(s) to the following:

Carmella P. Keener
Rosenthal, Monhait & Goddess
919 Market Street, Suite 1401
Wilmington, DE 19801

Robert K. Payson
John E. James
Potter Anderson & Corroon LLP
1313 North Market Street, Hercules Plaza
Wilmington, DE 19801

I hereby certify that on September 11, 2006, I have sent by Federal Express and

Electronic Mail the foregoing document(s) to the following non-registered participants:

Neil Mara
Todd S. Collins
Berger & Montague, PC
1622 Locust Street
Philadelphia, PA 19103

Michael J. Chepiga
Theodore J. McEvoy
Simpson Thacher & Bartlett
425 Lexington Avenue
New York, NY 10017

Alyssa M. Schwartz (#4351)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
schwartz@rlf.com