IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: ADAMS GOLF, INC., <br> SECURITIES LITIGATION | § <br> § <br> § <br> § | CIVIL ACTION NO. 99-371-KAJ <br> (CONSOLIDATED) |

### DEFENDANTS' OPENING MEMORANDUM IN SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT TESTIMONY OF CHRISTIANA OCHOA

Of Counsel:
Paul R. Bessette
Jennifer R. Brannen
Michelle A. Reed
Laura Moriaty
Akin Gump Strauss Hauer & Feld LLP
300 West 6th Street, Suite 2100
Austin, Texas 78701

Jeffrey L. Moyer (#3309)
moyer@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

On Behalf of All Defendants

Dated: September 11, 2006

RLF1-3056541-1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

I. INTRODUCTION ........................................................................................................ 1

II. OCHOA IS NOT QUALIFIED TO BE AN EXPERT ON GRAY MARKETING,
AS SHE HAS NO MORE KNOWLEDGE THAN THE AVERAGE LAYMAN ........ 2

    A. Ochoa's perusal of eight articles does not qualify her to testify as an expert
on the pre-IPO effects of gray marketing on Adams Golf .................................. 3

    B. Ochoa admittedly is not qualified to testify as an expert on Adams Golf's
disclosure requirements ....................................................................................... 7

III. CONCLUSION .............................................................................................................. 8

# TABLE OF AUTHORITIES

*Aloe Coal Co. v. Clark Equip. Co.*,
    816 F.2d 110 (3d Cir. 1987) ................................................................................... 2, 5, 7

*Amco Ukrservice & Prompriladamco v. American Meter Co.*,
    No. 00-2638, 2005 WL 1541029 (E.D. Pa. June 29, 2005) ............................................. 5

*Burton v. Danek Medical, Inc.*,
    No. 95-5565, 1999 WL 118020 (E.D. Pa. Mar. 1, 1999) ............................................ 5, 7

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ........................................................................................................ 2, 8

*Holbrook v. Lykes Bros. S.S. Co., Inc.*,
    80 F.3d 777 (3d Cir. 1996) ................................................................................................. 7

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ........................................................................................................ 1, 8

*In re Paoli Railroad Yard PCB Litig.*,
    No. 86-2229, 1992 WL 323512 (E.D. Pa. 1992) ............................................................. 5

*Surace v. Caterpillar, Inc.*,
    111 F.3d 1039 (3d Cir. 1997) ..................................................................................... 2, 5, 7

*Waldorf v. Shuta*,
    142 F.3d 601 (3d Cir. 1998) ........................................................................................... 2, 5

*Wilkinson v. Rosenthal & Co.*,
    712 F. Supp. 474 (E.D. Pa. 1989) ......................................................................... 4, 5, 6, 7

## STATUTES

Fed. R. Evid. 104 ........................................................................................................................ 2

Fed. R. Evid. 702 ..................................................................................................................... 1, 2

Defendants Adams Golf, Inc., B.H. Adams, Richard H. Murtland, Darl P. Hatfield, Paul F. Brown, Jr., Roland E. Casati, Finis F. Conner, Stephen R. Patchin, Lehman Brothers, Inc., Banc of America Securities LLC (successor to Nationsbank Montgomery Securities LLC), and Ferris Baker Watts, Inc. move to exclude the expert testimony of Christiana Ochoa under Federal Rule of Evidence 702.

## I. INTRODUCTION

Plaintiff's expert, Christiana Ochoa, is an eight-year lawyer who is purporting to be a gray-marketing expert based on teaching one law-school class for the last three years in which she discusses gray-marketing issues for only three or four days a year. Ochoa claims to be an expert in the "[c]haracteristics of the gray market" and believes she is qualified to opine on "how [those characteristics] applied to Adams Golf." (Ochoa Dep. Tr. 13:3-4.)[1] But the evidence reveals that she has *no education, training, relevant skills or experience* in gray markets or their effects on a company. And even more astonishing, she has no education, training or experience in *any kind* of marketing.

