# Appendix
# A231-A280

R. ALAN MILLER

Page 259

1           Q.        Take a look at your opening report

2    and your rebuttal report, and if you can find it, show

3    me where it is.

4                     MR. LEWIS:  Did you have something

5           else to say?

6                     THE WITNESS:  Yeah.  I think in

7           connection with the discussion we've been

8           having is why this arose; that is, you asked

9           these questions and I'm answering them.  You

10          asked if I had an opinion about that and I

11          gave it to you.

12                    My understanding is the way this

13          works is that the defendants are afforded the

14          opportunity to establish such a defense, and

15          in my view, they have not done so, and that,

16          from a legal perspective, may be where it

17          ends.  That's the area in which I was asked

18          to opine and that's the area about which I

19          have opined.

20                    In the course of our conversation,

21          then, I believe you asked me if I had an

22          opinion about that and I said I do, but

23          whether or not I offer that is a matter of

24          what counsel decides to pursue.

25   BY MR. GLUCKOW:

A 231

R. ALAN MILLER

Page 260

1     Q.       Have you been asked to form an

2  opinion on that question, that question being whether

3  in your opinion the underwriters conducted a

4  reasonable investigation?

5     A.       I don't think I've been specifically

6  asked so far to form that opinion.  I think I've been

7  asked to address the issue of whether the defendants

8  established that.  In the course of reviewing the

9  materials that I've reviewed, based on what I've seen

10  to date and as part of my work in determining whether

11  the defendants have met their burden in that regard, I

12  have formed an opinion about that but, again, I don't

13  know if I will be asked about that and have not

14  discussed that in that sense with counsel.

15     Q.       What's your current understanding

16  regarding whether you intend to offer an opinion at

17  trial concerning whether the underwriters conducted a

18  reasonable due diligence investigation?

19            MR. LEWIS:  Objection, asked and

20         answered.

21            THE WITNESS:  I don't have a current

22         understanding as to whether I would be asked

23         that or not.  What I've been asked so far is

24         do I believe the defendants have established

25         that they conducted such an investigation.

A 232

R. ALAN MILLER

Page 261

1           It's -- I don't know whether I would be asked

2           to go to the next step of your question and

3           determine whether I have an opinion on

4           whether the due diligence investigation was

5           adequate or not.

6   BY MR. GLUCKOW:

7           Q.      Just to be clear, you agree with me

8   that in your two written opinions to date, you have

9   not offered an opinion on that latter question,

10  namely, whether in your opinion the underwriters

11  conducted a reasonable due diligence investigation,

12  correct?

13          MR. LEWIS:  Objection to form; the

14          documents speak for themselves.

15          THE WITNESS:  I think that's

16          correct, but I'll be glad to check them and

17          see if I did say that or not.

18  BY MR. GLUCKOW:

19          Q.      Only if you feel the need to.  I'm

20  quite sure you have not given that opinion, but if you

21  want to be comfortable with that, please take your

22  time to do so.

23          A.      No, in the way we've been

24  discussing, I have not offered that so far.

25          Q.      Thank you.

R. ALAN MILLER

Page 262

1                    In terms of the materials

2    considered, Mr. Bessette went over this with you a

3    little bit and I won't take much time on it, but if

4    you would turn to Page 6 of your initial report,

5    Paragraph 11, in connection with the underwriters' due

6    diligence, how did you decide what materials you

7    wanted to review?

8             A.       I asked counsel what underwriter

9    materials had been produced, if there was a document

10   production, and what testimony there was on that

11   topic, and they identified that for me as the

12   deposition transcripts and the related exhibits.

13            Q.       Did counsel explain to you that

14   there was, in fact, a separate underwriter production

15   referred to in Mr. Necarsulmer's report which I know

16   you've seen, UND1 through 11,636?

17                     MR. LEWIS:  Objection to form.

18                     THE WITNESS:  Yeah, there was -- we

19        had some discussion about that, yes.

20   BY MR. GLUCKOW:

21            Q.       What do you recall about the

22   discussion?

23            A.       I asked what there was in the way of

24   underwriter production.  It was described to me there

25   was some amount of it; I don't recall how it was

R. ALAN MILLER

Page 263

```
 1   characterized to me.  I asked what it was and if
 2   anybody had gone through it, I believe.  I don't
 3   recall specifically what we discussed about it beyond
 4   that.  It was not a terribly long discussion about it.
 5   I don't recall who suggested it, but I came to the
 6   conclusion that I would see what it was that
 7   Mr. Necarsulmer produced from that document production
 8   to support his opinion, whatever it was going to be.
 9            Q.        As you sit here today, you have
10   never received or reviewed the underwriters' document
11   production in this case; is that correct?
12                     MR. LEWIS:  Objection to form.
13                     THE WITNESS:  It's probably correct
14            with respect to all of it.  I know there have
15            been some documents with UND numbers on them
16            and other documents referred to in deposition
17            transcripts and that sort of thing, but I
18            don't believe I have anywhere near the volume
19            that I understand exists.
20   BY MR. GLUCKOW:
21            Q.        In fact, at least according to the
22   list on Page 11, the only UND documents you would have
23   received from the underwriters' production would have
24   been those marked as exhibits at depositions, correct?
25            A.        From this list, that's correct, and
```

A 235

R. ALAN MILLER

Page 264

1    I think that might be correct overall.  I have seen

2    some underwriter documents or documents that have UND

3    markings on them that I don't recall necessarily being

4    referenced in transcripts, but I haven't tried to

5    match them up that way, so it may be that they are all

6    deposition transcripts, I don't know that.

7           Q.        In what connection did you see the

8    documents with the UND on them where you think there's

9    at least a possibility that they may not have been

10   deposition transcripts?

11          A.        Just in the normal course of

12   reviewing materials in the litigation.

13          Q.        You're not aware of any category of

14   documents or information received from the

15   underwriters' production, as you sit here now, other

16   than those marked as deposition exhibits, correct?

17                    THE WITNESS:  Can I have that back?

18                    (The pending question was read

19          back.)

20                    MR. LEWIS:  Objection to form.

21                    THE WITNESS:  I think that's

22          correct.  I'm not aware underwriters'

23          documents have been categorized otherwise.

