## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | : | |
| IN RE ADAMS GOLF INC. | : | |
| SECURITIES LITIGATION | : | CONSOLIDATED |
| | : | C.A. NO. 99-371-KAJ |
| | : | |

## PLAINTIFFS' OPENING BRIEF IN SUPPORT OF
## MOTION TO EXCLUDE TESTIMONY OF
## EDWARD LYNCH, C.P.A. AND STEPHEN GRACE, M.B.A., Ph.D.

**ROSENTHAL, MONHAIT & GODDESS, P.A.**
Carmella P. Keener (DSBA No. 2810)
919 Market Street, Suite 1401
Wilmington, DE. 19801
(302) 656-4433
CKeener@rmgglaw.com
*Liaison Counsel for Plaintiffs and the Class*

**BERGER & MONTAGUE, P.C.**
Todd Collins
Elizabeth Fox
Neil Mara
1622 Locust Street
Philadelphia, PA. 19103
(215) 875-3000
*Lead Counsel for Plaintiffs and the Class*

Date Filed: September 11, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................. iii

NATURE AND STAGE OF PROCEEDINGS ................................. 1

SUMMARY OF ARGUMENT ............................................. 1

INTRODUCTION .................................................... 3

ARGUMENT ........................................................ 5

I.      PART OF LYNCH'S TESTIMONY MUST BE EXCLUDED .............. 5

        A.    The Proffered Testimony Should Be Excluded Because
              It Exceeds the Scope of Proper Expert Opinion and Usurps
              the Province of the Jury ................................. 6

        B.    The Proffered Testimony Is Unreliable ................... 8

        C.    Mr. Lynch Is Unqualified to Render His Opinion .......... 9

III.    PARTS OF GRACE'S OPINIONS MUST BE EXCLUDED ............. 10

        A.    Grace's Testimony About Materiality Should be Excluded .......... 12

              1.    Grace Is Not Qualified to Testify about Materiality .......... 12

              2.    Grace's Opinions on Materiality Lack Reliability ............ 13

              3.    Grace's Opinions on Materiality Will Not Assist the Jury ..... 13

        B.    Grace Should Not Be Permitted to Testify about What
              Defendants Did to Combat or Deal with Costco .................. 14

i

  C.  Grace Testimony about Defendants' Belief Should Be Stricken . . . . . . . 16

  D.  Grace Is Not Qualified to Testify about the SEC or it Procedures . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*In Re Adams Golf Sec. Litig.,*
    381 F.3d 267 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12, 13, 15

*Calhoun v. Yamaha,*
    350 F.3d 316 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Crowley v. Chait,*
    322 F. Supp. 2d 530 (D.N.J. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 4, 7, 8, 16

*Daubert v. Merrell Dow Pharmaceuticals Inc.,*
    509 U.S. 579 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 4, 5

*Kumho Tire Co., Ltd. v. Carmichael,*
    526 U.S. 137 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Material Techs., Inc. v. Carpenter Tech. Corp.,*
    2005 U.S. Dist. LEXIS 32087 (D.N.J. 2005) . . . . . . . . . . . . . . . . . . . . . . . 3

*In re Paoli R.R. Yard PCB Litig.,*
    35 F.3d 717 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*SEC v. Lipson,*
    46 F. Supp. 2d 758 (N.D. Ill. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Salas v. Carpenter,*
    980 F.2d 299 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Schneider v. Fried,*
    320 F.3d 396 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

*Surace v. Caterpillar, Inc.,*
    111 F.3d 1039 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*TSC Indus., Inc. v. Northway, Inc.,*
    426 U.S. 438 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12

*United States v. Dukagjini,*
    326 F.3d 45 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**FEDERAL STATUTES**

15 U.S.C.A. 77k(b) .......................................... 15

Fed.R. Evid. 702 ........................................... 1, 4

## NATURE AND STAGE OF PROCEEDINGS

In this case discovery and expert discovery has been completed. Pursuant to the scheduling order entered by the Court, Plaintiffs submit this memorandum in support of their motion to exclude testimony of Edward Lynch, C.P.A. and Stephen Grace, M.B.A., Ph.D.

## SUMMARY OF ARGUMENT

1.    Under *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), and its progeny and Fed.R. Evid. 702, the court as gatekeeper should decide whether to admit expert testimony, considering the qualifications of the expert, the reliability of the testimony and whether the testimony will assist the jury. See e.g., *Schneider v. Fried,* 320 F.3d 396, 404 (3d Cir. 2003).

