EXHIBIT 423

2801 East Plano Parkway
Plano, Texas 75074
www.AdamsGolf.com
FAX: 972-398-8818
800-622-0609
Tel: 972-673-9673



*From the desk of*
**B.H. (Barney) Adams**

BHA

# *Memo*

To: Paul Brown, Roland Casati, Finis Conner, Skip Corn, Dick Murtland

Date: April 2, 1998

RE: D/O QUESTIONNAIRES

The enclosed questionnaires have been prepared by Arter & Hadden for distribution to the Company's directors, nominees for directors, executive officers, nominees for executive officers, and officers other than executive and five percent stockholders.

Each respondent is requested to answer only those questions relating to his or her status with the Company. If you have any questions when completing, please feel free to contact either Joe Hoffman or David Washburn at Arter & Hadden.

The requested return date on the questionnaire is April 6. However, that date has been revised and we request that these be returned no later than Friday, April 10.

BHA:afn

enc.

ADAMS 045620

# ARTER & HADDEN LLP

## MEMORANDUM

<u>VIA UPS (Monday Delivery)</u>

TO:        James E. Farrell

FROM:    J. David Washburn

DATE:     March 27, 1998

FILE NO.:  69168/77308

RE:         D/O Questionnaires

---

    I have prepared the enclosed Questionnaires to be distributed to the Company's directors, nominees for directors, executive officers, nominees for executive officers, officers (other than executive officers) and five percent plus stockholders. Specifically, we have prepared Questionnaires for the following:

| | |
|---|---|
| B. H. (Barney) Adams | Walter DeVault |
| Richard Murtland | ~~Bob Dun~~ |
| James Farrell | Royal Holding Company, Inc. |
| Roland Casati | Mark Gonsalves |
| Steve Patchin | Steven Sanazaro |
| Paul Brown | Cindy Herington |
| Skip Corn | Darl Hatfield |

*f̄ṅ̇ĭṫ CONNOR*

    I have also included five (5) blank Questionnaires to be distributed to the "new" directors, in case the Company elects to put them in place before the offering. Additionally, to the extent you know of any person or group of persons who could be deemed beneficial owners of 5% or more of the Company's Common Stock (for instance, Clyde and Peggy Smith if they are related to, or otherwise acting in concert with, other stockholders), you should also request that they complete a Questionnaire.

    Please notice that each respondent is requested to answer only those questions relating to his or her status with the Company. An issue of concern here generally is the distinction between an "officer" and "executive officer." The SEC has stated that the term "executive officer" means an issuer's President, any Vice President in charge of a principal business unit, division or function (such as sales, administration or finance) and any other officer or person who performs a policy-making function. To coincide with the executive compensation disclosure rules, this generally includes at least the CEO and each of the four (4) other most highly compensated individuals. We should talk about this again if you have any questions whatsoever concerning the

ADAMS 045621

status of any one or more persons. Remember, all officers (whether or not executive officers) are required to file Forms 3, 4 and 5 once the Company goes public.

Please distribute the Questionnaires as soon as possible. I have requested that they be returned to me no later than April 6, 1998; however, if you desire, you can have them returned to you, copied and then sent on to me in one package. It's up to you. I have noted in the Questionnaires that if the respondents have any questions to call either Joe or me. Please encourage them to do so. We have found that it is much easier to answer questions the first time than try to sort out incomplete or inappropriate answers on the back end.

Naturally, do not hesitate to call me with any questions.

cc:    Joseph A. Hoffman, Esq.

ADAMS 045622

<u>CONFIDENTIAL</u>

TO: _____                    March 15, 1998

PLEASE COMPLETE, DATE, SIGN AND RETURN ONE COPY OF THIS QUESTIONNAIRE TO ARTER & HADDEN LLP, C/O J. DAVID WASHBURN, ESQ., 1717 MAIN STREET, SUITE 4100, DALLAS, TEXAS 75201 AS SOON AS PRACTICABLE, AND IN NO EVENT LATER THAN APRIL 6, 1998.

## QUESTIONNAIRE FOR DIRECTORS, OFFICERS AND FIVE PERCENT STOCKHOLDERS OF ADAMS GOLF, INC.

This Questionnaire is being submitted to each person who was an executive officer or director of Adams Golf, Inc. (the "Company"), at any time since the beginning of the Company's <u>last</u> fiscal year even if that person is no longer an executive officer or director, persons nominated to become an executive officer or director and officers who are not executive officers. This Questionnaire is also being sent to persons who are more than five percent (5%) stockholders of the Company. The information supplied in response to this Questionnaire will be used to prepare a Registration Statement on Form S-1 to be filed with the Securities and Exchange Commission (the "Commission") under the Securities Act of 1933, as amended, in connection with a possible initial public offering by the Company. NO ANNOUNCEMENT HAS BEEN MADE CONCERNING THE PROPOSED PUBLIC OFFERING. THE FEDERAL SECURITIES LAWS REQUIRE THAT THIS MATTER BE KEPT IN THE STRICTEST OF CONFIDENCE.

The table below indicates which numbered Questions you must answer based upon your designation(s) with respect to the Company:

| Director (or Nominee for Director) | Executive Officer (or Nominee for Executive Officer) | Officer but not Executive Officer | Five Percent Stockholder |
|---|---|---|---|
| 1 | 1 - 7 | 1(a), (d) | 1(a), (d) |
| 8 - 20 | 10 - 19 | 10 | 10 - 12 |
| | | 16 - 19 | 16 - 19 |

The information you supply in response to this Questionnaire will be used to assure that certain data to be included in the Registration Statement will be correct. Accordingly, you are requested to respond to the inquiries made in this Questionnaire very carefully. Officers who sign the Registration Statement, directors (whether or not they sign the Registration Statement), and under certain circumstances officers and large stockholders who do not sign the Registration Statement are subject to personal liability if the Registration Statement misrepresents a material fact or omits a material fact. Your best defense, if the Registration Statement were defective, is that you exercised due diligence as to the accuracy of the Registration Statement.

Please refer to the Glossary attached as Appendix A to this Questionnaire for explanations and definitions of terms underlined and marked with an asterisk. These definitions are of vital importance in assisting you to complete the Questionnaire properly.

Information will be required about the Company and/or its subsidiaries*. For purposes of this Questionnaire, any current subsidiary* of the Company should be considered a subsidiary* of the Company for the relevant time period in question. Consequently, information concerning a subsidiary* should be disclosed for the relevant time period about the subsidiary* whether or not such subsidiary* was at all times during such period a subsidiary* of the Company. Except where the context otherwise requires, all references herein to the Company shall include each of its subsidiaries.

If the answer to any Question is in doubt or you are uncertain whether any interest in any transaction is material and should be reported herein, please set forth appropriate facts so that we may consult with you as to the proper facts and disclosures. If there is insufficient space for providing an answer to any Question, please set forth the answer on a separate sheet and attach it to the Questionnaire.

Information requested in the Questionnaire is as of March 15, 1998, unless otherwise indicated. If at any time you discover that your answer to any Question was inaccurate, or if any event occurring subsequent to your completion of this Questionnaire would require a change in your answers to any Questions, please contact either Joseph A. Hoffman, Esq. or J. David Washburn, Esq. of Arter & Hadden LLP immediately, at (214) 761-2100.

**QUESTION 1 [S-K Item 401]**

Please state below:

(a)    Full name: _____

(b)    Date of birth: _____

(c)    Citizenship: _____

(d)    Complete business and residence mailing addresses and telephone numbers:

Business                                        Residence

_____          _____
_____          _____
_____          _____
_____          _____

(e)    State all positions and offices with the Company or any of its <u>subsidiaries</u>* now held by you including memberships on any Committees of the Board of Directors:

Position, Office or Committee

_____          _____
_____          _____
_____          _____
_____          _____
_____          _____

(f)    State your term of office as a director or executive officer of the Company and any periods during which you have served as a director or executive officer of the Company:

_____
_____
_____
_____

(g)    Please identify any directorships held by you in any public company that has a class of securities registered with the Commission pursuant to Section 12 or Section 15 of the Securities

ADAMS 045625

Exchange Act of 1934, as amended, or any company registered as an investment company under the Investment Company Act of 1940, and the name of each such company [S-K Item 401(e)(2)]:

Name of Entity:

_____

_____

_____

_____

(h)    Indicate any employment contract or any arrangement or understanding between you and any other person or persons pursuant to which you were or are to be selected as a director or executive officer of the Company or a nominee for a directorship of the Company:

_____

_____

_____

_____

(i)    Describe the nature of any family relationship* between you and any other director, executive officer*, or person nominated or chosen by the Company to become a director or executive officer of the Company or any of its subsidiaries*, and identify each such person:

