IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

_____ x
                                          :
IN RE ADAMS GOLF , INC.,                  :     CONSOLIDATED
SECURITIES LITIGATION                     :     C.A. NO. 99-371-KAJ
_____ x

**PLAINTIFFS' ANSWERING BRIEF IN RESPONSE TO
DEFENDANTS' MOTION TO EXCLUDE THE
EXPERT TESTIMONY OF CHRISTIANA OCHOA**

**ROSENTHAL, MONHAIT &
   GODDESS, P.A.**
Carmella P. Keener (DSBA No. 2810)

**BERGER & MONTAGUE, P.C.**        919 Market Street, Suite 1401
Todd Collins                      Citizens Bank Center
Elizabeth Fox                     Wilmington, DE   19801
Neil Mara                         (302) 656-4433
1622 Locust Street                ckeener@rmgglaw.com
Philadelphia, PA. 19103           *Liaison Counsel for Plaintiffs*
(215) 875-3000                    *and the Class*
*Lead Counsel for Plaintiffs and the Class*

OF COUNSEL:

**LAW OFFICES OF DONALD B. LEWIS**
Donald B. Lewis
5 Cynwyd Road
Bala Cynwyd, PA 19004
(610) 668-0331

**KELLER ROHRBACK, LLP**
Juli E. Farris
Elizabeth A. Leland
1201 Third Avenue, Suite 3200
Seattle, Washington 98101
(206) 623-1900

Dated: October 9, 2006

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.     NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       A.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       B.    The Third Circuit interprets Fed. R. Evid. 702's "specialized
             knowledge"requirement liberally and favors admissibility of
             expert testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       C.    Professor Ochoa is Qualified to Testify . . . . . . . . . . . . . . . . . . . . . . . . 7

             1. Defendants rely on inapposite precedent . . . . . . . . . . . . . . . . . . 7

       D.    Professor Ochoa may rebut defendants' expert testimony . . . . . . . . . . . . 12

VI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aloe Coal Co. v. Clark Equipment*,
  816 F.2d 110 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Amco Ukrservice & Prompriladamco v. American Meter Comp.*,
  2005 U.S. Dist. LEXIS 12992 (E.D. Pa. 2005) . . . . . . . . . . . . . . . . . . . . 11, 12

*Betterbox Communications v. BB Tech, Inc.*,
  300 F.3d 325 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

*Borawick v. Shay*,
  68 F.3d 597 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Boucher v. United States Suzuki Motor Corp.*,
  73 F.3d 18 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Burton v. Danek Medical, Inc.*,
  1999 U.S. Dist. LEXIS 2619 (E.D. Pa. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 12

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 8, 11

*Dunn v. Hovic*,
  1 F.3d 1362 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Eaton Corp. v. Parker-Hannafin Corp.*,
  292 F. Supp. 2d 555 (D. Del. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Kumho Tire v. Carmichael*,
  526 U.S. 137 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 8, 11

*Lesser v. Camp Wildwood*,
  282 F. Supp. 2d 139 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Sparber v. Dupont Institute of the Nemours Foundation*,
  1997 U.S. Dist. LEXIS 2804 (D. Del. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Surace v. Caterpillar, Inc.*,
   111 F.3d 1039 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Waldorf v. Shuta*,
   142 F.3d 601 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Wilkinson v. Rosenthal & Co.*,
   712 F. Supp. 474 (E.D. Pa. 1989) . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9, 10, 11, 12

## FEDERAL STATUTES

Fed. R. Evid. 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

I.    **NATURE AND STAGE OF PROCEEDINGS**

Fact and expert discovery has been completed.  On July 14, 2006, Professor

Christiana Ochoa ("Professor Ochoa") submitted her Expert Report in this litigation (D.I. 259,

"Ochoa Report").  On July 28, 2006, after considering the Expert Reports of H. Stephen

Grace, Christopher M. James, and others, Professor Ochoa submitted her Rebuttal Expert

Report (D.I. 267, "Ochoa Rebuttal").  On August 4, 2006, Professor Ochoa was deposed by

defendants.  On September 11, 2006, defendants jointly filed a Motion to Exclude the Expert

Testimony of Christiana Ochoa (D.I. 287, "Motion") and supporting brief (D.I. 288, "Def.

