# EXHIBIT C

Page 1

```
 1
 2           IN THE UNITED STATES DISTRICT COURT
 3              FOR THE DISTRICT OF DELAWARE
 4                         - - -
 5
 6   IN RE: ADAMS GOLF, INC.    :
 7   SECURITIES LITIGATION      :
 8
 9                   ORAL DEPOSITION
10                         OF
11              EDWARD NECARSULMER, III
12                Monday, August 7, 2006
13                         - - -
14         Oral deposition of EDWARD NECARSULMER,
15   III, held at the offices of SIMPSON THACHER &
16   BARTLETT, LLP, 425 Lexington Avenue, New York,
17   New York, commencing at 12:08 p.m., reported
18   by Pamela Harrison, RMR, CRR, CSR and Notary
19   Public.
20                         - - -
21
22
23       RSA/VERITEXT COURT REPORTING COMPANY
              1845 Walnut Street, 15th Floor
24              Philadelphia, PA   19103
             (215) 241-1000   (888) 777-6690
25
```

Page 2

APPEARANCES:

DONALD B. LEWIS, ESQUIRE
5 Cynwyd Road
Bala Cynwyd, Pennsylvania 19004
610-668-0331
For the Plaintiff

LAURA MORIATY, ESQUIRE
AKIN GUMP STRAUSS HAUER & FELD, LLP
300 West 6th Street
Suite 2100
Austin, Texas 78701-3911
512-499-6200
lmoriaty@akingump.com
For the Adams Golf Defendants

PAUL C. GLUCKOW, ESQUIRE
   and
RYAN ANTHONY KANE, ESQUIRE
SIMPSON THACHER & BARTLETT, LLP
425 Lexington Avenue
New York, New York 10017-3954
212-455-3056
pgluckow@stblaw.com
rkane@stblaw.com
For the Underwriter Defendants

Page 4

DEPOSITION SUPPORT INDEX

Direction to Witness Not to Answer:
Page Line
(NONE)

Request for Production of Documents:
Page Line
(NONE)

Stipulations:
Page Line
5/1

Questions Marked:
Page Line
(NONE)

Page 3

EXAMINATION INDEX

WITNESS: EDWARD NECARSULMER, III

BY MR. LEWIS . . . . . . . . . . 6, 188
BY MR. GLUCKOW . . . . . . . . . 177
BY MS. MORIATY . . . . . . . . . 184

---

EXHIBIT INDEX
320  Cover letter, 7/24/06, to Collins, Esq.,    7
     from McEvoy plus attachments NECARS
     00001-00029
321  Adams Golf Inc. Securities Litigation   10
     Expert Report of Edward Necarsulmer,
     III
322  Adams Golf Securities Litigation        10
     Rebuttal Report of Edward Necarsulmer,
     III
323  E-mail, 4/28/04, to "Ted" from "Paul"   13

324  AMF Bowling Securities Litigation       20
     Expert Report of Edward Necarsulmer,
     III

325  Adams Golf, Inc. Customer Due Diligence 144
     Questionnaire

326  Fax dated 8/7/06 plus attachment        144

327  Document entitled Exhibit VII           153

328  Deposition of Olga A. Pulido-Crowe      176

Page 5

EDWARD NECARSULMER, III
MR. LEWIS: The stipulations that we have been proceeding under, as I understand it, are waiving, sealing, certification, and filing of the transcript, and otherwise proceeding under the federal rules.
MR. GLUCKOW: Give me those again.
MR. LEWIS: Sealing.
MR. GLUCKOW: Right.
MR. LEWIS: Certification.
MR. GLUCKOW: Okay.
MR. LEWIS: And filing.
MR. GLUCKOW: Okay.
MR. LEWIS: Some of which probably are already mooted by the latest federal rules.
MR. GLUCKOW: Right.
MR. LEWIS: And I suppose you want to reserve read and sign for Mr. Necarsulmer?
MR. GLUCKOW: Exactly. Yes.
THE WITNESS: Perfect.
- - -

Page 58

```
 1           EDWARD NECARSULMER, III
 2    variables.  Some of the ones you've
 3    mentioned are variables -- are valid
 4    ones, but there are -- just the
 5    existence of the fact that it was a
 6    fast growing company or it was a new
 7    company would not be enough for me to
 8    direct the team to do something
 9    different.
10  BY MR. LEWIS:
11       Q.   What variables, if any, would
12  cause you to direct the team to do something
13  different in due diligence?
14           MR. GLUCKOW:  I'm going to object
15    to the form and object on the ground
16    that it's vague and ambiguous and quite
17    overbroad.
18         But you can answer.
19           THE WITNESS:  I mean it's a
20    situation-by-situation issue.  I think
21    that -- and I can only, you know,
22    really respond to it anecdotally if I
23    can think of some appropriate
24    anecdotes.  But I guess my point is,
25    without belaboring this, is you look at
```

Page 59

```
 1           EDWARD NECARSULMER, III
 2    each situation and hopefully -- you
 3    know, if you are managing the process,
 4    you look at each situation and
 5    hopefully you figure out, you know,
 6    what you need to do to satisfy your
 7    commitment committee, yourself, and the
 8    marketplace.  And there are really no
 9    other rules specific -- you know,
10    templates I can honestly look at you
11    and offer beyond that.
12  BY MR. LEWIS:
13       Q.   Have you ever had the experience
14  of adjusting the due diligence that you were
15  conducting on a company because the company had
16  management that had not had long experience in
17  running a public company?
18       A.   Yes.
19       Q.   And why did you do that?
20       A.   Well, because simply as a matter
21  of mechanics.  In many cases if a company had
22  done other offerings or was -- let's say had
23  done other offerings or had significant -- had
24  done private equity financings or other
25  transactions, typically they might be more
```

Page 60

```
 1           EDWARD NECARSULMER, III
 2    organized in terms of your ability to get
 3    documents and things that were on point that
 4    would go right to your organizational outline,
 5    where if they hadn't, you might have to really
 6    help them set up the process.
 7       Q.   Would you agree that in an
 8  initial public offering there is a strong
 9  affirmative duty of disclosure?
10           MR. GLUCKOW:  Object to the
11    form.  Vague and ambiguous.  Calls for
12    a legal conclusion.
13         You can answer.
14           THE WITNESS:  Yes.
15  BY MR. LEWIS:
16       Q.   Would you agree that in
17  conducting due diligence it is necessary for the
18  due diligence team to continue its investigation
19  of the issuer up to and including the effective
20  date of the registration statement?
21       A.   Yes.
22       Q.   And a due diligence
23  investigation would be inadequate if the
24  underwriter did not do that?
25           MR. GLUCKOW:  Object to the
```

Page 61

```
 1           EDWARD NECARSULMER, III
 2    form.  It calls for a legal conclusion.
 3         You can answer.
 4           THE WITNESS:  I mean, the easy
 5    answer is yes, but -- well, okay, let
 6    me just leave it at yes.
 7  BY MR. LEWIS:
 8       Q.   Is it your understanding as a
 9  non-lawyer that one of the duties of
10  underwriters is to deal fairly with the
11  investing public?
12           MR. GLUCKOW:  Object to the form.
13         You can answer.
14           THE WITNESS:  Absolutely.
15  BY MR. LEWIS:
16       Q.   Isn't that sometimes referred to
17  as the shingle theory?
18       A.   I'm not familiar with that.
19       Q.   I take it from your initial
20  report that one of your beliefs is that an
21  underwriter has an obligation to conduct a
22  reasonable investigation in an IPO?
23       A.   Yes.
24       Q.   And there is a long tradition
25  since the securities laws were enacted in the
```