# Appendix
# B426-B500

R. ALAN MILLER

Page 246

| | | |
|---|---|---|
| 16:34:19 | 1 | Castle Pines, CliniCorp, US Wireless? |
| 16:34:24 | 2 | A.    No, none of those. |
| 16:34:29 | 3 | Q.    New America securities litigation? |
| 16:34:42 | 4 | A.    No. |
| 16:34:42 | 5 | Q.    Zelcor, American Dental, Shearson? |
| 16:34:49 | 6 | A.    I can't recall. |
| 16:34:50 | 7 | Q.    Alpha Group, Kenny or Mackinley? |
| 16:34:59 | 8 | Those are the other ones we talked about. |
| 16:35:01 | 9 | A.    It wasn't Alpha Group.  No, I don't |
| 16:35:05 | 10 | recall. |
| 16:35:05 | 11 | Q.    But you do recall that AMF Bowling |
| 16:35:08 | 12 | was the other one? |
| 16:35:09 | 13 | A.    Yes. |
| 16:35:09 | 14 | Q.    The AMF report, which we'll mark in |
| 16:35:19 | 15 | a minute, was a model or a template for the section of |
| 16:35:23 | 16 | your report in this matter beginning with Paragraph 19 |
| 16:35:26 | 17 | that dealt with the underwriters' due diligence; is |
| 16:35:30 | 18 | that correct? |
| 16:35:30 | 19 | MR. LEWIS:  Objection to form and |
| 16:35:32 | 20 | foundation. |
| 16:35:33 | 21 | THE WITNESS:  I don't know that I'd |
| 16:35:35 | 22 | put it quite as broadly.  I think with |
| 16:35:38 | 23 | respect to the type of information that was |
| 16:35:41 | 24 | required by prospective underwriters, the |
| 16:35:47 | 25 | type of information relevant to that |

B426

R. ALAN MILLER

Page 247

| | | |
|---|---|---|
| 16:35:50 | 1 | examination, process issues as to how the |
| 16:35:52 | 2 | underwriter should go about the work, what |
| 16:35:55 | 3 | level of detail to obtain, factors that are |
| 16:35:58 | 4 | important in conducting the work. In those |
| 16:36:04 | 5 | source of factors, I used some of the |
| 16:36:07 | 6 | language which I also used in AMF Bowling as |
| 16:36:11 | 7 | it applied to this case but reviewing it to |
| 16:36:14 | 8 | make sure that it did apply to this case and |
| 16:36:17 | 9 | modifying it if necessary. |
| 16:36:20 | 10 | Again, some of the work here has |
| 16:36:23 | 11 | been generated over the years from reviewing |
| 16:36:26 | 12 | Mr. Haft's series, the due diligence and |
| 16:36:32 | 13 | securities transaction materials, and other |
| 16:36:35 | 14 | publications and materials that we get |
| 16:36:38 | 15 | regularly on due diligence issues. |
| 16:36:43 | 16 | MR. GLUCKOW: Let's mark your |
| 16:36:45 | 17 | initial report of AMF Bowling. |
| 16:37:24 | 18 | (Mr. Miller's AMF Report was marked |
| 16:37:24 | 19 | Exhibit-351 for identification.) |
| 16:37:25 | 20 | BY MR. GLUCKOW: |
| 16:37:25 | 21 | Q. Mr. Miller, you have 351, which is |
| 16:37:27 | 22 | your initial report in AMF. Do you recognize that as |
| 16:37:32 | 23 | your initial report in the AMF Bowling matter? |
| 16:37:36 | 24 | A. Yeah, it appears to be that. |
| 16:37:37 | 25 | Q. If you would, compare Paragraphs 19 |

B427

R. ALAN MILLER

Page 248

| | | |
|---|---|---|
| 16:37:40 | 1 | and 20 from the Adams Golf initial report with |
| 16:37:48 | 2 | Paragraphs 6 and seven of the AMF Bowling report. |
| 16:38:28 | 3 | A.      Right. |
| 16:38:28 | 4 | Q.      They are very similar, correct? |
| 16:38:30 | 5 | A.      Yeah, many of the bullet points are |
| 16:38:33 | 6 | the same.  There are a couple that differ given the |
| 16:38:36 | 7 | differing nature of the two companies involved in |
| 16:38:39 | 8 | these two matters. |
| 16:38:42 | 9 | Q.      The introductory language in 19 in |
| 16:38:47 | 10 | the Adams Golf report is the same as the introductory |
| 16:38:50 | 11 | language in six of the AMF report, correct? |
| 16:39:02 | 12 | A.      Yes. |
| 16:39:02 | 13 | Q.      The first bullet point is the same? |
| 16:39:05 | 14 | A.      Right. |
| 16:39:05 | 15 | Q.      The second bullet point is the same? |
| 16:39:08 | 16 | A.      Yes. |
| 16:39:10 | 17 | Q.      The third bullet point is the same? |
| 16:39:12 | 18 | A.      Yes. |
| 16:39:13 | 19 | Q.      The fourth bullet point is the same? |
| 16:39:16 | 20 | A.      Yes. |
| 16:39:16 | 21 | Q.      The fifth bullet point in Adams Golf |
| 16:39:20 | 22 | is new, correct? |
| 16:39:25 | 23 | A.      Correct. |
| 16:39:26 | 24 | Q.      Do you recall the process that led |
| 16:39:28 | 25 | to the adding of that bullet point and, specifically, |

B428

R. ALAN MILLER

Page 249

| | | |
|---|---|---|
| 16:39:35 | 1 | did you think to add that yourself or was that a |
| 16:39:38 | 2 | suggestion from counsel or someone else? |
| 16:39:39 | 3 | A.    No, that was my input, and it |
| 16:39:49 | 4 | reflects the various -- the differing stages of the |
| 16:39:52 | 5 | two companies; that is, AMF Bowling was a more |
| 16:39:55 | 6 | established, longer term company and Adams was a new, |
| 16:40:00 | 7 | fast-growing company with comparatively inexperienced |
| 16:40:06 | 8 | management, particularly in the public company arena, |
| 16:40:09 | 9 | and with a rapidly evolving business plan, so it was |
| 16:40:14 | 10 | an appropriate one for Adams that didn't apply so much |
| 16:40:17 | 11 | to AMF. |
| 16:40:18 | 12 | Q.    The next bullet point is the same, |
| 16:40:18 | 13 | correct? |
| 16:40:22 | 14 | A.    Correct. |
| 16:40:22 | 15 | Q.    The next one is the same after that? |
| 16:40:26 | 16 | A.    Correct. |
| 16:40:29 | 17 | Q.    Then the -- I think the report of |
| 16:40:41 | 18 | Gerard Adams I read somewhere was a typo in your AMF |
| 16:40:46 | 19 | report, so we'll ignore that one. |
| 16:40:48 | 20 | MR. LEWIS:  Objection to form. |
| 16:40:50 | 21 | BY MR. GLUCKOW: |
| 16:40:50 | 22 | Q.    The two paragraphs that follow the |
| 16:40:52 | 23 | list of bullet points -- |
| 16:40:56 | 24 | A.    Continuing through the bullet points |
| 16:40:58 | 25 | after you left off there, the next one is different, |

B429

## R. ALAN MILLER

Page 250

| | | |
|---|---|---|
| 16:41:04 | 1 | the next one is different. |
| 16:41:06 | 2 | Q. Which one did you say was different? |
| 16:41:08 | 3 | A. The one that begins historical |
| 16:41:13 | 4 | financial performance and trends. |
| 16:41:13 | 5 | Q. The first sentence is the same, |
| 16:41:15 | 6 | correct? |
| 16:41:15 | 7 | A. The first sentence is the same. In |
| 16:41:17 | 8 | Adams, I've added a sentence that relates to Adams' |
| 16:41:22 | 9 | specific situation versus AMF's. The next bullet |
| 16:41:26 | 10 | point in the AMF does not appear in Adams, the next |
| 16:41:31 | 11 | bullet point is the same, and the report of Gerard |
| 16:41:35 | 12 | Adams we've talked about. |
| 16:41:38 | 13 | Q. The next paragraph which begins in |
| 16:41:40 | 14 | both reports with respect to each of is the same, |
| 16:41:46 | 15 | correct? |
| 16:41:56 | 16 | MR. LEWIS: Off the record. |
| 16:41:56 | 17 | (Discussion held off the record.) |
| 16:41:56 | 18 | (Recess.) |
| 16:50:54 | 19 | (Mr. Rozen leaves the deposition.) |
| 16:50:54 | 20 | BY MR. GLUCKOW: |
| 16:51:29 | 21 | Q. Mr. Miller, have you had a chance to |
| 16:51:31 | 22 | look at those paragraphs we were considering before |
| 16:51:34 | 23 | the break? |
| 16:51:34 | 24 | A. Yes. |
| 16:51:35 | 25 | Q. As best I can tell, they are the |

R. ALAN MILLER

Page 251

| | | |
|---|---|---|
| 16:51:37 | 1 | same except in the paragraph that begins the proper |
| 16:51:40 | 2 | attitude in Adams Golf, instead of a period after |
| 16:51:46 | 3 | issuer, there's a comma, and then there's a clause |
| 16:51:50 | 4 | particularly with respect to a new company |
| 16:51:51 | 5 | experiencing substantial and rapid growth, which is |
| 16:51:54 | 6 | additional language in Adams Golf that's not in |
| 16:51:58 | 7 | AMF Bowling, correct? |
| 16:51:59 | 8 | A.       Correct. |
| 16:51:59 | 9 | Q.       Otherwise, they are the same, |
| 16:51:59 | 10 | correct? |
| 16:52:01 | 11 | A.       Correct. |
| 16:52:02 | 12 | Q.       In the AMF report, specifically in |
| 16:52:08 | 13 | Paragraph 9, you actually offer an opinion that the |
| 16:52:15 | 14 | due diligence investigation with respect to the public |
| 16:52:19 | 15 | offering was inadequate, correct? |
| 16:52:24 | 16 | MR. LEWIS:  Objection to form; it |
| 16:52:26 | 17 | speaks for itself. |
| 16:52:34 | 18 | THE WITNESS:  Yeah, in Paragraph 9 |
| 16:52:37 | 19 | of AMF, yeah, I give the opinion that the due |
| 16:52:40 | 20 | diligence investigation and pricing analysis |
| 16:52:45 | 21 | conducted by the QIU was inadequate. |
| 16:52:53 | 22 | BY MR. GLUCKOW: |
| 16:52:53 | 23 | Q.       Were you finished? |
| 16:52:54 | 24 | A.       Yes. |
| 16:52:54 | 25 | Q.       As we've discussed in the Adams Golf |

## R. ALAN MILLER

Page 252

| | | |
|---|---|---|
| 16:52:59 | 1 | report, in your initial report you did not offer any |
| 16:53:03 | 2 | opinion regarding the adequacy or the inadequacy of |
| 16:53:06 | 3 | the underwriters' due diligence and instead awaited |
| 16:53:10 | 4 | receipt of the defendants' information, correct? |
| 16:53:12 | 5 | MR. LEWIS: Objection to the form. |
| 16:53:13 | 6 | THE WITNESS: Yes, except with |
| 16:53:15 | 7 | respect to the disclosure and the prospectus |
| 16:53:19 | 8 | issue, which I do address in the initial |
| 16:53:21 | 9 | report in Adams Golf. |
| 16:53:22 | 10 | BY MR. GLUCKOW: |
| 16:53:22 | 11 | Q.     You're referring to Paragraph 22 of |
| 16:53:24 | 12 | Adams Golf? |
| 16:53:24 | 13 | A.     Yes. |
| 16:53:24 | 14 | Q.     Just so I'm clear, that |
| 16:53:27 | 15 | Paragraph 22, which I recognize is your opinion, in |
| 16:53:31 | 16 | the initial report does not address the adequacy or |
| 16:53:36 | 17 | the inadequacy of the underwriters' due diligence |
| 16:53:40 | 18 | investigation, correct? |
| 16:53:42 | 19 | A.     It doesn't address it separate from |
| 16:53:45 | 20 | the publication in the prospectus of the information |
| 16:53:49 | 21 | at issue; that's correct.  Again, I discussed that |
| 16:53:54 | 22 | topic a few minutes ago before the break.  It does not |
| 16:53:59 | 23 | discuss the investigation itself separate from the |
| 16:54:03 | 24 | publication in the Adams Golf Paragraph 22. |
| 16:54:07 | 25 | Q.     I just have to make sure I |

R. ALAN MILLER

Page 253

| | | |
|---|---|---|
| 16:54:09 | 1 | understand this correctly.  Twenty-two is saying that |
| 16:54:11 | 2 | it's your opinion that the disclosure in the |
| 16:54:13 | 3 | prospectus was inadequate in the area of gray |
| 16:54:17 | 4 | marketing and the effect that might have on the |
| 16:54:20 | 5 | company, correct? |
| 16:54:21 | 6 | A.      Right; right. |
| 16:54:21 | 7 | Q.      There's nothing in 22 that addresses |
| 16:54:23 | 8 | -- or anywhere else in the initial report that |
| 16:54:25 | 9 | addresses whether the underwriters' due diligence |
| 16:54:30 | 10 | investigation was or was not adequate, correct? |
| 16:54:33 | 11 | MR. LEWIS:  Objection to the form |
| 16:54:34 | 12 | and foundation. |
| 16:54:36 | 13 | THE WITNESS:  There's nothing else |
| 16:54:37 | 14 | that addresses that; that's correct.  Having |
| 16:54:39 | 15 | said that, I don't believe that you can, on a |
| 16:54:43 | 16 | practical basis, have an adequate and |
| 16:54:47 | 17 | reasonable underwriters' due diligence |
| 16:54:50 | 18 | investigation resulting in the nonpublication |
| 16:54:52 | 19 | in the prospectus of the information that's |
| 16:54:56 | 20 | at issue. |
| 16:54:59 | 21 | BY MR. GLUCKOW: |
| 16:54:59 | 22 | Q.      Are you taking away the due |
| 16:55:01 | 23 | diligence defense from the underwriters?  I'm not |
| 16:55:04 | 24 | following you. |
| 16:55:04 | 25 | MR. LEWIS:  Objection to form. |

