IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: ADAMS GOLF, INC., <br> SECURITIES LITIGATION | § <br> § <br> § <br> § <br> § | CIVIL ACTION NO. 99-371-KAJ <br> (CONSOLIDATED) |

### ADAMS GOLF DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE THE TESTIMONY OF EDWARD LYNCH, C.P.A. AND STEPHEN GRACE, M.B.A., PH.D.

OF COUNSEL:
Paul R. Bessette
Jennifer R. Brannen
Michelle A. Reed
Laura Moriaty
Akin Gump Strauss Hauer & Feld LLP
300 West 6th Street, Suite 2100
Austin, Texas 78701

Jeffrey L. Moyer (#3309)
moyer@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

Attorneys for Defendants Adams Golf, Inc.,
B.H. Adams, Richard H. Murtland, Darl P.
Hatfield, Paul F. Brown, Jr., Roland E. Casati,
Finis F. Conner, and Stephen R. Patchin

Dated: October 9, 2006

RLF1-3068580-1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

I.      LEGAL STANDARDS ................................................................................................... 2

II.     LYNCH'S EXPERT TESTIMONY IS RELEVANT AND ADMISSIBLE—THE
JURY'S ROLE IS TO WEIGH THE EVIDENCE HE RELIES UPON ........................... 3

        A.      Lynch's analysis and conclusions about plaintiffs' double-shipping
allegations are admissible .................................................................................... 3

        B.      Plaintiffs' challenge to the reliability of evidence Lynch considered is not
a proper basis for exclusion ................................................................................. 6

III.    GRACE'S TESTIMONY IS RELIABLE, RELEVANT AND ADMISSIBLE ................. 7

        A.      Grace's opinion about whether the Individual Defendants' conduct met the
section 11 due-diligence defense is admissible—he used a reliable
methodology and examined all the relevant evidence ........................................ 7

        B.      Plaintiffs are actually challenging—improperly—the weight that should be
given to Grace's opinions .................................................................................. 10

        CONCLUSION .................................................................................................... 12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Betterbox Commc'ns Ltd. v. BB Tech., Inc.*,
   300 F.3d 325 (3d Cir. 2002) ............................................................................................4

*Breidor v. Sears, Roebuck and Co.*,
   722 F.2d 1134 (3d Cir. 1983) ..........................................................................................3

*Crowley v. Chait*,
   322 F. Supp. 2d 530 (D.N.J. 2004) .................................................................................4

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ........................................................................................................3

*Elcock v. Kmart Corp.*,
   233 F.3d 734 (3d Cir. 2000) ............................................................................................3

*Halterman v. Legato Software*,
   No. 04-02660JW, 2006 WL 778617 (N.D. Cal. Mar. 24, 2006) .....................................4

*In re Japanese Elec. Prods. Antitrust Litig.*,
   723 F.2d 238 (3d Cir. 1983) ............................................................................................4

*In the Matter of Cudd Pressure Control, Inc.*, No. 98-585, 1999 WL 756439 (E.D. La.
   Sept. 24, 1999) .................................................................................................................6

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ........................................................................................................3

*Schneider v. Fried*,
   320 F.3d 396 (3d Cir. 2003) ....................................................................................2, 3, 4

*Waldorf v. Shuta*,
   142 F.3d 601 (3d Cir. 1998) ............................................................................................2

*Walker v. Gordon*, 46 F. App'x 691, 695 (3d Cir. 2002) ..........................................................3, 6, 7

## STATUTES

15 U.S.C. § 77k(b)(3)(A) ............................................................................................................8

## RULES

Fed. R. Evid. 702 ........................................................................................................................2
Fed. R. Evid. 704 ......................................................................................................................11

## **INTRODUCTION**

Plaintiffs' effort to exclude the expert testimony of Edward Lynch, C.P.A., and Stephen Grace, M.B.A., Ph.D., because they do not like their opinions must fail. Plaintiffs do not challenge either expert's qualifications in their areas of expertise (accounting and corporate governance, respectively), the reliability of either expert's overall methodology, or the relevance of either expert's ultimate conclusions to the case. Thus, black-letter law dictates that this Court must reject plaintiffs' baseless challenge and admit each expert's testimony.

