UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: ADAMS GOLF, INC., SECURITIES LITIGATION | § § § § § | CIVIL ACTION NO. 99-371-KAJ (CONSOLIDATED) |

## DECLARATION OF CHRISTPHER M. JAMES Ph.D.

Of Counsel:
Paul R. Bessette
Jennifer R. Brannen
Michelle A. Reed
Laura L. Moriaty
Akin Gump Strauss Hauer & Feld LLP
300 West 6th Street, Suite 2100
Austin, Texas 78701

Jeffrey L. Moyer (#3309)
moyer@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

Attorneys for Defendants Adams Golf, Inc., B.H. Adams, Richard H. Murtland, Darl P. Hatfield, Paul F. Brown, Jr., Roland E. Casati, Finis F. Conner, and Stephen R. Patchin

Dated: October 9, 2006

RLF1-3056195-1

# Declaration of Christopher M. James, Ph.D.

I, Christopher M. James, declare:

1. I have been asked on behalf of Defendants to respond to the Plaintiffs' Opening Brief in Support of Motion to Strike and Exclude Testimony of Christopher James, Ph.D. My qualifications are outlined in my expert report dated July 14, 2006.

2. My declaration is a supplement to my previous reports and deposition, and it does not contain any changes to my previous opinions. My declaration will address the following issues:

    I. Plaintiffs allege that Costco's issuance of purchase orders for Adams Golf's clubs on July 21-22, 1998 caused a 27% drop over a six-day period beginning before and ending after the purchases. Plaintiffs allege that this is an example of information "leakage".[1] Furthermore, Plaintiffs allege that "leakage" of information regarding gray market activities contributed to a decline of "more than 75 percent prior to the October 22, 1998 company disclosure."[2] My analysis will demonstrate that Plaintiffs' claims are unfounded, and that these claims are based on a selective read of the facts and data of this case.

    II. Plaintiff argue that my objective regression results are violating scientific principles, and one cannot use the Nasdaq as an index in an event study to analyze Adams Golf stock's price.[3] Again, my analysis will prove that Plaintiffs' claims are mere speculation, and are made without conducting any scientific analysis.

    III. Plaintiffs claim that the use of monthly regressions is inappropriate in this case.[4] Once again, Plaintiffs misunderstand and/or misinterpret the financial economic literature. Monthly regression analysis is widely used in scientific inquiry and is appropriate to use in this case.

---

[1] Plaintiffs' Opening Brief in Support of Motion to Strike and Exclude Testimony of Christopher James, Ph.D., page 5.
[2] Plaintiffs' Opening Brief in Support of Motion to Strike and Exclude Testimony of Christopher James, Ph.D., page 7.
[3] Plaintiffs' Opening Brief in Support of Motion to Strike and Exclude Testimony of Christopher James, Ph.D., page 10.
[4] Plaintiffs' Opening Brief in Support of Motion to Strike and Exclude Testimony of Christopher James, Ph.D., page 12.

I. **Plaintiffs Unsupported "Leakage" Theory**

3. Event studies using daily data are commonly used in securities litigation and in financial economics to assess the materiality of new information. Plaintiffs claim that the use of event study analysis is inappropriate in this case because of "leakage". Plaintiffs allege that Costco's issuance of purchase orders for Adams Golf clubs on July 21-22, 1998, caused a 27% drop over a six-day period beginning before and ending after the purchases. The drop they contend is the result of the "leakage" of information about gray market activities.[5] In addition to the daily event study that I have performed in my previous analyses, I first examine Adams Golf stock price decline over this six-day period (see **Exhibit 14**). Callaway, which Plaintiffs point to as Adams Golf's closest competitor, experienced a stock price decline of 30.6%, which is even greater than Adams Golf's cumulative drop; and Miller's Peer Group also experienced a decline greater than that of Adams Golf, dropping 28.7% over the six-day period.[6] This demonstrates that Plaintiffs cannot claim that "leakage" of gray market activities impacted Adams Golf's stock price.[7] On the contrary, the results suggest that Adams Golf experienced a decline similar to that of its peers and that none of this six-day decline in its stock price is due to Plaintiffs' unsupported "leakage" theory.

