IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE ADAMS GOLF, INC.<br>SECURITIES LITIGATION | CONSOLIDATED<br>C.A. No. 99-371 KAJ |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO EXCLUDE PARTS OF THE TESTIMONY OF DEFENDANTS' EXPERTS EDWARD LYNCH, C.P.A. AND STEPHEN GRACE, M.B.A., Ph. D.**

ROSENTHAL, MONHAIT & GODDESS, P.A.
Carmella P. Keener (DSBA No. 2810)
919 Market Street, Suite 1401
Citizens Bank Center
Wilmington, DE 19801
(302) 656-4433
ckeener@rmgglaw.com
*Liaison Counsel for Plaintiffs and the Class*

BERGER & MONTAGUE, P.C.
Todd Collins
Elizabeth Fox
Neil Mara
1622 Locust Street
Philadelphia, PA. 19103
(215) 875-3000
*Lead Counsel for Plaintiffs and the Class*

LAW OFFICES OF DONALD B. LEWIS
Donald B. Lewis
5 Cynwyd Road
Bala Cynwyd, PA 19004
(610) 668-0331

KELLER ROHRBACK, LLP
Juli F. Farris
Elizabeth Leland
1201 Third Avenue, Suite 3200
Seattle, WA 98101

Dated: October 30, 2006

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................... ii

INTRODUCTION .................................................... 1

ARGUMENT ........................................................ 2

    A.    Lynch's Proffered Testimony Is Improper -- Plaintiffs'
           Motion Does Not Implicate The Weight To Be Given
           To Lynch's Testimony ........................................ 2

    B.    Grace's Testimony On Certain Issues Must Be Disallowed ........... 4

           1.    What Defendants Did to Manage the Gray Marketing
                  Problem is Irrelevant to the Decision to Omit the Risk of
                  Gray Marketing from the Registration Statement ............. 4

           2.    Grace May Not Testify About Defendants' Beliefs Eight
                  Years Ago .............................................. 5

           3.    Grace is Unqualified, and Has Insufficient Basis, to Testify
                  Whether Gray Marketing was Material Before the IPO ........ 6

           4.    Grace Cannot Testify About the Meaning of the SEC
                  Staff's Actions or Inactions in Allowing the Registration
                  Statement to Become Effective ........................... 7

CONCLUSION ...................................................... 9

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Adams Golf, Inc. Sec. Litigation*,
  381 F.3d 267 (3d Cir. 2004) .................................................................. 5, 6

*Crowley v. Chait*,
  322 F. Supp. 2d 530 (D.N.J. 2004) ....................................................... 2, 3, 6

*In the Matter of Cudd Pressure Control, Inc.*,
  No. 98-585, 1999 U.S. Dist. LEXIS 15002 (E.D. La. Sept. 24, 1999) ............. 3

*McGowen v. Cooper Industrial, Inc.*,
  863 F.2d 1266 (6th Cir. 1988) .................................................................... 7

*In re Merck & Co., Inc. Sec. Litigation*,
  432 F.3d 261 (3d Cir. 2005) ........................................................................ 6

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
  345 F. Supp. 2d 431 (D. Del. 2004) ......................................................... 6, 7

*TSC Industrial Inc. v. Northway, Inc.*,
  426 U.S. 438 (1976) .................................................................................. 6

*Watkins v. New Castle County*,
  374 F. Supp. 2d 379 (D. Del. 2005) ............................................................ 6

## DOCKETED CASES

*Walker v. Gordon*,
  No. 01-4106, 46 Fed. Appx. 691 (3d Cir. Sept. 12, 2002) ........................... 3

## OTHER AUTHORITIES

Fed. R. Evid. 401 ............................................................................................ 5

Fed. R. Evid. 403 ............................................................................................ 5

Fed. R. Evid. 702 ............................................................................................ 5

