# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE ADAMS GOLF, INC. SECURITIES LITIGATION | CONSOLIDATED C.A. No. 99-371 KAJ |

### PLAINTIFFS' AMENDED AND SUPPLEMENTED RESPONSES TO ADAMS GOLF DEFENDANTS FIRST REQUEST FOR ADMISSIONS TO PLAINTIFFS

Plaintiffs hereby respond to Defendants' Adams Golf, Inc., Barney Adams, Darl Hatfield, Richard Murtland, Paul Brown, Jr., Roland Casati, Finis Conner and Stephen Patchin (collectively, "Adams Golf Defendants") requests for admissions (the "Requests") as follows:

### REQUEST FOR ADMISSION NO. 24:

The amount allocated in Adams Golf's return reserves in 1998 was sufficient to cover returns received in 1998.

### RESPONSE:

Plaintiffs object to this request in that it calls for an expert opinion. Subject to and without waiver of this objection, and after a reasonable inquiry, plaintiffs are without knowledge or information sufficient to admit or deny this request, since they do not know if Adams accurately reported its returns from retailers and distributors. Plaintiffs admit that the reported reserves were adequate to cover the reported returns over the entire year. See also Lynch and Rainwater depositions.

408156

# EXHIBIT B

```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF DELAWARE
 2

      ............................................
 3                                  :
      IN RE:  ADAMS GOLF, INC.      :  CIVIL ACTION NO.
 4    SECURITIES LITIGATION         :     99-371-KAJ
                                    :
 5    ............................:.................

 6

 7              ORAL TELEPHONIC DEPOSITION OF
 8              H. STEPHEN GRACE, JR., Ph.D.
 9                    AUGUST 7, 2006
10

      ............................................
11

12       ORAL TELEPHONIC DEPOSITION OF H. STEPHEN GRACE,
13   JR., Ph.D., produced as a witness at the instance of
14   the Plaintiffs, and duly sworn, was taken in the
15   above-styled and numbered cause on Monday, August 7,
16   2006, from 10:08 a.m. to 4:42 p.m., via telephone
17   before Mary C. Dopico, Certified Shorthand Reporter
18   No. 463 and Notary Public in and for the State of
19   Texas, reported by machine shorthand at the offices
20   of Akin Gump Strauss Hauer & Feld, LLP, 1111
21   Louisiana Street, 42nd Floor, Houston, Texas,
22   pursuant to Notice and the Federal Rules of Civil
23   Procedure and the provisions stated on the record or
24   attached hereto.
```

Page 134

```
1   examined.                              12:42:06
2     Q. All right. That's helpful. And I  12:42:08
3   apologize. I'm not quite getting it yet. 12:42:10
4         Is it fair to characterize your work 12:42:14
5   in this case as being divisible in two parts? One is 12:42:18
6   looking at how Adams Golf responded to the gray 12:42:24
7   market problem; and the second is whether the failure 12:42:28
8   to disclose gray marketing as a risk was material. 12:42:32
9   Is that -- Is that a fair characterization of what 12:42:36
10  you were looking at?                   12:42:36
11        MR. BESSETTE: That misstates --  12:42:36
12  BY MR. COLLINS:
13    Q. Okay.                             12:42:38
14    A. Yeah.                             12:42:38
15    Q. Let me try it again, because I'm not trying 12:42:42
16  to put words in your mouth. I am -- Let me ask it 12:42:44
17  in a hypothetical way.                 12:42:46
18        As I understand it, one of the things 12:42:48
19  you looked at was how -- how Adams Golf responded to 12:42:54
20  the gray market problem pre-IPO. Am I right so far? 12:42:58
21    A. In the context of the -- of the governance 12:43:02
22  process, of the IPO preparation process, yes. 12:43:06
23    Q. Okay. That's fine. That's fine.   12:43:08
24    A. And then I looked at -- we looked at the 12:43:10
```

