IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------- x
                                                :
IN RE ADAMS GOLF, INC.,                         :   CONSOLIDATED
SECURITIES LITIGATION                           :   C.A. NO. 99-371-KAJ
                                                :
----------------------------------------------- x

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
MOTION TO STRIKE AND EXCLUDE TESTIMONY OF
<u>EDWARD R. NECARSULMER III</u>**

**ROSENTHAL, MONHAIT & GODDESS, P.A.**

Carmella P. Keener (DSBA No. 2810)
919 Market Street, Suite 1401
Citizens Bank Center
Wilmington, DE 19801
(302) 656-4433
ckeener@rmgglaw.com
*Liaison Counsel for Plaintiffs and the Class*

**BERGER & MONTAGUE, P.C.**
Todd Collins
Elizabeth Fox
Neil Mara
1622 Locust Street
Philadelphia, PA. 19103
(215) 875-3000
*Lead Counsel for Plaintiffs and the Class*

**LAW OFFICES OF DONALD B. LEWIS**
Donald B. Lewis
5 Cynwyd Road
Bala Cynwyd, PA 19004
(610) 668-0331

**KELLER ROHRBACK, LLP**
Juli F. Farris
Elizabeth Leland
1201 Third Avenue, Suite 3200
Seattle, WA 98101

*Counsel for Plaintiffs and the Class*

Dated: October 30, 2006

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................... i

INTRODUCTION .................................................... 1

ARGUMENT ........................................................ 6

    A.    Plaintiffs Have Moved To Exclude Necarsulmer's Testimony
          Because It Is Based Upon Flawed Principles ...................... 6

    B     The Authorities Cited By Defendants Do Not Support
          Admission of Necarsulmer's Opinions ........................... 8

CONCLUSION .................................................... 11

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Astrazeneca LP v. TAP Pharmacy Products, Inc.*,
   No. Civ. A.04-1332 KAJ, 2006 U.S. Dist. LEXIS
   57410 (D. Del. June 23, 2006) .................................................................. 8

*Daubert v. Merrell Dow Pharamaceutical, Inc.*,
   509 U.S. 579 (1993) ............................................................................... 7

*Escott v. BarChris Corp.*,
   283 F. Supp. 643 (S.D.N.Y. 1968) .......................................................... 3, 7

*Feit v. Leasco Data Processing Corp.*,
   332 F. Supp. 544 (E.D. N.Y. 1971) ......................................................... 3, 7

*Glassman v. Computervision Corp.*,
   90 F.3d 617 (1st Cir. 1996) .................................................................... 5

*Hartke v. McKelway*,
   526 F. Supp. 97 (D.D.C. 1981) ............................................................... 7

*ID Security System Canada, Inc. v. Checkpoint System, Inc.*,
   198 F. Supp. 2d 598 (E.D. Pa. 2002) ...................................................... 9, 10

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
   345 F. Supp.2d 431 (D. Del. 2004) ......................................................... 8, 9

*Shaw v. Digital Equipment Corp.*,
   82 F.3d 1194 (1st Cir. 1996) .................................................................. 4, 5

*Watkins v. New Castle County*,
   374 F. Supp. 2d 379 (D. Del. 2005) ........................................................ 9

*In re WorldCom, Inc. Sec. Litig.*,
   346 F. Supp. 2d 628 (S.D.N.Y. 2004) ..................................................... 7

### FEDERAL STATUTES

15 U.S.C. Section 77k ................................................................................ 3

## MISCELLANEOUS

MECHANICS OF UNDERWRITING 1983 ............................................................... 5

*Report of the Task Force on Sellers' Due Diligence and Similar Defenses
Under the Federal Securities Laws,*
48 THE BUSINESS LAWYER 1185 (1993) ......................................................... 2

Cadwalader, Wickersham & Taft LLP, *Underwriter Due Diligence in
Securities Offerings* (1999) ................................................................................ 5

## INTRODUCTION

The underwriter defendants, in their zeal to defend the opinions of Edwin R. Necarsulmer, III, attempt to divert the Court's attention to wholly irrelevant matters, such as their (misplaced) criticisms of plaintiffs' experts. Defendants have also resorted to misstating plaintiffs' arguments and unfairly castigating plaintiffs' counsel.[1]

First, defendants inaccurately charge that plaintiffs have launched attacks on Necarsulmer "on the mistaken claim that Necarsulmer was *required* to offer a legal opinion." Defendants' Corrected Brief at 1, hereinafter "Def. Corr. Br. at __". That is a straw man argument. Plaintiffs have not complained that Necarsulmer failed to opine on the law, but rather that he has opined on the ultimate issue in the case -- whether defendants conducted a reasonable due diligence investigation -- while demonstrating substantial unfamiliarity and/or disagreement with established legal principles and standards governing due diligence. Plaintiffs' position is that, because Necarsulmer's opinion is not informed by the applicable legal principles, his opinion would be useless and confusing.