Ochoa graduated from law school in June 1998 and began to teach law students three years ago. She admits that her "expertise" is derived solely from teaching a law-school class, once a year for three years, that touches on gray marketing and from reading articles to prepare for those classes. (Ochoa Dep. Tr. 20:2-3, 60:9-18.) The *Daubert* gatekeeping requirement is directly implicated here—to "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Ochoa simply cannot meet this standard.

---

[1] All exhibits and deposition transcripts are attached to the Declaration of Jennifer R. Brannen submitted with the Adams Golf Defendants' Motion for Summary Judgment

Ochoa concedes that she has no specialized knowledge about the Securities & Exchange Commission's disclosure requirements (Ochoa Dep. Tr. 326:5-327:16), yet she repeatedly opines that Adams Golf failed to meet its duty to disclose gray-marketing risks in the Prospectus. These opinions, and indeed, all of Ochoa's unfounded lay opinions masquerading as "expert" opinions, should be excluded.

## II. OCHOA IS NOT QUALIFIED TO BE AN EXPERT ON GRAY MARKETING, AS SHE HAS NO MORE KNOWLEDGE THAN THE AVERAGE LAYMAN

To admit expert testimony, district courts must be assured that (1) the testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue" and (2) the proposed expert is "qualified . . . by knowledge, skill, experience, training, or education." FED. R. EVID. 702. Qualifications of the expert must be related to the subject matter upon which the expert plans to testify. *See Surace v. Caterpillar, Inc.*, 111 F.3d 1039, 1056 (3d Cir. 1997) (holding that a witness who does not possess sufficient knowledge of the subject matter is not qualified to offer an expert opinion).

Although the Third Circuit interprets Rule 702 liberally, the Court cautions that it has "not pursued a policy of qualifying *any* proffered witness as an expert." *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998) (recognizing that "[n]umerous district court opinions within this circuit provide examples of witnesses disallowed from providing expert testimony"). Indeed, the Third Circuit requires that "*at a minimum*, a proffered expert witness . . . must possess skill or knowledge *greater* than the average layman . . ." *Aloe Coal Co. v. Clark Equip. Co.*, 816 F.2d 110, 114 (3d Cir. 1987) (emphasis added). The party who proffers an expert's testimony bears the burden of establishing each requirement by a preponderance of proof. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593 n.10 (1993); FED. R. EVID. 104.

2

Plaintiffs offer Ochoa to testify as an expert on the following:

(1) "the characteristics of gray marketing and the effects it can have on brand name products and the trademark owners or manufacturers thereof;"

(2) "whether at the time of and subsequent to its initial public offering, gray market distribution was an important risk faced by investors in [Adams Golf] and whether the gray market distribution and sale of Adams golf clubs was of such a nature as to be a material consideration to persons considering investing in the Company's securities;" and

(3) "the nature, quality and effectiveness of the Company's actions in addressing gray market distribution of its clubs."

(Ex. 303 at ¶ 1.A.-B.; Ex. 304 at ¶ 1.A.-C.) Ochoa is simply unqualified to offer expert opinions on these issues.

### A. Ochoa's perusal of eight articles does not qualify her to testify as an expert on the pre-IPO effects of gray marketing on Adams Golf

Ochoa does not purport to have any relevant education, skill, practical experience, or training in analyzing the effects of gray marketing on a company. In fact, Ochoa graduated from the University of Michigan with majors in History and American Culture and received her J.D. from Harvard Law School in June 1998. She passed the bar two years later. (Ex. 303 at 26; Ochoa Dep. Tr. 33:17-34:1.) She has never given a presentation or published an article or book on gray marketing or any other kind of marketing. (Ochoa Dep. Tr. 28:11-29:7.) In fact, Ochoa admits that she is "not an expert in marketing generally," does not know the "four Ps" of marketing (i.e., product, promotion, price, and placement), and is not qualified to testify about "how much [gray marketing] relates and in what manners it relates to marketing generally."[2] (Ochoa Dep. Tr. 28:2-10, 29:4-7, 37:10-13; 38:20-23.)