24   BY MR. GLUCKOW:

25          Q.        For example, I'm looking at your

Page 265

```
 1    bullet point listed on Page 6 and I'm just trying to
 2    think is there any way that the underwriters' document
 3    production could be captured in any of those other
 4    bullet points, and I'm not able to come up with any
 5    way and I'm asking you whether you can.  These are the
 6    materials that you considered, correct, at least as of
 7    the time of your initial report?
 8              MR. LEWIS:  Objection to form.
 9              THE WITNESS:  No, I think you're
10         correct, and as we discussed earlier.
11    BY MR. GLUCKOW:
12         Q.    What about the underwriters'
13    responses and objections to the plaintiff's sixth set
14    of interrogatories, which were the underwriters'
15    responses to the plaintiff's so-called contention
16    interrogatories?  Those are not listed here.  Have you
17    ever reviewed those, to your knowledge?
18              MR. LEWIS:  Objection to form.
19              THE WITNESS:  I don't recall,
20         specifically.  There is at least one set of
21         interrogatory answers that I have reviewed.
22         I do not recall off the top of my head if
23         those are underwriters or not.
24    BY MR. GLUCKOW:
25         Q.    Are those interrogatory answers that
```

A 237

R. ALAN MILLER

Page 266

1    you're thinking of listed in the materials that you've

2    considered in any of your reports?

3            A.        No.

4                    MR. GLUCKOW:  Can we mark this,

5            please.

6                    (Document Bates Stamped

7            MIL 00090-00115 was marked Exhibit-352 for

8            identification.)

9    BY MR. GLUCKOW:

10           Q.        I'm handing you what's been marked

11   as 352; it's from your production in this matter.  Is

12   that the set of interrogatory responses you had in

13   mind?

14           A.        Yeah, I believe it is.

15           Q.        Those are the Adams Golf defendants'

16   responses to the plaintiff's fifth set of

17   interrogatories, correct?

18           A.        Correct.

19           Q.        Then to the best of your knowledge,

20   you have not reviewed the underwriters' responses and

21   objections to the plaintiff's sixth set of

22   interrogatories, correct?

23           A.        Yeah, I think that's correct.

24           Q.        Did you review the depositions of

25   the underwriter witnesses?

A 238

Page 267

1           A.       I did.

2           Q.       Did you review specifically the

3    deposition transcript of Olga Pulido-Crowe?

4           A.       I did.

5           Q.       Did you read the entire transcript

6    or just selected portions?

7           A.       No, I read it all.

8           Q.       Did you read the exhibits that were

9    referred to during that deposition?

10          A.       Yes.

11          Q.       In your rebuttal report, 335,

12   Pages 22 to 23 address Mr. Necarsulmer's report?

13          A.       Right.

14          Q.       I'm going to ask you the same

15   question I asked you about your initial report, which

16   is your best estimate for the amount of time it took

17   you to draft Paragraphs 23, 24, and 25 of the rebuttal

18   report.

19               MR. LEWIS:  Objection to the form.

20               THE WITNESS:  In this connection, I

21          read Mr. Necarsulmer's report, I reviewed

22          Ms. Pulido-Crowe's transcript, I reviewed

23          Mr. Walravens' transcript or -- I think prior

24          to writing this report, I skimmed

25          Mr. Walravens' transcript and reviewed the

Page 268

```
 1              exhibits from the reports -- the transcripts,
 2              I'm sorry.  I think I had a conversation with
 3              counsel as to whether there was any factual
 4              information I was missing in this context
 5              from what I had reviewed and then wrote this
 6              language, so that process may have taken five
 7              to 15 hours -- I'm trying to give you some
 8              decent estimate there -- maybe a little
 9              longer than that, somewhere in that
10              neighborhood.
11     BY MR. GLUCKOW:
12              Q.        I think you anticipated my next
13     question because I believe the answer you just gave,
14     five to 15 hours, somewhere in that neighborhood,
15     maybe a little more than that, wasn't just in terms of
16     drafting these paragraphs but also included the time
17     you spent considering the issues discussed in those
18     paragraphs, correct?
19                       MR. LEWIS:  Objection to form.
20                       THE WITNESS:  Right.
21     BY MR. GLUCKOW:
22              Q.        In terms of that conversation with
23     counsel you just mentioned, do you recall anything
24     else about that other than what you testified to
25     already?
```

R. ALAN MILLER

Page 269

 1              MR. LEWIS:  Objection to form.

 2              THE WITNESS:  No, it was a fairly

 3         brief conversation of the nature I said.  I

 4         had summarized what I had observed existed,

 5         asked if there was anybody else involved in a

 6         significant way in the process, other

 7         information that might be missing of that

 8         type, and I think that was the nature of the

 9         conversation.

10    BY MR. GLUCKOW:

11         Q.      What was the answer to that

12    question?

13         A.      Basically, no.

14         Q.      The information that you had

15    indicated that you had focused on already, if I

16    understood your prior answers correctly, was the Olga

17    Pulido-Crowe deposition transcript and the Walravens'

18    transcript, correct?

19         A.      And the exhibits.

20         Q.      And the exhibits of those

21    depositions?

22         A.      Yeah.  I maybe get your question.

23    That is the primary information I looked at related to

24    this topic.

25         Q.      Can you think of any other category

A 241

R. ALAN MILLER

Page 270

1    of information, other deposition transcripts, other

2    documents that you looked at in connection with this

3    portion of the assignment prior to submitting your

4    rebuttal report?

5                    MR. LEWIS:  Objection, compound,

6            vague.

7                    THE WITNESS:  Other than

8            Mr. Necarsulmer's report, I don't believe so.

9    BY MR. GLUCKOW:

10           Q.      Question on the drafting process,

11   I'm going to try it with both the initial report and

12   rebuttal report but I can break it up if we need to.

13                   As I'm sure you know, there were a

14   couple of drafts of each of your reports produced, I

15   think two of the initial report and two of the

16   rebuttal report, and there are some what I would

17   characterize as minor language changes reflected when

18   you compare the final version of the reports to the

19   drafts that were produced.  To the extent there are

20   differences in the final version of the report versus

21   the drafts, tell me how those changes occurred, and

22   what I'm getting at is whether those changes occurred

23   as a result of discussions with counsel, for example,

24   or whether they occurred with you going back and

25   looking at the document for a second or third or

A 242

R. ALAN MILLER

Page 271

```
 1    fourth time.
 2                    MR. LEWIS:  Objection, compound,
 3            vague.
 4                    THE WITNESS:  I don't know if I can
 5            do it that way, although I'd like to.
 6                    First off, I don't know what was
 7            produced exactly, I haven't reviewed the
 8            production of the drafts, but as I remember
 9            the process, I produced a draft and tended to
10            review it myself as well as have
11            conversations with counsel about it.
12                    Generally speaking, counsel's
13            contributions are in the area of grammar and
14            the English language, and that usually
15            additions or substantive changes are work
16            that I add.  I could go through them and talk
17            about that, but that's generally the way this
18            process has worked and usually the way I
19            work.
20    BY MR. GLUCKOW:
21            Q.      In this particular matter, do you
22    recall any substantive changes offered by counsel as
23    opposed to grammar or English language-type changes?
24            A.      Let me see if I can tell that.
25                    No, not with respect to the rebuttal
```

A 243

R. ALAN MILLER

Page 272

1    report.  It doesn't trigger any memory of substantive

2    input from counsel.