2.    In this case, Mr. Lynch has opined that double shipping was not a problem for Adams Golf, even though a contemporaneous memo from the CEO of Adams Golf said that there had been double shipping.

3.    Mr. Lynch relied on the deposition testimony of well-coached witnesses, six years after the fact.

4.    Mr. Lynch's opinion, which is nothing more than a credibility determination, usurps the role of the jurors, rather than assisting them.

5.    Mr. Lynch, an accountant, is no more qualified to decide what evidence to believe than anyone on the jury.

6.    Mr. Grace is an economist, with a specialty in corporate governance. He is not an expert in law, gray marketing, the materiality of gray marketing, or the workings of the SEC.

1

7.    Grace's opinion on the materiality of gray marketing should be stricken because he is unqualified to testify about either gray marketing or materiality.

8.    Grace's analysis of materiality is not based on the *TSC Industries v. Northway, Inc.,* 426 U.S. 438 (1976) standard, and his method serves to confuse the jury rather than to enlighten them.

9.    Materiality is an issue ordinarily left to the fact finder. *In Re Adams Golf Sec. Litig.*, 381 F.3d 267, 274-75 n. 10 (3d Cir. 2004)

10.    Grace's opinions of what defendants did, as a business operational matter, to deal with gray marketing should be excluded because they are irrelevant to whether the gray marketing risk should have been disclosed.

11.    Grace's opinions that the Individual Defendants believed at the time of the IPO that the Registration Statement did not have any material misstatements or omissions should be stricken.

12.    Grace is neither a psychologist "or a mind reader". He admitted that he could not know what the Individual Defendants actually believed eight years ago when they signed the Registration Statement.

13.    Grace's testimony about the significance of the SEC allowing the Registration Statement to become effective should be stricken.

14.    Grace admits he is not an expert on the SEC or its operations, and Grace has no knowledge of what information the SEC had with regard to gray marketing at Adams Golf, at the time the Registration Statement became effective.

2

### INTRODUCTION

In *Daubert v. Merrell Dow Pharmacueticals Inc.*, 509 U.S. 579 (1993), the Supreme Court directed the district courts to perform a gatekeeping function in determining the reliability of scientific expert testimony. In this regard, courts should flexibly consider a number of factors, such as: (1) whether the technique or theory has been tested; (2) whether the technique or theory has been subjected to peer review and publication; (3) the qualifications of the expert witness testifying based on the methodology; and (4) the non-judicial uses to which the methodology has been put. *Id.* at 593 (setting forth first two factors listed above). *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 n. 8 (3d Cir. 1994) (identifying other relevant factors). In applying these factors, the court must "focus . . . solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

This list of factors is not exclusive, and each factor need not be applied in every case. Rather, the court must tailor its inquiry to the facts of each case and should consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony. *Material Techs., Inc. v. Carpenter Tech. Corp.*, 2005 U.S. Dist. LEXIS 32087 (D.N.J. 2005).

*Daubert's* general holding applies not only to scientific knowledge but to technical and other specialized knowledge as well. In *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court extended the district court's gatekeeping obligation from scientific

3

scientific evidence to encompass all expert testimony.[1] *Crowley v. Chait*, 322 F. Supp. 2d 530, 535 (D.N.J. 2004).

The Third Circuit has described the conditions imposed by Fed. R. Evid. 702 and *Daubert* as a "trilogy of restrictions on expert testimony: qualifications, reliability, and fit." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The qualification restriction permits the exclusion of an expert when his training or experience is lacking in the particular area in which his testimony is offered." *See Surace v. Caterpillar, Inc.*, 111 F.3d 1039, 1055-56 (3d Cir. 1997). The reliability restriction demands that the Court inquire into the principles and methodology employed by the expert. In order to satisfy this requirement, an expert's opinion must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation. *Schneider v. Fried*, *supra*, 320 F.3d at 404. *Daubert's* "fit" requirement, as defined in this Circuit, is "that the testimony must in fact assist the jury by providing it with relevant information necessary to a reasoned decision of the case." *Chait*, 322 Supp. 2d at 542. Of course, as an initial hurdle, the testimony must be relevant to an issue in the

case. *See Daubert*, 509 U.S. at 591 (stating Fed. R. Evid. 702 requires evidence or testimony to be relevant).