_____

_____

_____

_____

(j)    A brief account of your business experience since January 1, 1993, including your principal occupations and employment during that period, the name and principal business of any corporation or other organization in which such occupations and employment were conducted, and whether such corporation or organization is a parent*, subsidiary*, or other affiliate* of the Company. If you have been employed by the Company or its subsidiaries* for less than five (5) years, describe briefly the nature of the responsibilities undertaken by you in such prior positions.

| Position Held | Name of Company | Nature of Business | Period of Period | Explanation of the Nature of Responsibilities |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

ADAMS 045626

(k)     Whether, since January 1, 1993:

(1)     A petition under the Federal bankruptcy laws or any state insolvency law was filed by or against, or a receiver, fiscal agent or similar officer was appointed by a court for you, your business or property, any partnership in which you were a general partner at or within two (2) years before the time of such filing, or any corporation or business association of which you were an <u>executive officer</u>* at or within two (2) years before the time of such filing;

Yes _____  No _____

(2)     You were convicted in a criminal proceeding or are a named subject of a pending criminal proceeding (excluding traffic violations and other minor offenses);

Yes _____  No _____

(3)     You were the subject of any order, judgment or decree, not subsequently reversed, suspended or vacated, of any court of competent jurisdiction permanently or temporarily enjoining you from, or otherwise limiting, the following activities:

(i)     acting as a futures commission merchant, introducing broker, commodity trading adviser, commodity pool operator, floor broker, leverage transaction merchant, any other person regulated by the Commodity Futures Trading Commission, or an associated person of any of the foregoing, or acting as an investment adviser, underwriter, broker or dealer in securities, or as an affiliated person, director or employee of any investment company, bank, savings and loan association or insurance company, or engaging in or continuing any conduct or practice in connection with such activity;

Yes _____  No _____

(ii)     engaging in any type of business practice; or

Yes _____  No _____

(iii)     engaging in any activity in connection with the purchase or sale of any security or commodity or in connection with any violation of Federal or state securities laws or Federal commodities laws;

Yes _____  No _____

(4)     You were the subject of any order, judgment or decree, not subsequently reversed, suspended or vacated, of any Federal or state authority barring, suspending or otherwise limiting for

---

ADAMS 045627

more than sixty (60) days your right to engage in any activity described in subparagraph (3)(i) above, or to be associated with persons engaged in any such activity;

Yes _____ No _____

(5)    You were found by a court of competent jurisdiction in a civil action or by the Commission to have violated any Federal or state securities law, and the judgment in such civil action or finding by the Commission has not been subsequently reversed, suspended or vacated, or

Yes _____ No _____

(6)    You were found by a court of competent jurisdiction in a civil action or by the Commodities Futures Trading Commission to have violated any Federal commodities law, and the judgment in such civil action or finding by the Commodities Futures Trading Commission has not been subsequently reversed, suspended or vacated.

Yes _____ No _____

(l)    Whether, since January 1, 1993, you were a participant in any settlement agreement, release, compromise or other such type of arrangement or disposition arising out of or related to any activity described in subparagraph (k) above.

Yes _____ No _____

(m)    Whether you are currently the subject of any pending or threatened lawsuit, investigation, proceeding or claim arising out of or related to (i) any activity described in subparagraph (k) above or (ii) an alleged breach of fiduciary duty, breach of trust or self-dealing.

Yes _____ No _____

If you answered "Yes" to the foregoing Question, please explain the circumstances in detail on a separate sheet of paper.

(n)    If applicable, do you consent to being named as director and/or executive officer* of the Company in the documents to be filed with the Commission?

Yes _____ No _____

## QUESTION 2 [S-K Item 402(b)]

This Question requests certain information with respect to all compensation and remuneration* paid to you (or to third parties if the purpose is to provide remuneration* to you) by the Company during fiscal 1995, 1996 and 1997 for all services rendered in all capacities. It is

divided into several parts, addressing different types of cash and noncash remuneration*. Please read each section of the Question carefully before answering.

(a)    General. Please state below:

(1)    Your principal position (with the Company or any of its subsidiaries*) at the end of each fiscal year indicated:

| Position | At End of Fiscal |
|---|---|
| _____ | 1997 |
| _____ | 1996 |
| _____ | 1995 |

(2)    Whether or not any portion of your compensation during the fiscal years ended December 31, 1995, 1996 and 1997 relates to either (i) the distribution or accrual of an unusually large amount of cash compensation (such as a bonus or commission) that is not part of a recurring arrangement and is unlikely to continue; or (ii) the payment of amounts of cash compensation relating to overseas assignments that may be attributed predominantly to such assignments.

Yes _____    No _____

If you answered "Yes" to the foregoing Question, please explain the circumstances in detail on a separate sheet of paper.

(b)    Base Salary. Please provide the following information for any and all cash and non-cash base salary EARNED by you during the fiscal years ended December 31, 1995, 1996 and 1997 from the Company, or from any of its subsidiaries* or from any other source in compensation for your services to the Company or any of its subsidiaries*. Please itemize separately salary paid during any one fiscal year for services rendered in prior years. Amounts deferred at your election, whether pursuant to a plan* established under Section 401(k) of the Internal Revenue Code, or otherwise, shall be included here or in Section (c) below, as appropriate, for the fiscal year in which it was earned. If the amount of base salary or bonus earned in a given fiscal year is not calculable through the latest practicable date, please indicate this fact here and explain the circumstances on a separate sheet of paper.

Note: For stock or any other form of non-cash compensation, disclose the fair market value at the time the compensation was awarded, earned or paid and separately indicate such fact. You need not include under base salary (this Section) or bonus (Section (c) below) any amount of salary or bonus foregone at your election pursuant to a program under which stock, stock-based or other forms of non-cash compensation may be received by you in lieu of a portion of annual compensation earned in a covered fiscal year. However, the receipt of any such form of non-cash compensation in lieu of salary or bonus earned for a covered fiscal year must be specifically

ADAMS 045629

disclosed in the appropriate section below (i.e.: restricted stock awards - Section (e)(1); option or SARs* - Section (e)(5); all other compensation - Section (f); or, if made pursuant to a long-term incentive plan* - Section (e)(6)). If you were a participant in such a program, please explain the circumstances in detail on a separate sheet of paper.

| Fiscal Year | Base Salary ($) | Source of Payer and Description |
|---|---|---|
| 1997 | | |
| | | |
| | | |
| Total | | |
| 1996 | | |
| | | |
| | | |
| Total | | |
| 1995 | | |
| | | |
| | | |
| Total | | |

If there is insufficient space for providing an answer to this Question, please set forth the answer, in detail, on a separate sheet of paper.

(c)    Bonus.  Please provide the following information for any and all cash and non-cash bonus EARNED by you during the fiscal years ended December 31, 1995, 1996 and 1997 from the Company, or from any of its subsidiaries* or from any other source in recognition of your services to the Company or any of its subsidiaries*. Please note and itemize separately bonuses paid during any one fiscal year for services rendered in prior years.

| Fiscal Year | Bonus($) | Source of Payer and Description |
|---|---|---|
| 1997 | | |
| | | |
| Total | | |
| 1996 | | |
| | | |
| Total | | |

ADAMS 045630

1995      _____     _____

          _____     _____

Total     _____     _____

(d)     Other Annual Compensation.  Please provide the following information for any and all cash and non-cash compensation not otherwise properly categorized as salary or bonus EARNED by you or your associates* during the fiscal years ended December 31, 1995, 1996 and 1997 from the Company, or from any of its subsidiaries* or from any other source in recognition of your services to the Company or any of its subsidiaries*.  Specifically, please provide information with regard to (1) perquisites and other personal benefits, securities or properties; (2) above market or preferential earnings on restricted stock, options, stock appreciation rights* or deferred compensation paid during the fiscal year or payable during that period but deferred at the election of you; (3) earnings on long-term incentive plan* compensation paid during the fiscal year or payable during that period deferred at your election; (4) amounts reimbursed during the fiscal year for the payment of taxes; and (5) the dollar value of the difference between the price paid by you or an associate* for any security of the Company or its subsidiaries* purchased from the Company or its subsidiaries* (through deferral of salary or bonus, or otherwise), and the fair market value of security at the date of purchase, unless that discount is available generally, either to all security holders or to all salaried employees of the Company.

| Description of Benefit | Recipient of Benefit | Indicate Fiscal Year Paid or Received | Estimated Value of Benefit to Recipient (1) | Company's Actual Cost of Providing Benefit |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

(1)     In estimating the value of a benefit to you or to an associate*, include only that portion of the benefit that is personal rather than business in nature.  A benefit is personal in nature if it is not directly related to job performance.

If there is insufficient space for providing an answer to this Question, please set forth the answer, in detail, on a separate sheet of paper.

(e)     Long-Term Compensation.

(1)     Restricted Stock Awards.  Please state below the number of shares of any award to you or purchase by you of restricted stock during fiscal years ended December 31, 1995, 1996 and 1997, if any, and the amount of any consideration paid by you for such shares:

ADAMS 045631

| Fiscal year Ended | Aggregate Number and Title of Security | Consideration Paid ($) |
|---|---|---|
| 1997 | _____ | _____ |
| 1996 | _____ | _____ |
| 1995 | _____ | _____ |

(2)    Please indicate the number of restricted shares held by you at December 31, 1997:

#    _____

(3)    Specify the vesting schedule for all restricted shares held by you.