Br.").  Plaintiffs submit this memorandum in opposition.

II.    **SUMMARY OF ARGUMENT**

1.    Professor Ochoa is well qualified to testify in this case.  The Third Circuit interprets

the "specialized knowledge" standard of Fed. R. Evid. 702 liberally.  Professor Ochoa certainly

possesses the requisite knowledge, education and training to "assist the trier of fact to

understand the evidence." Fed R. Evid. 702.

2.    Defendants' motion must be denied because defendants rely on inapposite cases to

support their argument.  Repeatedly and without exception, defendants cite to cases in which a

proffered expert was disqualified because, unlike Professor Ochoa,  he or she lacked any

relevant training or experience whatsoever with respect to the subject matter of the opinion.

Here, by contrast, as set forth more fully in the Statement of Facts (Section III, below),

Professor Ochoa has researched extensively and is a veteran teacher of law students and

graduate law students on the subject of the financial and economic consequences of the gray

market to manufacturers, with an emphasis on the golf industry.  She thus has acquired

expertise with respect to the exact matters on which she will testify.

## III.  STATEMENT OF FACTS

Professor Ochoa is a graduate of the University of Michigan and Harvard University Law School. *See* Expert Report of Christiana Ochoa, p. 2 (Ex. A hereto). She has been an Associate Professor at the Indiana University School of Law since 2003. Ex. A, p.1. Professor Ochoa has taught a course for three years in International Business Transactions to upper-class law students and graduate students. Ochoa Dep. Tr. 16: 5-14 (Ex. B hereto). This course, as taught by Professor Ochoa, specifically "deals with the financial and economic consequences of the gray market to manufacturers." Ex. B, 24:13-18.

Before teaching International Business Transactions for the first time, Professor Ochoa discussed the course and available textbooks with other faculty members. Ex. B, 18:5-18. Beginning in 2003, and in each year since, Professor Ochoa has supplemented the basic textbook in International Business Transactions with "a course packet of supplemental materials that [she] believes are particularly useful in elucidating particular topics, and [she] chose some materials on the golf industry and the golf equipment industry in particular in the presentation of counterfeiting and gray marketing material." Ex. B, 19:15-21. In preparing to teach the course, Professor Ochoa critically "reevaluates the materials" each year and adds or subtracts course materials. Ex. B, 20:1-8. Each year, Professor Ochoa devotes three to four one hour class sessions to gray market issues when teaching International Business Transactions. Ex. B, 53:14-19; 54:5-7.

During her first year of teaching, Professor Ochoa spent approximately ten hours per

2

class session in preparation. Ex. B, 54:20-23. Each year since, her "prep time" has decreased as she develops advanced familiarity with the basic course materials. Ex. B, 54:14-18. During her second year of teaching she devoted "somewhat less than" ten hours to preparation for each class. In her third year she spent between three and five hours preparing for each class, the majority of which is "spent reading outside materials." Ex. B, 54:18-24; 55:1-2. In addition to reading materials she has assigned to her students, Professor Ochoa has read "countless scholarly articles that supplement the materials the [she] teach[es]." Ex. B, 24:22-24; 25:1-5. Professor Ochoa estimates that she has read approximately 90 "published pieces on the gray market." Ex. B, 44:1-7.

Plaintiffs proffered the opinions and testimony of Professor Ochoa as to two issues: (1) The characteristics of gray marketing and the effects it can have on brand name products and the trademark owners or manufacturers thereof; and (2) Given the business strengths and strategies of Adams Golf (hereinafter "Adams Golf" or "the Company"), whether, at the time of and subsequent to its Initial Public Offering ("IPO"), gray market distribution was an important risk faced by investors in the Company, and whether the gray market distribution and sale of Adams Golf clubs was of such a nature as to be a material consideration to persons considering investing in the Company's securities. Ex. A, p.1.