VERITEXT PA COURT REPORTING COMPANY
(215) 241-1000   (888) 777-6690   (610) 434-8588

B433

R. ALAN MILLER

Page 254

| | | |
|---|---|---|
| 16:55:06 | 1 | THE WITNESS:  I don't think so. |
| 16:55:07 | 2 | That is, if the underwriter performs a |
| 16:55:13 | 3 | reasonable and adequate due diligence |
| 16:55:15 | 4 | investigation and discovers a problem, and it |
| 16:55:17 | 5 | does not then put in the prospectus, or |
| 16:55:20 | 6 | insist be put in the prospectus, I don't |
| 16:55:22 | 7 | believe he has conducted his necessary |
| 16:55:25 | 8 | reasonable and adequate due diligence |
| 16:55:28 | 9 | investigation to afford him the defense.  It |
| 16:55:31 | 10 | just doesn't make any sense that that would |
| 16:55:33 | 11 | be the case, so with respect to the |
| 16:55:36 | 12 | publication part of that function, my |
| 16:55:40 | 13 | Paragraph 22 addresses that.  It does not |
| 16:55:43 | 14 | address separately whether or not the |
| 16:55:45 | 15 | investigation part of the function was |
| 16:55:46 | 16 | performed adequately or reasonably in this |
| 16:55:50 | 17 | case. |
| 16:55:51 | 18 | BY MR. GLUCKOW: |
| 16:55:51 | 19 | Q.      Everything you just said is based on |
| 16:55:55 | 20 | what, because you're not a lawyer, right? |
| 16:55:58 | 21 | A.      That's correct. |
| 16:55:58 | 22 | Q.      You have no legal training, haven't |
| 16:56:01 | 23 | gone to law school? |
| 16:56:03 | 24 | A.      I don't have legal training.  I have |
| 16:56:06 | 25 | not gone to law school.  I have obviously read the |

R. ALAN MILLER

Page 255

| | | |
|---|---|---|
| 16:56:10 | 1 | Securities Act a number of times, read and reviewed |
| 16:56:12 | 2 | and attended PLI materials and that sort of thing, but |
| 16:56:16 | 3 | my expertise in the area is as I discussed before, in |
| 16:56:20 | 4 | the context of the investment banking and investment |
| 16:56:23 | 5 | community's understanding of these matters. |
| 16:56:25 | 6 | Q.    I just want to make sure -- |
| 16:56:28 | 7 | A.    I also -- sorry -- further in that |
| 16:56:31 | 8 | area have reviewed case law and opinions and that sort |
| 16:56:34 | 9 | of thing in this area as well. |
| 16:56:39 | 10 | Q.    I'm just going to do this |
| 16:56:42 | 11 | hypothetically to find out whether I can understand |
| 16:56:45 | 12 | what you are saying. |
| 16:56:46 | 13 | Assume that there's a prospectus |
| 16:56:49 | 14 | that's defective, it has a misstatement or an omission |
| 16:56:53 | 15 | in it, a material misstatement or omission, and also |
| 16:56:55 | 16 | assume that the underwriters have conducted a |
| 16:56:57 | 17 | reasonable due diligence investigation where they've |
| 16:57:00 | 18 | identified an issue, and they actually believe and |
| 16:57:07 | 19 | have reasonable grounds to believe that the |
| 16:57:09 | 20 | registration statement and prospectus are complete and |
| 16:57:13 | 21 | accurate, don't have any material misstatements, don't |
| 16:57:17 | 22 | omit any material facts; you do recognize, I take it, |
| 16:57:20 | 23 | that in that circumstance the underwriters are |
| 16:57:23 | 24 | entitled to a due diligence defense even if the |
| 16:57:26 | 25 | prospectus is defective, correct? |

B435

R. ALAN MILLER

Page 256

| | | |
|---|---|---|
| 16:57:29 | 1 | MR. LEWIS: Objection to form, |
| 16:57:29 | 2 | foundation, incomplete hypothetical, |
| 16:57:29 | 3 | argumentative. |
| 16:57:33 | 4 | BY MR. GLUCKOW: |
| 16:57:33 | 5 | Q. I'm not trying to be argumentative, |
| 16:57:36 | 6 | I'm just trying to understand. |
| 16:57:39 | 7 | A. I think not necessarily, I guess, is |
| 16:57:41 | 8 | the answer. I think that -- let me put it this way if |
| 16:57:47 | 9 | I can -- if I understand what you're asking, I believe |
| 16:57:49 | 10 | it is possible for underwriters to conduct a |
| 16:57:52 | 11 | reasonable and adequate due diligence investigation |
| 16:57:56 | 12 | and still be misled or defrauded in certain |
| 16:58:03 | 13 | circumstances, but I don't believe those circumstances |
| 16:58:14 | 14 | exist here, and at the time I prepared my initial |
| 16:58:22 | 15 | report I was prepared to say what I did in |
| 16:58:24 | 16 | Paragraph 22 but awaited the report of the defendants' |
| 16:58:32 | 17 | expert to see if they then established that they had |
| 16:58:35 | 18 | performed a reasonable and adequate due diligence |
| 16:58:37 | 19 | investigation, notwithstanding the omission from the |
| 16:58:42 | 20 | prospectus of what I considered to be material |
| 16:58:45 | 21 | information. |
| 16:58:45 | 22 | Q. Let's assume that the report that |
| 16:58:49 | 23 | you then received from the defendants established a |
| 16:58:52 | 24 | reasonable and adequate due diligence investigation. |
| 16:58:56 | 25 | Okay? |

R. ALAN MILLER

Page 257

| | | |
|---|---|---|
| 16:58:56 | 1 | A.      Right. |
| 16:58:57 | 2 | Q.      You would then agree that the |
| 16:58:59 | 3 | underwriters could take advantage of their affirmative |
| 16:59:04 | 4 | defense, correct? |
| 16:59:05 | 5 | MR. LEWIS:  Objection as to |
| 16:59:09 | 6 | foundation, incomplete hypothetical, vague |
| 16:59:10 | 7 | and indeterminate. |
| 16:59:12 | 8 | THE WITNESS:  Yeah, if I understand |
| 16:59:13 | 9 | your question correctly, I think that's a |
| 16:59:18 | 10 | possibility. |
| 16:59:18 | 11 | BY MR. GLUCKOW: |
| 16:59:18 | 12 | Q.      They could still be entitled to |
| 16:59:20 | 13 | their due diligence defense, notwithstanding your |
| 16:59:24 | 14 | opinion in 22 that there was a problem with the |
| 16:59:27 | 15 | prospectus, correct? |
| 16:59:28 | 16 | MR. LEWIS:  Objection to form. |
| 16:59:29 | 17 | THE WITNESS:  I think that that is |
| 16:59:30 | 18 | possible, yes. |
| 16:59:32 | 19 | BY MR. GLUCKOW: |
| 16:59:32 | 20 | Q.      We may have to come back to that |
| 16:59:38 | 21 | later but let's leave it there for now. |
| 16:59:44 | 22 | A.      Just to be clear, I view that as a |
| 16:59:47 | 23 | hypothetical question.  Having been through this |
| 16:59:49 | 24 | process so far in this case, I don't believe it |
| 16:59:52 | 25 | occurred. |

R. ALAN MILLER

Page 258

| | | |
|---|---|---|
| 16:59:53 | 1 | Q.        You don't believe there was a |
| 16:59:54 | 2 | reasonable investigation by the underwriters? |
| 16:59:57 | 3 | A.        Right.  I don't believe there was |
| 16:59:59 | 4 | one and I don't believe the defendants have |
| 17:00:01 | 5 | established that there was one.  Maybe I should do |
| 17:00:05 | 6 | that in reverse order.  I don't believe -- perhaps |
| 17:00:08 | 7 | more importantly, I don't believe defendants have |
| 17:00:10 | 8 | established they performed such an investigation. |
| 17:00:14 | 9 | From what I have seen, I also believe they have not |
| 17:00:17 | 10 | performed such investigation. |
| 17:00:18 | 11 | Q.        The first point that you just made, |
| 17:00:21 | 12 | which is your point that in your view the underwriters |
| 17:00:26 | 13 | have not established that they conducted a reasonable |
| 17:00:31 | 14 | investigation, as we'll see, that opinion is in your |
| 17:00:34 | 15 | rebuttal report, correct? |
| 17:00:35 | 16 | A.        Right. |
| 17:00:36 | 17 | Q.        The other opinion that you just |
| 17:00:38 | 18 | articulated, which is that you have an opinion that, |
| 17:00:42 | 19 | in fact, the underwriters did not conduct a reasonable |
| 17:00:47 | 20 | investigation, show me where that is in any of your |
| 17:00:49 | 21 | reports in this case. |
| 17:00:51 | 22 | A.        I don't know that I've stated that |
| 17:00:52 | 23 | that way prior to this discussion here. |
| 17:00:56 | 24 | Q.        In fact, you haven't, correct? |
| 17:00:58 | 25 | A.        I don't recall whether I did or not. |

R. ALAN MILLER

Page 259

| | | |
|---|---|---|
| 17:01:00 | 1 | Q.      Take a look at your opening report |
| 17:01:03 | 2 | and your rebuttal report, and if you can find it, show |
| 17:01:06 | 3 | me where it is. |
| 17:01:07 | 4 | MR. LEWIS:  Did you have something |
| 17:01:08 | 5 | else to say? |
| 17:01:09 | 6 | THE WITNESS:  Yeah.  I think in |
| 17:01:09 | 7 | connection with the discussion we've been |
| 17:01:11 | 8 | having is why this arose; that is, you asked |
| 17:01:13 | 9 | these questions and I'm answering them.  You |
| 17:01:15 | 10 | asked if I had an opinion about that and I |
| 17:01:17 | 11 | gave it to you. |
| 17:01:18 | 12 | My understanding is the way this |
| 17:01:21 | 13 | works is that the defendants are afforded the |
| 17:01:24 | 14 | opportunity to establish such a defense, and |
| 17:01:27 | 15 | in my view, they have not done so, and that, |
| 17:01:30 | 16 | from a legal perspective, may be where it |
| 17:01:33 | 17 | ends.  That's the area in which I was asked |
| 17:01:36 | 18 | to opine and that's the area about which I |
| 17:01:39 | 19 | have opined. |
| 17:01:40 | 20 | In the course of our conversation, |
| 17:01:42 | 21 | then, I believe you asked me if I had an |
| 17:01:43 | 22 | opinion about that and I said I do, but |
| 17:01:47 | 23 | whether or not I offer that is a matter of |
| 17:01:50 | 24 | what counsel decides to pursue. |
| 15:53:01 | 25 | BY MR. GLUCKOW: |

VERITEXT PA COURT REPORTING COMPANY
(215) 241-1000   (888) 777-6690   (610) 434-8588

B439

R. ALAN MILLER

Page 260

| | | |
|---|---|---|
| 15:53:01 | 1 | Q. Have you been asked to form an |
| 17:01:56 | 2 | opinion on that question, that question being whether |
| 17:01:58 | 3 | in your opinion the underwriters conducted a |
| 17:02:01 | 4 | reasonable investigation? |
| 17:02:06 | 5 | A. I don't think I've been specifically |
| 17:02:24 | 6 | asked so far to form that opinion. I think I've been |
| 17:02:29 | 7 | asked to address the issue of whether the defendants |
| 17:02:33 | 8 | established that. In the course of reviewing the |
| 17:02:37 | 9 | materials that I've reviewed, based on what I've seen |
| 17:02:45 | 10 | to date and as part of my work in determining whether |
| 17:02:48 | 11 | the defendants have met their burden in that regard, I |
| 17:02:53 | 12 | have formed an opinion about that but, again, I don't |
| 17:02:59 | 13 | know if I will be asked about that and have not |
| 17:03:02 | 14 | discussed that in that sense with counsel. |
| 17:03:04 | 15 | Q. What's your current understanding |
| 17:03:06 | 16 | regarding whether you intend to offer an opinion at |
| 17:03:11 | 17 | trial concerning whether the underwriters conducted a |
| 17:03:14 | 18 | reasonable due diligence investigation? |
| 17:03:18 | 19 | MR. LEWIS: Objection, asked and |
| 17:03:19 | 20 | answered. |
| 17:03:20 | 21 | THE WITNESS: I don't have a current |
| 17:03:21 | 22 | understanding as to whether I would be asked |
| 17:03:23 | 23 | that or not. What I've been asked so far is |
| 17:03:26 | 24 | do I believe the defendants have established |
| 17:03:28 | 25 | that they conducted such an investigation. |

B440

R. ALAN MILLER

Page 261

| | | |
|---|---|---|
| 17:03:34 | 1 | It's -- I don't know whether I would be asked |
| 17:03:43 | 2 | to go to the next step of your question and |
| 17:03:45 | 3 | determine whether I have an opinion on |
| 17:03:48 | 4 | whether the due diligence investigation was |
| 17:03:50 | 5 | adequate or not. |
| 17:03:52 | 6 | BY MR. GLUCKOW: |
| 17:03:52 | 7 | Q.    Just to be clear, you agree with me |
| 17:03:54 | 8 | that in your two written opinions to date, you have |
| 17:03:57 | 9 | not offered an opinion on that latter question, |
| 17:04:00 | 10 | namely, whether in your opinion the underwriters |
| 17:04:02 | 11 | conducted a reasonable due diligence investigation, |
| 17:04:05 | 12 | correct? |
| 17:04:05 | 13 | MR. LEWIS:  Objection to form; the |
| 17:04:07 | 14 | documents speak for themselves. |
| 17:04:07 | 15 | THE WITNESS:  I think that's |
| 17:04:11 | 16 | correct, but I'll be glad to check them and |
| 17:04:13 | 17 | see if I did say that or not. |
| 17:04:14 | 18 | BY MR. GLUCKOW: |
| 17:04:14 | 19 | Q.    Only if you feel the need to.  I'm |
| 17:04:16 | 20 | quite sure you have not given that opinion, but if you |
| 17:04:20 | 21 | want to be comfortable with that, please take your |
| 17:04:23 | 22 | time to do so. |
| 17:05:38 | 23 | A.    No, in the way we've been |
| 17:05:39 | 24 | discussing, I have not offered that so far. |
| 17:05:42 | 25 | Q.    Thank you. |

R. ALAN MILLER

Page 262

17:05:43  1              In terms of the materials

17:05:45  2      considered, Mr. Bessette went over this with you a

17:05:49  3      little bit and I won't take much time on it, but if

17:05:49  4      you would turn to Page 6 of your initial report,

17:05:53  5      Paragraph 11, in connection with the underwriters' due

17:06:12  6      diligence, how did you decide what materials you

17:06:16  7      wanted to review?

17:06:34  8          A.      I asked counsel what underwriter

17:06:37  9      materials had been produced, if there was a document

17:06:44  10     production, and what testimony there was on that

17:06:46  11     topic, and they identified that for me as the

17:06:51  12     deposition transcripts and the related exhibits.

17:06:58  13         Q.      Did counsel explain to you that

17:07:03  14     there was, in fact, a separate underwriter production

17:07:14  15     referred to in Mr. Necarsulmer's report which I know

17:07:23  16     you've seen, UND1 through 11,636?

17:07:23  17             MR. LEWIS:  Objection to form.

17:07:25  18             THE WITNESS:  Yeah, there was -- we

17:07:28  19         had some discussion about that, yes.

17:07:30  20     BY MR. GLUCKOW:

17:07:30  21         Q.      What do you recall about the

17:07:32  22     discussion?