Plaintiffs' challenge is two-fold—certain opinions are not reliable, and the expert is not qualified to give a particular opinion. But this challenge is based on mischaracterizations of both experts' analyses and quibbling about the evidence they considered. The district court's role as a gatekeeper is not to weigh the credibility or sufficiency of the evidence considered by an expert—instead, it should determine whether the expert's opinions satisfy the three requirements above. Here, they most certainly do.

Lynch is the Adams Golf Defendants' accounting expert. He analyzed whether Adams Golf properly estimated, recorded and disclosed its allowance for sales returns before the IPO, and whether the Company engaged in questionable sales practices that would undervalue this allowance and affect the Company's post-IPO results. Plaintiffs want to exclude Lynch's testimony concerning Adams Golf's alleged practice of double shipping because they believe he (1) did not consider all relevant evidence, and (2) improperly made a subjective evaluation of the credibility of certain witnesses' testimony to come to his conclusion. (Mot. at 5-10.) Plaintiffs are wrong. Lynch applied his many years of accounting and auditing experience to consider all of the relevant evidence *in context* and determined, *based on the totality of the evidence*, that Adams Golf was not engaged in a practice of double shipping before the IPO. And there is *no evidence* to the contrary.

Grace is a corporate-governance expert. He analyzed the Individual Defendants' actions and responsibilities, and the reasonableness of their investigation and conclusions in connection with the Registration Statement and Prospectus ("Registration Statement").[1] Of course, to do so, he examined all the relevant facts in the context of the Company's pre-IPO business operations. In short, he supports the Individual Defendants' due-diligence defense. Plaintiffs seek to exclude Grace's opinions concerning: (1) what the Individual Defendants did to control gray marketing (Mot. at 2 ¶ 10); (2) what they believed at the time of the IPO (Mot. at 2 ¶ 11); (3) the materiality of gray marketing (Mot. at 2 ¶¶ 7-9); and (4) the significance of the SEC allowing the Registration Statement to become effective (Mot. at 2 ¶ 13). Again, plaintiffs are quibbling with Grace's evaluation of the evidence supporting his conclusion that the Individual Defendants conducted a reasonable investigation and had reasonable grounds to believe that the Registration Statement was true and complete. This is not a proper basis to exclude expert testimony.

The Court should reject plaintiffs' efforts to confuse the standard for admitting expert testimony and deny their motion.

## ARGUMENT

### I. LEGAL STANDARDS

Before admitting expert testimony, the Third Circuit requires that (1) the expert be qualified, (2) his methodology be reliable, and (3) his testimony be relevant to an issue in the case. *See Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). To satisfy the qualification requirement, the proposed expert must be "qualified . . . by knowledge, skill, experience, training, or education." FED. R. EVID. 702. Practical experience as well as academic training and credentials may be the basis of qualification. *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir.

---

[1] The "Individual Defendants" are Barney Adams, Richard Murtland, Darl Hatfield, Paul Brown, Roland Casati, Finis Conner, Stephen Patchin.

2

1998). To satisfy the reliability requirement, the expert's testimony must have a reliable basis in the knowledge and experience of the relevant discipline. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). The Third Circuit has outlined a list of non-exhaustive factors that a district court may consider to determine if an expert's methodology is reliable. *Elcock v. Kmart Corp.*, 233 F.3d 734, 745-46 (3d Cir. 2000) (listing *Daubert* and other factors). But as the Supreme Court recognized, "there are many different kinds of experts, and many different kinds of expertise," so in some cases, "relevant reliability concerns may focus upon personal knowledge or experience." *Kumho*, 526 U.S. at 150. The inquiry is a flexible one, but "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594-95 (1993). Finally, to satisfy the relevance requirement, the expert's testimony must "fit the issues in the case." *Schneider*, 320 F.3d at 404. That is, the testimony must be relevant to and assist the jury in determining an issue in the case. *Id.*

It is the district court's role to determine if these three requirements are met. *Id.* So long as the proposed expert is qualified, his methodology is reliable, and his testimony is relevant to an issue in the case, the district court should admit the testimony. *Id.* All other determinations—regarding the credibility or sufficiency of the evidence relied upon by the expert—are within the sole province of the jury. *Walker v. Gordon*, 46 F. App'x 691, 695 (3d Cir. 2002) (citing *Breidor v. Sears, Roebuck and Co.*, 722 F.2d 1134, 1138-39 (3d Cir. 1983)).