4. Second, I perform a statistical test in order to determine objectively and scientifically whether the stock price decline over the six-day period was statistically significant. Again, Plaintiffs did not perform any statistical tests, and their claims about the significance of their "leakage" theory are unsupported. The statistical analysis I performed indicates that Adams Golf's stock price decline over the six-day period was not statistically significant. This result is not surprising since the entire market and industry declined during this period.

---

[5] Plaintiffs' Opening Brief in Support of Motion to Strike and Exclude Testimony of Christopher James, Ph.D., page 5. (From the Rebuttal Expert Report of R. Alan Miller, I inferred that Miller was referring to a five-day return, but now Plaintiffs have specified it as a six-day period instead.)

[6] Miller's Peer Group is defined in the Rebuttal Expert Report of R. Alan Miller.

[7] As reported in my previous reports, overall industry slowdown caused most of the decline in Adams Golf Stock's price. For Example, on July 24, 1998, Jefferies & Company, Inc. released a report about Callaway Golf stating: "We have lowered our rating on Callaway Golf to Underperform from Hold and are lowering estimates to adjust for dramatically reduced expectations amidst a severe lack of visibility. Callaway is facing an over-supplied, increasingly competitive, and flattening market for golf clubs that offers little comfort in sales going forward..."

5. Finally, Plaintiffs claim that there was a decline of "more than 75 percent prior to the October 22, 1998 company disclosure."[8] Again, if Plaintiffs were to examine the facts of this case and look objectively at the data, they could have observed the following: the decline is actually just under 75% (see **Exhibit 15**), and is 71.1% if calculated using the IPO offer price of $16 as the starting point (as opposed to the closing stock price on July 10, 1998). Moreover, it is worth noting that the competitors and indices that Plaintiffs have deemed relevant also fell during this time period. Callaway experienced a stock price decline of 38.9% and Miller's Peer Group declined 42.0% over the class period.[9] These results, combined with the lack of any significant price reactions to gray market information during the class period, demonstrate that 1) the gray market information was not new material information; 2) factors other than Plaintiffs' allegations—general industry decline and loss of market share—contributed to most of the decline in Adams Golf's stock price.

II. **The Nasdaq Is An Appropriate Index To Analyze Adams Golf Stock Price's Returns**

6. *Daubert v. Merrell Dow Pharmaceuticals, Inc.* states "… 'Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified; indeed, this methodology is what distinguishes science from other fields of human inquiry.' Green, 645. See also C. Hempel, Philosophy of Natural Science 49 (1966) ('[T]he statements constituting a scientific explanation must be capable of empirical test'); K. Popper, Conjectures and Refutations: The Growth of Scientific Knowledge 37 (5th ed. [509 U.S. 579, 13] 1989) ('[T]he criterion of the scientific status of a theory is its falsifiability, or refutability, or testability')." Indeed, one cannot force one's hypothesis on the data and conclude that she/he is correct. In my expert report dated July 14, 2006, I conducted an objective statistical analysis to determine the factors impacting Adams Golf's stock price. The analysis and the results are described in ¶ 51, footnote 21 and Exhibit 4 of my report. Plaintiffs claim that the Nasdaq is an inappropriate index to

---

[8] Plaintiffs' Opening Brief in Support of Motion to Strike and Exclude Testimony of Christopher James, Ph.D., page 7.
[9] The Nasdaq declined 12.3% during the same time period.

3

analyze Adams Golf's stock price, and Mr. Miller suggested a different industry index (i.e., Miller's Peer Group) is more appropriate.[10] Unfortunately, Plaintiffs and their expert fail to follow accepted scientific methods and make unfounded claims. I examine Plaintiffs' suggested index, and the statistical results are reported in **Exhibit 16**. The results suggest that the one factor Nasdaq model is better than the one factor Miller Peer Group model since the adjusted $R^2$ of the Nasdaq model is higher, indicating a better statistical fit.