# INTRODUCTION

The Adams Golf Defendants' ("defendants") Answering Brief in Opposition to Plaintiffs' Motion to Exclude the Testimony of Edward Lynch, C.P.A. ("Lynch") and Stephen Grace, M.B.A., Ph.D ("Grace") ("Def. Br.") mischaracterizes, and then fails to address, plaintiffs' arguments against the admissibility of portions of both Lynch's and Grace's reports and testimony. Much of defendants' argument concerns matters that are either irrelevant or not in dispute: (1) the level of return reserves provided for by Adams Golf (the "Company")[1]; (2) Lynch's qualifications as an accountant and auditor; and (3) Grace's qualifications to give opinions concerning the Individual Defendant's due diligence.

In this reply brief, plaintiffs will address only the issues that are in contention. As to Lynch, these issues are his improper usurpation of the jury's province as to credibility, and his improper use of categorically unreliable evidence on which to base his conclusions. As to Grace, these issues are his impermissible testimony on the possibility of "managing" gray marketing, defendants' subjective beliefs, the materiality of gray marketing, and the actions of the SEC.

---

[1] This issue was rendered irrelevant by Plaintiffs' Amended and Supplemented Responses to Adams Golf Defendants' First Request for Admissions to Plaintiffs. *See* Request for Admission 24 and Plaintiffs' Response, attached hereto as Ex. A.

# ARGUMENT

## A. Lynch's Proffered Testimony Is Improper -- Plaintiffs' Motion Does Not Implicate The Weight To Be Given To Lynch's Testimony.

Defendants attempt to side step the arguments raised in Plaintiffs' Opening Brief ("Pl. Op. Br.") by mis-characterizing them. Plaintiffs' challenge has nothing to do with the *weight* to be given Lynch's testimony. Rather, plaintiffs object to Lynch's testimony because, by making credibility determinations, he improperly exceeds the scope of expert testimony.

Defendants' brief is notable for what it does not say. Defendants do not even mention (never mind attempt to distinguish) the directly on-point language cited by plaintiffs in their Opening Brief (Pl. Op. Br., p. 7-8) from *Crowley v. Chait*, 322 F. Supp. 2d 530 (D.N.J. 2004) (expert may not make credibility determinations). Unable to distinguish *Crowley*, defendants instead cryptically claim that Lynch's utterly improper credibility determinations are helpful because they put the Lynch-favored evidence into "context." Def. Br., p. 5. What that "context" is, or why the jury needs "context," defendants do not say.

Put simply, it is improper for Lynch to opine that, despite compelling evidence to the contrary, no double shipping occurred because defendants and their witnesses said so. As plaintiffs discussed in their Opening Brief, the contemporaneous documentary evidence on double shipping is sharply at odds with the deposition testimony current and former Adams Golf personnel gave eight years after the events in question. While Lynch may opine (and be cross examined) on the Company's financial records or sales data to make a case against the existence of double shipping, he may not invade the jury's province by also telling the jury, in

essence, to ignore explicit evidence of double shipping from eight years ago because, when defendants said then that it was happening, they did not really mean it.

Defendants are correct when they say that disputes and inconsistencies between documentary evidence and deposition testimony are "grist for the mill of cross examination." Def. Br., p. 6.[2] However, that cross examination is properly directed to the author of the document, or to the deponent who made the inconsistent statement- not to an "expert" who never even talked with the deponents, was not present at the depositions, and otherwise made no effort to investigate the evidentiary discrepancies[3]. The jury will, as it is solely charged with doing, evaluate the proffered evidence and decide which form of evidence is more credible -- for example, documentary evidence consisting of a memo from Barney Adams, President of Adams Golf, or witness testimony from eight or more years later, after litigation was joined. Defendants may not invade and corrupt the jury's deliberative process regarding the credibility