Page 135

```
1   gray market. I want to be careful about -- I may 12:43:14
2   not have heard that question as you said it exactly. 12:43:16
3   I wandered off slightly.               12:43:18
4     Q. Well, my questions often wander off. 12:43:22
5     A. No. I said I wandered off. I didn't say 12:43:26
6   you wandered off, just to clarify.     12:43:28
7     Q. I'll ask you a hypothetical. Let's say 12:43:38
8   Adams Golf did not -- You believe Adams Golf 12:43:40
9   responded properly to what I believe you 12:43:42
10  characterized as the gray market problem pre-IPO; is 12:43:46
11  that right?
12    A. We think it was -- We think it was 12:43:48
13  appropriate -- It was understandable to us as to why 12:43:52
14  it was not included in the IPO documents. 12:43:56
15    Q. And that's where I may -- Perhaps it's my 12:43:58
16  confusing, Dr. Grace. What I am trying to do is to 12:44:00
17  step back here, because it looks to me that you did 12:44:04
18  two different things. And one of the things that you 12:44:06
19  did was to analyze -- Apart from the IPO. I 12:44:08
20  understand there was an IPO coming. But it looks to 12:44:10
21  me like part of your opinion here -- goes on page 12:44:14
22  after page -- is whether there was an IPO coming or 12:44:16
23  not, Adams Golf did certain things in response to the 12:44:20
24  gray market.                           12:44:20
```

Page 136

```
1         And it seems to me that your opinion 12:44:24
2   contains in a number of different spots your 12:44:28
3   conclusion that Adams Golf responded appropriately -- 12:44:32
4   not to the disclosure issue, you put it in the -- in 12:44:38
5   the Registration Statement -- but instead it seems to 12:44:40
6   me that you're actually going out and opining that 12:44:44
7   Adams Golf responded appropriately to the business 12:44:46
8   issue of: You've got gray market, a gray market, a 12:44:50
9   gray market issue. Now, how are you going to respond 12:44:54
10  to it?                                 12:44:54
11        So let me try to translate that into 12:44:56
12  English. Do I understand your opinion in this case 12:45:00
13  to include, separate and apart from the IPO, a 12:45:06
14  conclusion that from a business standpoint the 12:45:08
15  individual defendants discharged their business 12:45:12
16  responsibilities to respond and -- to respond to and 12:45:18
17  address the gray market problem pre-IPO? 12:45:22
18        MR. BESSETTE: I need to just object 12:45:26
19  that it's vague and ambiguous because I can't even 12:45:26
20  tell which -- what -- what to object to. 12:45:30
21  BY MR. COLLINS:
22    Q. You know what then, let me try again. 12:45:32
23        MR. BESSETTE: All right.         12:45:36
24  BY MR. COLLINS:
```

Page 137

```
1     Q. You -- I think you said there was a gray 12:45:40
2   market problem pre-IPO. I think it's your opinion it 12:45:42
3   was not material. Are we right so far? 12:45:44
4     A. I think that's fair. I think --   12:45:46
5     Q. Okay. That's fine.               12:45:46
6     A. I think -- I don't think I was chose -- 12:45:48
7         MR. BESSETTE: That's fine. Yeah.  12:45:50
8     A. I wasn't asked to be a materiality expert 12:45:52
9   on the gray market issue. I want to make sure that 12:45:56
10  that's clear.                          12:45:56
11  BY MR. COLLINS:
12    Q. Okay.
13    A. But the fact that it was not mentioned did 12:45:58
14  not seem to be a wrong step to us.     12:46:00
15    Q. Okay.                             12:46:00
16    A. Yeah.                             12:46:00
17    Q. But I'm trying to divide the two parts and 12:46:04
18  I'm not being very eloquent.           12:46:06
19        You did work in this case on whether 12:46:08
20  pre-IPO Adams Golf and the individual defendants 12:46:16
21  responded appropriately to the gray market problem. 12:46:18
22  Is that fair?                          12:46:20
23        MR. BESSETTE: Okay.              12:46:22
24    A. I think that we did work on examining the 12:46:24
```

VERITEXT PA COURT REPORTING COMPANY
(215) 241-1000 (888) 777-6690 (610) 434-8588

# EXHIBIT C

Adams Golf

Page 1 of 1

 





### Press Releases

**Adams Takes Legal Action Against Costco**
Plano, Texas - June 9, 1998

Adams Golf filed a Bill of Discovery against Costco on June 9, 1998.