Second, defendants incorrectly state that plaintiffs "claim that Necarsulmer did not conduct a sufficient investigation to provide an adequate evidentiary basis for his opinions." Def. Corr. Br. at 2 (citing pages 12-17 of Plaintiffs' Opening Brief in Support of Mot. to Exclude Necarsulmer). Defendants use this as purported grounds for addressing matters totally irrelevant to their brief -- the alleged insufficiency of plaintiffs' expert's factual investigation. In fact, plaintiffs do not challenge the sufficiency of Necarsulmer's investigation. Instead, plaintiffs point out that Necarsulmer has applied improper principles to the facts of this case, thus generating unreliable conclusions.

---

[1] This is not the time to address in detail those irrelevant and baseless attacks. Suffice it to say that the underwriter defendants' summaries of Miller's experience and investigation are highly misleading, because the defendants have continued to ignore or misstate, as they did in their motion to preclude his testimony, the extent of Miller's qualifications and the extent of the thorough factual investigation Miller undertook in formulating his opinions. D.I. 314, as amended at D.I. 332, pp. 3-7, 23-26. Their swipes at Professor Ochoa have been fully addressed in Plaintiffs' Answering Brief in Response to Defendants' Motion to Exclude the Expert Opinion of Christiana Ochoa. D.I. 313.

Third, defendants state that plaintiffs claim that Mr. Necarsulmer "lacks the experience to be an expert in due diligence." Def. Corr. Br. at 4. Defendants use this as a launching pad for firing off yet more irrelevant shots at plaintiffs' experts, including even plaintiffs' gray marketing expert. Again, defendants' characterization of plaintiffs' arguments is completely wrong. Plaintiffs have not attacked Necarsulmer's experience in the due diligence process. Rather, they have challenged his manifest unfamiliarity with basic case law and principles governing due diligence.

Fourth, defendants mistakenly claim that plaintiffs have distorted Necarsulmer's deposition testimony. Def. Corr. Br. at 5. But it is defendants who have distorted the testimony, attempting to evade declarations by Necarsulmer which fly in the face of the established legal principles that are necessarily implicated in evaluating any due diligence investigation.[2]

The fact is, asked whether "underwriters have been considered responsible for assuring the accuracy of an issuer's offering materials," Necarsulmer stated: "I don't believe that to be true . . . I don't believe that it's . . . generally recognized that that is part of the underwriters' responsibility." D.I. 298, Ex. 3, pp. 51-52, hereinafter "Nec. Dep. Tr." *But see Report of the Task Force on Sellers' Due Diligence and Similar Defenses Under the Federal Securities Laws*, 48 THE BUSINESS LAWYER 1185, 1191 (1993) (stating underwriters "were thought to be persons (i) who were able, because of their role in a distribution, *to discover essential facts* and *ensure that they were disclosed* and (ii) on whom the public *relied for that purpose.*") (emphasis in original)).

---

[2] Defendants were unfortunately correct in their original answering brief (D.I. 315, pp. 5-7, hereinafter "Def. Or. Br. __") (though they are now wrong in their corrected brief) that the citations to Necarsulmer's deposition transcript were "wrong," (Def. Corr. Br., pp. 5-8) a situation that had gone undetected; would have been corrected long ago had defendants simply advised plaintiffs of the error; and has now been mooted by the filing of plaintiffs' corrected brief. Plaintiffs' description of the testimony in their original brief was never inaccurate in any respect. Plaintiffs' counsel had simply taken the transcript references from a prior draft of the deposition transcript (one that defendants also had), which was later repaginated.

2

The fact is that Mr. Necarsulmer was unaware that the level or quality of diligence of a due diligence investigation is determined by the reasonably prudent man standard. Nec. Dep. Tr., pp. 65-66. Yet, this is the very standard as to which Necarsulmer has been offered to testify.[3] *See* 15 U.S.C. Section 77k(c); *Escott v. BarChris Corp.*, 283 F. Supp. 643, 697 (S.D.N.Y. 1968).