---

[2] This is ironic, given that Ochoa opines throughout her Report about the impact of gray marketing on Adams Golf's: (1) perception in the marketplace (product, promotion), (2) pricing policies and profit (price), and (3) relationships with its distributors (placement)—all of which relate directly to what is commonly understood in science and application as the four basic principles of marketing. (Ex. 303 ¶ 18.)

3

Ochoa admits that she feels qualified to be an expert based entirely on the articles she has read to prepare to teach an international business transactions law-school class once a year for three years.[3] (Ochoa Dep. Tr. 20:1-3; 53:7-10, 60:9-18.)[4] Indeed, Ochoa has confirmed that, prior to teaching, the contact she "had most with gray marketing . . . [was] as a consumer." (Ochoa Dep. Tr. 30:12-14.) Ochoa's syllabus for the class shows only one lesson dedicated to gray marketing. See www.law.indiana.edu/instruction/cochoa/3376/syllabus.shtml (Ex. 400). She says she discusses gray marketing in three to four class sessions each time she teaches the course. (Ochoa Dep. Tr. 53:14-19.) And while Ochoa opines that "[a] significant amount of the literature on gray marketing discusses it in an international context," she has no clue how many articles exist about gray marketing, let alone what they say. (Ex. 303 ¶ 24; Ochoa Dep. Tr. 47:8-14.) This is not at all surprising given that Ochoa has spent less than 200 hours[5] over three years reading about gray marketing, and half of that was spent working on this case![6]

Ochoa admits that she read only eight articles to prepare her Report. (Ochoa Dep. Tr. 26:3-17.) Moreover, Ochoa acknowledges that one of the primary articles she cites studies gray marketing's effects on companies operating in New Zealand and that she does not know if any of the studied companies were in the golf industry. (Ochoa Dep. Tr. 170:6-22.) Most remarkable,

---

[3] According to her logic, Ochoa could be an expert on every issue she teaches in her law-school classes (Ochoa Dep. Tr 40:13-41:18.) A similar assertion was squarely rejected by a district court in this Circuit. See *Wilkinson v Rosenthal & Co*, 712 F Supp 474, 475-78 (E D Pa 1989).

[4] Ochoa Dep. Tr. 60:9-18 (Q "So, Professor, just I want to be clear. Your expertise in gray marketing as it relates to this case in which you are proffering yourself as an expert in, is based on your being a lawyer and teaching classes that contain gray marketing subject areas and your reading the materials to prepare for the class that you teach That's the basis for your expertise?" A. "The materials that I teach, as well as the outside materials, yes.")

[5] Ochoa Dep. Tr. 54:20-55:2 ("In the first year that I taught the class, I can remember that it was not unusual to spend something more like 10 hours per class session preparing for class The second year that I taught it was somewhat less than that And the last time I taught it, it was between three and five hours") Ochoa Dep Tr 308:10-19 (Q "From the time that you first began working on this matter until we started the deposition this morning, do you have an estimate of how many hours you've spent on this matter?" A "Yeah From what was the beginning time, I'm sorry?" Q: "Whenever you started." A "Whenever I started the matter until now? Approximately, I believe it is something like 100 hours").

[6] Nor is it surprising, given her limited knowledge and complete lack of experience, that Ochoa's Report omits altogether the long-term benefits acknowledged by true gray-marketing experts and commentators as an important facet of gray marketing. (Ex. 331 ¶ 16.)

4

however, is that Ochoa is offered as an expert specifically to opine that Adams Golf should have recognized the significant risk that gray marketing posed before the IPO (Ex. 303 ¶ 1.B.), when her own analysis is based primarily on unrelated literature that postdates the IPO. (Ex. 303 ¶ 9 (five of eight articles were published after Adams Golf's 7/9/98 IPO).)