3              Q.      Fine; thank you.

4                      I noticed in your production I

5    didn't see any notes.  Did you keep any notes in

6    connection with your work in this matter?

7              A.      No.

8              Q.      Any specific reason why?

9              A.      No, except in this matter there

10   weren't the source of documents and exhibits and items

11   like that on which I sometimes do take notes as backup

12   or work papers, for example, to a draft and that sort

13   of thing.  Here, the drafts basically came out of the

14   review of the materials, and the drafts became the

15   result of what would have been notes otherwise.

16                     MR. GLUCKOW:  I'm going to mark the

17             AMF rebuttal report.

18                     (Mr. Miller's AMF Rebuttal Report

19             was marked Exhibit-353 for identification.)

20   BY MR. GLUCKOW:

21             Q.      Mr. Miller, I'm handing you

22   Exhibit-353, which is the rebuttal report that you

23   submitted in AMF.  Do you recognize that?

24             A.      It's coming back to me.

25             Q.      Do you recall whether you used the

A 244

Page 273

1    AMF rebuttal report as a model or template for the

2    rebuttal -- for the section of the rebuttal report in

3    Adams Golf that dealt with the underwriters' due

4    diligence question?

5                    MR. LEWIS:  Objection to form.

6                    THE WITNESS:  Actually, I don't

7            think so.  You asked me if I recall using it

8            as a template; is that what you said?

9    BY MR. GLUCKOW:

10        Q.      Did you make reference to the AMF

11   rebuttal report in preparing the section of your

12   rebuttal report in Adams Golf contained in

13   Paragraphs 23, 24, 25?

14        A.      The language is very similar.  I do

15   recall working from it.  It was not -- the reason I'm

16   hesitating on this, it was not a copy that looks like

17   this (indicating).  It was a copy of the text but not

18   the heading and the report itself that I was working

19   from, but the language is very similar, sure.

20        Q.      In the materials considered portion

21   of your rebuttal, and you have to go all the way back

22   to Page 1 of your rebuttal, you mention in addition to

23   what you reviewed in connection with your initial

24   report, you had also reviewed the expert reports from

25   the defendants, James, Sjoquist, Lynch, then Grace and

A 245

R. ALAN MILLER

Page 274

 1    Necarsulmer.  I take it you don't recall reviewing any

 2    other materials in connection with the preparation of

 3    your rebuttal report?

 4                    MR. LEWIS:  Objection to form.

 5                    THE WITNESS:  I think that that's

 6            correct.  I don't recall any other materials

 7            as I sit here.

 8    BY MR. GLUCKOW:

 9            Q.        I'm going to hand you

10    Mr. Necarsulmer's initial report, which has already

11    been marked as 321 (indicating).  Keep your rebuttal

12    report open as well.

13                    In the first two sentences of your

14    Paragraph 23 in your rebuttal, you address in a

15    general way the outline of responsibilities that

16    Mr. Necarsulmer has provided.  I take it you do not

17    disagree with Mr. Necarsulmer's general outline of

18    what underwriters are supposed to do as part of their

19    due diligence; is that correct?

20                    MR. LEWIS:  Objection to form,

21            foundation.

22                    THE WITNESS:  No, I don't think I

23            have a problem with his outline.  I think

24            enough areas of it are general enough to

25            cover most of the important areas you'd want

A 246

R. ALAN MILLER

Page 275

1          to get into.

2  BY MR. GLUCKOW:

3          Q.      When you were responding to my

4  question, I'm assuming you were looking at 6A and 6B

5  of Mr. Necarsulmer's initial report where he provides

6  those general contours; is that correct?

7                  MR. LEWIS:  Objection to form.

8                  THE WITNESS:  Correct.

9  BY MR. GLUCKOW:

10         Q.      Then on Pages 3 and 4,

11  Mr. Necarsulmer gives a list of 11 areas of activity

12  that he believes the underwriters undertook as part of

13  their due diligence.  I take it you don't dispute that

14  the activities reflected in one through 11 actually

15  took place; is that correct?

16                 MR. LEWIS:  Objection to form and

17         foundation.

18                 THE WITNESS:  I'm sorry, could I

19         have the question back?

20                 (The pending question was read

21         back.)

22                 THE WITNESS:  There's some judgment

23         calls in here so I'm not sure I can answer

24         it, the way I understand you're asking, that

25         is.

R. ALAN MILLER

Page 276

```
 1    BY MR. GLUCKOW:

 2           Q.        I'm sorry; go ahead.

 3           A.        Paragraph 1 on Page 3, it appears to

 4    be Mr. Necarsulmer's opinion that the offering process

 5    was staffed by a team of sufficient size, experience,

 6    and seniority to be appropriate for the project; the

 7    offering process was staffed by a team.  He then makes

 8    the judgment as to the rest of the sentence.

 9           Q.        Let's do it that way, then.  Do you

10    disagree that the team was of sufficient size,

11    experience, and seniority to be appropriate to the

12    project or do you just not have an opinion one way or

13    the other on that, or do you agree?

14           A.        First off, I think what I've said

15    about this is that his descriptions of these things

16    are extremely general.  They don't refer to people,

17    describe their backgrounds, refer to documents

18    reviewed, information discovered, much more

19    importantly independent analysis performed by the

20    underwriters, investigation work, and that sort of

21    thing except in the most general terms, so you can't

22    tell from his presentation what was done to discharge

23    the obligation to conduct a reasonable investigation

24    to come to the conclusions that they came to.

25                     That was, at least at the first
```

A 248

Page 277

1    instance, the level of information that I was

2    responding to in my opinions, that is, that

3    specifically with respect to the gray marketing issue,

4    there's no mention of it in here, there's no

5    indication that the issue was uncovered, discussed,

6    analyzed, that independent information was obtained to

7    evaluate it, that the impact of it was considered in

8    any fashion, so I don't see where the generalities

9    that Mr. Necarsulmer describes in these various

10   categories established the adequacy of the

11   investigation conducted by the underwriters in this

12   matter.