---

[1] The responsibility placed on the trial court to act as a gatekeeper reflects the court's concern that, unfettered, an expert witness may exercise undue and improper influence over a jury. And, as such, the court must test the reliability and relevance of an expert witness's proposed testimony before it is offered to the jury. *Kumho Tire*, 526 U.S. at 140-49.

## ARGUMENT

## I.     PART OF LYNCH'S OPINIONS MUST BE EXCLUDED

Defendants have offered the opinions of Edward Lynch, CPA, in an effort to disprove

plaintiffs' allegations concerning the practice of double shipping at Adams Golf (the

"Company") prior to the Company's Initial Public Offering ("IPO"). Mr. Lynch's "expert"

testimony on this issue amounts to nothing more than his subjective evaluation of the credibility

of carefully selected testimony offered by well-prepared, self-interested witnesses at deposition.

His proffered testimony is neither reliable nor helpful to the factfinder and usurps the essential

function of the jury. Even assuming *arguendo* that credibility determinations can sometimes fall

within an expert witness' purview, Mr. Lynch is unqualified to render such an opinion under

*Daubert* and its progeny, as he has no training or experience whatsoever in any relevant social

science. In addition, the evidence Mr. Lynch relies upon to reach his conclusion is inherently

unreliable. This portion of Mr. Lynch's opinions should be disallowed.

The expert opinion proffered here is insufficient under the Third Circuit restrictions on

expert testimony - - - qualification, reliability, and fit. *Schneider*, 320 F.3d at 405. First, Mr.

Lynch's testimony provides no relevant information beyond the knowledge of the layman to

assist the factfinder. Second, his opinion is based on scant, spoon-fed data and conflicting, and

thus inherently unreliable, testimony from Mr. Adams and other biased witnesses. Third, Mr.

Lynch is unqualified to render opinions in this area.

**A.      The proffered testimony should be excluded because it exceeds the scope of proper expert opinion and usurps the province of the jury.**

In concluding that plaintiffs' allegation of "questionable sales practices" including double

shipping is without merit, Mr. Lynch compared the contents of an August 14, 1998

memorandum drafted by Barney Adams (ADAMS 028451-028452)("Adams Memo")(Ex. A

attached hereto) the Company's CEO, to contradictory deposition testimony of Mr. Adams

and other present and former Company employees taken almost eight years after Adams

drafted the Adams Memo.  In the Adams Memo, Mr. Adams decried the existence of a variety

of problems within the Company's sales staff, including " ... cheating (at least in the form of

double shipments) ..."  Mr. Adams wrote in the Adams Memo that he had "researched this to

the point where I know there is enough truth that [the problems] have become reality."  *Id.*

The jury would have strong grounds to conclude that the  Adams Memo is damning for

defendants.  The jury could also reasonably be suspicious when, eight years after the Adams

Memo's drafting, self-interested Company employees and a former employee terminated from

his employment for questionable practices that included double shipping would testify –  after

preparation sessions with counsel  - that the Adams Memo really does not mean what it so

clearly says.  These witnesses would have every reason to attempt to clear the Company's and

the former employee's name and reputation, seeking to avoid liability.

In his "expert" report, (attached hereto as Ex. B), Mr. Lynch simply elects to favor the

credibility of deposition testimony elicited eight years after the fact, saying double shipping had

6

not occurred, over the contemporaneous Adams Memo, which said it had.[2]  Essentially,

Defendants attempt to use Mr. Lynch to repeat and summarize carefully selected deposition

testimony and to tell the jury to believe that testimony and disbelieve the Adams Memo.  This is

improper:

> [Witnesses] will [not] be permitted to simply summarize the facts and the
> depositions of others.  Such testimony comes "dangerously close to usurping
> the jury's function" and "implicates [Fed. R. Evid.] 403 as a 'needless
> presentation of cumulative evidence' and a 'waste of time.'" *United States v.
> Dukagjini*, 326 F.3d 45, 54 (2d Cir. 2003); *see also Salas v. Carpenter*,
> 980 F.2d 299, 305 (5th Cir. 1992)("Stated more directly, the trial judge ought
> to insist that a proffered expert bring to the jury more than the lawyers can offer
> in argument."); *SEC v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill.
> 1999)("Expert testimony may not be used merely to repeat or summarize what
> the jury independently has the ability to understand.")  . . .  Finally, no expert . .
> . will be permitted to opine on the credibility or consistency of other's
> testimony.  Listening to testimony and deciding whether it is contradictory is the
> quintessential jury function of determining credibility of witnesses.  An expert
> may not substitute his judgment for the jury's.  When this occurs, the expert
> acts outside of his limited role of providing the groundwork in the form of an
> opinion to enable the jury to make its own informed determinations.