_____

_____

(4)    Are you entitled to receive dividends, if any, on your restricted shares?

Yes _____        No _____

(5)    *Stock Options/SAR's\**.  Please state below the number of stock options (with or without tandem stock appreciation rights\*), and the number of freestanding stock appreciation rights\* granted to you during fiscal years ended December 31, 1995, 1996 and 1997, if any.

| | Number | |
|---|---|---|
| Fiscal Year Ended | Stock Options | Freestanding SARs* |
| 1997 | _____ | _____ |
| 1996 | _____ | _____ |
| 1995 | _____ | _____ |

(6)    *LTIP Payouts*.  Please state below the dollar value, if any, of all payouts pursuant to any long-term incentive plan\* received during the fiscal years ended December 31, 1995, 1996 and 1997.

| Fiscal Year Ended | Long-Term Incentive Plan* Payout ($) |
|---|---|
| 1997 | _____ |
| 1996 | _____ |
| 1995 | _____ |

(f)    All Other Compensation.  Please provide the following details about all other compensation received by you during fiscal years ended December 31, 1995, 1996 and 1997, not otherwise reported above.

ADAMS 045632

| Fiscal Year | Other Compensation ($) | Source and Description of Payment(s) |
|---|---|---|
| 1997 | _____ | _____ |
|  | _____ | _____ |
| Total | _____ | _____ |
| 1996 | _____ | _____ |
|  | _____ | _____ |
| Total | _____ | _____ |
| 1995 | _____ | _____ |
|  | _____ | _____ |
| Total | _____ | _____ |

**Note**: Any compensation reported in section (f) above for the fiscal year ended 1997 must be specifically identified and quantified below. Such compensation shall include, but not limited to:

    (1)    The amount paid, payable or accrued pursuant to a plan or arrangement in connection with:

        (i)    The resignation, retirement or any other termination of your employment with the Company or its subsidiaries*; or

        (ii)    A change in control of the Company or a change in your responsibilities following such change in control.

    (2)    The dollar value of above-market or preferential amounts earned on restricted stock, options, stock appreciation rights* or deferred compensation during the fiscal year, or calculated with respect to that period, except that if such amounts are paid during the period, or payable during the period but deferred at your election, this information shall be reported as Other Annual Compensation under Section (d) above;

    (3)    The dollar value of amounts earned on long-term incentive plan* compensation during the fiscal year, or calculated with respect to that period, except that if such amounts are paid during that period, or payable during that period at your election, this information shall be reported as Other Annual Compensation under section (d) above;

    (4)    Annual Company contributions or other allocations to vested and unvested defined contribution plans; and

ADAMS 045633

(5)    The dollar value of any insurance premiums paid by, or on behalf of, the Company during the covered fiscal year with respect to term life insurance for your benefit, and, if there is any arrangements or understanding, whether formal or informal, that you have or will receive or be allocated an interest in any cash surrender value under the insurance policy, either:

    (i)    the full dollar value of the remainder of the premiums paid by, or on behalf of, the Company; or

    (ii)    if the premiums will be refunded to the Company on termination of the policy, the dollar value of the benefit to you of the remainder of the premium paid by, or on behalf of, the Company during the fiscal year.  The benefit shall be determined for the period, projected on an actuarial bases, between the payment of the premium and the refund.

Amount ($)              Source and Description

_____    _____
_____    _____
_____    _____
_____    _____
_____    _____

**QUESTION 3 [S-K Item 402(c) and (i)]**

(a)    Options/SAR* Grants.  Were you granted any stock options (with or without tandem stock appreciation rights* or freestanding stock appreciation rights* during the Company's fiscal year 1997?

              Yes _____  No _____.

If your answer is "No," you may skip to Question 4.

If your answer is "Yes," please furnish the following information:

    **Note:** If more than one grant of options and/or freestanding stock appreciation rights* was made to you during the last completed fiscal year, a separate line should be used to provide disclosure of each such grant.  However, multiple grants may be aggregated where each grant was made at the same exercise and/or base price and has the same expiration date, and the same performance vesting thresholds, if any.

    (1)    Date of grant: _____

                     _____

ADAMS 045634

    (2)    Aggregate number and title or type of security to which each option or stock appreciation right* relates:

_____

_____

    (3)    The per-share exercise or base price of the options or stock appreciation rights* granted:

_____

_____

    (4)    Indicate the vesting schedule, and any performance-based conditions to vesting, for each option and stock appreciation right* reported herein.

_____

_____

    (5)    If the exercise or base price is less than the market price of the underlying security on the date of the grant, please indicate, if applicable, the market price on the date of the grant:

_____

_____

    (6)    Indicate the expiration date of the options or stock appreciation rights*:

_____

_____

    (7)    Does any option; reported above have a reload feature or tax-reimbursement feature? If so, please describe.

Yes _____ No _____

    (8)    Is the exercise or base price of any option or stock appreciation right* reported above subject to adjustment in accordance with any standard formula, including an index or premium price provision? If so, please describe.

Yes _____ No _____

ADAMS 045635

(9)    May the exercise or base price of any option or <u>stock appreciation right</u>* reported above be lowered pursuant to any provision of such option or <u>stock appreciation right</u>*, including any provision permitting repricing, but excluding any standard anti-dilution provision? If so, please describe.

Yes _____    No _____

(10)    Has the Company at any time during the fiscal year ended December 31, 1997 adjusted or amended the exercise price of stock options or <u>stock appreciation rights</u>* previously awarded to you, whether through amendments, cancellation or replacement grants, or any other means:

Yes _____    No _____            —

If your answer is "Yes," please describe the terms, conditions and circumstances surrounding any such repricing.

_____
_____
_____
_____

## QUESTION 4 [S-K 402(d)]

<u>Aggregated Option/SAR* Exercises and Fiscal Year-End Option/SAR* Value Table</u>.  Did you exercise any stock options (or tandem <u>stock appreciation rights</u>*) or freestanding <u>stock appreciation rights</u>* during the fiscal year ended December 31, 1997?

Yes _____    No _____

If your answer is "No," you may skip to Question 5.

If your answer is "Yes," please furnish the following information:

(a)    Date of exercise:_____

(b)    Aggregate number and type or title of shares received upon exercise, or, if no shares were received, the number of securities with respect to which the options or <u>stock appreciation rights</u>* were exercised:

_____

ADAMS 045636

(c)    Please indicate the aggregate exercise price of the shares acquired, adding any payments made to you as reimbursement for the exercise price or related taxes.

_____

**Note:**  Tax reimbursements must also be reported in response to Question 2(d) (Other Annual Compensation.)

(d)    State the total number of unexercised options and stock appreciation rights* held by you on December 31, 1997, separately identifying the exercisable *(i.e., vested)* and unexercisable options and stock appreciation rights*:

|  | Exercisable | Unexercisable |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

## QUESTION 5 [S-K 402(e)]

Long-Term Incentive Plan* Awards.  Did you receive any awards pursuant to any long-term incentive plan* during the fiscal year ended December 31, 1997?

Yes _____  No _____

If your answer is "No," you may skip to Question 6.

If your answer is "Yes," please furnish the following information:

(a)    Indicate the number of shares, units or other rights awarded under any long-term incentive plan*, and, if applicable, the number of shares underlying any such unit or right.

_____
_____
_____

(b)    Indicate the material terms of such award, including the performance or other time period until payout or maturation and the formula or criteria to be used to determine amounts payable.

_____
_____
_____

ADAMS 045637

### QUESTION 6 [S-K 402(f)]

Defined Benefit or Actuarial Plan Disclosure. Is any defined benefit or actuarial plan provided by the Company for your benefit?

Yes _____ No _____

If your answer is "No," you may skip to Question 7.

If your answer is "Yes," please furnish the following information:

(a)    The title of the Plan: _____

(b)    Your estimated credited years of service: _____

### QUESTION 7 [S-K Item 402(h)]

Employment Contracts and Termination of Employment and Change-in-Control Arrangements.

(a)    Are you covered by any employment contract or similar arrangement between the Company and/or any subsidiaries* and yourself?

Yes _____ No _____

If your answer is "Yes," please attach a copy thereof to this Questionnaire.:

(b)    Are you covered by any compensatory plan or arrangement, including payments to be received from the Company or any subsidiary*, which plan or arrangement results or will result from resignation, retirement or any other termination of your employment with the Company and/or its subsidiaries* or from a change-in-control of the Company or a change in your responsibilities following a change-in-control.

Yes _____ No _____

If your answer is "Yes," please describe the terms and conditions of such plan(s) or arrangement(s).