Professor Ochoa spent approximately 100 hours preparing her opinion in this case. Ex. B, 308:8-19. She supplemented the considerable pre-existing body of knowledge about gray marketing (and the golf industry in particular) she had acquired through her teaching with research that included a critical survey of the internet, Indiana University's Library, and

3

"databases available to [her] as a professor" to locate literature that was "useful and pertinent" to her opinion. Ex. B, 26:19-24; 27:1-3. Professor Ochoa's analysis of available literature for this case led her to eight articles in particular concerning gray marketing that she deemed relevant. Ex. B, 27: 4-14. Professor Ochoa also considered all non-plaintiff depositions taken in this case, various declarations, Costco sales data, the 1997 Form 10-K of Callaway Golf, and the Expert Report of Alan Miller when preparing her opinion. Ex. A, p. 4. Professor Ochoa also analyzed the expert reports of H. Stephen Grace and Christopher James in preparing her Rebuttal Expert Report of July 28, 2006. (attached hereto as Ex. C).

## IV.    ARGUMENT

### A.    Introduction

In their Opening Memorandum in support of their motion (abbreviated "Def. Br."), defendants selectively distort and even misrepresent the qualifications of Professor Ochoa, all in an effort to minimize her considerable expertise and discredit her. Defendants contend that Professor Ochoa's testimony should be disallowed under Fed. R. Evid 702, claiming that she allegedly "has no more knowledge than the average layman" of gray marketing. (Def. Br. p. 2). Defendants are wrong. As set forth below, Professor Ochoa's qualifications and testimony satisfy the standard of Fed. R. Evid. 702 and the standard for evaluation of the admission of non-scientific expert testimony as set out in *Kumho Tire v. Carmichael*, 526 U.S. 137 (1999), and its progeny. Defendants' motion, which may go to the weight the jury might give to Professor Ochoa's testimony but not its admissibility, should be denied.

4

**B.    The Third Circuit interprets Fed. R. Evid. 702's "specialized knowledge" requirement liberally and favors admissibility of expert testimony.**

The admissibility of expert testimony is governed by Fed. R. Evid. 702, which requires

an expert witness to have 'specialized knowledge' regarding the area of testimony. Fed. R.

Evid. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact
> to understand the evidence or to determine a fact in issue, a witness qualified as
> an expert by knowledge, skill, experience, training or education may testify
> thereto in the form of an opinion or otherwise, if: (1) the testimony is based
> upon sufficient facts or data, (2) the testimony is the product of reliable
> principles and methods; and (3) the witness has applied the principles and
> methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharm. Inc.,* 509 U.S. 579 (1993) and thereafter, the

Supreme Court has recognized that the district court has considerable latitude concerning the

admissibility of non-scientific expert testimony. In *Kumho Tire,* the Supreme Court held that

"the Rule 702 inquiry is flexible." 526 U.S. at 141. Further, "based upon [Fed. R. Evid. 702]

there are no particular requirements for the qualification of an expert...however... the trial judge

[must] be persuaded that the purported expert has knowledge or training in an area of

specialized knowledge that is beyond the abilities of an ordinary juror." *Eaton Corp. v.

Parker-Hannafin Corp.*, 292 F. Supp. 2d 555, 567 (D. Del. 2003).

When considering Fed. R. Evid. 702, the United States Court of Appeals for the Third

Circuit has held that "the basis of this specialized knowledge "can be practical experience as

well as academic training and credentials" and has "interpreted the specialized knowledge

requirement liberally." *Betterbox Communications v. BB Tech, Inc.*, 300 F.3d 325, 329 (3d

5

Cir. 2002); *accord Waldorf v. Shuta*, 142 F.3d 601,625 (3d Cir. 1998)("We have

interpreted the specialized knowledge requirement liberally, and have stated that this policy of

liberal admissibility of expert testimony extends to the substantive as well as the formal

qualification of experts"). Further, emphasizing the "liberal policy of admissibility" embodied in

Rule 702, the Third Circuit has encouraged the district courts to "interpret possible helpfulness

to the trier of fact broadly," even going so far as to urge courts to "favor admissibility in doubtful

cases." *Sparber v. Dupont Inst. of the Nemours Foundation*, 1997 U.S. Dist. LEXIS 2804

(D. Del. 1997); *citing Dunn v. Hovic*, 1 F.3d 1362, 1367 (3d Cir. 1993).