17:07:33  23         A.      I asked what there was in the way of

17:07:36  24     underwriter production.  It was described to me there

17:07:40  25     was some amount of it; I don't recall how it was

R. ALAN MILLER

Page 263

| | | |
|---|---|---|
| 17:07:43 | 1 | characterized to me. I asked what it was and if |
| 17:07:58 | 2 | anybody had gone through it, I believe. I don't |
| 17:08:09 | 3 | recall specifically what we discussed about it beyond |
| 17:08:11 | 4 | that. It was not a terribly long discussion about it. |
| 17:08:19 | 5 | I don't recall who suggested it, but I came to the |
| 17:08:23 | 6 | conclusion that I would see what it was that |
| 17:08:25 | 7 | Mr. Necarsulmer produced from that document production |
| 17:08:29 | 8 | to support his opinion, whatever it was going to be. |
| 17:08:33 | 9 | Q. As you sit here today, you have |
| 17:08:36 | 10 | never received or reviewed the underwriters' document |
| 17:08:41 | 11 | production in this case; is that correct? |
| 17:08:42 | 12 | MR. LEWIS: Objection to form. |
| 17:08:44 | 13 | THE WITNESS: It's probably correct |
| 17:08:46 | 14 | with respect to all of it. I know there have |
| 17:08:49 | 15 | been some documents with UND numbers on them |
| 17:08:54 | 16 | and other documents referred to in deposition |
| 17:08:56 | 17 | transcripts and that sort of thing, but I |
| 17:08:59 | 18 | don't believe I have anywhere near the volume |
| 17:09:01 | 19 | that I understand exists. |
| 17:09:03 | 20 | BY MR. GLUCKOW: |
| 17:09:03 | 21 | Q. In fact, at least according to the |
| 17:09:05 | 22 | list on Page 11, the only UND documents you would have |
| 17:09:11 | 23 | received from the underwriters' production would have |
| 17:09:13 | 24 | been those marked as exhibits at depositions, correct? |
| 17:09:19 | 25 | A. From this list, that's correct, and |

R. ALAN MILLER

Page 264

| | | |
|---|---|---|
| 17:09:21 | 1 | I think that might be correct overall.  I have seen |
| 17:09:26 | 2 | some underwriter documents or documents that have UND |
| 17:09:31 | 3 | markings on them that I don't recall necessarily being |
| 17:09:36 | 4 | referenced in transcripts, but I haven't tried to |
| 17:09:39 | 5 | match them up that way, so it may be that they are all |
| 17:09:42 | 6 | deposition transcripts, I don't know that. |
| 17:09:44 | 7 | Q.    In what connection did you see the |
| 17:09:46 | 8 | documents with the UND on them where you think there's |
| 17:09:50 | 9 | at least a possibility that they may not have been |
| 17:09:53 | 10 | deposition transcripts? |
| 17:09:55 | 11 | A.    Just in the normal course of |
| 17:09:57 | 12 | reviewing materials in the litigation. |
| 17:10:01 | 13 | Q.    You're not aware of any category of |
| 17:10:09 | 14 | documents or information received from the |
| 17:10:11 | 15 | underwriters' production, as you sit here now, other |
| 17:10:13 | 16 | than those marked as deposition exhibits, correct? |
| 17:10:34 | 17 | THE WITNESS:  Can I have that back? |
| 17:10:35 | 18 | (The pending question was read |
| 17:10:36 | 19 | back.) |
| 17:10:36 | 20 | MR. LEWIS:  Objection to form. |
| 17:10:38 | 21 | THE WITNESS:  I think that's |
| 17:10:38 | 22 | correct.  I'm not aware underwriters' |
| 17:10:41 | 23 | documents have been categorized otherwise. |
| 17:10:44 | 24 | BY MR. GLUCKOW: |
| 17:10:44 | 25 | Q.    For example, I'm looking at your |

R. ALAN MILLER

Page 265

17:10:46  1   bullet point listed on Page 6 and I'm just trying to
17:10:48  2   think is there any way that the underwriters' document
17:10:51  3   production could be captured in any of those other
17:10:53  4   bullet points, and I'm not able to come up with any
17:10:56  5   way and I'm asking you whether you can.  These are the
17:11:03  6   materials that you considered, correct, at least as of
17:11:07  7   the time of your initial report?
17:11:07  8              MR. LEWIS:  Objection to form.
17:11:10  9              THE WITNESS:  No, I think you're
17:11:12  10         correct, and as we discussed earlier.
17:11:15  11   BY MR. GLUCKOW:
17:11:15  12         Q.     What about the underwriters'
17:11:29  13   responses and objections to the plaintiff's sixth set
17:11:35  14   of interrogatories, which were the underwriters'
17:11:38  15   responses to the plaintiff's so-called contention
17:11:42  16   interrogatories?  Those are not listed here.  Have you
17:11:45  17   ever reviewed those, to your knowledge?
17:11:46  18              MR. LEWIS:  Objection to form.
17:11:55  19              THE WITNESS:  I don't recall,
17:11:57  20         specifically.  There is at least one set of
17:12:02  21         interrogatory answers that I have reviewed.
17:12:04  22         I do not recall off the top of my head if
17:12:06  23         those are underwriters or not.
17:12:08  24   BY MR. GLUCKOW:
17:12:08  25         Q.     Are those interrogatory answers that

R. ALAN MILLER

Page 266

| | | |
|---|---|---|
| 17:12:12 | 1 | you're thinking of listed in the materials that you've |
| 17:12:15 | 2 | considered in any of your reports? |
| 17:12:28 | 3 | A.      No. |
| 17:13:03 | 4 | MR. GLUCKOW:  Can we mark this, |
| 17:13:05 | 5 | please. |
| 17:13:05 | 6 | (Document Bates Stamped |
| 17:13:05 | 7 | MIL 00090-00115 was marked Exhibit-352 for |
| 17:13:05 | 8 | identification.) |
| 15:53:01 | 9 | BY MR. GLUCKOW: |
| 15:53:01 | 10 | Q.      I'm handing you what's been marked |
| 17:13:10 | 11 | as 352; it's from your production in this matter.  Is |
| 17:13:13 | 12 | that the set of interrogatory responses you had in |
| 17:13:15 | 13 | mind? |
| 17:13:35 | 14 | A.      Yeah, I believe it is. |
| 17:13:41 | 15 | Q.      Those are the Adams Golf defendants' |
| 17:13:45 | 16 | responses to the plaintiff's fifth set of |
| 17:13:47 | 17 | interrogatories, correct? |
| 17:13:51 | 18 | A.      Correct. |
| 17:13:52 | 19 | Q.      Then to the best of your knowledge, |
| 17:14:00 | 20 | you have not reviewed the underwriters' responses and |
| 17:14:03 | 21 | objections to the plaintiff's sixth set of |
| 17:14:12 | 22 | interrogatories, correct? |
| 17:14:12 | 23 | A.      Yeah, I think that's correct. |
| 17:14:14 | 24 | Q.      Did you review the depositions of |
| 17:14:17 | 25 | the underwriter witnesses? |

B446

## R. ALAN MILLER

Page 267

| | | | |
|---|---|---|---|
| 17:14:18 | 1 | A. | I did. |
| 17:14:19 | 2 | Q. | Did you review specifically the |
| 17:14:22 | 3 | deposition transcript of Olga Pulido-Crowe? | |
| 17:14:27 | 4 | A. | I did. |
| 17:14:28 | 5 | Q. | Did you read the entire transcript |
| 17:14:30 | 6 | or just selected portions? | |
| 17:14:32 | 7 | A. | No, I read it all. |
| 17:14:32 | 8 | Q. | Did you read the exhibits that were |
| 17:14:35 | 9 | referred to during that deposition? | |
| 17:14:37 | 10 | A. | Yes. |
| 17:14:37 | 11 | Q. | In your rebuttal report, 335, |
| 17:15:01 | 12 | Pages 22 to 23 address Mr. Necarsulmer's report? | |
| 17:15:07 | 13 | A. | Right. |
| 17:15:15 | 14 | Q. | I'm going to ask you the same |
| 17:15:17 | 15 | question I asked you about your initial report, which | |
| 17:15:20 | 16 | is your best estimate for the amount of time it took | |
| 17:15:23 | 17 | you to draft Paragraphs 23, 24, and 25 of the rebuttal | |
| 17:15:35 | 18 | report. | |
| 17:15:37 | 19 | MR. LEWIS:  Objection to the form. | |
| 17:16:51 | 20 | THE WITNESS:  In this connection, I | |
| 17:17:00 | 21 | read Mr. Necarsulmer's report, I reviewed | |
| 17:17:04 | 22 | Ms. Pulido-Crowe's transcript, I reviewed | |
| 17:17:09 | 23 | Mr. Walravens' transcript or -- I think prior | |
| 17:17:17 | 24 | to writing this report, I skimmed | |
| 17:17:19 | 25 | Mr. Walravens' transcript and reviewed the | |

R. ALAN MILLER

Page 268

```
17:17:27    1        exhibits from the reports -- the transcripts,
17:17:31    2        I'm sorry.  I think I had a conversation with
17:17:59    3        counsel as to whether there was any factual
17:18:04    4        information I was missing in this context
17:18:06    5        from what I had reviewed and then wrote this
17:18:12    6        language, so that process may have taken five
17:18:28    7        to 15 hours -- I'm trying to give you some
17:18:37    8        decent estimate there -- maybe a little
17:18:40    9        longer than that, somewhere in that
17:18:44   10        neighborhood.
17:18:45   11   BY MR. GLUCKOW:
17:18:45   12        Q.      I think you anticipated my next
17:18:47   13   question because I believe the answer you just gave,
17:18:49   14   five to 15 hours, somewhere in that neighborhood,
17:18:52   15   maybe a little more than that, wasn't just in terms of
17:18:54   16   drafting these paragraphs but also included the time
17:18:56   17   you spent considering the issues discussed in those
17:19:00   18   paragraphs, correct?
17:19:00   19               MR. LEWIS:  Objection to form.
17:19:05   20               THE WITNESS:  Right.
17:19:07   21   BY MR. GLUCKOW:
17:19:07   22        Q.      In terms of that conversation with
17:19:11   23   counsel you just mentioned, do you recall anything
17:19:14   24   else about that other than what you testified to
17:19:16   25   already?
```

VERITEXT PA COURT REPORTING COMPANY
(215) 241-1000   (888) 777-6690   (610) 434-8588

B448

R. ALAN MILLER

Page 269

| | | |
|---|---|---|
| 17:19:17 | 1 | MR. LEWIS: Objection to form. |
| 17:19:20 | 2 | THE WITNESS: No, it was a fairly |
| 17:19:22 | 3 | brief conversation of the nature I said.  I |
| 17:19:27 | 4 | had summarized what I had observed existed, |
| 17:19:32 | 5 | asked if there was anybody else involved in a |
| 17:19:39 | 6 | significant way in the process, other |
| 17:19:40 | 7 | information that might be missing of that |
| 17:19:42 | 8 | type, and I think that was the nature of the |
| 17:19:44 | 9 | conversation. |
| 17:19:44 | 10 | BY MR. GLUCKOW: |
| 17:19:44 | 11 | Q.        What was the answer to that |
| 17:19:47 | 12 | question? |
| 17:19:47 | 13 | A.        Basically, no. |
| 17:19:50 | 14 | Q.        The information that you had |
| 17:19:51 | 15 | indicated that you had focused on already, if I |
| 17:19:55 | 16 | understood your prior answers correctly, was the Olga |
| 17:19:58 | 17 | Pulido-Crowe deposition transcript and the Walravens' |
| 17:20:02 | 18 | transcript, correct? |
| 17:20:05 | 19 | A.        And the exhibits. |
| 17:20:06 | 20 | Q.        And the exhibits of those |
| 17:20:08 | 21 | depositions? |
| 17:20:09 | 22 | A.        Yeah.  I maybe get your question. |
| 17:20:14 | 23 | That is the primary information I looked at related to |
| 17:20:16 | 24 | this topic. |
| 17:20:17 | 25 | Q.        Can you think of any other category |

R. ALAN MILLER

Page 270

| | | |
|---|---|---|
| 17:20:21 | 1 | of information, other deposition transcripts, other |
| 17:20:25 | 2 | documents that you looked at in connection with this |
| 17:20:29 | 3 | portion of the assignment prior to submitting your |
| 17:20:32 | 4 | rebuttal report? |
| 17:20:32 | 5 | MR. LEWIS:  Objection, compound, |
| 17:20:34 | 6 | vague. |
| 17:20:43 | 7 | THE WITNESS:  Other than |
| 17:20:43 | 8 | Mr. Necarsulmer's report, I don't believe so. |
| 17:20:55 | 9 | BY MR. GLUCKOW: |
| 17:20:55 | 10 | Q.    Question on the drafting process, |
| 17:20:59 | 11 | I'm going to try it with both the initial report and |
| 17:21:02 | 12 | rebuttal report but I can break it up if we need to. |
| 17:21:06 | 13 | As I'm sure you know, there were a |
| 17:21:08 | 14 | couple of drafts of each of your reports produced, I |
| 17:21:11 | 15 | think two of the initial report and two of the |
| 17:21:13 | 16 | rebuttal report, and there are some what I would |
| 17:21:15 | 17 | characterize as minor language changes reflected when |
| 17:21:20 | 18 | you compare the final version of the reports to the |
| 17:21:22 | 19 | drafts that were produced.  To the extent there are |
| 17:21:24 | 20 | differences in the final version of the report versus |
| 17:21:27 | 21 | the drafts, tell me how those changes occurred, and |
| 17:21:31 | 22 | what I'm getting at is whether those changes occurred |
| 17:21:36 | 23 | as a result of discussions with counsel, for example, |
| 17:21:38 | 24 | or whether they occurred with you going back and |
| 17:21:40 | 25 | looking at the document for a second or third or |

B450

R. ALAN MILLER

Page 271

17:21:43    1    fourth time.

17:21:43    2              MR. LEWIS:  Objection, compound,

17:21:44    3    vague.

17:21:45    4              THE WITNESS:  I don't know if I can

17:21:46    5    do it that way, although I'd like to.

17:21:50    6              First off, I don't know what was

17:21:51    7    produced exactly, I haven't reviewed the

17:21:54    8    production of the drafts, but as I remember

17:21:55    9    the process, I produced a draft and tended to

17:22:05   10    review it myself as well as have

17:22:07   11    conversations with counsel about it.

17:22:09   12              Generally speaking, counsel's

17:22:12   13    contributions are in the area of grammar and

17:22:15   14    the English language, and that usually

17:22:20   15    additions or substantive changes are work

17:22:23   16    that I add.  I could go through them and talk

17:22:27   17    about that, but that's generally the way this

17:22:29   18    process has worked and usually the way I

17:22:33   19    work.

17:22:33   20    BY MR. GLUCKOW:

17:22:33   21        Q.      In this particular matter, do you

17:22:35   22    recall any substantive changes offered by counsel as

17:22:40   23    opposed to grammar or English language-type changes?

17:22:45   24        A.      Let me see if I can tell that.