## II. LYNCH'S EXPERT TESTIMONY IS RELEVANT AND ADMISSIBLE—THE JURY'S ROLE IS TO WEIGH THE EVIDENCE HE RELIES UPON

### A. Lynch's analysis and conclusions about plaintiffs' double-shipping allegations are admissible

Lynch's superior qualifications as an expert auditor are unquestioned. Lynch has almost thirty years of experience in accounting, auditing, damage analysis and other financial analysis.

(Ex. 302 at 1.)[2] Lynch has testified as an accounting and auditing expert in numerous trials and arbitration hearings, including securities class actions, and has never been disqualified as an expert witness. (Ex. 302 at 1-10; Lynch Dep. Tr. 5:16-18, 6:17-24, 8:5-13.)

Plaintiffs also do not challenge the reliability of Lynch's methodology. Lynch appropriately utilized his extensive experience as a C.P.A. to conclude that Adams Golf's accounting and disclosure practices complied with generally accepted accounting principles ("GAAP"). (Ex. 302 ¶ 4.) Numerous courts have held that an application of "personal knowledge and experience" renders an expert's methodology reliable. *See e.g., Crowley v. Chait*, 322 F. Supp. 2d 530, 553 (D.N.J. 2004) (holding that experienced accountant was "eminently qualified" to opine on the reasonableness of an audit); *Schneider*, 320 F.3d at 406 (concluding that a doctor's "experience renders his testimony reliable [and] demonstrates that his testimony is based on good grounds").[3] The Third Circuit has long held that "[t]he proper inquiry is not what the court deems reliable, but what experts in the relevant discipline deem it to be," and has warned that a district court should not substitute its own opinion of reliability for that of an expert with sufficient experience in the relevant field. *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 276-77 (3d Cir. 1983), rev'd on other grounds, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

Lynch used an accepted and reliable methodology to analyze whether Adams Golf was engaged in a practice of double shipping before the IPO. Specifically, Lynch reviewed all of Adams Golf's auditing documents and financials for the fiscal year ended December 31, 1998

---

[2] Exhibits cited are attached to the Declaration of Jennifer R. Brannen in Support of the Adams Golf Defendants' Motion for Summary Judgment unless otherwise noted.

[3] *See also Halterman v. Legato Software*, No. 04-02660JW, 2006 WL 778617, at *1-2 (N.D. Cal. Mar. 24, 2006) (holding that accounting and auditing expert's opinion was reasonably based on his extensive experience as an accountant and on his review of the company's financial data); *Betterbox Commc'ns Ltd. v. BB Tech., Inc.*, 300 F.3d 325, 328-30 (3d Cir. 2002) (recognizing that marketing expert's testimony was based on his twenty years of "personal knowledge or experience").

(and certain relevant audit work papers for the year ended December 31, 1997) to determine if there was (1) evidence of specific instances of double shipping, (2) information that would enable him to quantify the impact of such transactions on Adams Golf's financials, and (3) evidence of trends in Adams Golf's reserve for returns that would indicate whether such improper sales practices were occurring.[4] (Ex. 302 ¶¶ 53-56; Ex. 302 at Ex. 3.)

Despite plaintiffs' conclusory assertions to the contrary, Lynch did not make improper credibility determinations in his Report. Instead, Lynch prefaced his accounting analysis by appropriately considering all of the documentary evidence that plaintiffs claim support their allegations and the testimony of witnesses that puts the documents in context. (Ex. 302 ¶¶ 42-52.) By focusing on Lynch's discussion of witness testimony, plaintiffs attempt to distract the Court from Lynch's critical findings.