7. Again, Plaintiffs have not provided scientific evidence to support their claims and refute my objective results.

### III. Monthly Regression Data

8. Interestingly enough, although plaintiffs argue my regressions using daily returns are invalid due to the brevity of the one-day event windows, they also claim that my monthly regressions are invalid. Plaintiffs cite MacKinlay, who they suggest "sternly warns against use of monthly data: '...there is a substantial payoff in terms of increased power from reducing the sampling interval.'"[11] First, I agree with MacKinlay that regressions using daily returns have more explanatory power, which is precisely why I used daily returns in my event study to assess the materiality of disclosures regarding gray marketing. Second, MacKinlay does not say that monthly intervals are incorrect, just that, in the context of an event study, an analysis of monthly returns may have less explanatory power than an analysis based on daily returns.

9. Plaintiffs again misinterpreted the financial economics literature. The fact that "there is a substantial payoff in terms of increased power from reducing the sampling interval" as noted by MacKinlay makes my monthly regression results even more telling. The fact that monthly regressions are less powerful increases the chances of regression analysis failing to find a relationship that in fact exists. Thus, the fact that my monthly regressions did uncover relationships between Adams Golf's stock price performance and

---

[10] Plaintiffs' Opening Brief in Support of Motion to Strike and Exclude Testimony of Christopher James, Ph.D., page 10.

[11] Plaintiffs' Opening Brief in Support of Motion to Strike and Exclude Testimony of Christopher James, Ph.D., page 12.

4

both industry conditions and relative market share indicates just how strong those relationship were. Second, given that data regarding Adams Golf's market share was only available on a monthly basis, one can only use monthly intervals in the dependent variable when assessing how market share affected price. Furthermore, information regarding general conditions and trends within the golf industry was continually evolving throughout the class period and beyond (unlike the gray marketing situation, which existed before and was a constant throughout the class period). Thus, the evolution of industry conditions is actually analogous to MacKinlay's example of regulation changes, making monthly observations entirely appropriate for the situation.[12]

10. There are numerous academic articles that support the use of monthly data to analyze issues similar to the ones in this case. For example:

> "The impact of market-wide information on the monthly rate of return from investing one dollar in the stock of firm $j$ may be estimated by its predicted value from the linear regression of the monthly price relatives of $j$'s common stock on a market index of returns..." Ball and Brown, "An Empirical Evaluation of Accounting Income Numbers," *Journal of Accounting Research*, Autumn, 1968.

11. The discussion above, again, illustrates that Plaintiffs make unsupported and unscientific claims about the validity of my monthly regression analyses and suggest that they are inappropriate without providing a scientific evidence to support their claims. Moreover, they also misinterpreted the financial economics literature.

## IV. Conclusion

12. My objective and scientific analyses, as well as an accurate interpretation of academic literature, demonstrate that Plaintiffs' claims are unfounded and unsupported, based solely on selective use and a subjective read of the facts and data of this case, and a misconstruing of the financial economics literature

---

[12] Plaintiffs point to MacKinlay's example of regulatory changes as a situation in which a daily event study is less appropriate. According to MacKinlay, "The problem is that regulatory changes are often debated in the political arena over time and any accompanying wealth effects generally will gradually be incorporated into the value of a corporation as the probability of the change being adopted increases." (Plaintiffs' Opening Brief in Support of Motion to Strike and Exclude Testimony of Christopher James, Ph.D., page 6.)

_____
Christopher M. James

[Notary Seal: CYNTHIA LEONA FRENCHMAN, Commission DD336537, Expires 2/15/2009, Bonded thru (800)432-4254, Florida Notary Assn., Inc.]