---

[2]Defendants' admonition that "Plaintiffs are free to challenge the sufficiency of [Lynch's] evidence on cross-examination" (Def. Br., p. 7) illustrates defendants' mischaracterization of plaintiffs' motion. It is not about sufficiency- it is about admissibility. Further, case law cited by defendants in their brief is inapposite. In *In the Matter of Cudd Pressure Control, Inc.*, No. 98-585, 1999 U.S. Dist. LEXIS 15002 (E.D. La. Sept. 24, 1999), plaintiffs' motion in limine was denied because plaintiffs merely objected to the selection of evidence the experts considered. Similarly, in *Walker v. Gordon*, No. 01-4106, 46 Fed. Appx. 691 (3d Cir. Sept. 12, 2002), plaintiff's motion was denied because he argued only that the expert did not consider all of the evidence. Such is not the case here, where plaintiffs challenge improper credibility findings by the expert.

[3]Defendants also incorrectly assert that "Plaintiffs . . . do not challenge the reliability of Lynch's methodology." Def. Br., p. 4. Lynch's methodology is flawed because, *inter alia*, he relied upon unreliable evidence to reach his conclusion. "It is axiomatic that the information upon which an expert bases his opinion must be reliable." *Crowley*, 322 F. Supp. 2d at 546. As argued previously, deposition testimony from a witness that is diametrically opposed to an underlying document that the witness authored is unreliable. *See* Pl. Op. Br., p. 8.

3

of Barney Adams, the other defendants, and critical Company witnesses by the improper introduction of cumulative, non-probative, and improper expert testimony. Lynch's testimony should be disallowed.

### B.   Grace's Testimony On Certain Issues Must Be Disallowed.

Defendants argue that the testimony of Grace that plaintiffs seek to exclude is all admissible, and that plaintiffs' argument goes to the weight of Grace's testimony.[4] In fact, each area of testimony would invade the province of the jury or the Court, or would confuse and mislead the jury. The Court should not permit Grace to testify about (1) defendants' effort to manage, as opposed to investigate, the gray marketing problem, (2) the Individual Defendants' alleged subjective belief at the time they signed the Registration Statement, (3) the materiality of gray marketing, and (4) the significance of the SEC staff allowing the Registration Statement to become effective.

### 1.   What Defendants Did to Manage the Gray Marketing Problem is Irrelevant to the Decision to Omit the Risk of Gray Marketing from the Registration Statement.

Defendants mischaracterize plaintiffs' argument that the issue of what the Company did to manage gray marketing is irrelevant. Defendants confuse "assessment" with "treatment." Def. Br., p 9. Plaintiffs do not object to Grace's testimony about the Individual Defendants' assessment of gray marketing, to the extent that, allegedly, this assessment was part of the due

---

[4] Plaintiffs do not contest Grace's qualifications to testify about the standards for due diligence and inquiry into the facts for officers and directors who sign a Registration Statement, nor do they challenge the relevance or reliability of such testimony.

4

diligence process. Plaintiffs object to testimony about attempted treatment, control or management of gray marketing.

As the Third Circuit said in this case, "a company's effort to manage a problem does not by itself discharge its obligation to inform investors of that problem; if an event is material, the securities laws may require disclosure . . . ." *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 276 n.9 (3d Cir. 2004) (emphasis added). What Adams Golf did to try to manage the Costco problem did not in any way discharge or nullify the duty to warn about the risks of gray marketing under the 1933 Act. Grace can explain what the Individual Defendants did to investigate before signing the Registration Statement. But the (utterly inadequate) measures Adams Golf took to manage the problem -- such as filing suit against Costco, when defendants knew the Texas court lacked jurisdiction -- are not a defense to failing to disclose the risk of gray marketing in the Registration Statement. Accordingly, such measures are irrelevant under Federal Rules of Evidence 401, 403 and 702, and will not assist the jury.