The Bill of Discovery was filed in order to determine whether Costco's claims that they had properly acquired Adams' Tight Lies® fairway woods for resale were accurate.

Adams Golf became concerned when it learned that Costco was selling their Tight Lies® fairway woods because Costco is not an authorized distributor.

"We are committed to our program of partnership with our retail accounts," stated Barney Adams, Chief Executive Officer of Adams Golf. We are prepared to take every legal action required to ensure that our valuable relationship with our retailers is maintained and remains fully intact," Adams added.

Back to the List of Press Releases

Copyright © 1998 - Adams Golf
All Rights Reserved

This website created by
Virtual Visits, Inc.



ADAMS 001494

http://www.adamsgolf.com/program/about/about_pressrelease.asp?UniqueID=16    6/18/99

# ARTER & HADDEN LLP

## MEMORANDUM

<u>VIA FACSIMILE</u>

TO:    <u>Adams Golf, Inc.</u> (972.398.8818)
Darl P. Hatfield
James E. Farrell

<u>Cooley Godward</u> (415.951.3699)
Karyn Smith, Esq.
Rich Jasen, Esq.
Steve Harmon, Esq.

<u>KPMG Peat Marwick</u> (214.754.2485)
Manny Fernandez
Rick Ehrman

FROM:    J. David Washburn

DATE:    July 2, 1998

RE:    Response Letter

---

Attached please find a draft of our response to the SEC's oral comments given June 25, 1998. Please provide comments to me, if any, at your convenience.

Thanks.

cc:    Joseph A. Hoffman, Esq.
Robin Bradford, Esq.


EXHIBIT
90
Walsh

104439.1
69168/80294

AH 000005

ARTER & HADDEN LLP
1717 MAIN STREET, SUITE 4100
DALLAS, TEXAS 75201-7366
214-761-2100 Telephone
214-741-7139 Facsimile

JULY 6, 1998

VIA EDGAR TRANSMISSION

SECURITIES AND EXCHANGE COMMISSION
Division of Corporation Finance
Judiciary Plaza
450 Fifth Street, N.W.
Mail Stop 3-5
Washington, D.C. 20549

  Re: ADAMS GOLF, INC.
    Amendment No. 2 to Registration Statement on Form S-1
    File No. 333-51715

Ladies and Gentlemen:

  On behalf of Adams Golf, Inc. (the "Company"), we have electronically transmitted herewith Amendment No. 2 to the above-referenced Registration Statement, which has been marked to indicate the changes effected by the Amendment. In addition, we have today forwarded, by way of overnight delivery, five (5) marked copies of Amendment No. 2 to the Registration Statement, c/o Ms. Letty Lynn, for the convenience of the Staff.

  This letter summarizes the Company's responses to the Staff's oral comments, received June 25, 1998. The undersigned and David Washburn of this firm previously discussed the Company's responses, at greater length, with Ms. Carolyn Kurr of the Staff on July 1, 1998.

1. COMMENT:

  The Staff has conducted a review of press releases and other publicity regarding the Company and noted that Mr. Adams, the Chairman of the Company, was quoted in a number of articles. Please make a good faith effort to review recent publicity and to square the information therein with the Prospectus.