The fact is, asked whether the underwriters had an obligation to verify the representations of the issuer, Necarsulmer answered: "I don't think all of their representations . . . ," and went on to state that some matters, including the Company's "business plan and these kinds of things" had to be taken "at *face value*." Nec. Dep. Tr., p. 76 (emphasis added). While Necarsulmer elsewhere in his deposition stated that he agreed that verification was an important duty of the underwriter, he also admitted that never in his lifetime of work had he asked an issuer to supply documents other than the ones the issuer had chosen to provide. Nec. Dep. Tr., pp. 70-72. Necarsulmer thus revealed that, in practice, he had taken many issuer claims at face value. *But see Escott*, 283 F. Supp. at 696 (stating it is not "sufficient to ask questions, to obtain answers which, if true, would be thought satisfactory, and to let it go at that, without seeking to ascertain from the records whether the answers in fact are true and complete").

The fact is, that Necarsulmer denied that underwriters should "be skeptical of rosy outlooks by the issuer's management," allowing that, "just because someone is optimistic doesn't necessitate skepticism." Nec. Dep. Tr., p. 128. *See Feit v. Leasco Data Processing Corp.*, 332 F. Supp. 544, 581 (E.D. N.Y. 1971) (underwriters "must be expected to be alert to exaggerations and rosy outlooks and chary of all assurances by the issuer").

---

[3] Defendants admit that the statutory standard involves the actions of the "prudent man in the management of his own property." Def. Corr. Br. at 1 (emphasis added). However, they attempt to wriggle past this admission to suggest that the standard is "what a prudent *manager* would do" (Def. Corr. Br. at 1 (emphasis added)), words that nowhere appear in the relevant statutes. Apparently they do this in an attempt to bolster Necarsulmer's ability as a former brokerage firm employee to opine as to a standard -- a prudent *manager* managing *another's* property-- that the courts have never adopted.

3

And the fact is that Necarsulmer made clear his view that "bring down" due diligence is "quite informal" and need only consist of a few, *pro forma* questions. Nec. Dep. Tr., pp. 140-42. *But see Shaw v. Digital Equipment Corp.,* 82 F.3d 1194, 1202-11 (1st Cir. 1996) (prospectus must be accurate not just when the first draft registration statement is filed with the SEC, but through and including the effective date).

Defendants, in the first version of their brief, charged: "A particularly instructive distortion is the Plaintiffs' statement that 'Mr. Necarsulmer even disagreed that the securities industry as a whole expects more due diligence work in an IPO than in a follow-on (subsequent) offering.'" Defendants asserted: "That is not what he said." Def. Or. Br. at 7 (emphasis in original).

The fact is, Necarsulmer's deposition colloquy was exactly as follows:

Q.  Would you agree that the securities industry as a whole expects more due diligence work in an IPO than in a follow-on offering?

A.  *I wouldn't agree to that.*

Nec. Dep. Tr., p. 55 (emphasis added).

In the corrected version of their answering brief, defendants admit that Necarsulmer so testified, and change their argument. Def. Corr. Br. at 7. Now they claim that Necarsulmer's remarks about the expectations of the securities industry (on whose standards he proposed to opine) were taken out of context. *Id.* To do so, they cite Necarsulmer's testimony on other points, which they summarize as having been: "(i) the *standards* for due diligence are the same for all offerings; (ii) IPO's usually require more work than a follow-on offering; and (iii) it is not possible to make blanket statements about what the 'securities industry' believes." Def. Corr. Br. at 8 (emphasis in original). Defendants assert that Necarsulmer's full testimony is "contrary to Plaintiffs' claim." *Id.*

What plaintiffs actually and correctly claim (D.I. 298, p. 12; D.I. 331, p.12) is that Necarsulmer denied that the securities industry as a whole expects more due diligence work in

4

an IPO than in subsequent offerings. It does not bolster defendants' case for the admissibility of Necarsulmer's testimony for them to admit that Necarsulmer testified that the standards for due diligence are the "same for all offerings." For that is yet another misstatement of relevant principles and law.[4]

Further, an examination of the testimony of Necarsulmer cited by defendants at pages 7-8 of their corrected brief shows that he asserted absolutely nothing about the possibility of making "blanket statements about what the 'securities industry' believes."