The Third Circuit requires experts to have "sufficient knowledge" of the area on which they plan to testify. *Surace*, 111 F.3d at 1056. Courts in this Circuit have not hesitated to exclude testimony of proffered experts when their "expertise" is limited, minimal, basic or unrelated to the relevant subject. *See, e.g.*, *Aloe Coal*, 816 F.2d at 114-15; *Amco Ukrservice & Prompriladamco v. American Meter Co.*, No. 00-2638, 2005 WL 1541029, at *4-5 (E.D. Pa. June 29, 2005); *see also Waldorf*, 142 F.3d at 625-26 (citing "[n]umerous district court opinions within this circuit [that] provide examples of witnesses disallowed from providing expert testimony"). And courts in this Circuit have repeatedly excluded testimony of purported experts with far more relevant expertise in the given subject matter than Ochoa. *See, e.g.*, *Surace*, 111 F.3d at 1056 (excluding testimony of electromechanical engineer regarding ability of workers to tune out paving machine's warning device); *Burton v. Danek Medical, Inc.*, No. 95-5565, 1999 WL 118020, at *3-4 (E.D. Pa. Mar. 1, 1999) (excluding testimony of neurologist on spinal surgery); *In re Paoli Railroad Yard PCB Litig*, No. 86-2229, 1992 WL 323512, at *12 (E.D. Pa. 1992) (excluding testimony of pharmacologist regarding the mental health of plaintiffs).

One district court in this Circuit has excluded a proffered expert on grounds strikingly similar to this case. In *Wilkinson*, the court held that Dr. Jeffrey Jaffe, a tenured Associate Professor of Finance at the Wharton School, with a bachelor's degree in economics, a Masters in Business Administration, and a PhD in Finance from the University of Chicago, was ***not*** qualified to testify as an expert on excessive churning in commodities futures. 712 F. Supp. at

5

475-78. Like Ochoa, Dr. Jaffe taught only one course that included principles on the subject he intended to testify, he took no courses on the subject, and none of his published work involved the subject. *Id.* at 475-76. Despite his academic credentials and 15+ years of teaching experience, the court held that Dr. Jaffe's basic knowledge of the subject did not qualify him as an expert on the precise issue for jury determination. *Id.* at 477-78. Ochoa should fare no better.

Ochoa's attenuated knowledge of gray marketing gleaned from teaching one law-school class does not qualify her to evaluate the significance of the risk to investors caused by pre-IPO gray marketing of Adams Golf's clubs. Ochoa candidly admits that she has no more than a lay knowledge of the golf industry, the life cycles of golf products, or the customer-segmenting practices in the golf industry. (Ochoa Dep. Tr. 78:9-79:3, 109:7-12, 306:5-8.) Nevertheless, she tried to superimpose the limited academic literature that she read onto the real issues affecting Adams Golf to presuppose that pre-IPO gray marketing was material to investors. (Ochoa Dep. Tr. 72:22-73:5, 120:22-121:6.) For example, Ochoa asserts that one of the articles she read discusses low sales force morale as a potential result of gray marketing, and since she saw one memo reflecting low morale (Ex. 303 ¶ 27 (citing Ex. 57, Barney Adams memo to Mark Gonsalves and Ric Jarrett stating "that the 'staff [had] very low morale,' including having 'no faith in their management'"), she concludes that gray marketing at Adams Golf was material. Of course, she only speculates about this cause-and-effect relationship. (Ochoa Dep. Tr. 217:22-219:18 (admitting that she has no knowledge whether the low morale to which Adams referred had anything to do with gray marketing).)[7]

---

[7] Ochoa Dep Tr. 219:2-219:18 (A: There is a certain amount of speculation, because I'll tell you the process that I went through in seeing them. When I saw some of the negative effects that gray market activity can have on a company, one of them, which I wasn't sure I would find, was low sales force morale. However, in then reviewing the documents that I received, I saw that, in fact, that was another problem that Adams Golf was facing at the time. I thought that was interesting. Q: Okay. A: And worth noting, since that is often caused by the gray market. Q: Right. Okay. But it's speculation on your part whether there is any cause and effect relationship? A: Yes.")