13          Q.       Are you finished?

14          A.       Yeah, I think that responds to your

15   question.

16          Q.       Not at all.  Move to strike.

17                   MR. GLUCKOW:  Read back my question.

18                   (The preceding question was read

19          back as follows:

20                   Question:  Let's do it that, way

21          then.  Do you disagree that the team was of

22          sufficient size, experience, and seniority to

23          be appropriate to the project or do you just

24          not have an opinion one way or the other on

25          that, or do you agree?)

Page 278

```
 1              THE WITNESS:  In terms of presenting
 2         a defense theory, it does not discuss the
 3         people, their backgrounds, their experience,
 4         why he thinks they were qualified, what work
 5         they did, how they were supervised, and that
 6         sort of thing.  There's no information
 7         presented except the conclusion that he comes
 8         to.
 9  BY MR. GLUCKOW:
10         Q.      I'm asking you whether you agree
11  with that conclusion or whether you haven't formed any
12  opinion on it at all.
13              MR. LEWIS:  Objection to form,
14         foundation, and scope of opinion.
15              Go ahead.
16              THE WITNESS:  Regarding
17         Mr. Necarsulmer's work, I was asked to
18         determine if he established that the
19         underwriters had conducted an adequate
20         investigation as we've been discussing, and
21         what I'm saying is with respect to
22         Paragraph 1 specifically and then more
23         generally the rest of this work, that he has
24         not presented any information on which
25         someone could make that determination.  What
```

A 250

Page 279

```
 1              he's presented is his conclusions as to those

 2              things.

 3  BY MR. GLUCKOW:

 4         Q.        I understand that you're not happy

 5  with Mr. Necarsulmer's report, and that's fine, we'll

 6  deal with that.  What I'm asking you is whether you

 7  have any opinion of your own regarding whether the

 8  offering process was staffed by a team of sufficient

 9  size, experience, and seniority to be appropriate for

10  the project, and if you haven't formed an opinion on

11  that, that's fine, just tell me that.

12              MR. LEWIS:  Objection to form and

13              foundation.

14              Go ahead.

15              THE WITNESS:  I've had thoughts

16              about that.  I don't know that I've actually

17              formed a formal opinion on that as you're

18              asking me, as I think you may be asking me

19              here.

20              My thoughts in that area have been

21              that there was no managing director actually

22              involved in the process, as far as I could

23              tell.  From the information I've reviewed so

24              far, Mr. Francis was a figurehead whose

25              fingerprints are not on the project, that
```

R. ALAN MILLER

Page 280

```
 1              Ms. Pulido-Crowe was hoping to become a

 2         managing director and was at the time -- I

 3         forget the next title, I think it was vice

 4         president -- conducting oversight on the

 5         work, much of which was delegated to

 6         Mr. Walravens and a financial analyst whose

 7         name, unfortunately, I can't recall, and that

 8         I'm not sure I saw any evidence of

 9         involvement by more senior personnel with

10         perhaps more business experience and

11         background with regard to critical issues

12         such as gray marketing, and if the team had

13         the experience to be appropriate for the

14         project, I saw no evidence of inclination to

15         perform independent analysis with respect to

16         the gray market issue specifically from that

17         team, which suggested either a lack of

18         experience in the area or a simple failure to

19         follow up on information that was obviously

20         deserving of follow-up.

21  BY MR. GLUCKOW:

22         Q.      You don't dispute that the

23  underwriters had discussions with senior management at

24  the company concerning the gray market issue, correct?

25              MR. LEWIS:  Objection to form.
```

A 252

R. ALAN MILLER

Page 281

```
 1                    THE WITNESS:  No, I don't dispute,
 2           from what I've seen, that they had
 3           discussions with a couple of management
 4           people about the topic.
 5    BY MR. GLUCKOW:
 6           Q.      You don't dispute that the
 7    underwriters conducted telephone interviews with at
 8    least seven of Adams' top customers concerning a
 9    variety of topics, correct?
10                    MR. LEWIS:  Objection to form and
11           foundation.
12                    THE WITNESS:  No, I don't dispute
13           that from what I can see those interviews
14           took place; no.
15    BY MR. GLUCKOW:
16           Q.      Don't you consider those interviews
17    an example of the kind of independent verification
18    that you're referring to?
19           A.      No.  That is that the conduct of
20    outside interviews absent management participation is
21    important, but when no specific questioning is made
22    about the gray marketing or the effect of gray
23    marketing, more importantly, no contact was made with
24    any of the people who had complained about gray
25    marketing, no documentation or correspondence was
```

A 253

R. ALAN MILLER

Page 282

 1    reviewed with respect to the complaints about gray

 2    marketing, no independent follow-up was made to

 3    determine if it was a problem or what the impact of it

 4    was other than the assurance that I believe it was

 5    Mr. Adams gave to Ms. Pulido-Crowe with respect to

 6    Costco by saying don't pursue your own independent

 7    inquiry of Costco, I'll take care of them, or

 8    something to that effect, and/or Ms. Pulido-Crowe's

 9    assessment that since her husband wouldn't purchase

10    sporting goods items at Costco, that it was not likely

11    to be a threat to Adams Golf.

12                    Those are what I remember about the

13    disposition of the issue with management, but that

14    seemed to end the inquiry, from what I can tell.

15         Q.        One of the things you said in that

16    answer was that there was no mention of the gray

17    marketing issue in the customer surveys; is that

18    correct?

19         A.        Right.

20         Q.        There was a specific question that

21    said are there any other issues, legal, contractual,

22    or otherwise, which you feel are important; isn't that

23    correct?

24                    MR. LEWIS:  Objection to form.

25                    THE WITNESS:  I understand that was

A 254

Page 283

```
 1              a question on the outline.
 2    BY MR. GLUCKOW:
 3         Q.        You understand that was a question
 4    that was asked of the customers who were interviewed
 5    by the underwriters, correct?
 6         A.        I understood it was a question on
 7    the outline to be asked.  I don't recall reading
 8    enough detail about the actual conversations to know
 9    if it was asked or how it was asked or what the
10    inclination of the customer would have been to provide
11    the information over the telephone, what their
12    attitude toward Adams was at that point as a customer
13    trying to acquire a hot club in that market.  I don't
14    know a lot of those things about the customer
15    interviews over the telephone.
16         Q.        Did you review the actual record
17    reflecting the 11 interviews that the underwriters
18    conducted which show the responses received?
19         A.        I saw at least some of that
20    information in some exhibits, yes.
21         Q.        Isn't it true that in going through
22    each and every one of those 11 telephone interviews,
23    not a single one of the responses indicated any
24    concern about gray market or Costco?
25                   MR. LEWIS:  Objection to foundation
```

R. ALAN MILLER

Page 284

1           and form; misstates the evidence.