*Chait*, 322 F. Supp. 2d at 553-54 (citations omitted). (emphasis added).

The Adams Memo and the subsequent deposition testimony are clearly at odds.

Evaluating the weight and credibility to be given to the content of these disparate forms of

evidence is "a quintessential jury function." *Lipson*, 46 F. Supp. 2d at 763.  The importance of

the jury's independent judgment, free of "'expert'" interference, is magnified in this case

---

[2]It is not only the Adams Memo that Mr. Lynch elects to discount on credibility grounds
in reaching his conclusion--Mr. Lynch even dismisses a written, contemporaneous, and scathing
complaint about double shipping from a disgruntled Adams retailer.  Mr. Lynch does so  simply
because Mr. Greanay (the alleged double shipper) attributed the issue to a "possible system
problem."(Ex. B,  p.10) Again, determining the weight and credibility of this testimony is solely
within the jury's province.

because the inconsistency of the testimony in question primarily casts doubt upon the credibility

of Mr. Adams, a defendant and one of the central figures in this litigation.

Further, the allegation of "double shipping" refers to the Company's pre-IPO practice

of shipping Adams's Tight Lies golf clubs in numbers greater than those ordered by retailers

and/or distributors. This alleged practice is conceptually straight forward. The allegation is not

couched in dense technical accounting terminology, nor is it in any other way beyond the

comprehension of the average juror.

### B. The proffered testimony is unreliable.

"It is axiomatic that the information upon which an expert bases his opinion must be

reliable." *Chait*, 322 F. Supp. 2d. at 546. As discussed above, Mr. Lynch relies upon

contradictory testimony from Mr. Adams (and others) as a basis for concluding that double

shipping as alleged by plaintiffs did not occur before the IPO . The unreliability of this

conflicting evidence speaks for itself- - it is for the jury to determine the weight and credibility of

evidence, not an accountant.

At  deposition, Mr. Lynch testified that he looked at "maybe 15 to 25" audit

confirmations received by KPMG (the Company's auditor) from the Company's retailers in

1998 (Ex. G., p. 106).[3] Because these particular confirmations were silent as to double

shipping, Mr. Lynch concluded that double shipping had not occurred. However, "15 to 25"

retailers is but a very small percentage of the Company's retailers, and the confirmations do not

---

[3]The relevant portions of the Lynch Deposition are attached as Exhibit C.

ask about double shipping, but merely ask whether Adams's figures on the amount the

customer owes Adams is correct.[4] How this smattering of irrelevant confirmations forms a

reliable basis to conclude that double shipping was not occurring, defendants cannot say. The

unreliability of this undefined, incomplete investigative 'method' used by Mr. Lynch is

illustrated by the fact that at his deposition he was unfamiliar with WDC Mackenzie, Adams

Golf's exclusive distributor in Canada (the Company's largest international market in 1998) and

a "Top 10" customer during the relevant period. (Lynch Dep. p. 105.) Like other retailers

and distributers. WDC Mackenzie experienced double shipping before the IPO. (Magnussen,

Dep. pp.31-32, Ex. E).

### C.    Mr. Lynch is unqualified to render his opinion.

It is well settled that credibility determinations between competing or contradictory

evidence are reserved exclusively for the factfinder, and are not proper subjects of expert

commentary. However, even assuming that credibility determinations by an expert witness are

permissible as a basis for an expert opinion, Mr. Lynch, a CPA with no training in psychology

or other discipline related to human behavior (Ex. B. p. 2), is not qualified to provide an expert

opinion on a witness's mental state, motivations, or credibility. Mr. Lynch's dearth of

qualifications to render his opinion is exacerbated by the fact that he was not present at any of

the cited depositions to evaluate the witness's demeanor, nor did he even interview any

deponent other than Darl Hatfield, the Company's former Chief Financial Officer. (Ex. C., pp.

---

[4]A sample of the confirmations is attached as Exhibit D.