_____

_____

_____

_____

ADAMS 045638

**QUESTION 8 [S-K Item 402(g)]**

Compensation of Directors.

(a)     Standard Arrangements.  If you are a director, please indicate any standard arrangements, stating amounts, pursuant to which directors of the Company, including yourself, are compensated for any services provided as a director, including any additional amounts payable for committee participation or special assignments:

_____

_____

_____

_____

(b)     Other Arrangements.  If you are a director, please describe any other arrangements pursuant to which any director of the Company, including yourself, was compensated during the Company's fiscal year ended December 31, 1997 for any services provided as a director, stating the amount paid and the name of the director who received payment.  The information required by this Question shall include any arrangement, including consulting contracts, entered into in consideration of the director's service on the board.  The material terms of any such arrangement shall be included.

_____

_____

_____

_____

**QUESTION 9 [S-K Item 402(j)]**

Compensation Committee Interlocks and Insider Participation in Compensation Decisions.

(a)     State the name of any other entity on whose Compensation Committee or equivalent committee (or, in the absence of such a committee, the Board of Directors) you serve or served during the fiscal year ended December 31, 1997.

_____

_____

(b)     State the name of any other entity on whose Board of Directors you serve or served during the fiscal year ended December 31, 1997.

_____

_____

ADAMS 045639

**QUESTION 10 [S-K Item 103]**

Please describe briefly any material* legal proceedings pending or threatened or known to be contemplated against, or involving any properties of, the Company or any of its subsidiaries* in which you or an associate* of yours has or will have an interest adverse to that of the Company or any of its subsidiaries*.

_____
_____
_____
_____

**QUESTION 11 [S-K Item 403]**

Before completing Question 11, please read the discussion of a "beneficial owner" in Appendix A.

(a)    Please indicate the total number of each class of equity securities* of the Company and any of its subsidiaries* of which you are the beneficial owner*. You should identify the number of shares beneficially owned by virtue of different types of beneficial ownership. For example, you should specify separately the number of shares of Common Stock beneficially owned by you as trustee, as custodian, through a controlled corporation, etc.

| Company or Subsidiary* | Class of Security | Name and Amount Owned | Name under Which Registered |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

(b)    Please indicate the amount of equity securities* of the Company or subsidiaries* with respect to which you have the right to acquire beneficial ownership* within sixty (60) days pursuant to conversion rights, options, warrants or similar rights.

| Company or Subsidiary | Class of Security | Type of Right | Amount Covered |
|---|---|---|---|
| | | | |
| | | | |

ADAMS 045640

_____
_____

    (c)    Please state below the names of any parties with whom you share the power to direct the vote or disposition of the shares indicated in (a) and (b) above.

| Amount and Issuer of Securities | Names of Parties with Whom You Hold Shared Voting Power | Names of Parties with Whom You Hold Shared Investment Power |
| --- | --- | --- |
| | | |
| | | |
| | | |

    (d)    If any equity securities* of the Company or subsidiaries* are held by your spouse, your minor children, any relative of you or your spouse living in your home, any partnership in which you are a member or any corporation in which you have controlling influence *and* you disclaim beneficial ownership* of such securities, indicate below the ownership designation, your relationship to the designated owner and the amount of securities held by each such owner. If you do not disclaim beneficial ownership* of such securities, they should be included in your response to Question 11(a) or 11(b) above.

| Ownership Designation | Relationship | Amount and Issuer of Securities |
| --- | --- | --- |
| | | |
| | | |
| | | |

    (e)    Please describe any arrangements, contracts or agreements, including any pledge of any securities of the Company, or its parents'* or subsidiaries'* equity securities, that, to your knowledge, may at some future date result in (i) a change of ownership of the equity securities* presently beneficially owned* by you, or (ii) a change in control of the Company.

_____
_____
_____
_____

ADAMS 045641

(f)     Are you a member of a group* that beneficially owns*, in the aggregate, directly or indirectly, more than five percent (5%) of the Company's outstanding voting equity securities*?

Yes _____     No _____

If your answer is "Yes," please give the name of each member of the group*, and the number of securities so owned.

Name _____     No. Securities _____

_____

_____

_____

(g)     Do you know of any person or entity which beneficially* owns five percent (5%) or more of the outstanding shares of Common Stock of the Company?

Yes _____     No _____

If your answer is "Yes," please state the name and address of such person and the number of securities beneficially owned.

Name _____     No. Securities _____

Respondent _____

_____

_____

Note:  A group* must be considered as one person for these purposes.

(h)     Are your shares of Company Common Stock held pursuant to any voting trust or similar agreement?

Yes _____     No _____

If your answer is "Yes," please:

(1)     state the amount held pursuant to the trust or similar agreement and the duration of the agreement:

_____

_____

_____

_____

ADAMS 045642

(2)    state the names and addresses of the voting trustees:

_____    _____
_____    _____
_____    _____

(3)    attach a copy of the operative agreement to this Questionnaire.

**QUESTION 12 [S-K Item 404(a)]**   (Before answering Question 12, please read the following notes.)

**Notes:**

1.    In computing the amount involved in the transaction* or series of similar transactions*, include all periodic installments in the case of any lease or other agreement providing for periodic payments or installments.

2.    The amount of your interest in such transactions* should be computed without regard to the amount of the profit or loss involved.

3.    In describing any transaction* involving the purchase or sale of assets by or to the Company or any of its subsidiaries* (other than in the ordinary course of business), state the cost of the assets to the purchaser and, if acquired by the seller within two years prior to the transaction*, the cost thereof to the seller. In addition, please indicate the principle followed in determining the purchase or sale price and the name of the person making such determination.

4.    This Question 12 covers all amounts paid to you or any member of your immediate family* for services provided to the Company or its subsidiaries* in any capacity, unless the indirect interest(s) arises solely from the ownership of less than ten percent (10%) of a corporation furnishing the services.

5.    Indirect material* interests in a transaction* may arise from a person's position as an officer or director of another corporation or organization that is a party to the transaction(s)*, or an ownership interest in such entity. Such an interest is not deemed "material" where:

(a)    The interest arises only (i) from your position as a director of another corporation or organization that is a party to the transaction; or (ii) from the direct or indirect ownership by you, your immediate family* and the other Company directors (and nominees for director) and executive officers (and nominees for executive officers) involved, in the aggregate, of less than a ten percent (10%) equity interest in another corporation or organization (other than a partnership) that is a party to the transaction; or (iii) from both such position and ownership;

ADAMS 045643

(b)     The interest arises only from your position as a limited partner in a partnership in which you, your immediate family* and the other Company directors (and nominees for director) and executive officers (and nominees for executive officers) involved have an interest of less than ten percent (10%); or

(c)     Your interest arises solely from the holding of an equity interest (including a limited partnership interest, but excluding a general partnership interest) or a creditor interest in another corporation or organization that is a party to the transaction* with the Company or any of its subsidiaries*, and the transaction* is not material* to such other corporation or organization.

6.     No information need be given where the indirect interest arises solely from the ownership of the Company's securities and neither you nor any member of your immediate family* receives an extra or special benefit not shared on a pro-rata basis with other stockholders of the Company.

7.     The transactions* covered by this Question 12 include, among other things, loans to the Company, purchases of property from, or sales to the Company, and the receipt of commissions or other property of value from the Company, but do not include any transactions* the primary purpose of which was to remunerate* you and which is included in your responses to Question 2 above.

Have either you, or any member of your immediate family* had (or will you or they have) a direct or indirect material* interest in a transaction* or series of similar transactions*, to which the Company or any of its subsidiaries* was (or is to be) a party, in which the amount involved exceeds $60,000, and which either (i) is currently proposed, or (ii) occurred at any time since January 1, 1995?

Yes _____    No _____

If the answer is "Yes," please provide the following information:

(i)     Description of the transaction(s):_____

_____

(ii)    The amount involved in such transaction(s):_____

_____

(iii)   The nature and amount of your interest in the transaction(s):_____

_____

ADAMS 045644

## QUESTION 13 [S-K Item 404(b)(1)-(3)]

Are you currently (or at any time since January 1, 1995 have you been) either an <u>executive officer</u>* of, or the <u>beneficial owner</u>* or record owner of in excess of, a ten percent (10%) equity interest in, any business or professional entity:

(a)     that made in any of the fiscal years ended December 31, 1995, 1996 or 1997, or proposes to make during the current fiscal year, <u>payments for properties or services</u>* to the Company or its <u>subsidiaries</u>* in excess of five percent (5%) of either (i) the Company's consolidated gross revenues for its last full fiscal year, or (ii) the other entity's consolidated gross revenues for its respective last full fiscal year?

Yes _____   No _____

(b)     to which the Company or its <u>subsidiaries</u>* has made in any of the fiscal years ended December 31, 1995, 1996 or 1997, or proposes to make during the current fiscal year, <u>payments for property or services</u>* to the Company or its <u>subsidiaries</u>* in excess of five percent (5%) of either (i) the Company's consolidated gross revenues for its respective fiscal year or (ii) the other entity's consolidated gross revenues for its respective full fiscal year?