The rejection of expert testimony since *Daubert* is "the exception rather than the rule."

Fed. R. Evid. 702 Advisory Notes; *see Lesser v. Camp Wildwood*, 282 F.Supp. 2d 139, 143

(S.D.N.Y. 2003). The district court's role as gatekeeper in screening out unreliable testimony

is tempered by the liberal thrust of the Federal Rules of Evidence and presumption of

admissibility." *Borawick v. Shay*, 68 F.3d 597, 608 (2d Cir. 1995)[1].

Moreover, as the Second Circuit ruled in *Boucher v. United States Suzuki Motor*

*Corp.*, 73 F.3d 18, 21 (2d Cir. 1996): "Although expert testimony should be excluded if it is

speculative or conjectural, or if it is based on assumptions that are so unrealistic and

contradictory as to suggest bad faith, or to be in essence an apples and oranges comparison,

other contentions that the assumptions are unfounded go to the weight, not the admissibility, of

---

[1]   The Second Circuit has recognized that in *Daubert*, "the Court expressed its faith in
the power of the adversary system to test 'shaky but admissible' evidence, and advanced a bias
in favor of admitting evidence short of that solidly and indisputably proven to be reliable."
*Borawick*, 68 F.3d at 610.

the testimony." *Id.*, at 21 (internal quotations and citations omitted).

As detailed in the Statement of Facts above, Professor Ochoa's qualifications are considerable. She literally "teaches the course" on gray marketing and its impact on the golf industry to law students and graduate law students. Further, her qualifications bear precisely on the issue before the jury. The nature of the gray market and its effect on manufacturers in general and Adams Golf in particular is at the very heart of this litigation. Professor Ochoa's testimony is relevant and will be helpful to the fact finder in its effort to discern the materiality of the threat Adams Golf faced from gray marketing at the time of its Initial Public Offering ("IPO").

     **C.**    **Professor Ochoa is Qualified to Testify**.

          1.   Defendants rely upon inapposite precedent.

Defendants' attack on Professor Ochoa's qualifications is unsupported by the record. Their challenge is also crippled by a lack of supporting precedent. Defendants cite a smattering of cases where the qualifications of the proffered experts were found insufficient. However, without exception, each of the cited cases (unlike this case) involves experts asked to opine on subject areas completely foreign to their expertise.

Defendants place significant reliance on *Wilkinson v. Rosenthal & Co.*, 712 F. Supp. 474 (E.D. Pa. 1989), characterizing that case as "strikingly similar" to the instant case. Def. Br. at 5. Defendants' reliance is misplaced. While both cases involve the proffered expert testimony of professors, the similarity ends there.

7

*Wilkinson*, a decision which pre-dates *Daubert* by four years and *Kumho Tire* by ten years, involved a challenge to the admissibility of the expert opinion of a professor with considerable academic qualifications in finance. Unfortunately, none of the qualifications were relevant to his expert opinion. Simply put, his expertise, while academically impressive, had nothing to do with the subject matter in dispute. The professor was asked to opine on suitability and churning in a commodity futures account, despite admitting that he had "no knowledge of futures industry regulations, standards, practices, or laws concerning churning or suitability", nor had he ever "read any caselaw, statutes, or regulations concerning commodities churning or suitability standards..." *Id.*, at 476. While the professor taught a course involving (in part) "what commodity futures contracts are, how they are traded, and basic trading strategies"[2], he did not lecture "on the rules and regulations of the commodities industry nor did his course deal with excessive trading of a securities account." *Id.*, at 475. Further, the court noted that "although he claims that he [has] reviewed articles concerning commodity futures, he cannot remember the substance of any specific article." *Id.*, at 478.