17:23:19   25              No, not with respect to the rebuttal

B451

R. ALAN MILLER

Page 272

| | | |
|---|---|---|
| 17:23:27 | 1 | report.  It doesn't trigger any memory of substantive |
| 17:23:37 | 2 | input from counsel. |
| 17:23:40 | 3 | Q.    Fine; thank you. |
| 17:23:42 | 4 | I noticed in your production I |
| 17:23:43 | 5 | didn't see any notes.  Did you keep any notes in |
| 17:23:46 | 6 | connection with your work in this matter? |
| 17:23:48 | 7 | A.    No. |
| 17:23:48 | 8 | Q.    Any specific reason why? |
| 17:23:51 | 9 | A.    No, except in this matter there |
| 17:23:58 | 10 | weren't the source of documents and exhibits and items |
| 17:24:05 | 11 | like that on which I sometimes do take notes as backup |
| 17:24:10 | 12 | or work papers, for example, to a draft and that sort |
| 17:24:13 | 13 | of thing.  Here, the drafts basically came out of the |
| 17:24:18 | 14 | review of the materials, and the drafts became the |
| 17:24:20 | 15 | result of what would have been notes otherwise. |
| 17:24:33 | 16 | MR. GLUCKOW:  I'm going to mark the |
| 17:24:35 | 17 | AMF rebuttal report. |
| 17:24:39 | 18 | (Mr. Miller's AMF Rebuttal Report |
| 17:24:39 | 19 | was marked Exhibit-353 for identification.) |
| 17:25:07 | 20 | BY MR. GLUCKOW: |
| 17:25:07 | 21 | Q.    Mr. Miller, I'm handing you |
| 17:25:23 | 22 | Exhibit-353, which is the rebuttal report that you |
| 17:25:26 | 23 | submitted in AMF.  Do you recognize that? |
| 17:25:31 | 24 | A.    It's coming back to me. |
| 17:25:49 | 25 | Q.    Do you recall whether you used the |

VERITEXT PA COURT REPORTING COMPANY
(215) 241-1000   (888) 777-6690   (610) 434-8588

B452

R. ALAN MILLER

Page 273

| | | |
|---|---|---|
| 17:25:51 | 1 | AMF rebuttal report as a model or template for the |
| 17:25:56 | 2 | rebuttal -- for the section of the rebuttal report in |
| 17:26:00 | 3 | Adams Golf that dealt with the underwriters' due |
| 17:26:05 | 4 | diligence question? |
| 17:26:15 | 5 | MR. LEWIS:  Objection to form. |
| 17:26:19 | 6 | THE WITNESS:  Actually, I don't |
| 17:26:23 | 7 | think so.  You asked me if I recall using it |
| 17:26:25 | 8 | as a template; is that what you said? |
| 15:53:01 | 9 | BY MR. GLUCKOW: |
| 15:53:01 | 10 | Q.      Did you make reference to the AMF |
| 17:26:30 | 11 | rebuttal report in preparing the section of your |
| 17:26:33 | 12 | rebuttal report in Adams Golf contained in |
| 17:26:37 | 13 | Paragraphs 23, 24, 25? |
| 17:26:45 | 14 | A.      The language is very similar.  I do |
| 17:27:08 | 15 | recall working from it.  It was not -- the reason I'm |
| 17:27:12 | 16 | hesitating on this, it was not a copy that looks like |
| 17:27:15 | 17 | this (indicating).  It was a copy of the text but not |
| 17:27:18 | 18 | the heading and the report itself that I was working |
| 17:27:21 | 19 | from, but the language is very similar, sure. |
| 17:27:25 | 20 | Q.      In the materials considered portion |
| 17:27:32 | 21 | of your rebuttal, and you have to go all the way back |
| 17:27:35 | 22 | to Page 1 of your rebuttal, you mention in addition to |
| 17:27:41 | 23 | what you reviewed in connection with your initial |
| 17:27:44 | 24 | report, you had also reviewed the expert reports from |
| 17:27:48 | 25 | the defendants, James, Sjoquist, Lynch, then Grace and |

R. ALAN MILLER

Page 274

| | | |
|---|---|---|
| 17:27:57 | 1 | Necarsulmer. I take it you don't recall reviewing any |
| 17:28:03 | 2 | other materials in connection with the preparation of |
| 17:28:06 | 3 | your rebuttal report? |
| 17:28:11 | 4 | MR. LEWIS: Objection to form. |
| 17:28:12 | 5 | THE WITNESS: I think that that's |
| 17:28:21 | 6 | correct. I don't recall any other materials |
| 17:28:31 | 7 | as I sit here. |
| 17:28:35 | 8 | BY MR. GLUCKOW: |
| 17:28:35 | 9 | Q. I'm going to hand you |
| 17:28:43 | 10 | Mr. Necarsulmer's initial report, which has already |
| 17:28:48 | 11 | been marked as 321 (indicating). Keep your rebuttal |
| 17:29:26 | 12 | report open as well. |
| 17:29:29 | 13 | In the first two sentences of your |
| 17:29:32 | 14 | Paragraph 23 in your rebuttal, you address in a |
| 17:29:38 | 15 | general way the outline of responsibilities that |
| 17:29:40 | 16 | Mr. Necarsulmer has provided. I take it you do not |
| 17:29:44 | 17 | disagree with Mr. Necarsulmer's general outline of |
| 17:29:48 | 18 | what underwriters are supposed to do as part of their |
| 17:29:51 | 19 | due diligence; is that correct? |
| 17:29:53 | 20 | MR. LEWIS: Objection to form, |
| 17:29:54 | 21 | foundation. |
| 17:29:56 | 22 | THE WITNESS: No, I don't think I |
| 17:30:54 | 23 | have a problem with his outline. I think |
| 17:30:58 | 24 | enough areas of it are general enough to |
| 17:31:05 | 25 | cover most of the important areas you'd want. |

R. ALAN MILLER

Page 275

17:31:10  1              to get into.

17:31:11  2     BY MR. GLUCKOW:

17:31:11  3              Q.        When you were responding to my

17:31:12  4     question, I'm assuming you were looking at 6A and 6B

17:31:15  5     of Mr. Necarsulmer's initial report where he provides

17:31:20  6     those general contours; is that correct?

17:31:22  7                       MR. LEWIS:  Objection to form.

17:31:23  8                       THE WITNESS:  Correct.

17:31:28  9     BY MR. GLUCKOW:

17:31:28  10             Q.        Then on Pages 3 and 4,

17:31:32  11    Mr. Necarsulmer gives a list of 11 areas of activity

17:31:41  12    that he believes the underwriters undertook as part of

17:31:46  13    their due diligence.  I take it you don't dispute that

17:31:52  14    the activities reflected in one through 11 actually

17:31:56  15    took place; is that correct?

17:31:57  16                      MR. LEWIS:  Objection to form and

17:31:59  17             foundation.

17:32:01  18                      THE WITNESS:  I'm sorry, could I

17:32:01  19             have the question back?

17:32:01  20                      (The pending question was read

17:32:01  21             back.)

17:33:27  22                      THE WITNESS:  There's some judgment

17:33:29  23             calls in here so I'm not sure I can answer

17:33:35  24             it, the way I understand you're asking, that

17:33:39  25             is.

B455

R. ALAN MILLER

Page 276

| 17:33:40 | 1 | BY MR. GLUCKOW: |
| 17:33:40 | 2 | Q.        I'm sorry; go ahead. |
| 17:33:42 | 3 | A.        Paragraph 1 on Page 3, it appears to |
| 17:33:46 | 4 | be Mr. Necarsulmer's opinion that the offering process |
| 17:33:54 | 5 | was staffed by a team of sufficient size, experience, |
| 17:33:58 | 6 | and seniority to be appropriate for the project; the |
| 17:34:02 | 7 | offering process was staffed by a team.  He then makes |
| 17:34:06 | 8 | the judgment as to the rest of the sentence. |
| 17:34:09 | 9 | Q.        Let's do it that way, then.  Do you |
| 17:34:11 | 10 | disagree that the team was of sufficient size, |
| 17:34:16 | 11 | experience, and seniority to be appropriate to the |
| 17:34:18 | 12 | project or do you just not have an opinion one way or |
| 17:34:25 | 13 | the other on that, or do you agree? |
| 17:34:29 | 14 | A.        First off, I think what I've said |
| 17:34:37 | 15 | about this is that his descriptions of these things |
| 17:34:41 | 16 | are extremely general.  They don't refer to people, |
| 17:34:46 | 17 | describe their backgrounds, refer to documents |
| 17:34:48 | 18 | reviewed, information discovered, much more |
| 17:34:53 | 19 | importantly independent analysis performed by the |
| 17:34:57 | 20 | underwriters, investigation work, and that sort of |
| 17:35:00 | 21 | thing except in the most general terms, so you can't |
| 17:35:03 | 22 | tell from his presentation what was done to discharge |
| 17:35:07 | 23 | the obligation to conduct a reasonable investigation |
| 17:35:10 | 24 | to come to the conclusions that they came to. |
| 17:35:17 | 25 | That was, at least at the first |

B456

R. ALAN MILLER

Page 277

| | | |
|---|---|---|
| 17:35:20 | 1 | instance, the level of information that I was |
| 17:35:26 | 2 | responding to in my opinions, that is, that |
| 17:35:31 | 3 | specifically with respect to the gray marketing issue, |
| 17:35:33 | 4 | there's no mention of it in here, there's no |
| 17:35:39 | 5 | indication that the issue was uncovered, discussed, |
| 17:35:45 | 6 | analyzed, that independent information was obtained to |
| 17:35:50 | 7 | evaluate it, that the impact of it was considered in |
| 17:35:54 | 8 | any fashion, so I don't see where the generalities |
| 17:36:00 | 9 | that Mr. Necarsulmer describes in these various |
| 17:36:03 | 10 | categories established the adequacy of the |
| 17:36:09 | 11 | investigation conducted by the underwriters in this |
| 17:36:13 | 12 | matter. |
| 17:36:13 | 13 | Q.    Are you finished? |
| 17:36:16 | 14 | A.    Yeah, I think that responds to your |
| 17:36:19 | 15 | question. |
| 17:36:20 | 16 | Q.    Not at all.  Move to strike. |
| 17:36:22 | 17 | MR. GLUCKOW:  Read back my question. |
| 17:36:22 | 18 | (The preceding question was read |
| 17:36:22 | 19 | back as follows: |
| 17:34:09 | 20 | Question:  Let's do it that, way |
| 17:34:10 | 21 | then.  Do you disagree that the team was of |
| 17:34:15 | 22 | sufficient size, experience, and seniority to |
| 17:34:17 | 23 | be appropriate to the project or do you just |
| 17:34:23 | 24 | not have an opinion one way or the other on |
| 17:34:25 | 25 | that, or do you agree?) |

B457

R. ALAN MILLER

Page 278

| | | |
|---|---|---|
| 17:36:22 | 1 | THE WITNESS: In terms of presenting |
| 17:36:54 | 2 | a defense theory, it does not discuss the |
| 17:36:59 | 3 | people, their backgrounds, their experience, |
| 17:37:02 | 4 | why he thinks they were qualified, what work |
| 17:37:05 | 5 | they did, how they were supervised, and that |
| 17:37:12 | 6 | sort of thing. There's no information |
| 17:37:15 | 7 | presented except the conclusion that he comes |
| 17:37:17 | 8 | to. |
| 17:37:17 | 9 | BY MR. GLUCKOW: |
| 17:37:17 | 10 | Q. I'm asking you whether you agree |
| 17:37:19 | 11 | with that conclusion or whether you haven't formed any |
| 17:37:23 | 12 | opinion on it at all. |
| 17:37:24 | 13 | MR. LEWIS: Objection to form, |
| 17:37:25 | 14 | foundation, and scope of opinion. |
| 17:37:27 | 15 | Go ahead. |
| 17:37:27 | 16 | THE WITNESS: Regarding |
| 17:37:28 | 17 | Mr. Necarsulmer's work, I was asked to |
| 17:37:32 | 18 | determine if he established that the |
| 17:37:35 | 19 | underwriters had conducted an adequate |
| 17:37:39 | 20 | investigation as we've been discussing, and |
| 17:37:42 | 21 | what I'm saying is with respect to |
| 17:37:45 | 22 | Paragraph 1 specifically and then more |
| 17:37:46 | 23 | generally the rest of this work, that he has |
| 17:37:50 | 24 | not presented any information on which |
| 17:37:52 | 25 | someone could make that determination. What |

B458

R. ALAN MILLER

Page 279

17:37:54  1          he's presented is his conclusions as to those

17:37:58  2          things.

17:37:59  3  BY MR. GLUCKOW:

17:37:59  4          Q.     I understand that you're not happy

17:38:01  5  with Mr. Necarsulmer's report, and that's fine, we'll

17:38:04  6  deal with that.  What I'm asking you is whether you

17:38:07  7  have any opinion of your own regarding whether the

17:38:11  8  offering process was staffed by a team of sufficient

17:38:14  9  size, experience, and seniority to be appropriate for

17:38:16  10  the project, and if you haven't formed an opinion on

17:38:18  11  that, that's fine, just tell me that.

17:38:21  12          MR. LEWIS:  Objection to form and

17:38:22  13          foundation.

17:38:23  14          Go ahead.

17:38:24  15          THE WITNESS:  I've had thoughts

17:38:26  16          about that.  I don't know that I've actually

17:38:28  17          formed a formal opinion on that as you're

17:38:32  18          asking me, as I think you may be asking me

17:38:35  19          here.