Lynch found *no evidence* that describes the specific details of any particular instance of double shipping and *no evidence* that would allow him to quantify the impact of any such transactions on Adams Golf's financial reports and disclosures. (Ex. 302 ¶ 56.) Moreover, Lynch found *nothing* in KPMG's workpapers or Adams Golf's expense return and reserves balances to indicate that double shipping was occurring, much less that it was a widespread practice before the IPO. (Ex. 302 ¶¶ 54, 57.) This is the very type of data that would be required to determine the impact, if any, on the Company's accounting. Lynch explained that "one would expect a double shipment to boomerang . . . rather quickly as a return, and the company was tracking returns in a diligent manner." (Lynch Dep. Tr. 103:22-104:3.) Therefore, "[h]ad there been an isolated, material event of over-shipment and high returns, [he] would have expected a significant fluctuation in the provision for sales returns." (Ex. 302 ¶ 57.) Based on his analysis,

---

[4] Lynch, with the assistance of his staff, reviewed thousands of documents and numerous depositions to locate the documents that would inform his opinion. (Ex. 302 at Ex. 3.)

Lynch concluded that the "fairly steady increase in such provisions" in 1998 did not indicate that the Company was engaged in double shipping, but rather was consistent with testimony and Adams Golf's periodic disclosures of an industry-wide slowdown during 1998. (Ex. 302 ¶ 57; Ex. 302 at Ex. 4.) Lynch properly considered *all relevant evidence in context* in connection with his thorough and appropriate accounting analysis of Adams Golf's accounting and audit documents to conclude that the Company was not engaged in double shipping before the IPO.

### B. Plaintiffs' challenge to the reliability of evidence Lynch considered is not a proper basis for exclusion

Plaintiffs couch their challenge to Lynch's opinion as an issue of admissibility, but, in truth, their objections go solely to the selection and credibility of the evidence Lynch relied upon—questions that the Third Circuit recognizes are "within the sole province of the jury." *Walker*, 46 F. App'x at 695. An expert is permitted to base his opinion on a particular version of the facts, and the weight to be accorded to that opinion is for the jury. *Id.* at 695-96. Plaintiffs' objections to Lynch's use of witness deposition testimony and of KPMG's audit confirmations are the very kinds of questions that are "typically grist for the mill of cross examination."[5] *In the Matter of Cudd Pressure Control, Inc.*, No. 98-585, 1999 WL 756439, at *2 (E.D. La. Sept. 24, 1999).

Contrary to plaintiffs' assertion, Lynch did not purport to be an expert on witness credibility. Instead, Lynch properly based his conclusion about plaintiffs' allegations of double

---

[5] In fact, plaintiffs entirely mischaracterized Lynch's discussion of the KPMG account receivables confirmations. Lynch's report does not make any affirmative conclusion as to double shipping solely by virtue of the confirmations. This was only a part of what Lynch considered to determine if there was evidence of double shipping. Moreover, plaintiffs' argument about the reliability of Lynch's use of the audit confirmations goes directly to the sufficiency of his evidence, not admissibility. Lynch reviewed all of the audit confirmations available in KPMG's work papers. (Ex. 302 at Ex. 3.) KPMG sent accounts receivable confirmations as part of its standard year-end audit procedures. (Ex. 432 attached to the Decl. of J. Brannen in Supp. of the Answering Brs. in Opp'n to Pls.' Mot. to Exclude the Test. of C. James, E. Lynch, C.P.A., & S. Grace, M.B.A., Ph.D ("Brannen Decl. II").) Such confirmations are typically intended to be a representative sample of the entire population of receivables, often chosen as some combination of accounts above a certain dollar threshold and some other sampling method. (Brannen Decl. II Ex. 432.)

shipping on his analysis of Adams Golf's accounting and financial documents and on his consideration of all relevant evidence. Plaintiffs are free to challenge the sufficiency of his evidence on cross-examination. *Walker*, 46 F. App'x at 695-96. Plaintiffs' disagreement with Lynch's testimony is not a proper basis for exclusion. *Id.* "In performing its gatekeeping function . . . the District Court is not to weigh the evidence relied upon or determine whether it agrees with the conclusions reached therein." *Id.* at 695. Because Lynch applied his extensive expertise in accounting and auditing to analyze plaintiffs' allegation of double shipping, his opinion should be admitted.