Cynthia Frenchman
(personally known to me)
Notary Exp. Date 2/15/09

10/9/06
Date

# Exhibit 14
# Adams Golf, Inc.
# Six-Day Return Surrounding July 21-22, 1998
# Costco Purchase Orders
Source: *Bloomberg*; *CRSP*; Legal Filings

| Date | Return | Residual [1] | Tstat [2] | Callaway | Nasdaq | Miller Peer Group |
|---|---|---|---|---|---|---|
| 07/16/98 | -8.6% | -7.7% | | 7.1% | 0.3% | 4.6% |
| 07/17/98 | 6.0% | 7.0% | | 4.1% | 0.4% | 2.6% |
| 07/20/98 | -5.3% | -4.1% | | -2.1% | 0.3% | -2.1% |
| 07/21/98 | -10.5% | -7.3% | | -3.7% | -1.7% | -4.1% |
| 07/22/98 | 2.1% | 4.3% | | -1.6% | -0.5% | -1.0% |
| 07/23/98 | -12.7% | -9.8% | | -32.9% | -1.8% | -28.5% |
| | **-26.8%** | **-17.5%** | **-1.14** | **-30.6%** | **-3.0%** | **-28.7%** |

Note: [1] Regular In-Class Model Residual Price Change = Actual Return - [ -0.01 + (1.19 * Nasdaq Return)]. Regular In-Class Model estimated using daily natural log returns during the class period.

[2] T-stat calculated by dividing the Six-Day Residual Return by the product of the Root MSE (0.063) and the square root of six (the number of trading days.) An asterisk would denote significance at the 95% confidence interval.

# Exhibit 15
# Adams Golf, Inc.
# Relevant Stock Price and Index Declines
# Class Period: 7/10/98 – 10/22/98

Source: *Bloomberg*; *CRSP*; Legal Filings

|  | Closing Price (or Peg) [1] | | | |
|---|---|---|---|---|
| Date | ADGO | Callaway | Nasdaq | Miller Peer Group |
| 07/10/98 | $18.38 | $18.31 | $18.38 | $68.40 |
| 10/22/98 | $4.63 | $11.19 | $16.12 | $39.68 |
| Return | -74.8% | -38.9% | -12.3% | -42.0% |

Note: [1] Nasdaq is pegged to ADGO closing price on 7/10/98.

# Exhibit 16
# Adams Golf, Inc.
# Regression Results
# Class Period: 7/10/98 – 10/22/98

Source: Bloomberg; *CRSP*; Legal Filings

|  | Single Factor Model: NASDAQ | | Single Factor Model: Miller's Peer Group [1] | |
|---|---|---|---|---|
| Number of Observations | 73 | | 73 | |
| Adjusted R-Squared | 17.6% | | 8.9% | |
| Coefficients (T-statistics) | | | | |
| NASDAQ | **1.19** | **(4.04)** | | |
| Miller's Peer Group | | | **0.49** | **(2.83)** |
| Constant | **-0.01** | **(-1.98)** | -0.01 | (-1.70) |

Note:
Bolded entries are significant at the 95% level.

[1] Miller's Peer Group represents the combined "Peer Group" returns exactly as they appear in the Rebuttal Report of R. Alan Miller.

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2006, I have caused the foregoing to be served by Hand Delivery which has also been filed with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Carmella P. Keener
Rosenthal, Monhait & Goddess
919 Market Street, Suite 1401
Wilmington, DE 19801

Robert K. Payson
John E. James
Potter Anderson & Corroon LLP
1313 North Market Street, Hercules Plaza
Wilmington, DE 19801

I hereby certify that on October 9, 2006, I have sent by electronic mail the foregoing document(s) to the following non-registered participants:

Neil Mara
Todd S. Collins
Berger & Montague, PC
1622 Locust Street
Philadelphia, PA 19103

Michael J. Chepiga
Theodore J. McEvoy
Simpson Thacher & Bartlett
425 Lexington Avenue
New York, NY 10017

Jeffrey L. Moyer (#3309)