        2.      **Grace May Not Testify About Defendants' Beliefs Eight Years Ago.**

Defendants claim that Grace did not make "a credibility determination about what the Individual Defendants believed at the time they signed the Registration Statement," but instead only reported what the Individual Defendants said in depositions, affidavits or interviews. Def. Br., p. 9. To the contrary, Grace's opinion says that "at the time of the IPO, the Individual Defendants . . . *did believe* that the Registration Statement and Prospectus, including the risk disclosures were complete and true." D.I. 296, Ex. F, p.9 (emphasis added). Grace's

5

improper credibility determination -- as to what the Individual Defendants "did believe" -- should be stricken from Grace's opinions. *See, e.g., Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 443 (D. Del. 2004) (expert cannot testify on "intent, motive, or state of mind"); *Crowley*, 322 F. Supp. 2d at 553 ("no expert . . . will be permitted to opine on the credibility . . . of others' testimony").

First, Grace, a corporate governance expert, is unqualified to opine on what any Individual Defendants believed simply on the basis of reading an affidavit or deposition, or speaking in private with the defendant, eight years after the fact. Second, an expert who tells the jury what a defendant believed is usurping the province of the jury. It is up to the jury, not Grace, to decide what the Individual Defendants actually believed eight years ago.

### 3. Grace is Unqualified, and has Insufficient Basis, to Testify Whether Gray Marketing was Material Before the IPO.

"Materiality" as it is used in securities law is a specialized term which has been carefully interpreted by the Supreme Court and the Third Circuit. *See, e.g., TSC Indus. Inc. v. Northway, Inc.*, 426 U.S. 438 (1976); *In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 273-74 (3d Cir. 2005); *Adams Golf*, 381 F.3d at 275. It is a term which the Court will explain to the jury. It is not a term to be bandied about by someone who identifies himself as a corporate governance expert. *See, e.g., Watkins v. New Castle County*, 374 F. Supp. 2d 379, 392-93 (D. Del. 2005) (expert may not testify to a legal conclusion); *Oxford Gene Tech*, 345 F. Supp. 2d at 443, (expert may not testify about a legal standard). As shown in plaintiffs' opening brief, Grace's understanding of the term "material" can only be confusing and

misleading to the jury. Pl. Op. Br., p. 12-14.

Grace was not asked by defendants to give an opinion on the materiality of gray marketing. Grace Dep. Tr., p. 137, attached hereto as Ex. B; Def. Br., p. 10. However, at his deposition he used the term "material" many times, and opined that pre-IPO gray marketing was not material, ignoring the legal definitions of "material." *See, e.g.*, D.I. 296, Ex. F., pp. 198-99, 234-41.

Thus, Grace's testimony about materiality is inaccurate and without basis, and could only confuse the jury. Not only will the Court explain to the jury what "material" means under the law, but also Grace's opinion that gray marketing at the time of the IPO was not a material risk would usurp the jury's role to decide for itself whether the risk was material. *McGowen v. Cooper Indus., Inc.*, 863 F.2d 1266, 1273 (6th Cir. 1988) (once the jury understands industry custom, it is as qualified as the expert to decide the issue); *Oxford Gene Tech*, 345 F. Supp. 2d at 443 (expert may not testify whether legal standard was met). Grace's opinions on materiality should be excluded.

### 4. Grace Cannot Testify About the Meaning of the SEC Staff's Actions or Inactions in Allowing the Registration Statement to Become Effective.

Grace has no expertise in the workings of the SEC or the criteria the SEC staff employs in allowing a Registration Statement to become effective, nor does Grace know what information the SEC staff may have had about gray marketing at Adams Golf. Nonetheless, defendants claim Grace is qualified "to help the jury understand the importance of the SEC's consideration of the gray market issue from a corporate governance perspective." Def. Br., p.

7

12. Grace's "help" can only be misleading.

Item 501(b)(7) of Regulation S-K requires the outside front cover of the prospectus to state that the SEC has not "approved or disapproved of the securities, or passed upon the accuracy or adequacy of the disclosures in the prospectus . . . ." Any contrary representation is a "criminal offense." Since the SEC itself does not approve of any offering, and the staff makes only a limited review, officers and directors can take no comfort in the fact that the SEC staff has allowed a Registration Statement to become effective. *See* D.I. 268, pp. 3-5, hereinafter "Fisch Expert Rep." ("The SEC staff does not appear to have made, and likely could not have made, any determination of the [materiality] issue as part of its review of the Adams Golf Registration Statement.").