  RESPONSE:

  The Company utilizes B.H. Adams, its Chairman and President, as the key spokesperson for the Company's products. Further, Mr. Adams is a respected expert on golf equipment and is often asked to comment on issues related to golf equipment. Prior to and since the filing of the Registration Statement, Mr. Adams has attempted to focus his public statements on the Company's products, and his intent has only been to promote the Company's products. It is the Company's belief that keeping products in the public eye is crucial in the marketing of consumer retail products such as those of the Company, especially at the peak of the season. Since the announcement of the offering, Mr. Adams has [refused various requests from the media for interviews and] consistently noted to the media that he was prevented by SEC rules from discussing the offering.

SECURITIES AND EXCHANGE COMMISSION
July 6, 1998
Page __

A number of the articles about the Company that have recently appeared in the media have been the result of either prior public relations activities (e.g. the PGA show in Florida in late January 1998) or coverage generated by the press itself. Because of the seasonal nature of golf, many of these articles are timed to run during May, June and July, the peak of the golf season.

The timing with respect to the announcement of the Company's contract with Nick Faldo was unavoidable. Mr. Faldo's contract with Mizuno ended April 30, 1998. The Company was unable to announce its new relationship with Mr. Faldo until his Mizano contract expired, and this occurred at or about the time of the initial filing of the Company's Registration Statement. The Company incurred significant expense in connection with the signing of Nick Faldo and needed to announce this significant corporate event. The Company expects that its relationship with Mr. Faldo will promote sales, especially international sales given Mr. Faldo's international reputation.

The undersigned counsel and the Underwriters' counsel have reviewed the publicity leading up to and after the filing of the Registration Statement. Both believe that Mr. Adams' pubic statements square with and are adequately addressed in the Prospectus.

2. COMMENT:

The Staff has noticed that the Company has an interactive site with Mr. Adams on its web page. Please discontinue the use of this feature until the Registration Statement has become effective.

RESPONSE:

As requested, this site was disabled [Friday June 25, 1998?] and shall remain disabled until after the Registration Statement has become effective.

3. COMMENT:

Consider updating disclosure in the Prospects regarding USGA approval of golf equipment.

RESPONSE:

Updated disclosure relating to the USGA's recent announcement is included on page 6 under "Dependence on New Product Introductions; Uncertain Consumer Acceptance."

4. COMMENT:

The Staff notes that the Company has filed an action in Texas against Costco Companies, Inc. d/b/a Costco Wholesale. Please supplementally advise the Staff of the significance of this action.

AH 000007

SECURITIES AND EXCHANGE COMMISSION
July 6, 1998
Page __

RESPONSE:

The Company filed a Bill of Discovery with the District Court in Collin County, Texas (Cause No. 219-922-98) on June 11, 1998 against Costco Companies, Inc. d/b/a Costco Wholesale ("Costco") for the purpose of obtaining the identity of the Company's distributors who are apparently selling the Company's products in violation of the Company's policies and agreements with such distributors. The Company does not believe that this proceeding is material.

KPMG has informed us that the original date of their auditors' report, January 16, 1998, was in error. The appropriate date, which has now been included in the Amendment No. 2, is April 29, 1998. KPMG has informed us that this date of April 29, 1998 complies with the standards included in Statement on Auditing Standards No 1 (AICPA AU Section 530.01). This information is consistent with the discussion held between Sam Ranzilla of KPMG and Kathy Mathis of the Staff on June 19, 1998. In addition, we have EDGARized the letter from KPMG to the Company dated June 8, 1998 and attached same to this correspondence as requested by the Staff. Updated consents have been included in the amended Registration Statement.

As we discussed on July 1, 1998, the Company plans to price on July 9, 1998 and to go effective on that date. Requests for acceleration from the Company and the Underwriters are attached.

Please do not hesitate to call me at 214-761-4779 or J. David Washburn of this office at 214-761-4309 if we can be of any further assistance.

Thank you for your assistance.

                                        Very truly yours,


                                        Joseph A. Hoffman

J20/sjm

cc:   Mr. Darl P. Hatfield
      Mr. James E. Farrell
      Kenneth L. Guernsey, Esq.
      Karyn Smith, Esq.
      J. David Washburn, Esq.

104366.2

AH 000008