Plaintiffs' descriptions of Necarsulmer's deposition were and are entirely correct and did not unfairly omit any "essential" parts of his testimony. Defendants have attempted to cobble together snippets of testimony to claim that Necarsulmer is able to express some views informed by proper due diligence principles. However, the testimony they cite throughout their brief neither changes the thrust of, nor salvages, Necarsulmer's flawed and uniformed views regarding critical principles of due diligence. And the admissions of Necarsulmer quoted by plaintiffs did not involve misunderstandings of matters peripheral to the due diligence process, but went to the most fundamental principles of due diligence. These principles must be applied in reaching a determination as to whether the underwriters have satisfied their burden.

---

[4] "[U]nderwriters' due diligence in the initial public offering context will be subjected to a *greater degree of scrutiny* than other offerings. Courts have reasoned that this *higher standard* is necessary, as these securities have never been publicly traded and information about their issuer is often not readily available." Cadwalader Wickersham & Taft, *Underwriter Due Diligence in Securities Offerings*, 1999, at http://library.findlaw.com/1999/May/27/126952.html (emphasis added) (citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996), *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1202 (1st Cir. 1996)("there is a strong affirmative duty of disclosure" in an IPO)), attached hereto as Ex. A. "[O]ne may well conclude that what would be considered a reasonable due diligence investigation in connection with an offering by an established offeror is *quite different from what would be considered reasonable in connection with a new issuer*. . . . In the case of an offering by an established issuer, the public is not looking to the underwriters as fiduciaries assuring the integrity of the issuer." *See* MECHANICS OF UNDERWRITING 1983, at p. 477-78 (emphasis added), attached hereto as Ex. B.

## ARGUMENT

### A. Plaintiffs Have Moved To Exclude Necarsulmer's Testimony Because It Is Based Upon Flawed Principles

Necarsulmer would opine that the underwriters' due diligence investigation and failure to disclose gray marketing were "reasonable". Plaintiffs move to exclude Necarsulmer's opinions because they are based on flawed principles, including principles of verification at odds with the teachings of the leading case law. Necarsulmer is uninformed as to the standards that the courts have held govern due diligence investigations, and he should not be permitted to testify that the underwriter defendants' actions satisfied contrary and lesser standards.

Plaintiffs have never asserted that Necarsulmer should be required to express "legal expert opinions." Indeed, they seek to preclude him from doing so on the ultimate issue in the case. For Necarsulmer in his opening report proposes, albeit vaguely, to testify with respect to the ultimate issue in the case -- whether the underwriters' investigation was reasonable and whether the underwriters reasonably believed it was complete and accurate:

> ... it is my opinion that, the underwriters of this offering performed due diligence in line with normal industry standards and practice. Their actions were consistent with a standard of reasonableness as I understand it, and were more than sufficient to satisfy me as to their adequacy and completeness. Responsibilities undertaken by the various underwriting firms and their counsel were also consistent with normal procedure. Again ... it is further my opinion that the due diligence process described in the foregoing resulted in a registration statement that the underwriters reasonably believed was complete and accurate.

D.I. 298, Ex. 1, ¶7.

In his rebuttal report Necarsulmer expressed the further opinion:

> ... it is my opinion that the underwriters conducted a complete and thorough due diligence process consistent with industry standards and practice. As a result of their investigation, the underwriters had reasonable grounds to believe that the statements in the registration statement were accurate and that there was no omission of a material fact that was needed for adequate disclosure.

D.I. 298, Ex. 2, ¶4.

Plaintiffs have never asserted that Necarsulmer must be a lawyer or an expert in the law, or even that he must study the law, but rather that he is ignorant of the leading authorities in

6

the field, unfamiliar with the principles stated therein and in fact in disagreement with some of those principles. Accordingly, he should not be permitted to offer opinions. To be useful, the opinions he expresses must be informed by and consistent with the applicable law. For, at the end of the case, this Court will charge the jury on issues of due diligence. The Court will do so consistent with the principles and standards set forth in the applicable authorities -- *Escott,* 283 F. Supp. 643, *Feit,* 332 F. Supp. 544, and *In re WorldCom, Inc. Securities Litigation,* 346 F. Supp. 2d 628 (S.D.N.Y. 2004).