6

The Third Circuit does not require that an expert "be the best qualified" or "have the specialization the court considers most appropriate," but courts in this Circuit do not allow a witness to qualify as an expert if she has no specialization in the relevant subject matter. *Holbrook v. Lykes Bros. S.S. Co., Inc.*, 80 F.3d 777, 782 (3d Cir. 1996); *see also Aloe Coal*, 816 F.2d at 114-15; *Surace*, 111 F.3d at 1056; *Burton*, 1999 WL 118020, at *3-4; *Wilkinson*, 712 F. Supp. at 477-78. Ochoa simply does not have sufficient knowledge of gray marketing, marketing generally, or the golf industry, to offer an expert opinion in this case.

### B. Ochoa admittedly is not qualified to testify as an expert on Adams Golf's disclosure requirements.

Ochoa spends a considerable portion of her Rebuttal opining on Adams Golf's duty to disclose various issues in its Prospectus. She offers conclusions, for example, about: Adams Golf's duty to disclose the pre-IPO gray marketing of its clubs; the significance of Adams Golf's failure to disclose "the extent to which Adams retailer profit margins exceeded competitors"; and the efficacy and costliness of Adams Golf's efforts to curb gray marketing of its clubs. (Ex. 304 ¶¶ 12, 27-29, 32, 38-41.) But Ochoa admits that she does not have the requisite knowledge, skill, experience, training, or education to testify on these issues, and she admits that she has no recent experience counseling companies on the SEC's disclosure requirements. (Ochoa Dep. Tr. 145:12-146:13; 149:22-150:6; 202:18-204:14; 326:5-327:16.) In fact, the *only* time Ochoa reviewed a company's documents and "[tried] to make some effort of determining what was and was not relevant and material to investors" was while she was a summer intern at Clifford Chance after her second year of law school in 1997. (Ochoa Dep. Tr. 145:12-146:13; Ex. 303 at

---

The Court also should consider the jury confusion that could result from admitting Ochoa's testimony—as her Report repeatedly concludes that gray marketing caused problems such as this at Adams Golf, while, in her testimony, she acknowledges the distinction between correlation and causation and *admits that she has no basis to testify about causative issues*. (Ochoa Dep Tr 205:4-206:8; 207:17-207:21.) *See Wilkinson*, 712 F Supp. at 479 ("An opinion based on false assumptions is unhelpful in aiding the jury in its search for the truth, and is likely to mislead and confuse.")

7

RLF1-3056541-1

26.) And her only experience with an IPO was at the same time. (Ochoa Dep. Tr 143:7-145:7) Ochoa's lack of expertise on these issues is undeniable, and her speculation masquerading as expert opinion should be stricken.

## III. CONCLUSION

Ochoa lacks the qualifications to opine on the effects of pre-IPO gray marketing on Adams Golf or the adequacy of Adams Golf's disclosures in its Prospectus. Since nothing in *Daubert* or the Federal Rules of Evidence requires a trial judge to admit opinion evidence based solely on the *ipse dixit* of the expert, this Court should exclude Ochoa's opinions. *Kumho*, 526 U.S. at 157.

Of Counsel:
Paul R. Bessette
Jennifer R. Brannen
Michelle A. Reed
Laura Moriaty
Akin Gump Strauss Hauer & Feld LLP
300 West 6th Street, Suite 2100
Austin, Texas 78701

Jeffrey L. Moyer (#3309)
moyer@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

On Behalf of All Defendants

Dated: September 11, 2006

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2006, I have caused the foregoing to be served by Hand Delivery and Electronic Mail which has also been filed with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Carmella P. Keener
Rosenthal, Monhait & Goddess
919 Market Street, Suite 1401
Wilmington, DE 19801

Robert K. Payson
John E. James
Potter Anderson & Corroon LLP
1313 North Market Street, Hercules Plaza
Wilmington, DE 19801

I hereby certify that on September 11, 2006, I have sent by Federal Express and Electronic Mail the foregoing document(s) to the following non-registered participants:

Neil Mara
Todd S. Collins
Berger & Montague, PC
1622 Locust Street
Philadelphia, PA 19103

Michael J. Chepiga
Theodore J. McEvoy
Simpson Thacher & Bartlett
425 Lexington Avenue
New York, NY 10017

Alyssa M. Schwartz (#4351)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
schwartz@rlf.com

RLF1-2851933-2