2                   THE WITNESS:  I don't recall seeing

3           any mention in the responses of Costco or

4           gray marketing.

5    BY MR. GLUCKOW:

6           Q.      Mr. Necarsulmer says, in his

7    rebuttal report which I know you've seen, these kinds

8    of interviews with independent parties are the type of

9    work underwriters should engage in to confirm

10   discussions with company management.  Don't you agree

11   with that?

12                  MR. LEWIS:  Objection to form.

13                  THE WITNESS:  Again, as a general

14          category, I certainly agree that underwriters

15          should conduct independent interviews with

16          outside parties to confirm information they

17          have received from management.  Whether or

18          not the way these were done, the basis of the

19          selection of the parties to interview, and

20          all those sorts of things were adequate are,

21          I think, question marks at this point in that

22          area.

23   BY MR. GLUCKOW:

24          Q.      Again, the only deposition

25   transcripts of underwriters you can recall reading are

A 256

R. ALAN MILLER

Page 285

1    Pulido-Crowe and Walravens', correct?

2                    MR. LEWIS:  Objection to form.

3                    THE WITNESS:  I believe that's

4         correct.

5    BY MR. GLUCKOW:

6         Q.    You've never reviewed the

7    underwriters' document production in this case,

8    correct?

9         A.    Other than those we've discussed.

10        Q.    Other than as marked as exhibits at

11   depositions, correct?

12        A.    I think that's correct.

13        Q.    You referred to a conversation

14   between Pulido-Crowe and Mr. Adams regarding gray

15   marketing and Costco.  Is it your understanding that

16   the only discussions that the underwriters had

17   concerning the gray market issue took place between

18   Ms. Pulido-Crowe and Mr. Adams?

19                    MR. LEWIS:  Objection to form.

20                    THE WITNESS:  No, I don't think

21        that's necessarily right.  I think there were

22        conversations with one of the other

23        management people at least, maybe two others,

24        of the salespeople --

25   BY MR. GLUCKOW:

A 257

Page 286

```
 1          Q.        Gonsalves?

 2          A.        -- the sales executives, Gonsalves

 3     and --

 4          Q.        Beebe?

 5          A.        -- possibly Beebe, about that topic.

 6          Q.        How many conversations are you aware

 7     of between the underwriters and Adams' management

 8     concerning the gray marketing or Costco issue?

 9          A.        As far as I can recall, I don't

10     recall reference to more than a few outside of the

11     Hoffman letter issue, if we can call it that, but with

12     respect to pursuing independent investigation and that

13     sort of thing, essentially none.

14                    MR. LEWIS:  I want to back up and

15               retroactively object to the question

16               suggesting that there was a conversation with

17               Beebe since the record does not reflect any

18               such conversation.  It misstates --

19                    MR. GLUCKOW:  I disagree with your

20               characterization, but the record will speak

21               for itself.

22     BY MR. GLUCKOW:

23          Q.        What's your basis for saying that

24     Mr. Francis's role was purely as a figurehead?

25          A.        Ms. Pulido-Crowe's testimony to that
```

A 258

R. ALAN MILLER

Page 287

1  effect.

2          Q.      You take from Ms. Pulido-Crowe's

3  testimony that Francis was nothing more than a

4  figurehead?

5          A.      In very shorthand form, yes --

6          Q.      Do you have any other basis for

7  that?

8                  MR. LEWIS:  Please don't cut him

9          off.

10 BY MR. GLUCKOW:

11         Q.      I'm sorry.

12         A.      She described, as I recall, his

13 attendance at certain meetings, his fronting the

14 presentations to the commitment committee, and what I

15 would describe as more of a political role in the

16 process than a substantive role in an investigatory

17 way or anything of that nature.

18         Q.      Any other basis for that statement?

19                 MR. LEWIS:  Objection to form and

20         foundation.

21                 THE WITNESS:  Only that in

22         discussing the functions that they were

23         performing, in the deposition I don't recall

24         either Pulido-Crowe or Walravens referring to

25         Francis having done anything in the process

A 259

R. ALAN MILLER

Page 288

```
 1              of conducting investigation or interviews or
 2              any of those sorts of functions other than,
 3              as Pulido-Crowe describes, in what I'll call
 4              a more political role.
 5   BY MR. GLUCKOW:
 6              Q.      Is it your opinion the underwriters
 7   should have contacted Costco?
 8              MR. LEWIS:  Objection to form and
 9              foundation.
10              THE WITNESS:  I don't know, I hadn't
11              thought about that specifically, but I
12              certainly think, backing up a step, in terms
13              of generality they certainly should have
14              investigated the Costco matter independently,
15              whether that involved contacting Costco,
16              which was certainly one possibility since
17              Lehman Brothers appeared to have some entree
18              to Costco, I don't recall specifically what
19              that was, but contacting Costco directly
20              seemed to be one choice, contacting an
21              industry expert with knowledge of those types
22              of things to conduct an independent analysis
23              is another choice; there may have been
24              different ways to accomplish that.  I haven't
25              thought further about how that should have
```

A 260

Page 289

1          been done, but something should have been

2          done along those lines to pursue that issue.

3    BY MR. GLUCKOW:

4          Q.      As you sit here today, what is it

5    that you think needed to be done to have what, in your

6    view, would have been a reasonable investigation?

7                  MR. LEWIS:  Objection to form and

8          foundation, compound, and we've been over a

9          lot of this already.

10                 Go ahead.

11                 THE WITNESS:  Again, that's an area

12         I have not been asked for specific opinions

13         on to this time.  I have produced the opinion

14         so far that Mr. Necarsulmer has not

15         demonstrated that a reasonable and adequate

16         investigation was performed, which is what I

17         was asked to opine to in this area.

18                 Having conducted some analysis of

19         this and reviewed the information we

20         discussed so far today, I have reached some

21         opinions about what I know so far appeared to

22         have been done or not done, and that's the

23         basis on which I am answering your questions

24         now.