91-92). Accordingly, Mr. Lynch's unqualified, unreliable opinion on this matter serves no purpose, is improper, and should be disallowed.

## II.    PARTS OF GRACE'S OPINIONS MUST BE EXCLUDED

Defendants offer the testimony of H. Stephen Grace, Jr., Ph.D on a wide variety of issues well beyond his original charge to "to provide an opinion regarding the nature of the roles, responsibilities and actions taken or omitted by the Individual Defendants in connection with the allegations in the complaint ..." (Grace Report, attached as Ex. F. p. 5.) Plaintiffs seek to preclude Grace from testifying about some of these issues, where he is not qualified to testify, where his opinions are not reliable or relevant and where his testimony does not assist the trier of fact.

Dr. Grace concluded that "there were no misleading statements or omissions connected with the Registration Statement and the Prospectus". (Ex. F. p. 9.) and that "at the time of the IPO the Individual Defendants made a reasonable investigation, which provided them with reasonable grounds to believe, and they did believe, that the Registration Statement and Prospectus, including the risk disclosures were complete and true." *(Id.)* Grace also opines that the Individual Defendants "had no reasonable ground to believe and did not believe at the time that it contained any misstatements or omissions." *(Id.)* In his summary conclusion, Dr. Grace opines that " ... after their reasonable investigation, [the Officers and Directors] had reasonable grounds to believe and did believe at the time the Registration Statement became effective that it did not contain any material misstatements or omit any material facts. *(Id.* at p. 5.) In his rebuttal report, (attached as Ex. G.), Dr. Grace opines that the Individual Defendants

"addressed their responsibilities appropriately, and within customary and normal business guidelines ..." (Ex. G. p. 2). Grace also concludes that the Individual Defendants and the Company "understood gray market issues ... and their attendant effects, and they were diligent and timely in monitoring and addressing the gray market issues ..." *Id.*, p. 2.

Plaintiffs seek to exclude or strike certain parts of these opinions, specifically:

1.    Grace's opinions based on the materiality of gray marketing.

2.    Grace's opinion that the Individual Defendants "did believe" that the Registration Statement and Prospectus were true and did not contain any omissions.

3.    Grace's opinion that the Company and the Individual Defendants were "diligent and timely in monitoring and addressing the gray market issues" and took appropriate steps to investigate the gray marketing problem.

4.    Grace's opinion that SEC action (or inaction) regarding the Registration Statement's becoming effective ensured that Adams was in complete compliance with the Federal Securities laws and fully disclosed the risks. (Grace Dep. p. 217, attached hereto as Ex. H.)

Dr. Grace has an M.B.A. and a Ph.D in Economics. He considers himself to be an expert in "Corporate Governance," which he defines as "the roles of various parties involved in the management and the governance of businesses." (Ex. H. p. 6.) Accordingly, he was retained to opine about the roles of defendants and their actions in connection with the IPO. Grace is not a lawyer or an expert in gray marketing. (Ex. H. pp. 217-20, 257, 130, 249-50.) Further, he has no special expertise or training to make him qualified to conclude what persons

11

subjectively believed.  Finally, he has no expertise in materiality as it applies to Sections 11 and

admits he has no expertise in dealing with the SEC or SEC procedures.  (Ex. H. pp. 12, 39-41,

217-20.)

### A.    Grace's Testimony about materiality should be excluded.

Grace has made no analysis of what would have been important to a reasonable person

in making a decision whether or not to buy a stock.  (Grace Report Ex. F.  p. 39)  He seems to

have no idea how to define materiality.  For instance, he said at his deposition, "Our whole

focus inside this diligence process was how this Costco thing was treated, because that's what

drove .. . the issue about whether it was material or not material (Ex. H. pp. 68-69.)  Indeed,

he "was not asked to be a materiality expert on the gray market issue.".  (Ex. H. pp. 166-67,

139, 37, 157), and agreed he had "no special expertise with regard to SEC disclosure

requirements."