Yes _____   No _____

(c)     to which the Company or its <u>subsidiaries</u>* was <u>indebted</u>* at any of December 31, 1995, 1996 or 1997 in an aggregate amount in excess of five percent (5%) of the Company's total consolidated assets as of such date?

Yes _____   No _____

If the answer to any of the foregoing is "Yes," please provide the following information for each transaction:

(1)     The name of the entity involved in the business relationship with the Company:_____

(2)     The nature of your affiliation with such entity:

_____
_____

(3)     The relationship between the entity and the Company or its <u>subsidiary</u>* and the amount of business done between the entity and the Company or its <u>subsidiaries</u>* during the Company's applicable fiscal year or proposed to be done during the Company's current fiscal year:

_____
_____

ADAMS 045645

_____

_____

**Notes:**

1.    Please provide the above-requested information if you have a relationship substantially similar in nature and scope to the relationships listed in this Question 13.

2.    The transactions* covered by this Question include, among other things, loans to the Company, purchases of property from, or sales to, the Company, and the receipt of commissions or other property of value from the Company, but do not include any transactions* the primary purpose of which was to remunerate* you and which is included in your responses to Question 2 above.

3.    If you require information with respect to the gross revenues or assets of the Company, please contact James E. Farrell of the Company.

## QUESTION 14 [S-K Item 404(b)(4) and (5); SX Rule 2-01]

(a)    Are you or any of your associates* now, or at any time since January 1, 1995 have you or any of your associates* been, either (a) a member of, or of counsel to, a law firm that the Company or a subsidiary* has retained, or proposes to retain, (b) a partner (or similarly designated member) of a public accounting firm that the Company or a subsidiary* has retained or proposes to retain, or (c) a partner or executive officer* of any investment banking firm that has performed, or proposes to perform, services for the Company?

Yes _____    No _____

If the answer is "Yes," please provide the following information: (i) the name of the firm; (ii) the nature of your relationship with such firm; (iii) the periods during which such relationship existed; and (iv) the dollar amount of fees or other compensation paid to or received by the firm in such fiscal year:

_____

_____

_____

(b)    Are you aware of any situation occurring since January 31, 1997, wherein KPMG Peat Marwick or any partner or professional employee of that firm (a) had or committed to acquire any direct material* financial interest in the Company or (b) was connected with the Company as a promoter, underwriter, voting trustee, director, officer or employee?

Yes _____    No _____

ADAMS 045646

If your answer to the foregoing is "Yes," please briefly describe:

_____

_____

_____

## QUESTION 15 [S-K Item 404(c)]

At any time since January 1, 1995, were either (a) you, (b) any member of your immediate family*, (c) any corporation or organization of which you are an executive officer* or direct or indirect beneficial owner* of ten percent (10%) of any class of equity securities*, or (d) any trust or other estate in which you have a substantial beneficial interest or as to which you serve as a trustee or in a similar capacity, indebted* to the Company or its subsidiaries* in an amount in excess of $60,000?

Yes _____    No _____

If the answer is "Yes," please provide the following information:

(a)    The name of the entity or person that was indebted* to the Company or its subsidiaries* and the nature of your relationship to such entity or person:

_____

_____

(b)    The date on which the indebtedness* was incurred:

_____

(c)    The largest aggregate amount of indebtedness* to the Company outstanding at any time since January 1, 1995 by such debtor:

_____

(d)    The nature of the indebtedness* and of the transaction in which it was incurred:_____

_____

_____

(e)    The amount of such indebtedness* outstanding as of March 15, 1998 and the rate of interest, if any, paid or charged thereon:

_____

_____

ADAMS 045647

**QUESTION 16 [Foreign Corrupt Practices Act; § 30A of the Exchange Act]**

Do you have knowledge or reason to believe that the Company might have engaged in, directly or indirectly, any of the activities or types of conduct enumerated below during the past five (5) years?

(a)   Any bribes or kickbacks to foreign or domestic government officials or their relatives, or any other payments to such persons, whether or not legal, to obtain or retain business or to receive favorable treatment with regard to business.

Yes _____   No _____

(b)   Any bribes or kickbacks to persons other than government officials, or to relatives of such persons, or any other payments to such persons or their relatives, whether or not legal, to obtain or retain business or to receive favorable treatment with regard to business.

Yes _____   No _____

(c)   Any contributions, whether or not legal, made to any political party, political candidate or holders of governmental office.

Yes _____   No _____

(d)   The disbursement or receipt of corporate funds outside the normal system of accountability.

Yes _____   No _____

(e)   The improper or inaccurate recording of payments and receipts on the books of the Company or its subsidiaries*.

Yes _____   No _____

(f)   Any fees paid to consultants, commercial agents or finders which exceeded the reasonable value of the services purported to have been rendered.

Yes _____   No _____

(g)   Any other matters of a similar nature involving disbursements of corporate assets.

Yes _____   No _____

ADAMS 045648

(h)    Any payments or reimbursements made to personnel of the Company or its subsidiaries* for the purposes of enabling them to expend time or to make contributions of the kind or for the purposes referred to in subparts (a) through (g) of this Question 16.

Yes _____    No _____

If your answer to any of the foregoing is "Yes," please describe briefly:

_____
_____
_____
_____
                                              ⎯

Notes:

1.    Each Question is to be read as relating to the activities or conduct of the Company and any affiliate* of the Company, as well as to the conduct of any person who has acted or is acting on behalf of or for their benefit.

2.    Each Question relates to activities or conduct both within and without the United States.

3.    The terms "payments" and "contributions" include not only the giving of cash or hard goods but also the giving of anything else of value — for example, services or the use of property.

4.    The term "indirectly" includes an act done through an intermediary. Payments to sales agents or representatives that are passed on in whole or in part to purchasers, or compensation or reimbursement to persons in consideration for their acts, are examples of acts done through intermediaries.

5.    Your answers should consider not only matters of which you have direct personal knowledge, but also those matters which you have reason to believe may have existed or occurred (for example, you may not "know" of your own personal knowledge that contributions were made by the Company to a political party in a foreign land, but, based upon information that has otherwise come to your attention, you may nonetheless have "reason to believe" that such a contribution was made. In such case, your response would be "Yes", and you should explain the basis for your belief if it is not based upon personal knowledge).

**QUESTION 17 [Regulation C, Rule 418]**

Do you know of (a) any engineering, management or similar report or memorandum relating to broad aspects of the business, operations or products of the Company which has been

ADAMS 045649

prepared since January 1, 1997, for or by the Company, any <u>affiliate</u>* of the Company or Lehman Brothers, NationsBank Montgomery Securities or Ferris, Baker Watts or (b) any report or memorandum which has been prepared for external use by any such persons in connection with the proposed offering? If so, identify such report or memorandum, and, if possible, attach a copy of such report or memorandum to this Questionnaire.

Yes _____    No _____

## QUESTION 18 [NASD]

(a)    State whether you or any of your <u>affiliates</u>* are, or at any time since December 31, 1992, were a <u>member</u>* of the National Association of Securities Dealers, Inc. (the "NASD").

Yes _____    No _____

(If yes, please describe)

_____

_____

_____

(b)    State whether you or any of your <u>affiliates</u>* are, or at any time since December 31, 1992, were a <u>person associated with a member</u>*.

Yes _____    No _____

(If yes, please describe)

_____

_____

_____

(c)    State whether you or any of your <u>affiliates</u>* are, or at any time since December 31, 1992, were an <u>affiliate</u>* of a <u>member</u>*?

Yes _____    No _____

(If yes, please describe)

_____

_____

_____

(d)    Describe briefly any <u>material</u>* interest you have or have had in any <u>material</u>* transaction, or in any <u>material</u>* proposed transaction, with Lehman Brothers, NationsBank Montgomery Securities or Ferris, Baker Watts or any other investment banking or underwriting

ADAMS 045650

firm. In addition, please describe briefly any material relationship with these or any other investment banking firm or underwriting organization.

_____
_____
_____

       (e)    Do you know of any arrangements relating to underwriting compensation or of any dealings between any underwriter or a related person, member* of the NASD or person associated with a member* and the Company or any stockholder of the Company, other than relating to the proposed offering?

                                  Yes _____     No _____

      (If yes, please describe)

_____
_____
_____

       (f)    Do you know of any arrangement made to stabilize the market for the Company's Common Stock, other than an arrangement among the underwriters in connection with the proposed offering?

                                    Yes _____     No _____

      (If yes, please describe)

_____
_____
_____

       (g)    State whether you own any stock or other securities of any member* not purchased in the open market?

                                    Yes _____     No _____

       (h)    State whether you have made any outstanding subordinated loans to any member*:

                                    Yes _____     No _____

ADAMS 045651

(i)     State whether you have been an underwriter, or a controlling* person or member of any investment banking or brokerage firm which has been or might be an underwriter for securities of the Company, including, but not limited to, the Common Stock now proposed to be registered.