This dearth of any demonstrable expertise or even knowledge with respect to suitability and churning was exacerbated by the facts that: (1) "critical pieces of... information given to [the expert] were factually inaccurate"; and (2) the expert's analysis was entirely "novel", having no support (or even recognition) in either case law or scholarly discourse. *Id.*, at 479. In fact, the analysis was so novel that it "erroneously analogize[s] commodity future accounts to

---

[2] Nothing in the courses he taught dealt with the subjects in dispute before the jury. While the professor testified that his teachings "dealt indirectly" with churning in a commodities account, the court disregarded that testimony as "vague and generally unhelpful." *Id.*, at 478.

stock and bond securities accounts. This error *belies a misunderstanding of the*

*fundamental differences* between the two types of investments. These differences are *critical*

to determining whether the account was excessively traded." *Id.*, at 478 (emphasis added). So,

not only did the expert have no knowledge of the subject matter in dispute, the knowledge he

did possess concerning stock and bond accounts was explicitly not applicable to a commodities

account. In plain terms, plaintiffs in *Wilkinson* found an expert who knew everything about

oranges and asked him to testify about apples--about which he knew nothing.

Such is not remotely the case here. As noted above, Professor Ochoa's course deals

directly with "the financial and economic consequences of the gray market to manufacturers."

Ex. B, 24:13-18. Unlike the expert in *Wilkinson*, she does not teach something "indirectly

related" to the disputed issue; she researches and teaches exactly what is at issue in this case.[3]

*See Surace v. Caterpillar, Inc.*, 111 F.3d 1039, 1056 (3d Cir. 1997) ("Qualifications of the

expert must be related to the subject matter upon which the expert plans to testify.") Professor

Ochoa, unlike the expert in *Wilkinson*, critically reviews and lectures on a regular basis

regarding relevant industry literature and academic articles *on the precise issue for jury*

*determination here,* and has done so consistently for the three consecutive years she has

---

[3] It is interesting to note that the professor in *Wilkinson was* certified as an expert on the
basic principles of commodities investing (the area he taught in his class) "by reason of his
education and teaching experience." *Id.*, at 482. This shows how defendants fundamentally
misread *Wilkinson*. In their brief, defendants state "According to her logic, Ochoa could be an
expert on every issue she teaches in her law school classes...A similar assertion was *squarely
rejected* by a district court in this Circuit. *See Wilkinson v. Rosenthal & Co.*, 712 F.Supp. 474,
475-78 (E.D. Pa. 1989)"(emphasis added). Defendants have turned the *Wilkinson* decision on
its ear. Actually, by certifying the Professor in that case as an expert in the area he taught, the
*Wilkinson* court roundly embraced the expert qualifications of Professor Ochoa in this case.

taught the subject. In fact, Professor Ochoa teaches not only the "basics of gray marketing" but

supplements the basic textbook with supplemental "materials on the golf industry and the golf

equipment industry in particular in the presentation of counterfeiting and gray marketing

material." She herself critically evaluates and selects these materials. Ex. B, 19: 15-21. It is not

necessary for her to profess to be an expert in other aspects of marketing which are not at issue

in this case.

   *Wilkinson* is distinguishable from the instant matter for the additional reason that

Professor Ochoa does not advance novel or unsupported analyses or conclusions. Her reliable

testimony is soundly grounded in her academic training, and in her constant and diligent review

of the latest materials relevant to gray marketing in general and to the golf industry in particular.

In preparing for her teaching duties, Professor Ochoa reads "the materials that I have asked my

students to read... and countless scholarly articles that supplement the materials [she teaches]."

Ex. B. 25:1-5[4]. Further, unlike in *Wilkinson*, Professor Ochoa relies entirely on accurate facts,

---

[4] Defendants erroneously claim that Professor Ochoa merely "perused eight articles" prior to offering her opinion. This grossly misstates the record. First, Professor Ochoa testified that she had read approximately 90 published articles on gray marketing in the last three years. Ex. B, 44:1-7. Second, Professor Ochoa evaluated the existing literature concerning gray marketing and, based upon her experience as a member of the faculty of the Indiana University School of Law and veteran teacher of gray marketing and its impact on manufacturers in the golf industry, culled eight articles she deemed most relevant to the task at hand in this case. While defendants complain about the weight to be given to Professor Ochoa's testimony (a complaint not cognizable here), they do not suggest just how many articles would be the appropriate amount to read. Defendants also complain that Professor Ochoa relied on some articles on gray marketing published after the Company's IPO in July, 1998. Again, defendants do not explain why the dates of publication are significant. If there occurred any radical change in gray marketing concepts after July, 1998 that rendered subsequent publications irrelevant to everything that transpired before the Company's IPO, defendants fail to establish it. *See Betterbox Communications, supra*, at 328 (Qualifications challenge to expert whose relevant experience preceded trial by eight years denied because "Black Box has not explained why the passage of