17:38:37  20          My thoughts in that area have been

17:38:43  21          that there was no managing director actually

17:38:49  22          involved in the process, as far as I could

17:38:51  23          tell.  From the information I've reviewed so

17:38:53  24          far, Mr. Francis was a figurehead whose

17:38:56  25          fingerprints are not on the project, that

B459

R. ALAN MILLER

Page 280

| | | |
|---|---|---|
| 17:39:01 | 1 | Ms. Pulido-Crowe was hoping to become a |
| 17:39:05 | 2 | managing director and was at the time -- I |
| 17:39:12 | 3 | forget the next title, I think it was vice |
| 17:39:18 | 4 | president -- conducting oversight on the |
| 17:39:19 | 5 | work, much of which was delegated to |
| 17:39:22 | 6 | Mr. Walravens and a financial analyst whose |
| 17:39:29 | 7 | name, unfortunately, I can't recall, and that |
| 17:39:33 | 8 | I'm not sure I saw any evidence of |
| 17:39:37 | 9 | involvement by more senior personnel with |
| 17:39:40 | 10 | perhaps more business experience and |
| 17:39:44 | 11 | background with regard to critical issues |
| 17:39:48 | 12 | such as gray marketing, and if the team had |
| 17:39:56 | 13 | the experience to be appropriate for the |
| 17:40:01 | 14 | project, I saw no evidence of inclination to |
| 17:40:09 | 15 | perform independent analysis with respect to |
| 17:40:11 | 16 | the gray market issue specifically from that |
| 17:40:15 | 17 | team, which suggested either a lack of |
| 17:40:18 | 18 | experience in the area or a simple failure to |
| 17:40:23 | 19 | follow up on information that was obviously |
| 17:40:27 | 20 | deserving of follow-up. |
| 17:40:28 | 21 | BY MR. GLUCKOW: |
| 17:40:28 | 22 | Q.     You don't dispute that the |
| 17:40:31 | 23 | underwriters had discussions with senior management at |
| 17:40:35 | 24 | the company concerning the gray market issue, correct? |
| 17:40:38 | 25 | MR. LEWIS:  Objection to form. |

R. ALAN MILLER

Page 281

| | | |
|---|---|---|
| 17:40:39 | 1 | THE WITNESS:  No, I don't dispute, |
| 17:40:41 | 2 | from what I've seen, that they had |
| 17:40:43 | 3 | discussions with a couple of management |
| 17:40:44 | 4 | people about the topic. |
| 17:40:45 | 5 | BY MR. GLUCKOW: |
| 17:40:45 | 6 | Q.    You don't dispute that the |
| 17:40:47 | 7 | underwriters conducted telephone interviews with at |
| 17:40:56 | 8 | least seven of Adams' top customers concerning a |
| 17:41:00 | 9 | variety of topics, correct? |
| 17:41:01 | 10 | MR. LEWIS:  Objection to form and |
| 17:41:02 | 11 | foundation. |
| 17:41:03 | 12 | THE WITNESS:  No, I don't dispute |
| 17:41:06 | 13 | that from what I can see those interviews |
| 17:41:09 | 14 | took place; no. |
| 17:41:09 | 15 | BY MR. GLUCKOW: |
| 17:41:09 | 16 | Q.    Don't you consider those interviews |
| 17:41:11 | 17 | an example of the kind of independent verification |
| 17:41:14 | 18 | that you're referring to? |
| 17:41:18 | 19 | A.    No.  That is that the conduct of |
| 17:41:22 | 20 | outside interviews absent management participation is |
| 17:41:25 | 21 | important, but when no specific questioning is made |
| 17:41:31 | 22 | about the gray marketing or the effect of gray |
| 17:41:33 | 23 | marketing, more importantly, no contact was made with |
| 17:41:37 | 24 | any of the people who had complained about gray |
| 17:41:40 | 25 | marketing, no documentation or correspondence was |

VERITEXT PA COURT REPORTING COMPANY
(215) 241-1000   (888) 777-6690   (610) 434-8588

B461

R. ALAN MILLER

Page 282

| | | |
|---|---|---|
| 17:41:42 | 1 | reviewed with respect to the complaints about gray |
| 17:41:48 | 2 | marketing, no independent follow-up was made to |
| 17:41:52 | 3 | determine if it was a problem or what the impact of it |
| 17:41:55 | 4 | was other than the assurance that I believe it was |
| 17:42:01 | 5 | Mr. Adams gave to Ms. Pulido-Crowe with respect to |
| 17:42:06 | 6 | Costco by saying don't pursue your own independent |
| 17:42:09 | 7 | inquiry of Costco, I'll take care of them, or |
| 17:42:12 | 8 | something to that effect, and/or Ms. Pulido-Crowe's |
| 17:42:18 | 9 | assessment that since her husband wouldn't purchase |
| 17:42:22 | 10 | sporting goods items at Costco, that it was not likely |
| 17:42:26 | 11 | to be a threat to Adams Golf. |
| 17:42:28 | 12 | Those are what I remember about the |
| 17:42:29 | 13 | disposition of the issue with management, but that |
| 17:42:32 | 14 | seemed to end the inquiry, from what I can tell. |
| 17:42:37 | 15 | Q.       One of the things you said in that |
| 17:42:40 | 16 | answer was that there was no mention of the gray |
| 17:42:43 | 17 | marketing issue in the customer surveys; is that |
| 17:42:43 | 18 | correct? |
| 17:42:48 | 19 | A.       Right. |
| 17:42:48 | 20 | Q.       There was a specific question that |
| 17:42:49 | 21 | said are there any other issues, legal, contractual, |
| 17:42:52 | 22 | or otherwise, which you feel are important; isn't that |
| 17:42:58 | 23 | correct? |
| 17:42:58 | 24 | MR. LEWIS:  Objection to form. |
| 17:42:59 | 25 | THE WITNESS:  I understand that was |

R. ALAN MILLER

Page 283

| | | |
|---|---|---|
| 17:43:00 | 1 | a question on the outline. |
| 17:43:01 | 2 | BY MR. GLUCKOW: |
| 17:43:01 | 3 | Q.    You understand that was a question |
| 17:43:03 | 4 | that was asked of the customers who were interviewed |
| 17:43:06 | 5 | by the underwriters, correct? |
| 17:43:10 | 6 | A.    I understood it was a question on |
| 17:43:11 | 7 | the outline to be asked.  I don't recall reading |
| 17:43:15 | 8 | enough detail about the actual conversations to know |
| 17:43:18 | 9 | if it was asked or how it was asked or what the |
| 17:43:22 | 10 | inclination of the customer would have been to provide |
| 17:43:25 | 11 | the information over the telephone, what their |
| 17:43:30 | 12 | attitude toward Adams was at that point as a customer |
| 17:43:35 | 13 | trying to acquire a hot club in that market.  I don't |
| 17:43:41 | 14 | know a lot of those things about the customer |
| 17:43:44 | 15 | interviews over the telephone. |
| 17:43:45 | 16 | Q.    Did you review the actual record |
| 17:43:49 | 17 | reflecting the 11 interviews that the underwriters |
| 17:43:53 | 18 | conducted which show the responses received? |
| 17:43:59 | 19 | A.    I saw at least some of that |
| 17:44:01 | 20 | information in some exhibits, yes. |
| 17:44:03 | 21 | Q.    Isn't it true that in going through |
| 17:44:06 | 22 | each and every one of those 11 telephone interviews, |
| 17:44:11 | 23 | not a single one of the responses indicated any |
| 17:44:14 | 24 | concern about gray market or Costco? |
| 17:44:17 | 25 | MR. LEWIS:  Objection to foundation |

B463

R. ALAN MILLER

Page 284

| | | |
|---|---|---|
| 17:44:20 | 1 | and form; misstates the evidence. |
| 17:44:23 | 2 | THE WITNESS: I don't recall seeing |
| 17:44:24 | 3 | any mention in the responses of Costco or |
| 17:44:35 | 4 | gray marketing. |
| 17:44:36 | 5 | BY MR. GLUCKOW: |
| 17:44:36 | 6 | Q.    Mr. Necarsulmer says, in his |
| 17:44:40 | 7 | rebuttal report which I know you've seen, these kinds |
| 17:44:40 | 8 | of interviews with independent parties are the type of |
| 17:44:43 | 9 | work underwriters should engage in to confirm |
| 17:44:47 | 10 | discussions with company management.  Don't you agree |
| 17:44:49 | 11 | with that? |
| 17:44:49 | 12 | MR. LEWIS:  Objection to form. |
| 17:44:51 | 13 | THE WITNESS:  Again, as a general |
| 17:44:53 | 14 | category, I certainly agree that underwriters |
| 17:44:56 | 15 | should conduct independent interviews with |
| 17:44:58 | 16 | outside parties to confirm information they |
| 17:45:02 | 17 | have received from management.  Whether or |
| 17:45:05 | 18 | not the way these were done, the basis of the |
| 17:45:10 | 19 | selection of the parties to interview, and |
| 17:45:12 | 20 | all those sorts of things were adequate are, |
| 17:45:15 | 21 | I think, question marks at this point in that |
| 17:45:18 | 22 | area. |
| 17:45:19 | 23 | BY MR. GLUCKOW: |
| 17:45:19 | 24 | Q.    Again, the only deposition |
| 17:45:26 | 25 | transcripts of underwriters you can recall reading are |

B464

R. ALAN MILLER

Page 285

| | | |
|---|---|---|
| 17:45:30 | 1 | Pulido-Crowe and Walravens', correct? |
| 17:45:32 | 2 | MR. LEWIS:  Objection to form. |
| 17:45:37 | 3 | THE WITNESS:  I believe that's |
| 17:45:37 | 4 | correct. |
| 17:45:38 | 5 | BY MR. GLUCKOW: |
| 17:45:38 | 6 | Q.      You've never reviewed the |
| 17:45:40 | 7 | underwriters' document production in this case, |
| 17:45:42 | 8 | correct? |
| 17:45:42 | 9 | A.      Other than those we've discussed. |
| 17:45:43 | 10 | Q.      Other than as marked as exhibits at |
| 17:45:45 | 11 | depositions, correct? |
| 17:45:46 | 12 | A.      I think that's correct. |
| 17:45:48 | 13 | Q.      You referred to a conversation |
| 17:45:51 | 14 | between Pulido-Crowe and Mr. Adams regarding gray |
| 17:45:56 | 15 | marketing and Costco.  Is it your understanding that |
| 17:45:59 | 16 | the only discussions that the underwriters had |
| 17:46:02 | 17 | concerning the gray market issue took place between |
| 17:46:06 | 18 | Ms. Pulido-Crowe and Mr. Adams? |
| 17:46:10 | 19 | MR. LEWIS:  Objection to form. |
| 17:46:11 | 20 | THE WITNESS:  No, I don't think |
| 17:46:13 | 21 | that's necessarily right.  I think there were |
| 17:46:15 | 22 | conversations with one of the other |
| 17:46:16 | 23 | management people at least, maybe two others, |
| 17:46:20 | 24 | of the salespeople -- |
| 17:46:21 | 25 | BY MR. GLUCKOW: |

B465

R. ALAN MILLER

Page 286

| | | | |
|---|---|---|---|
| 17:46:21 | 1 | Q. | Gonsalves? |
| 17:46:26 | 2 | A. | -- the sales executives, Gonsalves |

17:46:26    3    and --

| 17:46:31 | 4 | Q. | Beebe? |
| 17:46:31 | 5 | A. | -- possibly Beebe, about that topic. |
| 17:46:37 | 6 | Q. | How many conversations are you aware |

17:46:39    7    of between the underwriters and Adams' management

17:46:42    8    concerning the gray marketing or Costco issue?

17:46:49    9         A.      As far as I can recall, I don't

17:46:57    10    recall reference to more than a few outside of the

17:47:03    11    Hoffman letter issue, if we can call it that, but with

17:47:08    12    respect to pursuing independent investigation and that

17:47:13    13    sort of thing, essentially none.

17:47:16    14              MR. LEWIS:  I want to back up and

17:47:17    15         retroactively object to the question

17:47:18    16         suggesting that there was a conversation with

17:47:21    17         Beebe since the record does not reflect any

17:47:24    18         such conversation.  It misstates --

17:47:32    19              MR. GLUCKOW:  I disagree with your

17:47:35    20         characterization, but the record will speak

17:47:38    21         for itself.

17:47:39    22    BY MR. GLUCKOW:

17:47:39    23         Q.      What's your basis for saying that

17:47:48    24    Mr. Francis's role was purely as a figurehead?

17:47:52    25         A.      Ms. Pulido-Crowe's testimony to that

B466

R. ALAN MILLER

| | | |
|---|---|---|
| 17:47:59 | 1 | effect. |
| 17:47:59 | 2 | Q.      You take from Ms. Pulido-Crowe's |
| 17:48:02 | 3 | testimony that Francis was nothing more than a |
| 17:48:05 | 4 | figurehead? |
| 17:48:06 | 5 | A.      In very shorthand form, yes -- |
| 17:48:08 | 6 | Q.      Do you have any other basis for |
| 17:48:10 | 7 | that? |
| 17:48:10 | 8 | MR. LEWIS:  Please don't cut him |
| 17:48:12 | 9 | off. |
| 17:48:12 | 10 | BY MR. GLUCKOW: |
| 17:48:12 | 11 | Q.      I'm sorry. |
| 17:48:13 | 12 | A.      She described, as I recall, his |
| 17:48:16 | 13 | attendance at certain meetings, his fronting the |
| 17:48:19 | 14 | presentations to the commitment committee, and what I |
| 17:48:19 | 15 | would describe as more of a political role in the |
| 17:48:23 | 16 | process than a substantive role in an investigatory |
| 17:48:31 | 17 | way or anything of that nature. |
| 17:48:32 | 18 | Q.      Any other basis for that statement? |
| 17:48:35 | 19 | MR. LEWIS:  Objection to form and |
| 17:48:42 | 20 | foundation. |
| 17:48:43 | 21 | THE WITNESS:  Only that in |
| 17:48:45 | 22 | discussing the functions that they were |
| 17:48:48 | 23 | performing, in the deposition I don't recall |
| 17:48:52 | 24 | either Pulido-Crowe or Walravens referring to |
| 17:48:55 | 25 | Francis having done anything in the process |

R. ALAN MILLER

Page 288

| | | |
|---|---|---|
| 17:49:00 | 1 | of conducting investigation or interviews or |
| 17:49:05 | 2 | any of those sorts of functions other than, |
| 17:49:07 | 3 | as Pulido-Crowe describes, in what I'll call |
| 17:49:11 | 4 | a more political role. |
| 17:49:13 | 5 | BY MR. GLUCKOW: |
| 17:49:13 | 6 | Q.      Is it your opinion the underwriters |
| 17:49:20 | 7 | should have contacted Costco? |
| 17:49:24 | 8 | MR. LEWIS:  Objection to form and |
| 17:49:25 | 9 | foundation. |
| 17:49:34 | 10 | THE WITNESS:  I don't know, I hadn't |
| 17:49:44 | 11 | thought about that specifically, but I |
| 17:49:46 | 12 | certainly think, backing up a step, in terms |
| 17:49:49 | 13 | of generality they certainly should have |
| 17:49:51 | 14 | investigated the Costco matter independently, |
| 17:49:54 | 15 | whether that involved contacting Costco, |
| 17:49:57 | 16 | which was certainly one possibility since |
| 17:50:01 | 17 | Lehman Brothers appeared to have some entree |
| 17:50:05 | 18 | to Costco, I don't recall specifically what |
| 17:50:08 | 19 | that was, but contacting Costco directly |
| 17:50:10 | 20 | seemed to be one choice, contacting an |
| 17:50:13 | 21 | industry expert with knowledge of those types |
| 17:50:15 | 22 | of things to conduct an independent analysis |
| 17:50:17 | 23 | is another choice; there may have been |
| 17:50:20 | 24 | different ways to accomplish that.  I haven't |
| 17:50:24 | 25 | thought further about how that should have |