### III.  GRACE'S TESTIMONY IS RELIABLE, RELEVANT AND ADMISSIBLE

Plaintiffs seek to exclude Grace's opinions on: (1) what the Individual Defendants did to control gray marketing (Mot. at 2 ¶ 10); (2) what the Individual Defendants believed at the time of the IPO (Mot. at 2 ¶ 11); (3) the materiality of gray marketing (Mot. at 2 ¶¶ 7-9); and (4) the significance of the SEC allowing the Registration Statement to become effective (Mot. at 2 ¶ 13). In each case, plaintiffs mischaracterize the evidence upon which Grace bases his opinion. Their challenge properly goes to the weight to be given to Grace's opinions, not their admissibility.

#### A.  Grace's opinion about whether the Individual Defendants' conduct met the section 11 due-diligence defense is admissible—he used a reliable methodology and examined all the relevant evidence

Grace is unquestionably qualified to opine on the reasonableness of the Individual Defendants' investigation and their resulting conclusions. Grace is an expert in corporate governance, based on both his education (M.B.A.; Ph.D in Economics) and his more than thirty-five years of senior management and consulting experience. (Ex. 310 at Ex. I.) He has published and spoken on a variety of corporate-governance topics and acted as an expert witness in numerous cases. (Ex. 310 at Ex. I.) His experience and specialized knowledge about the roles and responsibilities of corporate officers and directors qualifies him to assist the jury in

7

understanding the corporate-governance issues that are relevant to the Individual Defendants' due-diligence defense.

To evaluate their due-diligence responsibilities, Grace necessarily considered all the facts in context. Grace analyzed all relevant evidence regarding the Individual Defendants' responsibilities and investigation related to the Company's IPO. (Ex. 310 at 13-20; Brannen Decl. II Ex. 426.) Among other things, he reviewed the Individual Defendants' assessment of the gray-market issue and its significance to the Company. He looked at both the information available to them at the time of the IPO and the information acquired from Costco in this litigation. With his staff's assistance, he created a timeline that shows the number of clubs acquired and sold by Costco, retailer complaints, Adams Golf's sales, and the steps that Adams Golf's management took to investigate and control the gray-marketing issue. (Ex. 310 at Ex. VII; *see also* Ex. 310 at 16-20.) Based on this evidence and his experience, Grace concluded that the Individual Defendants performed adequate due diligence and reasonably used their business judgment to determine that the Registration Statement was true and complete. (Ex. 310 at 24; *see also* Grace Dep. Tr. 49:8-16.)

Grace did not and need not determine whether the Individual Defendants were correct in their assessment. That is ***not*** required for the due-diligence defense. The Individual Defendants need only show that they conducted a reasonable investigation related to the IPO and that they had reasonable grounds to believe at the time of the IPO that the offering documents were true and complete. 15 U.S.C. § 77k(b)(3)(A). If defendants can satisfy the statutory requirements of this affirmative defense, then they have no liability even if the Registration Statement is determined to be materially misleading. *Id.*

Although it was not necessary to his analysis, Grace did note, based on information that became available after the IPO, that the Individual Defendants indeed were correct in their

8

assessment that gray marketing was not a material consideration to the business. (Ex. 310 at 18.) Likewise, Grace did not and need not make a credibility determination about what the Individual Defendants believed at the time they signed the Registration Statement—he merely noted that all of them testified that they did believe the Registration Statement was true and correct. (Grace Dep. Tr. 145:9-146:7; Ex. 310 at 9.)