Moreover, Congress included Sections 11 and 12(a)(2) in the 1933 Act on the assumption that some prospectuses and registration statements would contain untrue statements, despite review by the SEC staff. Fisch Expert Rep., p. 3.

Therefore, testimony about "the importance of the SEC's consideration of the gray market issue" should not be permitted, because it would mislead the jury into thinking the SEC had considered the gray marketing issue and had approved the offering, when there is no evidence the SEC staff saw anything more than the press release about the Adams Golf suit against Costco, and was told that Adams Golf believed that the Costco suit was not material. *See* the press release and draft letter to the SEC staff attached hereto as Ex. C.

## CONCLUSION

For all the reasons discussed herein and in Plaintiffs' Opening Brief, the contested portions of Lynch's and Grace's opinions and testimony should not be allowed.

Dated: October 30, 2006

                              **ROSENTHAL, MONHAIT & GODDESS, P.A.**

                              By:  /s/ Carmella P. Keener
                                  Carmella P. Keener (DSBA No. 2810)
                                  919 Market Street, Suite 1401
                                  Citizens Bank Center
                                  Wilmington, DE  19801
                                  (301) 656-4433
                                  ckeener@rmgglaw.com
                              *Liaison Counsel for Plaintiffs and the Class*

**BERGER & MONTAGUE, P.C.**
Todd Collins
Elizabeth Fox
Neil Mara
1622 Locust Street
Philadelphia, PA. 19103
(215) 875-3000
*Lead Counsel for Plaintiffs and the Class*

**LAW OFFICES OF DONALD B. LEWIS**
Donald B. Lewis
5 Cynwyd Road
Bala Cynwyd, PA 19004
(610) 668-0331

**KELLER ROHRBACK, LLP**
Juli F. Farris
Elizabeth Leland
1201 Third Avenue, Suite 3200
Seattle, WA  98101
*Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I, Carmella P. Keener, hereby certify that on this 30th day of October, 2006, I caused **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO EXCLUDE PARTS OF THE TESTIMONY OF DEFENDANTS' EXPERTS EDWARD LYNCH, C.P.A. AND STEPHEN GRACE, M.B.A., Ph.D.** to be electronically filed with the Clerk of Court using CM/ECF, which will send notification of such filing to the following:

Jeffrey L. Moyer, Esquire
Alyssa M. Schwartz, Esquire
Richards, Layton & Finger
One Rodney Square
Wilmington, DE 19801

John E. James, Esquire
Brian C. Ralston, Esquire
Potter, Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE 19801

In addition, a copy has been served by electronic mail upon the foregoing counsel and the following:

Theodore J. McEvoy, Esquire
Michael J. Chepiga, Esquire
Elaine Divelbliss, Esquire
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
Email: tmcevoy@stblaw.com
Email: mchepiga@stblaw.com
Email: edivelbliss@stblaw.com

Paul R. Bessette, Esquire
Akin, Gump, Strauss, Hauer & Feld LLP
Three Embarcadero Center, Suite 2800
San Francisco, CA 94111-4066
Email: pbessette@akingump.com

Jennifer R. Brannen, Esquire
Akin, Gump, Strauss, Hauer & Feld, LLP
300 West 6th Street, Suite 2100
Austin, TX 78701-2916
Email: jbrannen@akingump.com

/s/ Carmella P. Keener
Carmella P. Keener (DSBA No. 2810)
ROSENTHAL, MONHAIT & GODDESS, P.A.
919 N. Market Street, Suite 1401
Wilmington, DE 19801
(302) 656-4433
ckeener@rmgglaw.com