While attacking plaintiffs' experts, and deriding plaintiffs' counsel, defendants fail to come to grips with the real issue that plaintiffs' motion presents: precisely how it is that, given their flawed underpinnings, Necarsulmer's opinions could possibly assist the trier of fact in determining a fact in issue? Given the duty of searching verification under *Escott,* should Necarsulmer be permitted to advise the jury that the due diligence investigation in this case was adequate even though the underwriters took management assertions at face value and made no independent investigation into the extent of ongoing gray market activity? Should Necarsulmer be permitted to opine that the underwriters here conducted the type of investigation that Necarsulmer himself -- uninformed as he is -- would have conducted?

In *Daubert v. Merrell Dow Pharamaceutical, Inc.,* 509 U.S. 579 (1993), the Court made clear that the inquiry of whether opinions should be admissible under Rule 702 "must be solely on principles and methodology." Necarsulmer's opinions must be excluded because they are based upon improper, erroneous principles. To give an opinion on the applicable standard of care and/or whether or not defendants complied with it, a proposed expert "must be familiar with that standard." *See Hartke v. McKelway,* 526 F. Supp. 97, 101 (D.D.C. 1981), *aff'd,* 707 F.2d 1544 (D.C. Cir. 1983). Necarsulmer is not.

### B. The Authorities Cited By Defendants Do Not Support Admission of Necarsulmer's Opinions

Defendants' cases do not support the admissibility, even subject to cross-examination, of Necarsulmer's opinions. None of them involved experts whose testimony conflicted with well-established legal standards.

Defendants cite to this Court's very recent discussion, in *Astrazeneca LP v. TAP Pharmacy Products, Inc.*, No. Civ. A.04-1332 KAJ, 2006 U.S. Dist. LEXIS 57410 (D. Del. June 23, 2006), on a motion to strike the testimony of Michael Rappeport. In so doing, defendants appear to misapprehend the Court's ruling. First, this Court recognized that Rule 702 requires that expert testimony must assist the trier of fact. It is true that this Court rejected arguments that the proposed testimony was faulty in a number of respects, including that it was contrary to the law. But the Court did not reject such arguments out of hand. Instead, this Court carefully examined the case law cited in support of the argument that the opinion was contrary to law. This Court certainly did not hold that an opinion based on principles contrary to law would be helpful to a jury, or that an expert should be permitted to confuse a jury with respect to the applicable standards.

Defendants also cite to *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431 (D. Del. 2004). There, defendants retained an expert to testify with respect to (1) the actions that a reasonable corporation undertakes upon learning of the existence of a patent relevant to its business; and (2) whether the actions undertaken by the defendant after becoming aware of the existence of a specific patent were reasonable. In that case, it appears that the applicable standard of care was not defined by statute, regulation or case law. This Court found that the expert would be helpful to the trier of fact in determining the appropriate standard to be applied to a corporation confronted with an allegation of infringement. Further, this Court noted that there was an ultimate issue of whether the defendant had acted willfully, and willfulness would have to be measured against an objective standard of reasonable

commercial behavior in the same circumstances.

There was no contention in *Oxford* that the testimony of the proposed expert would conflict with legal standards. Even so, the Court ruled that the expert would *not* be permitted to testify as to the legal standard for willfulness. Moreover, the expert would *not* be permitted to testify *as to whether defendants' conduct met the standard of reasonableness* -- an issue on which Necarsulmer's reports expressly opine -- because such an opinion was equally within the competence of the jurors to understand and decide. *Oxford*, 345 F. Supp. 2d at 442-43.

Defendants also cite *Watkins v. New Castle County*, 374 F. Supp. 2d 379 (D. Del 2005). There, this Court permitted an expert who had experience and training of 22 years as a police officer to "render an expert opinion on police training, methods and policies as well as the clinical signs and dangers of excited delirium and positional asphyxia." *Id.* at 392. These matters, again, did not appear to be the subject of statutes, regulations or well-defined case law. This Court found that other opinions which he sought to offer -- that the defendants' conduct was inadequate, unreasonable, reckless, willful or indifferent -- were "unhelpful to the jury" and would therefore be precluded. *Id.* at 392-93. The Court precluded the expert from testifying as "to any legal conclusions beyond the appropriate standard of reasonable conduct." *Id.*

In *Watkins*, as in the other decisions of this Court, there was no well defined standard of care, and also no dispute that the witness was capable of testifying as to the applicable principles and standards. In contrast, permitting Necarsulmer to testify as to a purported standard of reasonable conduct that was based on industry observation, yet not grounded in a correct understanding of the underlying principles or the standard of conduct that the law required of the industry, cannot possibly be helpful to the jury.