25                 In terms of what should have been

A 261

R. ALAN MILLER

Page 290

```
 1              done to conduct a reasonable investigation,
 2              at a minimum, the project should have been
 3              staffed sufficiently to ensure that somebody
 4              would take the responsibility to conduct an
 5              independent investigation of potential
 6              problem areas as they arose.  The one I'm
 7              concerned about, obviously, is gray
 8              marketing.
 9                    When that appeared to be an issue,
10              based on the information that clubs were
11              appearing in Costco, the underwriters should
12              have conducted an independent investigation
13              as to what that meant, what effect it was
14              having on the retailers and distributors,
15              what effect it was having on customers, how
16              Costco was obtaining the clubs, whether it
17              was likely to continue, what effect gray
18              marketing had on companies that suffered from
19              it.
20                    The red flag, I believe, had been
21              raised once the underwriters obtained
22              knowledge of the clubs' appearance in Costco.
23              The issue had been raised by appearance in
24              Callaway's 10-K and industry knowledge was
25              available, according to Mr. Magnussen, about
```

R. ALAN MILLER

Page 291

```
 1              gray marketing, so it doesn't seem as though

 2              it should have been all that difficult to get

 3              into the industry and get information about

 4              that and, thereafter, determine what to do

 5              about it.

 6      BY MR. GLUCKOW:

 7              Q.      Anything else, because we're going

 8      to go through each of these, but I want to know if

 9      there's anything else before we do?

10                      MR. LEWIS:  We're at five of six.

11              We started nine hours ago, which is okay.

12              We're all tired.  The witness, I'm sure --

13              I'm tired, at least.  Maybe everybody else

14              isn't, but I'm very tired.  The witness is

15              tired.  We're very close, if not past, the

16              seven-hour limit.  I want to give you some

17              leeway, but we're going to have to cut off at

18              some point.

19                      MR. GLUCKOW:  If you're tired, the

20              witness is tired, I'm happy to pick this up

21              on Monday, but here's my point --

22                      MR. LEWIS:  We're not picking up

23              Monday.

24                      MR. GLUCKOW:  That's fine, we'll

25              just keep going; I'm not suggesting that we
```

R. ALAN MILLER

Page 292

```
 1            need to.
 2                  All I'm saying is you had as much
 3            time as you needed with Mr. Necarsulmer,
 4            right, and they had as much time as they
 5            needed upstairs today with Mr. James.
 6                  MR. LEWIS:  Right, but nobody has
 7            gone past the seven-hour limit, as far as I'm
 8            aware of, and that's established by the
 9            rules.  I'm not trying to be difficult about
10            it, but you don't get to go on until ten
11            o'clock because you have questions until ten
12            o'clock; you have your limit.  I'm trying to
13            be flexible on it, but if you're not going to
14            be flexible with me and find a way to meet
15            some reasonable limit at this time of day,
16            then we're going to have to cut it off.
17                  MR. GLUCKOW:  I certainly intend to
18            be reasonable but I certainly also intend to
19            complete the examination, so hopefully that
20            will be something we can both live with.
21                  MR. LEWIS:  It's got to be pretty
22            soon.
23    BY MR. GLUCKOW:
24            Q.    I think I was asking you was there
25    anything else before we go back through these items.
```

A 264

```
 1            A.        I have not compared the outline of

 2   Mr. Necarsulmer in here with the paragraphs that I had

 3   submitted outlining an underwriter's responsibilities

 4   in the context of due diligence to see how his

 5   opinions stack up against those.

 6                         (Mr. Bessette leaves the

 7            deposition.)

 8                         (Mr. Collins enters the deposition.)

 9                         THE WITNESS:  Without having done

10            that, I think the additional red flag that

11            exists in these materials, to those I've

12            already discussed, would be in Paragraph 6,

13            which --

14   BY MR. GLUCKOW:

15            Q.        I'm sorry, Paragraph 6 of?

16            A.        I'm sorry, Page 3 of

17   Mr. Necarsulmer, which refers to the commitment

18   committee memo, I believe, which did have a line in it

19   referring to the importance of maintaining margins, I

20   believe it was, at Adams and how those could not be

21   allowed to deteriorate or something to that effect,

22   so, again, that identifies someone was aware of the

23   general issue of margin maintenance but not in the

24   specific wording of gray marketing.

25                         Having said that, I think the answer
```

R. ALAN MILLER

Page 294

```
 1    I gave you previously probably covers at least the

 2    major areas of where I would be today on this issue

 3    since you raised it and asked me.

 4           Q.       Can you think of any other areas?  I

 5    don't want you to say that they're just the major

 6    ones.  Can you think of any other areas as of today

 7    that you think would have required follow-through --

 8                    MR. LEWIS:  Objection.

 9    BY MR. GLUCKOW:

10           Q.       -- in your opinion?

11                    MR. LEWIS:  Form, foundation, scope

12           of the opinion.

13                    THE WITNESS:  Again, I haven't been

14           asked to form an opinion on that prior to

15           this time and I've been giving you the

16           thoughts I have in this area in response to

17           your questions, and I think I hit on the

18           major area, particularly with respect to gray

19           marketing, and that being the lack of

20           independent investigation by the underwriters

21           of the issue and the willingness to accept

22           Mr. Adams' assertion he would take care of

23           the Costco problem and essentially leaving it

24           at that, so I think that probably covers it

25           with respect to that issue.
```

A 266

R. ALAN MILLER

Page 295

1              I have not sat here and attempted to

2         go beyond that and think about every other

3         area they may have been deficient in their

4         work, and have not been asked to do that to

5         this point, but I think the major issue with

6         respect to gray marketing would be covered by

7         that topic.

8    BY MR. GLUCKOW:

9         Q.         Putting aside the gray market issue

10   or the Costco issue, however you want to phrase it,

11   you're not offering any opinion that the underwriters'

12   investigation was less than reasonable in any other

13   way, are you?  I've never heard you suggest otherwise.

14              MR. LEWIS:  Objection to form,

15         foundation, scope.

16   BY MR. GLUCKOW:

17        Q.         Am I correct?

18        A.         I haven't been asked that question.

19   I haven't been asked to focus on areas other than gray

20   marketing, so I couldn't answer that in that sense.

21        Q.         The margins issue you mentioned

22   before with respect to Paragraph 6 is reflected in the

23   prospectus, correct?

24        A.         Again, in a very general way, the

25   issue of maintenance of sales price margin is

A 267

Page 296

1  mentioned in the prospectus, but that's all it says in

2  the prospectus, is basically that one line.

3          Q.      Are you aware of Mr. Frazier's

4  opinion, Professor Frazier's opinion, in this case?

5          A.      I don't believe so.

6          Q.      You haven't seen the transcript of

7  his deposition from earlier this week?

8          A.      I have not.

9                  MR. LEWIS:  In five minutes, I'm

10                going to ask the court reporter to do a

11                calculation of time for us so we can reach

12                some conclusion here.