### 1.    Grace is not qualified to testify about materiality

Although Grace does not have any knowledge or expertise in materiality as the term is

defined by cases such as *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 499 (1976), and

*In re Adams Golf, Inc. Sec. Litig.*, 381 F. 3d. 267, 275 n.8 (3d Cir. 2004), his testimony and

reports are riddled with opinions on materiality.  He testified that defendants took actions with

respect to Costco — because it was "important" for them to deal with Costco – but that the

Costco issues were not "material."  For instance, Grace says "I think there is no doubt that they

(Adams officers) thought [the gray market issue] was an important issue, but not necessarily

that it was a material issue."  (Ex. H. pp. 196, 198-99, 234-39.)  He never explains why it is

"important" but not "material," or what the difference (if any) between these two concepts might be. Grace lacks the expertise or experience to testify that even if gray marketing was "important" it was not "material", especially since Grace also does not have the requisite expertise in gray marketing. Accordingly, based on his lack of qualifications in both materiality and gray marketing, Grace should be precluded from opining on the materiality of the misstatements and omissions in the Registration Statement and Prospectus.

2.     <u>Grace's opinions on materiality lack reliability</u>

Grace's unreliable opinions on materiality should be excluded. Grace never defines "materiality,"never explains his criteria for using the word "material," and never analyzes what a reasonable stockholder would have found important. He testifies that gray marketing was not material because management addressed the problem appropriately, but never explains why the ineffectual measures that management took rendered the risk immaterial. He reviews certain of the information known or knowable about gray marketing before the IPO, but fails to demonstrate that if a reasonable investor had known of all that information, he would have found it unimportant. Grace fails entirely to analyze whether the sum total of the information would have been important to a stock buyer.

3.     <u>Grace's opinions on materiality will not assist the jury</u>

Materiality is ordinarily an issue of fact for the jury. *See In re Adams Golf*, 381 F.3d at 274-75. A jury can tell what would have been important to a reasonable investor as well as Grace can, who, as noted, lacks relevant expertise. Thus, Grace's opinions on materiality of gray marketing fail to assist the trier of fact. They do not explain materiality, nor do they

provide any analysis to help the trier of fact put the facts together to test whether that mass of

data would be enough to make the omission of gray marketing risk material. (*See* Ex. G. p.

63) In a word, Grace's opinions on materiality are merely based on what he thinks. (*See* Ex.

G. pp. 51, 137) *Calhoun v. Yamaha*, 350 F.3d 316, 321 (3d Cir. 2003) (expert must have

"good grounds" for his belief). A jury should be permitted to make that analysis for itself.

Thus, the Court should exclude all of Grace's opinions about the materiality of gray marketing.

**B.      Grace should not be permitted to testify about what defendants
did to combat or deal with Costco**

Grace should not be permitted to opine on the irrelevant issue of whether the individual

defendants addressed their business or operational responsibilities to deal with gray marketing

appropriately, were diligent and timely in reacting to Costco, or took appropriate steps to

combat gray marketing and the like. The major issue in this case is whether the Registration

Statement was materially false and misleading in failing to warn of the risks of gray marketing.

That Adams Golf officers were concerned enough to write Costco (to no avail), to file a bill of

discovery against Costco (which was dismissed) and to put in place an entirely inadequate price

matching program in Canada (Ex. G) all tend to support the conclusion that the risk of gray

marketing was material. But turning such facts around to opine that Adams's officers dealt

appropriately with the Costco problem is simply irrelevant. It sheds no light on either the

individual defendants' due diligence in preparing the Registration Statement, or their alleged

belief that the Registration Statement was true and correct.

14

For example, if a child has measles, a parent cannot bring the child to school without warning of this fact and say simply that the child has received proper medical care. The parent still must warn of the measles risks no matter how appropriate his efforts to deal with the disease. Likewise, what officers of the Company did to try to combat gray marketing has nothing to do with disclosure of the risk of gray marketing. Accordingly, as gate keeper, the Court should not allow Grace to render the irrelevant opinion that Adams Golf officers dealt "appropriately" with the gray marketing problem, especially since there is no evidence from before or after the IPO that any of the allegedly "appropriate" steps that management took had any effect at all on the problem.

Grace also opines that Adams Golf, the Company, was diligent and timely in monitoring and addressing gray market issues. Not only is this opinion irrelevant as explained above, it is also irrelevant because the Company, under the 1933 Act, is strictly liable for material misstatements. No amount of due diligence and innocent belief can exonerate the Company under Sections 11 and 12. *In re Adams Golf*, 381 F.3d at 273-75. *See* 15 U.S.C.A. 77k(b) (providing exceptions to liability under Section 11 for all participants "other than the issuer"). Accordingly, Grace should not be permitted to testify about any due care, timeliness, or appropriate behavior on the part of the Company, as opposed to the Individual Defendants, since the Company is strictly liable for material misstatements and omissions under Section 11, and therefore the testimony is irrelevant.