Yes _____     No _____

(j)     Set forth below information as to all sales and dispositions (including contracts to sell or to dispose) of securities of the Company during the last 18 months by you to any member*, person associated with a member*, Lehman Brothers, NationsBank Montgomery Securities or Ferris, Baker Watts or their affiliates* as well as to all proposed sales and dispositions by you to such persons which are to be consummated by you in whole or in part within the next 12 months. Also set forth below a description of the relationship, affiliation or association of you and, if known, the other party or parties to the above transactions with an underwriter or other person or entity "in the stream of distribution" with respect to the offering.

| Buyer or Prospective Buyer | Amount and Nature of Securities | Price or Other Consideration | Date | Description of Relationship |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

(k)     If you have had during the last 18 months, or are to have within the next 12 months, any transactions of the character referred to in Question (i) or (j) of this Section, describe briefly below the relationship, affiliation or association of both you and, if known, the other party or parties to any such transaction with an underwriter or other person or entity "in the stream of distribution" with respect to the proposed offering. In any case, where the purchaser (whether you or any such party) is known by you to be a member of a "private investment group," such as a hedge fund or other group* of purchasers, furnish, if known, the names of all persons comprising the group and their association with or relationship to any broker-dealer.

Description:

ADAMS 045652

**QUESTION 19 [S-K Items 702; 403(c)]**

(a)     Do you know of any contract or arrangement (other than those evidenced by the law of the State of Delaware or the Certificate of Incorporation or Bylaws of the Company) under which you are, or to your knowledge any controlling person, director, or officer of the Company is, insured or indemnified in any manner against any liability which you or such other person may incur in your or his capacity as a director or officer of the Company?

Yes _____     No _____

If your answer is "Yes," please describe such contract or arrangement.

_____
_____
_____
_____

(b)     Do you know of any contract or arrangement (including any pledge by any person of securities of the Company), the operation of which may at a subsequent date result in a change in control* of the Company?

Yes _____     No _____

If your answer is "Yes," please describe such contract or arrangement:

_____
_____
_____

**QUESTION 20 [S-K Item 402(c)]**

Did you receive any remuneration* from any source for services as a director during the fiscal year ended December 31, 1997 in addition to or in lieu of the standard directors' fee arrangements (covering Board and committee member retainers and fees) approved by the Company's Board of Directors? (Note: This Question includes remuneration paid by the Company as well as amounts paid by other sources for committee participation, special assignments or other services as a director.)

Yes _____     No _____

ADAMS 045653

If your answer is "Yes," state the amount so paid, the source of payment and the reason for payment for each category of payment:

| Amount Paid | Source of Payment | Reason for Payment |
| --- | --- | --- |
| | | |
| | | |
| | | |

*The answers to the foregoing Questions are correctly stated to the best of my information and belief. If no information is furnished with respect to any Questions, you are hereby authorized to assume that the answer is NEGATIVE, NO or NOT APPLICABLE, as the case may be. I will promptly advise Arter & Hadden LLP (specifically, either Joseph A. Hoffman, Esq. or J. David Washburn, Esq.) in writing from time to time if any event occurs that to my knowledge would require any change in my answers to the foregoing Questions in order to make such answers correct and complete as of the date of filing of the Registration Statement with the Commission. Additionally, to the extent additional information is necessary to make the answers given by me above not misleading, in light of the circumstances under which they were made, I will provide such additional information on an attachment hereto.*

Dated: _____, 1998        _____
                                      Signed

                                      _____
                                      Typed or printed name of Signer

# APPENDIX A

## Glossary

1.    "<u>Affiliate</u>" of the Company is any corporation, partnership, association or other business or professional entity that directly, or indirectly through one or more intermediaries, <u>controls</u>\*, or is <u>controlled</u>\* by, or is under common <u>control</u>\* with the Company. See the definitions of "Parent" and "Subsidiary" below.

2.    "<u>Associate</u>" of yours means any of the following:

Any corporation or organization (other than the Company), of which you are an officer or partner, <u>or</u> in which you are the <u>beneficial owner</u>\*, directly or indirectly, of ten percent (10%) of any class of equity securities.

Any trust or estate, in which you have a substantial beneficial interest, <u>or</u> of which you are a trustee or serve in a similar fiduciary capacity.

Your spouse or any relative of yours or your spouse, who has the same home as you, <u>or</u> is a director or officer of the Company.

3.    "<u>Beneficial Owner</u>" of a security includes:

(a)    Any person who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise has or shares:

(1)    Voting power which includes the power to vote, or to direct the voting of, such security; and/or

(2)    Investment power which includes the power to dispose, or direct the disposition, of such security.

<u>Please note that having or sharing either voting power or investment power is sufficient for you to be considered the beneficial owner of shares.</u>

(b)    Any person who, directly or indirectly, creates or uses a trust, proxy, power of attorney, pooling arrangement or any other contract, arrangement or device with the purpose or effect of divesting such person of beneficial ownership of a security or preventing the vesting of such beneficial ownership as part of a plan or scheme to evade the reporting requirements of the federal securities acts shall be deemed to be the beneficial owner of such security.

ADAMS 045655

96371 1

(c)     Notwithstanding the provisions of paragraph (a), a person is deemed to be the "beneficial owner" of a security, if that person has the right to acquire beneficial ownership of such security within 60 days, including, but not limited to, any right to acquire: (A) through the exercise of any option, warrant or right; (B) through the conversion of a security; (C) pursuant to the power to revoke a trust, discretionary account or similar arrangement; or (D) pursuant to the automatic termination of a trust, discretionary account or similar arrangement; provided, however, any person who acquires a security or power specified in paragraphs (A), (B) or (C), above, with the purpose or effect of changing or influencing the control of the issuer, or in connection with or as a participant in any transaction having such purpose or effect, immediately upon such acquisition shall be deemed to be the beneficial owner of the securities which may be acquired through the exercise or conversion of such security or power.

(d)     Please note that the same security may be "beneficially owned" by more than one person. Thus, for the purposes of this Questionnaire, you would be the "beneficial owner" of:

     (1)     securities held by you for your own benefit whether in bearer form, registered in your name, or otherwise, whether owned solely by yourself or jointly with someone else;

     (2)     securities held by others for your benefit (regardless of whether or how they are registered); for example, securities held for you by custodians, brokers, relatives, trustees (including trustees of trusts in which you have only a remainder interest), executors or administrators, securities held for your account by pledgees, shares owned by a partnership of which you are a member and shares owned by any corporation which should be regarded as a personal holding corporation of yours;

     (3)     securities held in the name of your spouse and/or your minor children;

     (4)     securities held in the name of your relatives and/or your spouse's relatives, including, but not limited to, those relatives sharing the same home with you;

     (5)     securities held in the name of another person, if by reason of any contract, understanding, relationship, agreement or other arrangement (i.e., as trustee of a trust), you have or share (i) voting power which includes the power to vote, or to direct the voting of, such securities, and/or (ii) investment power which includes the power to dispose, or to direct the disposition, of such securities;

     (6)     securities held in the name of your spouse, minor children, or other persons, even though you do not obtain therefrom any benefits substantially

ADAMS 045656

96371.1

equivalent to those of ownership, if you can vest or revest title in yourself at once, or at some future time;

(7)     securities which you have the right to acquire through the exercise of warrants or rights, presently exercisable or exercisable within sixty (60) days or through conversion of convertible securities presently convertible or convertible within sixty (60) days;

(8)     securities recently purchased by you and awaiting transfer into your name; and

(9)     securities you have the right to receive through the power to revoke or the automatic termination of any trust, discretionary account or similar arrangement.

4.     "Control" means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of the person or entity, whether through the ownership of voting securities, by contract, or otherwise.

5.     "Equity Security" is any stock or similar security, certificate of interest or participation in any profit sharing agreement, pre-organization certificate or subscription, transferable share, voting trust certificate or certificate of deposit for an equity security, limited partnership interest, interest in a joint venture, or certificate of interest in a business trust; or any security convertible, with or without consideration, into such a security or carrying any warrant right or to subscribe to or purchase such a security; or any such warrant or right; or any put, call, straddle or other option or privilege of buying such a security from or selling such a security to another without being bound to do so.

6.     "Executive Officer" means the president, secretary, treasurer, and vice president in charge of a principal business function (such as sales, administration or finance) and any other person who performs similar policy-making functions for the respective company.

7.     "Family Relationship" means any relationship by blood, marriage or adoption, not more remote than first cousin.

8.     "Group" means two or more persons acting as a partnership, limited partnership, syndicate or other group for the purpose of acquiring, holding or disposing of securities of an issuer.

9.     "Immediate Family" means your spouse; parents; children; siblings; mothers and fathers-in-law; sons and daughters-in-law; and brothers and sisters-in-law.