including those gleaned from deposition transcripts, publicly filed documents, sworn

declarations, and opinions of other experts, *see* Ex. A, p. 4, in addition to her own academic

research.

Apart from *Wilkinson*, defendants claim to rely on cases involving proffered experts who

allegedly have "far more relevant experience in the given subject matter than Ochoa." Def. Br.

at 5. In fact, the cited cases involve proposed experts with no relevant training or experience of

any sort. For example, in *Aloe Coal Co. v. Clark Equipment*, 816 F.2d 110 (3d Cir.

1987)(another case decided well before *Daubert* and *Kumho Tire*), plaintiffs asked a

salesman with no training or relevant experience to testify about the technical cause of a tractor

fire. In *Amco Ukrservice & Prompriladamco v. American Meter Comp.*, 2005 U.S. Dist.

LEXIS 12992 (E.D. Pa. 2005), the Court confronted *Daubert* challenges to two experts. It

denied one of the motions in its entirety; the second expert, who had been asked to opine on

eight separate topics, was certified as an expert as to five of the eight topics-- the *Amco* court

ruled that two of the topics failed *Daubert's* "fit" requirement as "no connection links the...

proposed topics with any disputed issue." *Id.,* at *10. In other words, the disqualification of

the expert had nothing to do with qualifications-- the testimony was simply irrelevant. As for

the final topic, the expert was not permitted to critique defendants' damages analysis prepared

by an economist because she had no qualifications of any sort-- neither "formal" nor "hands-

---

eight years between that period and commencement of the trial diminished [the expert's]
qualifications. If [the expert] had been called to testify as an expert regarding a field of
knowledge that had changed greatly during the past few years, Black Box's argument might have
force, but Black Box has not called to our attention any such changes...")

on" training in economics. *Id*, at *15.

   *Burton v. Danek Medical, Inc.*, 1999 U.S. Dist. LEXIS 2619 (E.D. Pa. 1999), like

*Wilkinson*, involved a proffered expert with impeccable professional credentials, *none* of which

was relevant to the issue before the jury.  In a products liability case involving lumbar fusion

surgery and pedicle screws, plaintiffs offered as their causation expert a board certified

neurologist.  Applying the *Daubert* standard to scientific testimony, the court disqualified the

expert because he: (1) had never performed surgery of any kind; (2) had no training in, nor had

he ever observed, spinal fusion surgery; (3) had never treated a patient who had instrumental

spinal fusion surgery; and (4) had only seen a spinal fixation device (the device at issue in the

case) once and "was not certain what kind of device it was." *Id*., at *10.

   Professor Ochoa has been asked to testify about issues that pertain exactly to her

research and teaching.  Her testimony, unlike each of the experts above, is admissible and will

assist the finder of fact.  Defendants' motion should be denied.[5]

## D.    **Professor Ochoa May Rebut Defendants' Experts' Testimony**

   Defendants' final complaint pertains to what they contend is Professor Ochoa's expert

opinion on standards for disclosure requirements in a prospectus in her Expert Rebuttal Report.

---

   [5] Defendants seem to take exception with Professor Ochoa's methodology, rather than
her qualifications, in their discussion of her treatment of 'low sales force morale'. Def. Br, p. 6.
Essentially, defendants suggest that Professor Ochoa cannot comment on the existence of low
morale being one of the symptoms of gray marketing, despite: (1) it being recognized as such in
the gray marketing literature; (2) the actual existence of low morale in the Company's sales force
at the time of the IPO. The existence of those two facts is not in dispute in defendants' brief--
what is in dispute is the materiality of those facts. Clearly, Professor Ochoa has identified a
proper basis for her testimony. Defendants can, at trial, challenge the weight to be given
Professor Ochoa's testimony, but they have established no basis for rendering it inadmissible.