B468

R. ALAN MILLER

Page 289

| | | |
|---|---|---|
| 17:50:26 | 1 | been done, but something should have been |
| 17:50:28 | 2 | done along those lines to pursue that issue. |
| 17:50:30 | 3 | BY MR. GLUCKOW: |
| 17:50:30 | 4 | Q.    As you sit here today, what is it |
| 17:50:34 | 5 | that you think needed to be done to have what, in your |
| 17:50:39 | 6 | view, would have been a reasonable investigation? |
| 17:50:41 | 7 | MR. LEWIS:  Objection to form and |
| 17:50:44 | 8 | foundation, compound, and we've been over a |
| 17:50:46 | 9 | lot of this already. |
| 17:50:49 | 10 | Go ahead. |
| 17:50:50 | 11 | THE WITNESS:  Again, that's an area |
| 17:51:04 | 12 | I have not been asked for specific opinions |
| 17:51:06 | 13 | on to this time.  I have produced the opinion |
| 17:51:11 | 14 | so far that Mr. Necarsulmer has not |
| 17:51:14 | 15 | demonstrated that a reasonable and adequate |
| 17:51:18 | 16 | investigation was performed, which is what I |
| 17:51:20 | 17 | was asked to opine to in this area. |
| 17:51:23 | 18 | Having conducted some analysis of |
| 17:51:26 | 19 | this and reviewed the information we |
| 17:51:28 | 20 | discussed so far today, I have reached some |
| 17:51:31 | 21 | opinions about what I know so far appeared to |
| 17:51:40 | 22 | have been done or not done, and that's the |
| 17:51:42 | 23 | basis on which I am answering your questions |
| 17:51:45 | 24 | now. |
| 17:51:45 | 25 | In terms of what should have been |

B469

R. ALAN MILLER

Page 290

| | | |
|---|---|---|
| 17:51:47 | 1 | done to conduct a reasonable investigation, |
| 17:51:50 | 2 | at a minimum, the project should have been |
| 17:51:53 | 3 | staffed sufficiently to ensure that somebody |
| 17:51:59 | 4 | would take the responsibility to conduct an |
| 17:52:02 | 5 | independent investigation of potential |
| 17:52:05 | 6 | problem areas as they arose.  The one I'm |
| 17:52:10 | 7 | concerned about, obviously, is gray |
| 17:52:13 | 8 | marketing. |
| 17:52:13 | 9 | When that appeared to be an issue, |
| 17:52:19 | 10 | based on the information that clubs were |
| 17:52:20 | 11 | appearing in Costco, the underwriters should |
| 17:52:25 | 12 | have conducted an independent investigation |
| 17:52:26 | 13 | as to what that meant, what effect it was |
| 17:52:30 | 14 | having on the retailers and distributors, |
| 17:52:32 | 15 | what effect it was having on customers, how |
| 17:52:36 | 16 | Costco was obtaining the clubs, whether it |
| 17:52:40 | 17 | was likely to continue, what effect gray |
| 17:52:45 | 18 | marketing had on companies that suffered from |
| 17:52:47 | 19 | it. |
| 17:52:48 | 20 | The red flag, I believe, had been |
| 17:52:53 | 21 | raised once the underwriters obtained |
| 17:52:57 | 22 | knowledge of the clubs' appearance in Costco. |
| 17:53:00 | 23 | The issue had been raised by appearance in |
| 17:53:03 | 24 | Callaway's 10-K and industry knowledge was |
| 17:53:11 | 25 | available, according to Mr. Magnussen, about |

B470

R. ALAN MILLER

Page 291

| | | |
|---|---|---|
| 17:53:15 | 1 | gray marketing, so it doesn't seem as though |
| 17:53:18 | 2 | it should have been all that difficult to get |
| 17:53:20 | 3 | into the industry and get information about |
| 17:53:24 | 4 | that and, thereafter, determine what to do |
| 17:53:28 | 5 | about it. |
| 17:53:29 | 6 | BY MR. GLUCKOW: |
| 17:53:29 | 7 | Q.      Anything else, because we're going |
| 17:53:32 | 8 | to go through each of these, but I want to know if |
| 17:53:37 | 9 | there's anything else before we do? |
| 17:53:39 | 10 | MR. LEWIS:  We're at five of six. |
| 17:53:41 | 11 | We started nine hours ago, which is okay. |
| 17:53:45 | 12 | We're all tired.  The witness, I'm sure -- |
| 17:53:48 | 13 | I'm tired, at least.  Maybe everybody else |
| 17:53:51 | 14 | isn't, but I'm very tired.  The witness is |
| 17:53:53 | 15 | tired.  We're very close, if not past, the |
| 17:53:56 | 16 | seven-hour limit.  I want to give you some |
| 17:53:59 | 17 | leeway, but we're going to have to cut off at |
| 17:54:02 | 18 | some point. |
| 17:54:03 | 19 | MR. GLUCKOW:  If you're tired, the |
| 17:54:04 | 20 | witness is tired, I'm happy to pick this up |
| 17:54:06 | 21 | on Monday, but here's my point -- |
| 17:54:09 | 22 | MR. LEWIS:  We're not picking up |
| 17:54:11 | 23 | Monday. |
| 17:54:12 | 24 | MR. GLUCKOW:  That's fine, we'll |
| 17:54:12 | 25 | just keep going; I'm not suggesting that we |

B471

R. ALAN MILLER

Page 292

| | | |
|---|---|---|
| 17:54:12 | 1 | need to. |
| 17:54:14 | 2 | All I'm saying is you had as much |
| 17:54:14 | 3 | time as you needed with Mr. Necarsulmer, |
| 17:54:18 | 4 | right, and they had as much time as they |
| 17:54:20 | 5 | needed upstairs today with Mr. James. |
| 17:54:21 | 6 | MR. LEWIS:  Right, but nobody has |
| 17:54:23 | 7 | gone past the seven-hour limit, as far as I'm |
| 17:54:26 | 8 | aware of, and that's established by the |
| 17:54:27 | 9 | rules.  I'm not trying to be difficult about |
| 17:54:29 | 10 | it, but you don't get to go on until ten |
| 17:54:32 | 11 | o'clock because you have questions until ten |
| 17:54:34 | 12 | o'clock; you have your limit.  I'm trying to |
| 17:54:38 | 13 | be flexible on it, but if you're not going to |
| 17:54:40 | 14 | be flexible with me and find a way to meet |
| 17:54:41 | 15 | some reasonable limit at this time of day, |
| 17:54:43 | 16 | then we're going to have to cut it off. |
| 17:54:46 | 17 | MR. GLUCKOW:  I certainly intend to |
| 17:54:47 | 18 | be reasonable but I certainly also intend to |
| 17:54:50 | 19 | complete the examination, so hopefully that |
| 17:54:53 | 20 | will be something we can both live with. |
| 17:54:55 | 21 | MR. LEWIS:  It's got to be pretty |
| 17:54:58 | 22 | soon. |
| 17:55:08 | 23 | BY MR. GLUCKOW: |
| 17:55:08 | 24 | Q.    I think I was asking you was there |
| 17:55:10 | 25 | anything else before we go back through these items. |

B472

R. ALAN MILLER

Page 293

| | | |
|---|---|---|
| 17:55:44 | 1 | A.    I have not compared the outline of |
| 17:55:46 | 2 | Mr. Necarsulmer in here with the paragraphs that I had |
| 17:55:50 | 3 | submitted outlining an underwriter's responsibilities |
| 17:55:55 | 4 | in the context of due diligence to see how his |
| 17:55:59 | 5 | opinions stack up against those. |
| 17:56:00 | 6 | (Mr. Bessette leaves the |
| 17:56:00 | 7 | deposition.) |
| 17:56:00 | 8 | (Mr. Collins enters the deposition.) |
| 17:56:05 | 9 | THE WITNESS:  Without having done |
| 17:56:05 | 10 | that, I think the additional red flag that |
| 17:56:08 | 11 | exists in these materials, to those I've |
| 17:56:11 | 12 | already discussed, would be in Paragraph 6, |
| 17:56:15 | 13 | which -- |
| 17:56:16 | 14 | BY MR. GLUCKOW: |
| 17:56:16 | 15 | Q.    I'm sorry, Paragraph 6 of? |
| 17:56:18 | 16 | A.    I'm sorry, Page 3 of |
| 17:56:21 | 17 | Mr. Necarsulmer, which refers to the commitment |
| 17:56:24 | 18 | committee memo, I believe, which did have a line in it |
| 17:56:28 | 19 | referring to the importance of maintaining margins, I |
| 17:56:31 | 20 | believe it was, at Adams and how those could not be |
| 17:56:34 | 21 | allowed to deteriorate or something to that effect, |
| 17:56:38 | 22 | so, again, that identifies someone was aware of the |
| 17:56:41 | 23 | general issue of margin maintenance but not in the |
| 17:56:44 | 24 | specific wording of gray marketing. |
| 17:56:46 | 25 | Having said that, I think the answer |

B473

R. ALAN MILLER

Page 294

| | | |
|---|---|---|
| 17:56:49 | 1 | I gave you previously probably covers at least the |
| 17:56:52 | 2 | major areas of where I would be today on this issue |
| 17:56:55 | 3 | since you raised it and asked me. |
| 17:56:58 | 4 | Q.        Can you think of any other areas?  I |
| 17:57:00 | 5 | don't want you to say that they're just the major |
| 17:57:01 | 6 | ones.  Can you think of any other areas as of today |
| 17:57:04 | 7 | that you think would have required follow-through -- |
| 17:57:06 | 8 | MR. LEWIS:  Objection. |
| 17:57:07 | 9 | BY MR. GLUCKOW: |
| 17:57:07 | 10 | Q.        -- in your opinion? |
| 17:57:08 | 11 | MR. LEWIS:  Form, foundation, scope |
| 17:57:12 | 12 | of the opinion. |
| 17:57:13 | 13 | THE WITNESS:  Again, I haven't been |
| 17:57:14 | 14 | asked to form an opinion on that prior to |
| 17:57:17 | 15 | this time and I've been giving you the |
| 17:57:20 | 16 | thoughts I have in this area in response to |
| 17:57:23 | 17 | your questions, and I think I hit on the |
| 17:57:25 | 18 | major area, particularly with respect to gray |
| 17:57:28 | 19 | marketing, and that being the lack of |
| 17:57:31 | 20 | independent investigation by the underwriters |
| 17:57:33 | 21 | of the issue and the willingness to accept |
| 17:57:36 | 22 | Mr. Adams' assertion he would take care of |
| 17:57:39 | 23 | the Costco problem and essentially leaving it |
| 17:57:44 | 24 | at that, so I think that probably covers it |
| 17:57:46 | 25 | with respect to that issue. |

B474

R. ALAN MILLER

Page 295

17:57:48  1          I have not sat here and attempted to
17:57:50  2    go beyond that and think about every other
17:57:54  3    area they may have been deficient in their
17:57:58  4    work, and have not been asked to do that to
17:57:58  5    this point, but I think the major issue with
17:58:01  6    respect to gray marketing would be covered by
17:58:02  7          that topic.
17:58:04  8    BY MR. GLUCKOW:
17:58:04  9          Q.      Putting aside the gray market issue
17:58:10  10   or the Costco issue, however you want to phrase it,
17:58:13  11   you're not offering any opinion that the underwriters'
17:58:17  12   investigation was less than reasonable in any other
17:58:22  13   way, are you?  I've never heard you suggest otherwise.
17:58:24  14              MR. LEWIS:  Objection to form,
17:58:25  15          foundation, scope.
17:58:27  16   BY MR. GLUCKOW:
17:58:27  17         Q.      Am I correct?
17:58:27  18         A.      I haven't been asked that question.
17:58:30  19   I haven't been asked to focus on areas other than gray
17:58:36  20   marketing, so I couldn't answer that in that sense.
17:58:37  21         Q.      The margins issue you mentioned
17:58:39  22   before with respect to Paragraph 6 is reflected in the
17:58:42  23   prospectus, correct?
17:58:45  24         A.      Again, in a very general way, the
17:58:49  25   issue of maintenance of sales price margin is

B475

R. ALAN MILLER

Page 296

17:58:51   1    mentioned in the prospectus, but that's all it says in

17:58:55   2    the prospectus, is basically that one line.

17:59:05   3        Q.    Are you aware of Mr. Frazier's

17:59:09   4    opinion, Professor Frazier's opinion, in this case?

17:59:19   5        A.    I don't believe so.

17:59:19   6        Q.    You haven't seen the transcript of

17:59:22   7    his deposition from earlier this week?

17:59:24   8        A.    I have not.

17:59:26   9            MR. LEWIS:  In five minutes, I'm

17:59:28   10           going to ask the court reporter to do a

17:59:31   11           calculation of time for us so we can reach

17:59:33   12           some conclusion here.

17:59:33   13   BY MR. GLUCKOW:

18:00:15   14       Q.    I think we've confirmed this, but if

18:00:18   15   you turn to Paragraph 25 on Page 23 of your rebuttal

18:00:22   16   report, in the last sentence you state in your opinion

18:00:36   17   the expert report of Mr. Necarsulmer does not meet the

18:00:38   18   underwriters' burden to demonstrate that the

18:00:43   19   investigation and/or resulting disclosures were

18:00:45   20   reasonable and adequate, correct?

18:00:47   21       A.    Right.