Plaintiffs do not argue that Grace's overall methodology is unreliable or that his due-diligence conclusion is irrelevant. Instead, plaintiffs contend that Grace's opinion that the Individual Defendants and the Company (through its management) appropriately assessed and took steps to control the gray-market issue is irrelevant to their due-diligence defense. (Mot. at 14-15.) Plaintiffs are wrong. The Individual Defendants' assessment and treatment of the gray-market issue is integral to their due-diligence defense. It is this very assessment and treatment of the issue that provided them with the reasonable grounds to believe that the Registration Statement was true and complete without a specific gray-marketing risk disclosure. (*See* Ex. 310 at 16-20, 24; *see also* Ex. 310 at Ex. VII.)

Grace analyzed the roles and responsibilities of the various Individual Defendants and Adams Golf's management in connection with both the IPO and the overall management of the Company. (Ex. 310 at 10-11, 13-20.) He also examined the actions that the various officers and directors took to investigate and address the gray-market issue. As part of that examination, he assessed whether the Individual Defendants properly relied on the reports from and actions taken by those members of Adams Golf's management team who were closest to the gray-marketing issue (*e.g.*, Chris Beebe, Mark Gonsalves, and Barney Adams). (Ex. 310 at 13-20; *see also* Grace Dep. Tr. 150:15-152:16.) He concluded that the Individual Defendants appropriately relied upon these reports and actions when forming their belief that gray marketing was not a material risk. (Ex. 310 at 14, 16-20.) Thus, Grace's opinion that the Individual Defendants (and the Company,

9

through its management) took appropriate steps to investigate and deal with gray marketing is relevant and necessary to his opinion that the Individual Defendants' due diligence was reasonable and that they had reasonable grounds for their belief that no disclosure was necessary.[6] Grace properly examined *all* the available information and *all* the steps taken to investigate and control gray marketing. (Ex. 310 at Ex. VII; *see also* Ex. 310 at 16-20.)

### B. Plaintiffs are actually challenging—improperly—the weight that should be given to Grace's opinions

Plaintiffs contend that certain of Grace's opinions should be excluded because they do not satisfy the criteria of qualification, reliability, and fit. What plaintiffs are actually referring to, however, are the bases for Grace's opinion, that is, the support for his ultimate opinion that the Individual Defendants' investigation was reasonable and provided reasonable grounds for their belief that the Registration Statement was true and correct. Even though Grace does not purport to be an expert on either materiality or SEC procedures (Mot. at 12, 16), he is certainly qualified to discuss these issues in the corporate-governance context.

Plaintiffs mischaracterize Grace's analysis of the Individual Defendants' assessment of the gray-market issue as an opinion on materiality. Grace was not asked to express an opinion on the materiality of the gray-market issue, nor did he purport to offer an opinion on what would matter to a reasonable investor (Grace Dep. Tr. 137:1-14),[7] and he need not do so to analyze the Individual Defendants' due diligence. Indeed, it would be inappropriate for Grace to offer a

---

[6] While plaintiffs correctly state that the due-diligence defense is available only to the Individual Defendants, not to the Company (Mot. at 15), as noted above, Grace's consideration of what the Company acting through its management did to assess and manage gray marketing is relevant and necessary to his opinion that the Individual Defendants acted diligently and had reasonable grounds to believe the offering documents were true and complete.

[7] It should be noted that the reasonable-investor standard is not the only applicable legal standard in this case. Although Grace did not opine on the application of Item 303 to the facts here, his analysis and compilation of the relevant facts supports defendants' argument that the information available before the IPO indicated that gray marketing was and would remain immaterial, and thus there was no duty to disclose it. (*See, e.g.*, Adams Golf Defs.' Opening Br. in Supp. of Mot. for Summ. J. at 36.)

legal conclusion as an opinion—his testimony is offered to assist the jury in understanding the factual issues related to the reasonableness of the Individual Defendants' due diligence from a corporate-governance perspective. *See* FED. R. EVID. 704 advisory committee note (noting that the provisions of Rules 701, 702, and 403 provide "ample assurances against the admission of opinions which would merely tell the jury what result to reach"). Whether the Individual Defendants were right or wrong about the gray-market issue has no bearing on whether they acted diligently and had reasonable grounds to believe no disclosure was necessary.