Finally, defendants cite *ID Security Sys. Canada, Inc. v. Checkpoint Sys., Inc.*, 198 F. Supp. 2d 598, 622 (E.D. Pa. 2002). There, the issue was not whether an investment bank

9

had sustained a due diligence defense. Instead, it was a factual issue of whether, if an entity that had provided a financing commitment to plaintiff had actually conducted due diligence, it would thereafter have extended financing to plaintiff. The court found that the president of a market research firm was qualified to opine as to: (1) the steps that an investment bank would take in conducting due diligence, including generally accepted practices and standards in conducting due diligence; (2) the factors considered by investment banking firms in conducting due diligence and the weight attached to each factor; (3) whether the investigation undertaken constituted full and complete due diligence analysis; and (4) whether, if due diligence had been completed, plaintiff would have been qualified to receive the financing. The court found that the testimony would assist the jury in determining whether plaintiff was a qualified candidate for financing. *Id.* at 621-22.

In *ID Security*, however, there was no argument before the court that the expert was applying principles in his analysis that conflicted with governing law. The purpose of the expert's testimony was to help the jury understand what a financing entity would have done upon the completion of due diligence. The expert did not opine on the basis of some vague standards, personal to the expert, that a party had met its due diligence defense.

In sum, not one of the cases cited by defendants offers any colorable basis for the admissibility of Necarsulmer's flawed opinions regarding his perceptions of irrelevant industry principles or standards.

## CONCLUSION

For all the reasons stated above and in plaintiffs' opening brief, Necarsulmer's testimony should be precluded in all respects.

Dated: October 30, 2006

                **ROSENTHAL, MONHAIT & GODDESS, P.A.**

                By: /s/ Carmella P. Keener
                    Carmella P. Keener (DSBA No. 2810)
                    919 Market Street, Suite 1401
                    Citizens Bank Center
                    Wilmington, DE  19801
                    (301) 656-4433
                    ckeener@rmgglaw.com

                *Liaison Counsel for Plaintiffs and the Class*

**BERGER & MONTAGUE, P.C.**
Todd Collins
Elizabeth Fox
Neil Mara
1622 Locust Street
Philadelphia, PA. 19103
(215) 875-3000

*Lead Counsel for Plaintiffs and the Class*

**LAW OFFICES OF DONALD B. LEWIS**
Donald B. Lewis
5 Cynwyd Road
Bala Cynwyd, PA 19004
(610) 668-0331

**KELLER ROHRBACK, LLP**
Juli F. Farris
Elizabeth Leland
1201 Third Avenue, Suite 3200
Seattle, WA  98101

*Counsel for Plaintiffs and the Class*

# CERTIFICATE OF SERVICE

I, Carmella P. Keener, hereby certify that on this 30th day of October, 2006, I caused **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO STRIKE AND EXCLUDE TESTIMONY OF EDWARD R. NECARSULMER III** to be electronically filed with the Clerk of Court using CM/ECF, which will send notification of such filing to the following:

Jeffrey L. Moyer, Esquire
Alyssa M. Schwartz, Esquire
Richards, Layton & Finger
One Rodney Square
Wilmington, DE 19801

John E. James, Esquire
Brian C. Ralston, Esquire
Potter, Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE 19801

In addition, a copy has been served by electronic mail upon the foregoing counsel and the following:

Theodore J. McEvoy, Esquire
Michael J. Chepiga, Esquire
Elaine Divelbliss, Esquire
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
Email: tmcevoy@stblaw.com
Email: mchepiga@stblaw.com
Email: edivelbliss@stblaw.com

Paul R. Bessette, Esquire
Akin, Gump, Strauss, Hauer & Feld LLP
Three Embarcadero Center, Suite 2800
San Francisco, CA 94111-4066
Email: pbessette@akingump.com

Jennifer R. Brannen, Esquire
Akin, Gump, Strauss, Hauer & Feld, LLP
300 West 6th Street, Suite 2100
Austin, TX 78701-2916
Email: jbrannen@akingump.com

/s/ Carmella P. Keener
Carmella P. Keener (DSBA No. 2810)
ROSENTHAL, MONHAIT & GODDESS, P.A.
919 N. Market Street, Suite 1401
Wilmington, DE 19801
(302) 656-4433
ckeener@rmgglaw.com