13  BY MR. GLUCKOW:

14          Q.      I think we've confirmed this, but if

15  you turn to Paragraph 25 on Page 23 of your rebuttal

16  report, in the last sentence you state in your opinion

17  the expert report of Mr. Necarsulmer does not meet the

18  underwriters' burden to demonstrate that the

19  investigation and/or resulting disclosures were

20  reasonable and adequate, correct?

21          A.      Right.

22          Q.      You're not offering an opinion in

23  this report, I think we've established, dealing with

24  whether in your opinion the underwriters'

25  investigation was reasonable, correct; you have not

Page 297

1    offered a written opinion on that question?

2                    MR. LEWIS:  Objection to form.

3                    THE WITNESS:  That's correct.

4    BY MR. GLUCKOW:

5        Q.        What are your qualifications to

6    opine on whether Mr. Necarsulmer has met the

7    underwriters' burden?

8                    MR. LEWIS:  Objection to form,

9            foundation; calls for legal conclusion.

10                   THE WITNESS:  I think we've

11           discussed those earlier today at some length.

12   BY MR. GLUCKOW:

13       Q.        You have nothing to add to the

14   qualifications that enable you to offer that opinion

15   other than what we talked about earlier?

16                   MR. LEWIS:  Objection to form,

17           foundation, legal conclusion.

18                   THE WITNESS:  Yeah, I think that's

19           probably correct in terms of background,

20           education, work experience, and that sort of

21           thing.

22                   Having said that and having reviewed

23           the information that I've reviewed that we've

24           discussed, having reviewed Mr. Necarsulmer's

25           report, it's a fairly easy matter in the

A 269

R. ALAN MILLER

Page 298

```
 1              sense of reading the English language to

 2              determine that he has not presented the sort

 3              of information that one would need to present

 4              to meet the burden as outlined in my report

 5              and rebuttal report and as outlined in

 6              Mr. Necarsulmer's report as well.

 7  BY MR. GLUCKOW:

 8         Q.      I take it you've never been a judge,

 9  correct?

10              MR. LEWIS:  Objection to form.

11              THE WITNESS:  Correct.

12  BY MR. GLUCKOW:

13         Q.      Have you reviewed Mr. Necarsulmer's

14  rebuttal report?

15         A.      Yes.

16         Q.      Have you considered the extent to

17  which, if at all, Mr. Necarsulmer's rebuttal report

18  alters the opinion that you've offered in your

19  rebuttal report and your initial report?

20              MR. LEWIS:  Objection to form,

21              foundation.

22              THE WITNESS:  I did, when I reviewed

23              Mr. Necarsulmer's rebuttal report.

24  BY MR. GLUCKOW:

25         Q.      And the results of that
```

A 270

R. ALAN MILLER

Page 299

1    consideration?

2           A.        I'd have to review that again

3    quickly to tell you.

4           Q.        Sure.  It's already been marked.

5    I'll hand you a copy.  It's Exhibit-322 (indicating).

6                  MR. LEWIS:  While you're reviewing

7           that, Mr. Miller, let's have the court

8           reporter do the Herculean task of figuring

9           out how much time we have used.

10                 THE COURT REPORTER:  Seven and a

11          half hours of testimony.

12                 MR. LEWIS:  I'll let him answer your

13          last question.

14                 MR. GLUCKOW:  No, no, no.

15                 MR. COLLINS:  Let's go off the

16          record.

17                 (Discussion held off the record.)

18                 MR. GLUCKOW:  Plaintiffs have

19          announced that in ten minutes this dep is

20          over in terms of defendant's questioning.

21                 Defendants are reserving all their

22          rights but are happy to ask ten more minutes'

23          worth of questions.

24                 MR. LEWIS:  Let's also state on the

25          record that we have already been advised by

A 271

R. ALAN MILLER

Page 300

```
 1              the court reporter's calculations that we are
 2              at the seven-and-a-half-hour mark in terms of
 3              deposition time and it is late in the day and
 4              we did start somewhat earlier.
 5                      MR. GLUCKOW:  I have said that I'm
 6              happy to come back if we need to and you had
 7              four hours with Mr. Necarsulmer and whatever
 8              with Mr. James.
 9                      Let's move on.
10                      (The preceding question was read
11              back.)
12   BY MR. GLUCKOW:
13           Q.      Now that you have Mr. Necarsulmer's
14   rebuttal report in front of you, Exhibit-322, we were
15   discussing whether your review of the rebuttal report
16   caused you to reconsider the opinions set forth in
17   your own rebuttal report, that is, that
18   Mr. Necarsulmer had not met the underwriters' burden
19   to demonstrate that the investigation and/or resulting
20   disclosures were reasonable and adequate.
21                      MR. LEWIS:  Objection to form.
22                      THE WITNESS:  It does not cause me
23              to change my opinion.
24   BY MR. GLUCKOW:
25           Q.      Why?
```

A 272

Page 301

```
 1                    MR. LEWIS:  Objection to form,
 2         compound.
 3                    THE WITNESS:  Essentially, because
 4         there's nothing substantive added in
 5         Mr. Necarsulmer's rebuttal report.
 6   BY MR. GLUCKOW:
 7         Q.      Did you review the various
 8   deposition testimony cited in Mr. Necarsulmer's
 9   rebuttal report?
10         A.      I reviewed some of that testimony.
11   I reviewed Ms. Pulido-Crowe and Mr. Adams' deposition
12   transcripts on those areas.  I reviewed -- among this
13   list, that was it.
14         Q.      Did you review the various documents
15   with the UND prefix cited in Mr. Necarsulmer's
16   rebuttal report?
17         A.      I did not, nor did I believe that
18   would likely change my opinion.
19         Q.      Why is that?
20         A.      Because all this has to do with
21   acceptance of management's assertions with respect to
22   gray marketing and indicates no independent
23   investigation by the underwriters and no contribution
24   to that area beyond what existed in Mr. Necarsulmer's
25   original report.
```

A 273

R. ALAN MILLER

Page 302

1          Q.        Notwithstanding 3C, which obviously

2    refers to independent phone calls with third parties,

3    correct?

4                    MR. LEWIS:  Object to the form.

5                    THE WITNESS:  Right, which we've

6          already discussed today.

7    BY MR. GLUCKOW:

8          Q.        Do you agree with Mr. Necarsulmer's

9    statement in D on Page 2 that the reasonableness of

10   underwriters' due diligence must be assessed based on

11   the information that is reasonably available at the

12   time of the offering?

13                   MR. LEWIS:  Objection to form,

14         foundation, legal conclusion.