**C.    Grace's testimony about defendants' belief should be stricken**

Grace concludes, as an expert, that the Individual Defendants believed at the time the

Registration Statement became effective that it did not contain any material misstatements or

omit any material factors." (*See* Ex. F. pp. 529.)  Grace does not have any expertise to find

out or to know what an individual believed eight years ago.  He is not competent to "get inside

someone", as he admits.  (Ex. H. p. 145.)  Asked "when you opine as to what Individual

Defendants did believe, you don't really know what they did believe at the time they signed the

Registration Statement.  You are not so opining," Grace replied, "No, I'm not opining about

that."  (Ex. H. pp. 146,185-86.)  Thus, Grace should be precluded from testifying about what

any defendant believed when he signed the Registration Statement.  The jury will see each

defendant, listen to each, and then decide whether or not that individual really believed after

purported due diligence that gray marketing was not a material risk as of July 1998.  A jury

does not need an expert who has read depositions and reviewed documents, but not seen or

heard in-person testimony, to give an expert opinion on what a defendant actually believed.

*Chait*, at 553-54 (quoted at page 5 above).  Accordingly, Grace should not be permitted to

render any opinions on what defendants believed.

**D.    Grace is not qualified to testify about the SEC or it procedures**

Finally, Grace testified about the meaning of the SEC allowing the Registration

Statement to become effective, but admits that he is not an expert with regard to the SEC or

SEC procedure.  (Ex. H. p. 217.)  Thus, all Grace's opinions about the SEC allowing the

Registration Statement to become effective must be stricken because Grace has neither training

nor experience sufficient to help the jury understand the issue, nor does he know what

information the SEC had about gray marketing when it allowed the Registration Statement to

become effective.

## CONCLUSION

WHEREFORE, for all the reasons discussed herein, the contested portions of

Lynch and Grace's opinions and testimony should be disallowed.

Dated:  September 11, 2006

**ROSENTHAL, MONHAIT & GODDESS, P.A.**

**By:**  *Carmella P. Keener*

Carmella P. Keener (DSBA No. 2810)
919 Market Street, Suite 1401
Wilmington, DE. 19801
(302) 656-4433
ckeener@rmgglaw.com
*Liaison Counsel for Plaintiffs and the Class*

**BERGER & MONTAGUE, P.C.**
Todd Collins
Elizabeth Fox
Neil Mara
1622 Locust Street
Philadelphia, PA. 19103
(215) 875-3000
*Lead Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I, Carmella P. Keener, hereby certify that on this 11th day of September, 2006, I caused **PLAINTIFFS' OPENING BRIEF IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF EDWARD LYNCH, C.P.A. AND STEPHEN GRACE M.B.A., PH.D.** to be served by hand delivery upon the below-listed Delaware counsel of record and to be electronically filed with the Clerk of Court using CM/ECF, which will send notification of such filing to the following:

Jeffrey L. Moyer, Esquire
Alyssa M. Schwartz, Esquire
Richards, Layton & Finger
One Rodney Square
Wilmington, DE 19801

John E. James, Esquire
Brian C. Ralston, Esquire
Potter, Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE 19801

In addition, a copy has been served by electronic mail upon the following:

Theodore J. McEvoy, Esquire
Michael J. Chepiga, Esquire
Elaine Divelbliss, Esquire
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
Email: tmcevoy@stblaw.com
Email: mchepiga@stblaw.com
Email: edivelbliss@stblaw.com

Paul R. Bessette, Esquire
Akin, Gump, Strauss, Hauer & Feld LLP
Three Embarcadero Center, Suite 2800
San Francisco, CA 94111-4066
Email: pbessette@akingump.com

Jennifer R. Brannen, Esquire
Akin, Gump, Strauss, Hauer & Feld, LLP
300 West 6th Street, Suite 2100
Austin, TX 78701-2916
Email: jbrannen@akingump.com

/s/ Carmella P. Keener
Carmella P. Keener (DSBA No. 2810)
ROSENTHAL, MONHAIT & GODDESS, P.A.
919 N. Market Street, Suite 1401
Wilmington, DE 19801
(302) 656-4433
ckeener@rmgglaw.com