10.     "Indebted" or "Indebtedness" is to be understood in its broadest sense and includes all amounts owed for borrowed money. Please note, indebtedness may include, if applicable, short-swing trading profits subject to recovery by the Company pursuant to Section 16 of the Exchange Act. "Indebted" or "Indebtedness" may exclude the following:

ADAMS 045657

(a)  Debt securities which have been publicly offered, admitted to trading on a national securities exchange, or quoted on the automated quotation system of a registered securities association.

(b)  Amounts due for purchases subject to the usual trade terms for ordinary tract and expense payments and for other transactions in the ordinary course of business.

11.  "Long-Term Incentive Plan" means any plan providing compensation intended to serve as incentive for performance to occur over a period longer than one fiscal year, whether such performance is measured by reference to financial performance of the Company or an affiliate, the Company's stock price, or any other measure, but excluding restricted stock, stock options and stock appreciation rights* plans.

12.  "Material", when used to qualify a requirement for the furnishing of information as to any subject, limits the information required to those matters as to which there is a substantial likelihood that a reasonable person would consider it important in making his decision with regard to a particular transaction. In the context of Question 2, any proceeding brought by governmental authorities relating to the violation of environmental regulations shall be deemed material.

13.  "Member" is defined by NASD as being any broker or dealer admitted to membership in the NASD.

14.  "Parent" means any personal corporation, partnership, association or other entity that directly, or indirectly through one or more intermediaries, controls* the Company or any subsidiary.

15.  "Payments for property and services" may exclude the following:

(a)  payments where the rates or charges involved in the transaction are determined by competitive bids, or the transaction involves the rendering of services as a public utility at rates or charges fixed in conformity with law or governmental authority;

(b)  payments which arise solely from the ownership of securities of the Company and no extra or special benefit not shared on a pro rata basis by all holders of the class of securities is received;

16.  "Person associated with a member" is defined by NASD as being every sole proprietor, partner, officer, director or branch manager of any member, or any natural person occupying a similar status or performing similar functions, or any natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by such member (for example, any employee), whether or not any such person is registered or exempt from registration with the NASD.

ADAMS 045658

96371.1

EXHIBIT 424



2801 East Plano Parkway
Plano, Texas 75074
www.AdamsGolf.com
FAX: 972 398-8818
800-622-0609
Tel: 972-673-9673



*From the desk of*
**B.H. (Barney) Adams**

# Memo

To:   Paul Brown, Roland Casati, Finis Conner, Steve Patchin

Date:  April 22, 1998

RE:  ATTACHED

Enclosed is the financial report Jim Farrell gave to Lehman Brothers.  I wanted everyone to have a copy so we're all operating from the same base.

BHA:afn

enc.

cc:    Dick Murtland

ADAMS 008281

**ADAMS GOLF, INC.**
April 13, 1998

Schedule _____

1.   3 Year Statement of Operations for the Years Ended December 31, 1997, 1996, 1995

2.   1997 Revenues by Department by Quarter

3.   5 Year Annual Financial Projections

4.   1998 Financial Projections by Quarter

5.   1999 Financial Projections by Quarter

6.   1998 Revenue Forecast by Department by Quarter

7.   1999 Revenue Forecast by Department by Quarter

8.   1998 Headcount

ADAMS 008282

## ADAMS GOLF, INC.

### Statements of Operations

### Years ended December 31, 1997, 1996 and 1995

| | 1997 | 1996 | 1995 |
|---|---|---|---|
| Net sales | $ 36,690,090 | 3,521,788 | 1,125,115 |
| Cost of goods sold | 9,991,132 | 1,589,696 | 756,400 |
| Gross profit | 26,698,958 | 1,932,092 | 368,715 |
| **Operating expenses:** | | | |
| Research and development expenses | 557,513 | 51,101 | 18,516 |
| Selling and royalty expenses | 13,093,174 | 625,897 | 312,785 |
| General and administrative expenses: | | | |
| Stock compensation and bonus award (note 9) | 8,491,711 | 213,760 | — |
| Provision for bad debts | 738,805 | 51,306 | 12,791 |
| Other | 1,436,995 | 981,219 | 268,513 |
| Total operating expenses | 24,318,198 | 1,923,283 | 612,610 |
| Operating profit (loss) | 2,380,760 | 8,809 | (243,895) |
| **Other income (expense):** | | | |
| Interest income | 15,325 | 3,938 | 1,226 |
| Interest expense | (69,731) | — | — |
| Other | (47,808) | — | — |
| Income (loss) before income taxes | 2,278,546 | 12,747 | (242,669) |
| Income tax expense (note 8) | 582,763 | — | — |
| Net income (loss) | $ 1,695,783 | 12,747 | (242,669) |
| **Income (loss) per common share:** | | | |
| Basic | $ .27 | .00 | (.11) |
| Diluted | $ .26 | .00 | (.11) |

See accompanying notes to financial statements.

ADAMS 008283

4/17/98 4:32 PM

**ADAMS C... , INC.**
Revenues By Department
1997 Actual
($ in millions)

| Net Sales | 1 Qtr. 1997 | % of Total | 2 Qtr. 1997 | % of Total | 3 Qtr. 1997 | % of Total | 4 Qtr. 1997 | % of Total | Total 1997 | % of Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Inside Sales | $1.2 | 80.0% | $2.1 | 51.2% | $9.0 | 62.5% | $12.5 | 74.9% | $24.8 | 67.8% |
| Direct Response/Call Center/ Customer Service | 0.0 | 0.0% | 1.3 | 31.7% | 4.8 | 33.3% | 3.4 | 20.4% | 9.5 | 25.9% |
| Custom Fitting | 0.2 | 13.3% | 0.5 | 12.2% | 0.5 | 3.5% | 0.4 | 2.4% | 1.6 | 4.4% |
| International | 0.1 | 6.7% | 0.2 | 4.9% | 0.1 | 0.7% | 0.4 | 2.4% | 0.8 | 2.2% |
| Total | $1.5 | 100.0% | $4.1 | 100.0% | $14.4 | 100.0% | $16.7 | 100.0% | $36.7 | 100.0% |

Due Diligence 4-13-98 Package

Handout

ADAMS 008284

**ADAMS GOLF, INC.**
Financial Projections
Years Ended December 31, 1998, 1999, 2000, 2001 and 2002
($ In millions)

| | 1998 | % of Sales | 1999 | % of Sales | 2000 | % of Sales | 2001 | % of Sales | 2002 | % of Sales |
|---|---|---|---|---|---|---|---|---|---|---|
| Net Sales - Domestic | $94.8 | 94.8% | $150.0 | 90.9% | $225.0 | 86.9% | $285.0 | 83.8% | $375.0 | 81.5% |
| Net Sales - Foreign | 5.2 | 5.2% | 15.0 | 9.1% | 34.0 | 13.1% | 55.0 | 16.2% | 85.0 | 18.5% |
| Total Net Sales | 100.0 | 100.0% | 165.0 | 100.0% | 259.0 | 100.0% | 340.0 | 100.0% | 460.0 | 100.0% |
| Cost of Goods Sold | 29.0 | 29.0% | 47.8 | 29.0% | 75.1 | 29.0% | 98.6 | 29.0% | 133.4 | 29.0% |
| Gross Margin | 71.0 | 71.0% | 117.2 | 71.0% | 183.9 | 71.0% | 241.4 | 71.0% | 326.6 | 71.0% |
| Selling Expenses | 26.5 | 26.5% | 46.1 | 27.9% | 72.3 | 27.9% | 94.9 | 27.9% | 128.4 | 27.9% |
| General and Administrative Expenses | 15.2 | 15.2% | 22.3 | 13.5% | 35.0 | 13.5% | 45.9 | 13.5% | 62.0 | 13.5% |
| Research and Development Expenses | 1.3 | 1.3% | 2.6 | 1.6% | 4.1 | 1.6% | 5.4 | 1.6% | 7.4 | 1.6% |
| Total Expenses | 43.0 | 43.0% | 71.0 | 43.0% | 111.4 | 43.0% | 146.2 | 43.0% | 197.8 | 43.0% |
| Operating Margin | 28.0 | 28.0% | 46.2 | 28.0% | 72.5 | 28.0% | 95.2 | 28.0% | 128.8 | 28.0% |
| Taxes, Effective Tax Rate 38% | 10.1 | 10.1% | 16.5 | 10.0% | 26.1 | 10.1% | 34.3 | 10.1% | 46.4 | 10.1% |
| Net Income | $17.9 | 17.9% | $29.7 | 18.0% | $46.4 | 17.9% | $60.9 | 17.9% | $82.4 | 17.9% |
| Revenue Growth Percentage | | 172% | | 65.0% | | 57.0% | | 31.3% | | 35.3% |