Def. Br., p. 7. Defendants' challenge is unclear-- the cited portions of Professor Ochoa's rebuttal report do not purport to set out any standard for disclosure requirements. Instead, Professor Ochoa engages in lengthy and detailed analysis of the existence of, and material risk posed by, gray marketing for a company such as Adams, and then merely notes the simple fact that defendants did not disclose this risk to investors. She does so in the context of rebutting the testimony of Christopher James and Stephen Grace, who contend that because gray marketing was not material, no disclosure was required. Because Professor Ochoa has concluded that gray marketing was material, it follows logically that disclosure was required. Professor Ochoa does not purport to be an expert in SEC disclosure requirements. Instead, she is an expert in gray marketing who has identified a material risk to the Company and noted it was not disclosed.

13

## V.    CONCLUSION

WHEREFORE, for all the foregoing reasons, defendants' Motion to Exclude the

Expert Testimony of Christiana Ochoa should be DENIED.

|  |  |
|---|---|
|  | **ROSENTHAL, MONHAIT & GODDESS, P.A.** |
| **BERGER & MONTAGUE, P.C.** | By:  /s/ Carmella P. Keener |
| Todd Collins | Carmella P. Keener (DSBA No. 2810) |
| Elizabeth Fox | 919 Market Street, Suite 1401 |
| Neil Mara | Citizens Bank Center |
| 1622 Locust Street | Wilmington, DE   19801 |
| Philadelphia, PA. 19103 | (302) 656-4433 |
| (215) 875-3000 | ckeener@rmgglaw.com |
| *Lead Counsel for Plaintiffs and the Class* | *Liaison Counsel for Plaintiffs and the Class* |

OF COUNSEL:

**LAW OFFICES OF DONALD B. LEWIS**
Donald B. Lewis
5 Cynwyd Road
Bala Cynwyd, PA 19004
(610) 668-0331

**KELLER ROHRBACK, LLP**
Juli E. Farris
Elizabeth A. Leland
1201 Third Avenue, Suite 3200
Seattle, Washington 98101
(206) 623-1900

Dated: October 9, 2006

14

## CERTIFICATE OF SERVICE

I, Carmella P. Keener, hereby certify that on this 9th day of October, 2006, I caused

**PLAINTIFFS' ANSWERING BRIEF IN RESPONSE TO DEFENDANTS' MOTION TO**

**EXCLUDE THE EXPERT TESTIMONY OF CHRISTIANA OCHOA** to be electronically

filed with the Clerk of Court using CM/ECF, which will send notification of such filing to the

following:

Jeffrey L. Moyer, Esquire
Alyssa M. Schwartz, Esquire
Richards, Layton & Finger
One Rodney Square
Wilmington, DE 19801

John E. James, Esquire
Brian C. Ralston, Esquire
Potter, Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE 19801

In addition, a copy has been served by electronic mail upon the foregoing counsel and the

following:

Theodore J. McEvoy, Esquire
Michael J. Chepiga, Esquire
Elaine Divelbliss, Esquire
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
Email: tmcevoy@stblaw.com
Email: mchepiga@stblaw.com
Email: edivelbliss@stblaw.com

Paul R. Bessette, Esquire
Akin, Gump, Strauss, Hauer & Feld LLP
Three Embarcadero Center, Suite 2800
San Francisco, CA 94111-4066
Email: pbessette@akingump.com

Jennifer R. Brannen, Esquire
Akin, Gump, Strauss, Hauer & Feld, LLP
300 West 6th Street, Suite 2100
Austin, TX 78701-2916
Email: jbrannen@akingump.com

/s/ Carmella P. Keener
Carmella P. Keener (DSBA No. 2810)
ROSENTHAL, MONHAIT & GODDESS, P.A.
919 N. Market Street, Suite 1401
Wilmington, DE 19801
(302) 656-4433
ckeener@rmgglaw.com