18:00:48   22       Q.    You're not offering an opinion in

18:00:52   23   this report, I think we've established, dealing with

18:00:55   24   whether in your opinion the underwriters'

18:00:58   25   investigation was reasonable, correct; you have not

VERITEXT PA COURT REPORTING COMPANY
(215) 241-1000   (888) 777-6690   (610) 434-8588

R. ALAN MILLER

Page 297

| 18:01:00 | 1 | offered a written opinion on that question? |
|---|---|---|
| 18:01:02 | 2 | MR. LEWIS: Objection to form. |
| 18:01:04 | 3 | THE WITNESS: That's correct. |
| 18:01:04 | 4 | BY MR. GLUCKOW: |
| 18:01:04 | 5 | Q. What are your qualifications to |
| 18:01:07 | 6 | opine on whether Mr. Necarsulmer has met the |
| 18:01:10 | 7 | underwriters' burden? |
| 18:01:12 | 8 | MR. LEWIS: Objection to form, |
| 18:01:13 | 9 | foundation; calls for legal conclusion. |
| 18:01:17 | 10 | THE WITNESS: I think we've |
| 18:01:20 | 11 | discussed those earlier today at some length. |
| 18:01:23 | 12 | BY MR. GLUCKOW: |
| 18:01:23 | 13 | Q. You have nothing to add to the |
| 18:01:26 | 14 | qualifications that enable you to offer that opinion |
| 18:01:28 | 15 | other than what we talked about earlier? |
| 18:01:30 | 16 | MR. LEWIS: Objection to form, |
| 18:01:31 | 17 | foundation, legal conclusion. |
| 18:01:34 | 18 | THE WITNESS: Yeah, I think that's |
| 18:01:39 | 19 | probably correct in terms of background, |
| 18:01:42 | 20 | education, work experience, and that sort of |
| 18:01:45 | 21 | thing. |
| 18:01:47 | 22 | Having said that and having reviewed |
| 18:01:49 | 23 | the information that I've reviewed that we've |
| 19:01:53 | 24 | discussed, having reviewed Mr. Necarsulmer's |
| 18:01:56 | 25 | report, it's a fairly easy matter in the |

R. ALAN MILLER

Page 298

| | | |
|---|---|---|
| 18:02:03 | 1 | sense of reading the English language to |
| 18:02:09 | 2 | determine that he has not presented the sort |
| 18:02:12 | 3 | of information that one would need to present |
| 18:02:15 | 4 | to meet the burden as outlined in my report |
| 18:02:19 | 5 | and rebuttal report and as outlined in |
| 18:02:22 | 6 | Mr. Necarsulmer's report as well. |
| 18:02:26 | 7 | BY MR. GLUCKOW: |
| 18:02:26 | 8 | Q.    I take it you've never been a judge, |
| 18:02:30 | 9 | correct? |
| 18:02:30 | 10 | MR. LEWIS:  Objection to form. |
| 18:02:31 | 11 | THE WITNESS:  Correct. |
| 18:02:32 | 12 | BY MR. GLUCKOW: |
| 18:02:32 | 13 | Q.    Have you reviewed Mr. Necarsulmer's |
| 18:02:37 | 14 | rebuttal report? |
| 18:02:38 | 15 | A.    Yes. |
| 18:02:39 | 16 | Q.    Have you considered the extent to |
| 18:02:51 | 17 | which, if at all, Mr. Necarsulmer's rebuttal report |
| 18:02:53 | 18 | alters the opinion that you've offered in your |
| 18:02:55 | 19 | rebuttal report and your initial report? |
| 18:02:57 | 20 | MR. LEWIS:  Objection to form, |
| 18:02:59 | 21 | foundation. |
| 18:03:01 | 22 | THE WITNESS:  I did, when I reviewed |
| 18:03:04 | 23 | Mr. Necarsulmer's rebuttal report. |
| 18:03:06 | 24 | BY MR. GLUCKOW: |
| 18:03:06 | 25 | Q.    And the results of that |

B478

R. ALAN MILLER

Page 299

| 18:03:08 | 1 | consideration? |
| 18:03:09 | 2 | A.      I'd have to review that again |
| 18:03:11 | 3 | quickly to tell you. |
| 18:03:13 | 4 | Q.      Sure.  It's already been marked. |
| 18:03:17 | 5 | I'll hand you a copy.  It's Exhibit-322 (indicating). |
| 18:03:21 | 6 | MR. LEWIS:  While you're reviewing |
| 18:03:23 | 7 | that, Mr. Miller, let's have the court |
| 18:03:24 | 8 | reporter do the Herculean task of figuring |
| 18:03:28 | 9 | out how much time we have used. |
| 18:05:07 | 10 | THE COURT REPORTER:  Seven and a |
| 18:05:09 | 11 | half hours of testimony. |
| 18:05:15 | 12 | MR. LEWIS:  I'll let him answer your |
| 18:05:17 | 13 | last question. |
| 18:05:17 | 14 | MR. GLUCKOW:  No, no, no. |
| 18:05:17 | 15 | MR. COLLINS:  Let's go off the |
| 18:05:17 | 16 | record. |
| 18:05:17 | 17 | (Discussion held off the record.) |
| 18:13:43 | 18 | MR. GLUCKOW:  Plaintiffs have |
| 18:13:43 | 19 | announced that in ten minutes this dep is |
| 18:13:46 | 20 | over in terms of defendant's questioning. |
| 18:13:49 | 21 | Defendants are reserving all their |
| 18:13:51 | 22 | rights but are happy to ask ten more minutes' |
| 18:13:53 | 23 | worth of questions. |
| 18:13:58 | 24 | MR. LEWIS:  Let's also state on the |
| 18:13:59 | 25 | record that we have already been advised by |

R. ALAN MILLER

Page 300

| | | |
|---|---|---|
| 18:14:02 | 1 | the court reporter's calculations that we are |
| 18:14:05 | 2 | at the seven-and-a-half-hour mark in terms of |
| 18:14:08 | 3 | deposition time and it is late in the day and |
| 18:14:10 | 4 | we did start somewhat earlier. |
| 18:14:13 | 5 | MR. GLUCKOW:  I have said that I'm |
| 18:14:16 | 6 | happy to come back if we need to and you had |
| 18:14:19 | 7 | four hours with Mr. Necarsulmer and whatever |
| 18:14:22 | 8 | with Mr. James. |
| 18:14:23 | 9 | Let's move on. |
| 18:14:24 | 10 | (The preceding question was read |
| 18:14:46 | 11 | back.) |
| 18:14:46 | 12 | BY MR. GLUCKOW: |
| 18:14:46 | 13 | Q.    Now that you have Mr. Necarsulmer's |
| 18:14:49 | 14 | rebuttal report in front of you, Exhibit-322, we were |
| 18:14:52 | 15 | discussing whether your review of the rebuttal report |
| 18:14:59 | 16 | caused you to reconsider the opinions set forth in |
| 18:15:04 | 17 | your own rebuttal report, that is, that |
| 18:15:06 | 18 | Mr. Necarsulmer had not met the underwriters' burden |
| 18:15:11 | 19 | to demonstrate that the investigation and/or resulting |
| 18:15:20 | 20 | disclosures were reasonable and adequate. |
| 18:15:22 | 21 | MR. LEWIS:  Objection to form. |
| 18:15:25 | 22 | THE WITNESS:  It does not cause me |
| 18:15:27 | 23 | to change my opinion. |
| 18:15:29 | 24 | BY MR. GLUCKOW: |
| 18:15:29 | 25 | Q.    Why? |

B480

R. ALAN MILLER

Page 301

| | | |
|---|---|---|
| 18:15:30 | 1 | MR. LEWIS:  Objection to form, |
| 18:15:31 | 2 | compound. |
| 18:15:32 | 3 | THE WITNESS:  Essentially, because |
| 18:15:33 | 4 | there's nothing substantive added in |
| 18:15:35 | 5 | Mr. Necarsulmer's rebuttal report. |
| 18:15:37 | 6 | BY MR. GLUCKOW: |
| 18:15:37 | 7 | Q.      Did you review the various |
| 18:15:42 | 8 | deposition testimony cited in Mr. Necarsulmer's |
| 18:15:44 | 9 | rebuttal report? |
| 18:15:47 | 10 | A.      I reviewed some of that testimony. |
| 18:15:54 | 11 | I reviewed Ms. Pulido-Crowe and Mr. Adams' deposition |
| 18:16:01 | 12 | transcripts on those areas.  I reviewed -- among this |
| 18:16:09 | 13 | list, that was it. |
| 18:16:10 | 14 | Q.      Did you review the various documents |
| 18:16:13 | 15 | with the UND prefix cited in Mr. Necarsulmer's |
| 18:16:17 | 16 | rebuttal report? |
| 18:16:20 | 17 | A.      I did not, nor did I believe that |
| 18:16:39 | 18 | would likely change my opinion. |
| 18:16:41 | 19 | Q.      Why is that? |
| 18:16:43 | 20 | -- A.      Because all this has to do with |
| 18:16:45 | 21 | acceptance of management's assertions with respect to |
| 18:16:49 | 22 | gray marketing and indicates no independent |
| 18:16:51 | 23 | investigation by the underwriters and no contribution |
| 18:16:56 | 24 | to that area beyond what existed in Mr. Necarsulmer's |
| 18:17:01 | 25 | original report. |

R. ALAN MILLER

Page 302

| | | |
|---|---|---|
| 18:17:02 | 1 | Q.        Notwithstanding 3C, which obviously |
| 18:17:05 | 2 | refers to independent phone calls with third parties, |
| 18:17:09 | 3 | correct? |
| 18:17:10 | 4 | MR. LEWIS:  Object to the form. |
| 18:17:11 | 5 | THE WITNESS:  Right, which we've |
| 18:17:13 | 6 | already discussed today. |
| 18:17:16 | 7 | BY MR. GLUCKOW: |
| 18:17:16 | 8 | Q.        Do you agree with Mr. Necarsulmer's |
| 18:17:20 | 9 | statement in D on Page 2 that the reasonableness of |
| 18:17:25 | 10 | underwriters' due diligence must be assessed based on |
| 18:17:29 | 11 | the information that is reasonably available at the |
| 18:17:31 | 12 | time of the offering? |
| 18:17:31 | 13 | MR. LEWIS:  Objection to form, |
| 18:17:34 | 14 | foundation, legal conclusion. |
| 18:17:36 | 15 | THE WITNESS:  Sure. |
| 18:17:41 | 16 | BY MR. GLUCKOW: |
| 18:17:41 | 17 | Q.        I assume you agree with |
| 18:17:44 | 18 | Mr. Necarsulmer's statement in F that the mention of a |
| 18:17:48 | 19 | risk in one issuer's filings is not necessarily |
| 18:17:55 | 20 | determinative of whether the risk needs to be included |
| 18:17:58 | 21 | in another issuing company's registration statement, |
| 18:18:02 | 22 | correct? |
| 18:18:05 | 23 | MR. LEWIS:  Objection to form, |
| 18:18:05 | 24 | foundation. |
| 18:18:07 | 25 | THE WITNESS:  I agree with it in |

B482

## R. ALAN MILLER

Page 303

| | | |
|---|---|---|
| 18:18:08 | 1 | exactly the limited way it is stated; that |
| 18:18:10 | 2 | is, I agree that such an identification is |
| 18:18:11 | 3 | not determinative of inclusion but certainly |
| 18:18:15 | 4 | constitutes a red flag warranting |
| 18:18:18 | 5 | investigation by the underwriter. |
| 18:18:20 | 6 | BY MR. GLUCKOW: |
| 18:18:20 | 7 | Q.      Sitting here today, do you know |
| 18:18:22 | 8 | whether the underwriters considered Callaway's 10-K |
| 18:18:28 | 9 | disclosure that you mentioned earlier as part of their |
| 18:18:31 | 10 | analysis? |
| 18:18:32 | 11 | MR. LEWIS:  Objection to form and |
| 18:18:33 | 12 | foundation. |
| 18:18:34 | 13 | THE WITNESS:  Not specifically.  I |
| 18:18:36 | 14 | do recall thinking for some reason that they |
| 18:18:40 | 15 | knew about it, but I don't remember why I |
| 18:18:42 | 16 | think that. |
| 18:18:43 | 17 | BY MR. GLUCKOW: |
| 18:18:43 | 18 | Q.      As you sit here today, you believe |
| 18:18:45 | 19 | the underwriters were aware of the Callaway 10-K |
| 18:18:49 | 20 | disclosure as part of the due diligence process? |
| 18:18:54 | 21 | MR. LEWIS:  Objection; |
| 18:18:55 | 22 | mischaracterizes his testimony. |
| 18:18:56 | 23 | THE WITNESS:  I think that -- as |
| 18:18:58 | 24 | best I recall, I remember thinking that they |
| 18:19:01 | 25 | were, but like I said, I don't remember why I |

B483

R. ALAN MILLER

Page 304

```
18:19:03   1          think that.
18:19:04   2    BY MR. GLUCKOW:
18:19:04   3          Q.       You agree with the last sentence of
18:19:05   4    Mr. Necarsulmer's F, each factual situation is
18:19:08   5    different and the underwriters must evaluate
18:19:11   6    appropriate disclosure on an individual basis,
18:19:14   7    correct?
18:19:14   8                    MR. LEWIS:  Objection, form and
18:19:16   9          foundation.
18:19:16  10                    THE WITNESS:  Sure; I presume he's
18:19:17  11          talking about an individual company basis.
18:19:19  12          Sure, that makes sense.
18:19:20  13    BY MR. GLUCKOW:
18:19:20  14          Q.       Do you agree with this statement:
18:19:22  15    The underwriters made their main inquiry concerning
18:19:26  16    gray marketing in the due diligence meetings in April
18:19:31  17    1998?
18:19:31  18                    MR. LEWIS:  Objection to form,
18:19:33  19          foundation.
18:19:45  20                    THE WITNESS:  I don't believe I have
18:19:49  21          an opinion on that.
18:19:50  22    BY MR. GLUCKOW:
18:19:50  23          Q.       Explain what you mean by that.
18:19:59  24                    MR. LEWIS:  Objection.
18:20:01  25                    THE WITNESS:  I haven't attempted to
```

B484

R. ALAN MILLER

Page 305

| 18:20:04 | 1 | determine or rank the level of inquiry that |
| 18:20:09 | 2 | they made in such a fashion that I would make |
| 18:20:12 | 3 | a statement that way.  That does appear to be |
| 18:20:16 | 4 | when the topic arose.  Subsequent to that, I |
| 18:20:21 | 5 | didn't see any indication that there was |
| 18:20:23 | 6 | independent investigation done of that topic. |
| 18:20:28 | 7 | It ended up not appearing in the prospectus, |
| 18:20:35 | 8 | so I don't have any reason to not think that |
| 18:20:36 | 9 | was the case, but I also don't -- I have not |
| 18:20:40 | 10 | looked into that as an issue in itself to be |
| 18:20:42 | 11 | able to say it that way; I wouldn't have |
| 18:20:45 | 12 | thought of putting it that way.  I also don't |
| 18:20:48 | 13 | have any reason to question it.  I haven't |
| 18:20:51 | 14 | seen any indication to the contrary. |
| 18:20:52 | 15 | BY MR. GLUCKOW: |
| 18:20:52 | 16 | Q.    Do you know whether there were |
| 18:20:53 | 17 | discussions concerning the gray marketing issue |
| 18:20:56 | 18 | between the underwriters and Adams' management in |
| 18:20:59 | 19 | June 1998? |
| 18:21:01 | 20 | MR. LEWIS:  Objection to form, |
| 18:21:03 | 21 | foundation. |
| 18:21:04 | 22 | THE WITNESS:  Yeah, I think we |
| 18:21:06 | 23 | discussed that briefly earlier in connection |
| 18:21:08 | 24 | with the Hoffman letter, was what I remember |
| 18:21:10 | 25 | that being about, in June. |

B485

## R. ALAN MILLER

Page 306

| | | |
|---|---|---|
| 18:21:14 | 1 | BY MR. GLUCKOW: |
| 18:21:14 | 2 | Q.      Do you know whether there were any |
| 18:21:16 | 3 | discussions between the underwriters and Adams' |
| 18:21:19 | 4 | management concerning gray marketing or Costco in |
| 18:21:22 | 5 | connection with the Adams' press release in early June |
| 18:21:26 | 6 | concerning the Costco issue? |
| 18:21:27 | 7 | MR. LEWIS:  Object to the form. |
| 18:21:29 | 8 | THE WITNESS:  Again, I recall that |
| 18:21:30 | 9 | there was some discussion about that in |
| 18:21:33 | 10 | connection with the Costco issue as presented |
| 18:21:36 | 11 | in the press release and limited to that as |
| 18:21:39 | 12 | opposed to the overall problem of gray |
| 18:21:43 | 13 | marketing and sale of clubs through Costco |
| 18:21:44 | 14 | and the implications that that had for the |
| 18:21:44 | 15 | company. |
| 18:21:47 | 16 | BY MR. GLUCKOW: |
| 18:21:47 | 17 | Q.      What's the basis for your last |
| 18:21:49 | 18 | answer? |
| 18:21:49 | 19 | A.      My understanding of the conversation |
| 18:21:51 | 20 | -- the conversations that occurred around the Hoffman |
| 18:21:56 | 21 | letter with respect to addressing the SEC's inquiry |
| 18:22:01 | 22 | about whether the issue discussed in the Hoffman |
| 18:22:06 | 23 | letter had been investigated or examined by the |
| 18:22:13 | 24 | company according to materiality standard. |
| 18:22:17 | 25 | MR. LEWIS:  We have to shut it down. |