As a corporate-governance expert, Grace assessed the roles, responsibilities, and conduct of the Individual Defendants and the reasonableness of their business judgment that gray marketing did not pose a significant risk to the Company's future results in the context of the Company's overall business performance and strategy. (Ex. 310 at 13-20; Brannen Decl. II Ex. 314 at 2-5, 7; Grace Dep. Tr. 130:14-17, 131:2-8, 133:5-134:1, 137:19-141:20, 163:12-166:3.) He does not need to be a materiality or gray-marketing expert or a lawyer to reach this conclusion—he explains that: (1) the gray-market issue was not financially significant to the Company at the time of the IPO (Ex. 310 at 17-18; Grace Dep. Tr. 237:14-17); and (2) although the Individual Defendants treated the issue with diligence, they also reasonably believed it was under control and did not pose a risk to the Company's future results. (Ex. 310 at 19; Grace Dep. Tr. 203:5-204:23.) Plaintiffs can cross examine Grace if they disagree with his ultimate conclusion. Again, although Grace noted, as an observation, that he believed that the Individual Defendants were correct in their judgment, his belief that gray marketing was not a material risk to the Company is not necessary to his opinion that the Individual Defendants satisfied their due-diligence obligations.

Plaintiffs make a similar argument that Grace is not qualified to testify on the significance of the SEC allowing the Registration Statement to become effective. (Mot. at 16-

11

RLF1-3068580-1

17.) Again, Grace does not purport to be an expert on SEC procedures, nor does he need to be one to conclude that the Individual Defendants reasonably took comfort from their expert advisors. (Ex. 310 at 9, 15; Grace Dep. Tr. 160:20-161:17, 162:16-23, 215:23-217:21.) Grace is unquestionably qualified to help the jury understand the importance of the SEC's consideration of the gray-marketing issue from a corporate-governance perspective.

## CONCLUSION

For all these reasons, the Adams Golf Defendants respectfully request that the Court deny plaintiffs' Motion.

|  |  |
|---|---|
| OF COUNSEL:<br>Paul R. Bessette<br>Jennifer R. Brannen<br>Michelle A. Reed<br>Laura Moriaty<br>Akin Gump Strauss Hauer & Feld LLP<br>300 West 6th Street, Suite 2100<br>Austin, Texas 78701 | Jeffrey L. Moyer (#3309)<br>moyer@rlf.com<br>Alyssa M. Schwartz (#4351)<br>schwartz@rlf.com<br>Richards, Layton & Finger, P.A.<br>One Rodney Square, P.O. Box 551<br>Wilmington, Delaware 19899<br>(302) 651-7700<br><br>Attorneys for Defendants Adams Golf, Inc., B.H. Adams, Richard H. Murtland, Darl P. Hatfield, Paul F. Brown, Jr., Roland E. Casati, Finis F. Conner, and Stephen R. Patchin |

Dated: October 9, 2006

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2006, I have caused the foregoing to be served by Hand Delivery which has also been filed with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

| | |
|---|---|
| Carmella P. Keener<br>Rosenthal, Monhait & Goddess<br>919 Market Street, Suite 1401<br>Wilmington, DE 19801 | Robert K. Payson<br>John E. James<br>Potter Anderson & Corroon LLP<br>1313 North Market Street, Hercules Plaza<br>Wilmington, DE 19801 |

I hereby certify that on October 9, 2006, I have sent by electronic mail the foregoing document(s) to the following non-registered participants:

| | |
|---|---|
| Neil Mara<br>Todd S. Collins<br>Berger & Montague, PC<br>1622 Locust Street<br>Philadelphia, PA 19103 | Michael J. Chepiga<br>Theodore J. McEvoy<br>Simpson Thacher & Bartlett<br>425 Lexington Avenue<br>New York, NY 10017 |

Jeffrey L. Moyer (#3309)

RLF1-2851933-2