15                   THE WITNESS:  Sure.

16   BY MR. GLUCKOW:

17         Q.        I assume you agree with

18   Mr. Necarsulmer's statement in F that the mention of a

19   risk in one issuer's filings is not necessarily

20   determinative of whether the risk needs to be included

21   in another issuing company's registration statement,

22   correct?

23                   MR. LEWIS:  Objection to form,

24         foundation.

25                   THE WITNESS:  I agree with it in

A 274

R. ALAN MILLER

Page 303

```
1              exactly the limited way it is stated; that
2              is, I agree that such an identification is
3              not determinative of inclusion but certainly
4              constitutes a red flag warranting
5              investigation by the underwriter.
6     BY MR. GLUCKOW:
7              Q.       Sitting here today, do you know
8     whether the underwriters considered Callaway's 10-K
9     disclosure that you mentioned earlier as part of their
10    analysis?
11                     MR. LEWIS:  Objection to form and
12             foundation.
13                     THE WITNESS:  Not specifically.  I
14             do recall thinking for some reason that they
15             knew about it, but I don't remember why I
16             think that.
17    BY MR. GLUCKOW:
18             Q.       As you sit here today, you believe
19    the underwriters were aware of the Callaway 10-K
20    disclosure as part of the due diligence process?
21                     MR. LEWIS:  Objection;
22             mischaracterizes his testimony.
23                     THE WITNESS:  I think that -- as
24             best I recall, I remember thinking that they
25             were, but like I said, I don't remember why I
```

A 275

Page 304

```
 1              think that.
 2    BY MR. GLUCKOW:
 3         Q.      You agree with the last sentence of
 4    Mr. Necarsulmer's F, each factual situation is
 5    different and the underwriters must evaluate
 6    appropriate disclosure on an individual basis,
 7    correct?
 8                   MR. LEWIS:  Objection, form and
 9              foundation.
10                   THE WITNESS:  Sure; I presume he's
11              talking about an individual company basis.
12              Sure, that makes sense.
13    BY MR. GLUCKOW:
14         Q.      Do you agree with this statement:
15    The underwriters made their main inquiry concerning
16    gray marketing in the due diligence meetings in April
17    1998?
18                   MR. LEWIS:  Objection to form,
19              foundation.
20                   THE WITNESS:  I don't believe I have
21              an opinion on that.
22    BY MR. GLUCKOW:
23         Q.      Explain what you mean by that.
24                   MR. LEWIS:  Objection.
25                   THE WITNESS:  I haven't attempted to
```

A 276

R. ALAN MILLER

Page 305

1           determine or rank the level of inquiry that

2           they made in such a fashion that I would make

3           a statement that way.  That does appear to be

4           when the topic arose.  Subsequent to that, I

5           didn't see any indication that there was

6           independent investigation done of that topic.

7           It ended up not appearing in the prospectus,

8           so I don't have any reason to not think that

9           was the case, but I also don't -- I have not

10          looked into that as an issue in itself to be

11          able to say it that way; I wouldn't have

12          thought of putting it that way.  I also don't

13          have any reason to question it.  I haven't

14          seen any indication to the contrary.

15   BY MR. GLUCKOW:

16          Q.      Do you know whether there were

17   discussions concerning the gray marketing issue

18   between the underwriters and Adams' management in

19   June 1998?

20                  MR. LEWIS:  Objection to form,

21          foundation.

22                  THE WITNESS:  Yeah, I think we

23          discussed that briefly earlier in connection

24          with the Hoffman letter, was what I remember

25          that being about, in June.

R. ALAN MILLER

Page 306

1    BY MR. GLUCKOW:

2         Q.      Do you know whether there were any

3    discussions between the underwriters and Adams'

4    management concerning gray marketing or Costco in

5    connection with the Adams' press release in early June

6    concerning the Costco issue?

7              MR. LEWIS:  Object to the form.

8              THE WITNESS:  Again, I recall that

9              there was some discussion about that in

10             connection with the Costco issue as presented

11             in the press release and limited to that as

12             opposed to the overall problem of gray

13             marketing and sale of clubs through Costco

14             and the implications that that had for the

15             company.

16   BY MR. GLUCKOW:

17         Q.      What's the basis for your last

18   answer?

19         A.      My understanding of the conversation

20   -- the conversations that occurred around the Hoffman

21   letter with respect to addressing the SEC's inquiry

22   about whether the issue discussed in the Hoffman

23   letter had been investigated or examined by the

24   company according to materiality standard.

25             MR. LEWIS:  We have to shut it down

A 278

R. ALAN MILLER

Page 307

1      at this point.  We're just at the time

2      lengths -- we're way past.  This was

3      scheduled in this fashion at your guy's

4      request.  There was no anticipation of going

5      after six o'clock on a Friday afternoon.  We

6      all have different plans and travel plans.

7           I have one question, possibly the

8      famous one question, for Mr. Miller to get on

9      the record before we terminate.

10          MR. GLUCKOW:  I'm going to object to

11     your shutting down the deposition because I

12     have not finished my examination, and I will

13     reserve all my rights.

14          MR. COLLINS:  Any idea how much

15     more?  We've been through this before and

16     asked you that question.

17          MR. GLUCKOW:  Part of the problem is

18     every time I ask more questions, I'm getting

19     new opinions from the witness that are not

20     reflected in his written opinions in the

21     case.

22          MR. LEWIS:  Because you're asking

23     him for them, you're asking what opinions he

24     may have formed aside of the opinions that he

25     has been engaged to express, and so if you

A 279

R. ALAN MILLER

Page 308

```
 1            keep asking someone for views they have, it's
 2            not going to be surprising if they have
 3            views.
 4                    MR. GLUCKOW:  If you were willing to
 5            tell me he isn't going to offer any opinions
 6            concerning the underwriters' due diligence
 7            beyond that which is contained in his written
 8            reports, I told you a long time ago this
 9            could have been completed much sooner, but
10            you won't give me that, and because you won't
11            give me that, I need to know what opinions he
12            has formed on that topic.
13                    MR. LEWIS:  You still haven't
14            answered Todd's question of how much longer
15            do you have to go.  We're talking about
16            travel arrangements at this point for people,
17            including the witness.
18                    MR. GLUCKOW:  Quite honestly, based
19            on this last exchange, I think I have
20            probably another half an hour, at least.
21                    MR. COLLINS:  Why don't you proceed
22            with your questioning.
23      BY MR. LEWIS:
24            Q.     Mr. Miller, aside from the opinions
25      that have been expressed in your various reports about
```

A 280