Rev Show

Handout

ADAMS 008285

**ADAMS GOLF, INC.**
1998 Financial Projections
For the periods indicated
($ in millions)

| | Actual 1 Qtr. 1998 | % of Sales | Budget 2 Qtr. 1998 | % of Sales | Budget 3 Qtr. 1998 | % of Sales | Budget 4 Qtr. 1998 | % of Sales | Total 1998 | % of Sales |
|---|---|---|---|---|---|---|---|---|---|---|
| Net Sales - Domestic | $23.3 | 95.1% | $26.6 | 95.7% | $24.2 | 94.9% | $20.7 | 93.2% | $94.8 | 94.8% |
| Net Sales - Foreign | 1.2 | 4.9% | 1.2 | 4.3% | 1.3 | 5.1% | 1.5 | 6.8% | 5.2 | 5.2% |
| Total Net Sales | 24.5 | 100.0% | 27.8 | 100.0% | 25.5 | 100.0% | 22.2 | 100.0% | 100.0 | 100.0% |
| Cost of Goods Sold | 5.9 | 24.1% | 8.8 | 31.7% | 7.9 | 31.0% | 6.4 | 28.8% | 29.0 | 29.0% |
| Gross Margin | 18.6 | 75.9% | 19.0 | 68.3% | 17.6 | 69.0% | 15.8 | 71.2% | 71.0 | 71.0% |
| Selling Expenses | 6.2 | 25.3% | 7.3 | 26.3% | 7.9 | 31.0% | 5.1 | 23.0% | 26.5 | 26.5% |
| General and Administrative Expenses | 3.6 | 14.7% | 4.1 | 14.7% | 3.8 | 14.9% | 3.7 | 16.7% | 15.2 | 15.2% |
| Research and Development Expenses | 0.1 | 0.4% | 0.5 | 1.8% | 0.4 | 1.6% | 0.3 | 1.4% | 1.3 | 1.3% |
| Total Expenses | 9.9 | 40.4% | 11.9 | 42.8% | 12.1 | 47.5% | 9.1 | 41.0% | 43.0 | 43.0% |
| Operating Margin | 8.7 | 35.5% | 7.1 | 25.5% | 5.5 | 21.6% | 6.7 | 30.2% | 28.0 | 28.0% |
| Taxes, Effective Rate 36% | 3.1 | 12.8% | 2.6 | 9.2% | 2.0 | 7.8% | 2.4 | 10.9% | 10.1 | 10.1% |
| Net Income | $5.6 | 22.7% | $4.5 | 16.3% | $3.5 | 13.8% | $4.3 | 19.3% | $17.9 | 17.9% |
| Percent Revenue Growth vs. Same Period Prior Year | | 1650.0% | | 561.9% | | 77.1% | | 32.9% | | 172.5% |
| **Unit Sales** | | | | | | | | | | |
| Net Sales - Domestic | 179,230 | | 204,615 | | 186,154 | | 160,769 | | 730,768 | |
| Net Sales - Foreign | 11,429 | | 11,430 | | 12,382 | | 12,382 | | 47,623 | |
| Total Net Sales | 190,659 | | 216,045 | | 198,536 | | 173,151 | | 778,391 | |

ADAMS 008286

98 99 Bgt Due Dil Format

Handout

**ADAMS GOLF, INC.**
1999 Financial Projections
For the periods indicated
($ in millions)

| | 1 Qtr. 1999 | % of Sales | 2 Qtr. 1999 | % of Sales | 3 Qtr. 1999 | % of Sales | 4 Qtr. 1999 | % of Sales | Total 1999 | % of Sales |
|---|---|---|---|---|---|---|---|---|---|---|
| Net Sales - Domestic | $31.6 | 90.9% | $44.5 | 90.9% | $40.6 | 90.9% | $33.3 | 90.9% | $150.0 | 90.9% |
| Net Sales - Foreign | 3.2 | 9.1% | 4.4 | 9.1% | 4.1 | 9.1% | 3.3 | 9.1% | 15.0 | 9.1% |
| Total Net Sales | 34.8 | 100.0% | 48.9 | 100.0% | 44.7 | 100.0% | 36.6 | 100.0% | 165.0 | 100.0% |
| Cost of Goods Sold | 10.1 | 29.0% | 14.2 | 29.0% | 13.0 | 29.0% | 10.6 | 29.0% | 47.8 | 29.0% |
| Gross Margin | 24.7 | 71.0% | 34.8 | 71.0% | 31.7 | 71.0% | 26.0 | 71.0% | 117.2 | 71.0% |
| | | | | | | | | | | |
| Selling Expenses | 9.7 | 27.9% | 13.7 | 27.9% | 12.5 | 27.9% | 10.2 | 27.9% | 46.1 | 27.9% |
| General and Administrative Expenses | 4.7 | 13.5% | 6.6 | 13.5% | 6.0 | 13.5% | 4.9 | 13.5% | 22.3 | 13.5% |
| Research and Development Expenses | 0.5 | 1.6% | 0.8 | 1.6% | 0.7 | 1.6% | 0.6 | 1.6% | 2.6 | 1.6% |
| Total Expenses | 15.0 | 43.0% | 21.1 | 43.0% | 19.2 | 43.0% | 15.8 | 43.0% | 71.0 | 43.0% |
| | | | | | | | | | | |
| Operating Margin | 9.7 | 28.0% | 13.7 | 28.0% | 12.5 | 28.0% | 10.2 | 28.0% | 46.2 | 28.0% |
| | | | | | | | | | | |
| Taxes, Effective Tax Rate 35% | 3.5 | 10.0% | 4.9 | 10.0% | 4.5 | 10.0% | 3.7 | 10.0% | 16.5 | 10.0% |
| | | | | | | | | | | |
| Net Income | $6.2 | 18.0% | $8.8 | 18.0% | $8.0 | 18.0% | $6.6 | 18.0% | $29.7 | 18.0% |

* Percent Revenue Growth vs. Prior Year is 64.8%

98 99 Bgt Due Dil Format

Handout

ADAMS 008287

4/17/98 4:34 PM

Handout

A.D.A.M., INC.
Revenue __ Department
1998 Forecast
($ in millions)

| Net Sales | 1 Qtr. 1998 | % of Total | 2 Qtr. 1998 | % of Total | 3 Qtr. 1998 | % of Total | 4 Qtr. 1998 | % of Total | Total 1998 | % of Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Inside Sales | $19.9 | 81.2% | $21.6 | 78.4% | $19.7 | 77.3% | $17.7 | 79.7% | $79.1 | 79.1% |
| Direct Response/Call Center/ Customer Service | $2.8 | 11.4% | $4.2 | 15.1% | $3.9 | 15.3% | $2.6 | 11.7% | $13.5 | 13.5% |
| Custom Fitting | $0.6 | 2.4% | $0.6 | 2.2% | $0.6 | 2.4% | $0.6 | 2.7% | $2.4 | 2.4% |
| International | $1.2 | 4.9% | $1.2 | 4.3% | $1.3 | 5.1% | $1.3 | 5.9% | $5.0 | 5.0% |
| Total | $24.5 | 100.0% | $27.6 | 100.0% | $25.5 | 100.0% | $22.2 | 100.0% | $100.0 | 100.0% |

Due Diligence 4-13-98 Package

ADAMS 008288

4/17/98·4:34 PM

Handout

ADA..._F, INC.
Revenue-ry Department
1999 Forecast
($ in millions)

| Net Sales | 1 Qtr. 1999 | % of Total | 2 Qtr. 1999 | % of Total | 3 Qtr. 1999 | % of Total | 4 Qtr. 1999 | % of Total | Total 1999 | % of Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Inside Sales | $27.2 | 78.2% | $38.8 | 79.3% | $35.2 | 78.7% | $29.5 | 80.6% | $130.7 | 79.2% |
| Direct Response/Call Center/ Customer Service | 3.5 | 10.1% | 5.3 | 10.8% | 5.5 | 12.3% | 3.8 | 10.4% | 18.1 | 11.0% |
| Custom Fitting | 0.5 | 1.4% | 0.6 | 1.2% | 0.6 | 1.3% | 0.6 | 1.6% | 2.3 | 1.4% |
| International | 3.6 | 10.3% | 4.3 | 8.8% | 3.4 | 7.6% | 2.8 | 7.7% | 14.1 | 8.5% |
| Total | $34.8 | 100.0% | $48.9 | 100.0% | $44.7 | 100.0% | $36.6 | 100.0% | $165.0 | 100.0% |

Due Diligence 4-13-98 Package

ADAMS 008289

**ADAMS GOLF, INC.**
Headcount

|  | 3/31/98 | 12/31/98 |
|---|---|---|
| Hourly | 108 | 114 |
| Salary | 90 | 128 |
| Total | 198 | 242 |

* 1997 Turnover was less than 10%.

* Forecast Revenue per Employee

| | |
|---|---|
| Revenue | $ 100,000,000 |
| Average Number of Employees | 220 |
| Revenue per Employee | $     454,545 |

ADAMS 008290

Due Diligence 4-13-98 Package                    Handout