B486

R. ALAN MILLER

Page 307

| | | |
|---|---|---|
| 18:22:19 | 1 | at this point. We're just at the time |
| 18:22:22 | 2 | lengths -- we're way past. This was |
| 18:22:26 | 3 | scheduled in this fashion at your guy's |
| 18:22:28 | 4 | request. There was no anticipation of going |
| 18:22:30 | 5 | after six o'clock on a Friday afternoon. We |
| 18:22:33 | 6 | all have different plans and travel plans. |
| 18:22:36 | 7 | I have one question, possibly the |
| 18:22:39 | 8 | famous one question, for Mr. Miller to get on |
| 18:22:44 | 9 | the record before we terminate. |
| 18:22:45 | 10 | MR. GLUCKOW: I'm going to object to |
| 18:22:47 | 11 | your shutting down the deposition because I |
| 18:22:49 | 12 | have not finished my examination, and I will |
| 18:22:51 | 13 | reserve all my rights. |
| 18:22:54 | 14 | MR. COLLINS: Any idea how much |
| 18:22:55 | 15 | more? We've been through this before and |
| 18:22:57 | 16 | asked you that question. |
| 18:22:59 | 17 | MR. GLUCKOW: Part of the problem is |
| 18:23:03 | 18 | every time I ask more questions, I'm getting |
| 18:23:05 | 19 | new opinions from the witness that are not |
| 18:23:07 | 20 | reflected in his written opinions in the |
| 18:23:10 | 21 | case. |
| 18:23:10 | 22 | MR. LEWIS: Because you're asking |
| 18:23:12 | 23 | him for them, you're asking what opinions he |
| 18:23:13 | 24 | may have formed aside of the opinions that he |
| 18:23:18 | 25 | has been engaged to express, and so if you |

R. ALAN MILLER

Page 308

| | | |
|---|---|---|
| 18:23:22 | 1 | keep asking someone for views they have, it's |
| 18:23:25 | 2 | not going to be surprising if they have |
| 18:23:25 | 3 | views. |
| 18:23:29 | 4 | MR. GLUCKOW:  If you were willing to |
| 18:23:31 | 5 | tell me he isn't going to offer any opinions |
| 18:23:32 | 6 | concerning the underwriters' due diligence |
| 18:23:32 | 7 | beyond that which is contained in his written |
| 18:23:35 | 8 | reports, I told you a long time ago this |
| 18:23:38 | 9 | could have been completed much sooner, but |
| 18:23:38 | 10 | you won't give me that, and because you won't |
| 18:23:40 | 11 | give me that, I need to know what opinions he |
| 18:23:42 | 12 | has formed on that topic. |
| 18:23:44 | 13 | MR. LEWIS:  You still haven't |
| 18:23:45 | 14 | answered Todd's question of how much longer |
| 18:23:48 | 15 | do you have to go.  We're talking about |
| 18:23:50 | 16 | travel arrangements at this point for people, |
| 18:23:52 | 17 | including the witness. |
| 18:23:55 | 18 | MR. GLUCKOW:  Quite honestly, based |
| 18:23:56 | 19 | on this last exchange, I think I have |
| 18:23:59 | 20 | probably another half an hour, at least. |
| 18:24:04 | 21 | MR. COLLINS:  Why don't you proceed |
| 18:24:07 | 22 | with your questioning. |
| 18:24:10 | 23 | BY MR. LEWIS: |
| 18:24:11 | 24 | Q.    Mr. Miller, aside from the opinions |
| 18:24:15 | 25 | that have been expressed in your various reports about |

B488

Case 1:99-cv-00371-GMS Document 329-2 Filed 10/09/2006 Page 65 of 76

## ACKNOWLEDGMENT OF DEPONENT

I, _____R. ALAN MILLER_____, do hereby certify that I have read
the foregoing pages and that the same is a correct transcription of the answers
given by me to the questions therein propounded except for the corrections or
changes in form or substance, if any, noted in the attached Errata Sheet.

_____9/22/06_____
Date

_____R. Alen Mill_____
Signature

B489

SEP-28-2006 15:59AM DONALD B LEWIS 610 688 8394

Corrections to Deposition Transcript of R. Alan Miller  IN RE ADAMS GOLF, INC. SECURITIES LITIGATION

| Page | Line | Now Reads | Should Read | Reason |
|------|------|-----------|-------------|--------|
| 19 | 7, 8 | to understanding the | to the understanding of the | mistranscribed |
| 19 | 13,14 | of understanding the | of the understanding of the | mistranscribed |
| 20 | 20 | forms | forums | mistranscribed |
| 32 | 3 | responsal | response or | mistranscribed |
| 53 | 24 | and | in | mistranscribed |
| 54 | 14 | previous time periods | that day | correction |
| 114 | 21 | are subject | are not subject | mistranscribed |
| 130 | 1 | Prompting | Promoting | mistranscribed |
| 133 | 23 | constrain | construct | mistranscribed |
| 178 | 24 | advisor | advice on | mistranscribed |
| 207 | 12 | THE WITNESS: | BY MR. BESSETTE: | mistranscribed |
| 242 | 14 | complaint | prospectus | mistranscribed |
| 272 | 10 | source | sorts | mistranscribed |
| 285 | 4 | correct. | correct, with respect to the corporate finance personnel. | clarification |

```
 1              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF DELAWARE
 2

 3    IN RE:  ADAMS GOLF, INC. :

 4    SECURITIES LITIGATION    :

 5                             X

 6

 7              The Expert Discovery Deposition of

 8    CHRISTIANA OCHOA, taken in the above-entitled case

 9    before KATHLEEN J. PACULT, a Certified Shorthand

10    Reporter within and for the County of Cook, State of

11    Illinois, taken pursuant to the provisions of the

12    Federal Rules of Civil Procedure and the Rules of

13    the Supreme Court thereof pertaining to the taking

14    of depositions for the purpose of discovery, taken

15    on the 4th day of August 2006, at the hour of

16    9:30 a.m., at 6100 North River Road, Rosemont,

17    Illinois.

18

19

20

21

22

23

24
```

B491

Page 2

```
1                    A P P E A R A N C E S

2

3        BERGER & MONTAGUE, P.C.
         BY:  TODD COLLINS, ESQ.
4        1622 Locust Street
         Philadelphia, Pennsylvania 19103
5        (215) 875-3000
         tcollins@bm.net
6
              -and-
7
         LAW OFFICES OF DONALD B. LEWIS
8        BY:  MR. DONALD B. LEWIS
         5 Cynwyd Road
9        Bala Cynwyd, Pennsylvania 19004
         (610) 668-0331
10       morrislewislaw@aol.com

11           appeared on behalf of the Plaintiff;

12

13       AKIN GUMP STRAUSS HAUER & FELD, LLP
         BY:  MR. PAUL R. BESSETTE
14       300 West 6th Street
         Suite 2100
15       Austin, Texas 78701-3911
         (512) 499-6200
16       pbessette@akingump.com

17           appeared on behalf of the Defendant;

18       SIMPSON THACHER & BARTLETT, LLP
         BY:  MR. PAUL C. GLUCKOW
19       425 Lexington Avenue
         New York, New York 10017-3954
20       (212) 455-2653
         pgluckow@stblaw.com
21
             appeared on behalf of the Underwriter
22           Defendants.

23

24
```

B492

1    other conversations after that.

2            Q.    In any of those -- well, strike that.

3                  When Mr. Collins re-contacted you

4    in the summer of this year and you were entertaining

5    the thought of becoming an expert for the plaintiffs

6    in this case, did you have to seek permission or

7    consult with anybody at the university about whether

8    you could do that or not?

9            A.    I don't think I actually had to seek

10   permission, but I did check to see whether I had to

11   seek permission.  I spoke with my -- with the

12   associate dean at my law school.  The dean at my law

13   school was out of town and he made clear to me that

14   it wasn't necessary to speak with her as well.  I

15   asked him what the issues -- what the constraints

16   were on my serving as an expert, and he gave me

17   those constraints.

18           Q.    Now, you had not served as an expert

19   witness in any sort of litigation prior to this

20   engagement, is that right?

21           A.    That's correct.

22           Q.    Were you concerned during the process

23   of talking with Mr. Mara or Mr. Collins about

24   whether you would qualify as an expert witness?

B493

Page 11

```
 1        A.    I wanted to make sure that the

 2   qualifications that I do possess were adequate and

 3   sufficient for their needs.

 4        Q.    How did you do that?

 5        A.    I made sure that they were entirely

 6   aware of the entirety of my knowledge of the gray

 7   market, my expertise in the gray market, and my

 8   expertise in other matters as well, and let them

 9   make their decision about that.

10        Q.    Did you express concern to the

11   assistant dean or anybody at the university when you

12   were inquiring about the constraints about whether

13   or not you qualified as an expert?

14              MR. COLLINS:  Foundation.

15              You may answer.

16   BY THE WITNESS:

17        A.    No.

18   BY MR. BESSETTE:

19        Q.    Did you consult with anybody -- other

20   than the plaintiffs in this case, Mr. Collins or Mr.

21   Mara, about whether -- well, did you express to

22   anybody, other than Mr. Collins or Mr. Mara,

23   thoughts about whether you qualified as an expert in

24   this case?
```

B494

1             You are currently an associate

2    professor of law at Indiana University School of

3    Law?

4         A.     That's correct.

5         Q.     And as I understand it, you say in the

6    report or in your resume that your duties are

7    divided into three sort of buckets or categories?

8         A.     Yes.

9         Q.     Okay.  Would you tell me what those

10   are, please?

11        A.     Those are teaching, research and

12   service.

13        Q.     Okay.  What are your primary duties

14   with respect to the research prong of your duties?

15        A.     To research and publish my work.

16        Q.     And what work?

17        A.     I guess I am curious about what you

18   mean by what work.

19        Q.     I just want to understand what you

20   meant, research and publish your work.

21        A.     Yeah.  It is law professors typically

22   write legal scholarship articles, they are published

23   in various law journals, as well as other locations.

24   And we are expected to produce in that way.

1    of that course with that section in it was on the

2    internet and that's how the plaintiff's lawyers

3    found you?

4         A.    That's what I understand.

5         Q.    Okay.  Now, explain to me, this course

6    that you teach, international business transactions,

7    is that a course for one semester?

8         A.    Yes.

9         Q.    And this is at the law school?

10        A.    Correct.

11        Q.    Which level of student?

12        A.    Upper level students.

13        Q.    So second and third years?

14        A.    Correct.  And also graduate students.

15        Q.    What are the -- I mean, is there a

16   textbook or multiple textbooks that you use to teach

17   that class?

18        A.    I teach from one textbook.

19        Q.    Which one is that?

20        A.    It's Folsom, Gordon and Spanogle

21   International Business Transaction.  Folsom is

22   F-o-l-s-o-m, Gordon is Gordon, and Spanogle I

23   believe is S-p-a-n-g -- S-p-a-n-o-g-l-e.

24        Q.    And is there one or more chapters in

1    that textbook that deals with gray marketing?

2         A.    There is one chapter that deals with

3    counterfeiting and gray marketing.  Let me rephrase.

4    There are chapters in the book, the chapters are

5    divided into what the authors call problems or

6    sections, and one of those is devoted to gray

7    marketing and counterfeiting.

8         Q.    Okay.  And how extensive is that

9    section or chapter?  In other words, how many pages?

10            MR. COLLINS:  The document speaks for

11   itself, and as you know, was produced.

12   BY THE WITNESS:

13        A.    I don't remember exactly the page

14   length.

15   BY MR. BESSETTE:

16        Q.    Did you select that course book for

17   that class?

18        A.    I did.

19        Q.    How did you select that?  What was

20   your criteria?

21        A.    I used a few criteria.  I selected

22   it -- I taught international business transactions

23   the first year that I taught at the law school, and

24   went through a process that a new professor

B497

1    typically goes through in selecting a course book

2    and choosing that one.

3        Q.    Okay.  And would you just explain for

4    the jury what that process is?

5        A.    Sure.  That process includes reviewing

6    the world of possible international business

7    transactions textbooks, looking at them seeing which

8    ones has materials that you think are presented

9    clearly, neatly, in a way that is well organized,

10   easy to understand and will capture the students'

11   attention.

12            In addition, I spoke with other

13   professors who I knew had taught in the area before

14   and asked them about their experiences in teaching

15   international business transactions and the

16   textbooks that they had used and the problems and

17   the benefits that they had encountered with each of

18   them.

19       Q.    Now, only one section in that course

20   book is devoted to gray marketing.  Do I have that

21   right?

22       A.    Yes.

23       Q.    And do the materials in that section

24   deal with the golf industry exclusively or just sort

Page 20

1          A.      They have been changed over the course

2     of the time that I have taught the class.  I have

3     now taught the class three times.  Each year I

4     believe they have been slightly different, those

5     materials have been slightly different.  So in

6     preparation for teaching each year, I reevaluate

7     and -- I reevaluate the materials I have used before

8     and add or subtract materials that were included.

9          Q.      So the course book itself doesn't have

10    a section on gray materials as it deals with the

11    golf industry, it is the supplemental materials.  Do

12    I understand that right?

13         A.      It is has a section on the gray

14    market.  It does not have a section on the gray

15    market in relation to the golf industry.

16         Q.      Okay.  And when you first started

17    teaching, is it your understanding that in the first

18    year, which I guess we'll get to here, '03 maybe,

19    you provided supplemental materials that focused on

20    gray marketing in the golf industry?

21              MR. COLLINS:  Asked and answered.

22              Go ahead.

23    BY THE WITNESS:

24         A.      In the first year that I taught the

B499

1   course, I did include those materials, yes.

2   BY MR. BESSETTE:

3        Q.    I'm sorry, you did?

4        A.    I did include those materials, yes.

5        Q.    Okay.  Now, where did you find those

6   materials?

7              MR. COLLINS:  And we're asking

8   specifically with regard to the first year?

9              MR. BESSETTE:  Right.

10  BY THE WITNESS:

11       A.    The first year that I taught the

12  class, again, I followed pretty standard practice

13  for new professors.  I used materials that a person

14  who had taught international business transactions

15  introduced me to.

16  BY MR. BESSETTE:

17       Q.    And the supplemental materials that

18  you used starting in '03 and continuing to the

19  present have been produced?

20       A.    Yes.  I believe.  And materials that I

21  taught the last time that I taught have been

22  produced.

23       Q.    Do you have in your possession the

24  materials starting from the first time you taught to