IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE: ADAMS GOLF, INC.<br>SECURITIES LITIGATION | ) <br> ) Civil Action No. 99-371-KAJ <br> ) (CONSOLIDATED) <br> ) |

**REPLY BRIEF IN SUPPORT OF UNDERWRITER DEFENDANTS'**
**MOTION TO EXCLUDE EXPERT OPINION OF R. ALAN MILLER**

*Of Counsel:*

Michael J. Chepiga
Paul C. Gluckow
Theodore J. McEvoy
Katherine J. Weall
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
Tel.  (212) 455-2000

Robert K. Payson (No. 274)
John E. James (No. 996)
POTTER ANDERSON & CORROON LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE  19801
Telephone:  (302) 984-6000
E-Mail:  rpayson@potteranderson.com
E-Mail:  jjames@potteranderson.com

*Attorneys for Underwriter Defendants*

Dated:  October 30, 2006
758767/23310

# TABLE OF CONTENTS

                                                                            **Page**

SUMMARY OF ARGUMENT ............................................................................................... 1

ARGUMENT .......................................................................................................................... 2

    I.      Miller's Newly-Offered Oral Opinion Violates Rule 26(a)(2)(B) and Should Be Excluded ............................................................................................ 2

    II.     Miller is Not an Expert on Underwriters' Due Diligence, and His Opinion is Not Based on Sufficient Facts or Data ........................................... 7

          A.    Miller Is Not An Expert In Underwriters' Due Diligence Of any Kind, Much Less Underwriters' Due Diligence in an Initial Public Offering ........................................................................ 7

          B.    Miller's Opinion Is Not Based On Sufficient Facts or Data ............. 10

    III.    Miller's Legal Opinion in His Rebuttal Report Should Be Excluded .......... 11

CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

## Cases

*Berry v. Crown Equip. Corp.*,
    108 F. Supp. 2d 743 (E.D. Mich. 2000) ..................................................................9

*Betterbox Communication v. BB Tech. Inc.*,
    300 F.3d 325 (3d Cir. 2002) ....................................................................................9

*Bonesmo v. The Nemours Found.*,
    253 F. Supp. 2d 801 (D. Del. 2003)......................................................................2, 5

*Bowers v. Northern Telecom, Inc.*,
    905 F. Supp. 1004 (N.D. Fla. 1995) .........................................................................4

*Callahan v. A.E.V., Inc.*,
    182 F.3d 237 (3d Cir. 1999) .....................................................................................4

*Elcock v. Kmart Corp.*,
    233 F.3d 734 (3d Cir. 2000) ...............................................................................8, 10

*Higgenbottom v. Noreen*,
    586 F.2d 719 (9th Cir. 1978) ....................................................................................9

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3d Cir. 1994) .......................................................................................6

*In re Polymedica Corp. Sec. Litig.*,
    Civ. No. 00-12426 WGY, 2006 WL 2776669 (D. Mass. Sept. 28, 2006) ...............10

*In the Matter of the Complaint of Kreta Shipping, S.A.*,
    181 F.R.D. 273 (S.D.N.Y. 1998) ..............................................................................4

*Krogman v. Sterritt*,
    202 F.R.D. 467 (N.D. Tex. 2001) ...........................................................................10

*Mercado v. Wollard Aircraft Equip. Inc.*,
    574 F.2d 654 (1st Cir. 1978)......................................................................................9

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
    345 F. Supp. 2d 431 (D. Del. 2004).................................................................2, 5, 12

*In re Safeguard Scientifics*,
    No. Civ.A 01-3208, 2004 WL 2644393 (E.D. Pa. Nov. 17, 2004) .................3, 5, 6, 10

*Salgado v. General Motors Corp.*,
    150 F.3d 735 (7th Cir. 1998) ..................................................................................6

*Thomas J. Kline, Inc. v. Lorrillard, Inc.*,
    878 F.2d 791 (4th Cir. 1989) ..................................................................................8

*Van De Walle v. Unimation*,
    Civ. A. No. 7046, 1991 WL 29303 (Del. Ch. Mar. 7, 1991) ........................................10

*Watkins v. New Castle County*,
    374 F. Supp. 2d 379 (D. Del. 2005)..........................................................................12

### Statutes

Fed. R. Civ. P. 26(a)(2)(B) ...................................................................................... passim

Fed. R. Civ. P. 26(a)(2)(C) ..............................................................................................4

## **SUMMARY OF ARGUMENT**

Nothing Plaintiffs say in their Answering Brief can cure the four fatal deficiencies set forth in the Underwriters' opening brief.

1. **Miller violated Rule 26(a)(2)(B).** Plaintiffs concede that Miller's Rule 26 Reports do not contain any opinion about whether the Underwriters' due diligence investigation was reasonable. His oral opinion on this subject — offered for the first time during his deposition — must be excluded. Plaintiffs' statement that Miller might not even decide on his opinions until trial simply confirms the inadequacy of his Reports.

2. **Miller is not qualified.** Miller's *sole* experience with underwriters' due diligence in an IPO was over 25 years ago. His experience is thus antiquated and inadequate, and it is not a basis for rendering an expert opinion about the due diligence conducted in 1998.

3. **Miller did not conduct due diligence for his own opinion.** Miller testified at his deposition that the only materials he relied upon were one underwriter deposition transcript that he read, another that he skimmed, and certain deposition exhibits selected by Plaintiffs' counsel.

4. **Miller's written opinion is an impermissible legal conclusion.** Miller's Rebuttal Report states that his *only* opinion was that: "In my opinion, the expert report of Mr. Necarsulmer does not meet the underwriters' burden to demonstrate that the investigation and/or resulting disclosures were reasonable and adequate." But an expert's report is not supposed to satisfy the complete burden of proof for a due diligence defense. And the scope of the burden of proof is an issue of law for this Court, not an issue of fact for Miller to resolve.

**ARGUMENT**

I.   **Miller's Newly-Offered Oral Opinion Violates Rule 26(a)(2)(B) and Should Be Excluded**

Plaintiffs' first excuse for the inadequacy of Miller's Reports is that the Underwriters were "on notice" that Miller "might be asked" at some point in time to offer an opinion about whether the Underwriters' due diligence was reasonable. Plf. Br. at 16. While any expert "might be asked" to render an opinion, that flexibility ends with the expert's report. When that report is rendered, the time for "might be asked" is over. Any opinion that was not set forth in Miller's Reports cannot be rendered, no matter what the Plaintiffs "might" later decide to do. *See* Fed. R. Civ. P. 26(a)(2)(B) (an expert's report "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor").

There is no reason for Plaintiffs to be surprised by this principle. It has been repeatedly affirmed by the Courts. In *Bonesmo v. The Nemours Found.*, 253 F. Supp. 2d 801 (D. Del. 2003), this Court held that a party must provide "a *detailed* and *complete* statement of all opinions on which the expert will testify, and the *bases* and *reasons* for those opinions." *Id.* at 810 (emphasis in the original). In *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 437 (D. Del. 2004), this Court stated that an expert is required to provide the bases and reasons for any opinion in the report. The opposing party is not required to depose the expert to determine the opinion or the reasons for it. *Id.*

Plaintiffs say Miller actually did offer an opinion in paragraph 22 of his Report "as to the underwriters' discharge of their duties: that they had improperly failed to require disclosure of gray marketing." Plf. Br. at 16-17. In fact, paragraph 22 of Miller's Report says nothing more than "that disclosure in the Prospectus was inadequate in at least the area

of the risks and extent of gray marketing and their potential significantly negative effect on the Company." A 14.[1] This is an opinion on materiality, not on due diligence.

On the issue of due diligence, Miller says nothing about the "underwriters' discharge of their duties," much less the reasonableness of their due diligence investigation (a point which he confirmed repeatedly during his deposition). *See, e.g.*, A 223-224; A 232-233; A 268-269. In fact, Miller steadfastly refused to offer an opinion concerning the Underwriters' due diligence, even after receiving Mr. Necarsulmer's report and then submitting his own Rebuttal Report. A 233. During his deposition Miller testified that he *had not been asked* to form an opinion as to whether the Underwriters conducted a reasonable investigation. A 232.

Plaintiffs suggest it would have been "premature" for Miller to offer an opinion about due diligence when he filed his Rebuttal Report on the issue of due diligence. Plf. Br. at 16. It simply defies logic to say that Miller was capable of filing a rebuttal to a report dealing with due diligence, but was unable to form his own opinion about due diligence.

Plaintiffs offer no reason for Miller's reticence. He is willing to offer such an opinion. In his opinion in the *AMF Bowling* litigation, for example, Miller specifically opined that the underwriters had not conducted a reasonable due diligence investigation. A 223.

Falling back yet again, Plaintiffs claim that "la[ying] out the operative principles," is sufficient disclosure. Plf. Br. at 21. But an expert report without the expert's opinion does not meet the requirements of Rule 26(a)(2)(B). This requirement cannot be a surprise to Miller or Plaintiffs' counsel. In *In re Safeguard Scientifics*, No. Civ.A 01-3208, 2004 WL

---

[1] Citations to "A" refer to the Appendix filed with the Opening Brief In Support of Underwriter Defendants' Motion to Exclude Expert Opinion of R. Alan Miller.

2644393 at *4-5 (E.D. Pa. Nov. 17, 2004),[2] where Plaintiffs' counsel here also appeared as counsel of record, the Court held that a report filed by Miller that merely listed subjects on which Plaintiffs' counsel requested his opinion, but that presented *no opinion* on one aspect of the claim, was inadequate. *Id.* Notably, Miller's opinion in that case was also given for the first time in a declaration prior to trial. *Id.*

Plaintiffs claim that Miller was justified in hiding his opinions because Necarsulmer's report was "vague and conclusory." Plf. Br. at 16. But Miller was required to conduct his *own* diligence and form his *own* opinions. He could not simply rely on reading Necarsulmer's report. Moreover, Plaintiffs' motion to exclude Necarsulmer's testimony did not argue that Necarsulmer's report failed to meet the requirements of Rule 26.

Plaintiffs also claim that Miller should be excused from the requirements of Rule 26 because he is a rebuttal expert. Plf. Br. at 17. But Rule 26 applies with just as much rigor to rebuttal experts as to any other expert. *See, e.g.,* Fed. R. Civ. P. 26(a)(2)(B) & (C) (rebuttal reports must "contain a complete statement of all opinions to be expressed and the basis and reasons therefor").

A similar claim was rejected in *In the Matter of the Complaint of Kreta Shipping, S.A.,* 181 F.R.D. 273, 276 (S.D.N.Y. 1998), where the court held that "rebuttal expert testimony is not excepted from the reporting requirements of Rule 26(a)(2)(B)," which "makes no exception" for rebuttal opinions "about other experts' analyses." *See also Bowers v. Northern Telecom, Inc.*, 905 F. Supp. 1004, 1008 (N.D. Fla. 1995) (drawing no distinction between rebuttal and other experts under Rule 26); *Callahan v. A.E.V., Inc.*, 182 F.3d 237, 259 (3d Cir. 1999) (same).

---

[2]  Unreported cases are attached to the Appendix at C6-C53.

There is thus no basis for Plaintiffs' claim that the decisions in *Bonesmo* and *Oxford Gene* do not apply because those opinions were not rebuttal opinions. Plf. Br. at 22. *All* expert opinions are subject to Rule 26, which makes no exceptions for rebuttal reports.

The simple truth is that the Plaintiffs are trying to revive the old "trial by ambush," where the first time anyone knew of the expert's opinion and foundation was when the expert took the stand at trial. Under Plaintiffs' view of the law, any time a party offered an expert's report, the other party could offer a "rebuttal" expert whose testimony would remain a mystery until trial. That practice was abandoned long ago; there is no need to revive it now.

Plaintiffs say this Court should excuse Miller's failure to comply with Rule 26 because this dispute merely "arises from the parties' differing views of the exact specificity with which a rebuttal expert witness must set forth his opinion in advance of trial." Plf. Br. at 21. Once again, they confuse the roles of the Court and the parties. The *parties'* views do not govern. The terms of Rule 26 as interpreted by this Court govern. And if this Court determines that Miller did not comply with the requirements of Rule 26, then it does not matter what Miller's "views" might have been.

But it would be surprising, however, if Miller believed that Rule 26 does not require specificity in the expert's report. He has many times offered his opinion in securities cases, and has personal experience with the standards. Less than two years ago, he was criticized for offering new opinions *after* he filed his Rule 26 report, and those opinions were excluded. *See In re Safeguard Scientifics*, 2004 WL 2644393 at *5. As the Court stated in *In re Safeguard Scientifics*, 2004 WL 2644393, at * 5:

> The fact that Mr. Miller's Preliminary Report did not even touch on an issue so central to Plaintiffs' claim exceeds a "mere lack of diligence" on counsel's part. Plaintiffs have offered no justification for this delay, which comes after months of discovery, and their suggestion that Defendants cure any prejudice

5

by re-deposing Mr. Miller is without merit. As this Court emphasized almost nine months ago, "nearly three years have elapsed since [the case's] inception, discovery has closed and the matter is now trial-ready." *In Re Safeguard Scientifics,* 220 F.R.D. 43, 49 (E.D. Pa. 2004). Allowing Plaintiffs to rely on Mr. Miller's opinions regarding loss causation for the market manipulation claim, either in their response to Defendants' summary judgment motion or at trial, would be unfair to Defendants and would disrupt the efficient disposition of this case.

Plaintiffs' claim that Defendants have suffered no prejudice is thus without merit. Indeed, Defendants have suffered the very prejudice that Rule 26 was meant to stop: they will be forced to go to trial without knowing Miller's actual opinions or the basis for those opinions. *See In re Safeguard Scientifics*, 2004 WL 2644393, at * 5; *see also Salgado v. General Motors Corp.*, 150 F.3d 735, 742 n.6 (7th Cir. 1998) ("Rule 26(a) expert reports must be 'detailed and complete'" such that "opposing counsel is not forced to depose an expert in order to avoid ambush at trial.") (citations omitted). Waiting until trial to learn what Miller's opinions might be is reinstating "trial by ambush." That is no longer the law, and that is grounds for excluding Miller's opinions.

Finally, Plaintiffs' reliance on *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994), is misplaced. *See* Plf. Br. at 20-21. In *Paoli*, the defendants were provided with the plaintiffs' expert's opinion and all of the supporting details "60 days before the deadline the district court had set for ending discovery." 35 F.3d at 792. Here, in contrast, expert discovery closed on August 11, 2006 (the day of Miller's deposition). As of that date — indeed, even as of today — the Underwriters did not know whether Miller would give an opinion, and if he did, what it would be or what it would be based upon. A 232 (as of August 11, 2006, Miller had not been asked by Plaintiffs' counsel to form an opinion as to the reasonableness of the Underwriters' due diligence); Plf. Br. at 19 ("the time has not yet come when it is even necessary to determine whether Miller will need to testify at trial as

6

to . . . reasonableness of defendants' [due diligence] investigation"). Plaintiffs offer no justification for their willful non-compliance with the standards set forth in Rule 26, and none can be found in the Court's decision in *Paoli*.

## II.    Miller is Not an Expert on Underwriters' Due Diligence, and His Opinion is Not Based on Sufficient Facts or Data

### A.    Miller Is Not An Expert In Underwriters' Due Diligence Of any Kind, Much Less Underwriters' Due Diligence in an Initial Public Offering

While the Court should not permit Plaintiffs to circumvent Rule 26, even if the Court were to ignore the failure of Plaintiffs to properly identify Miller as an expert and the substance of his opinions, Plaintiffs cannot establish that Miller is qualified to testify as a due diligence expert. Plaintiffs concede that Miller must show that he is an expert in Underwriters' due diligence in general, and in IPOs in particular. They claim that Miller is qualified as an expert in underwriter due diligence based on "his education, his training, his knowledge and his ongoing experience in business transactions." Plf. Br. at 13.

Plaintiffs, however, have no factual support for their claims. As to "education," Miller received a B.S. degree in economics in 1970 and an M.B.A. in 1974. Plaintiffs do not claim Miller ever studied underwriter due diligence. Plf. Br. at 3. They say Miller studied initial public offerings while at Howard & Company in the early 1970s, but they make no claim that Miller "studied" underwriter due diligence. *Id.* at 3-4. Indeed, Miller admitted that his only education or formal training in underwriters' due diligence was a few continuing education seminars that had some segments on those subjects. He attended those continuing education seminars over 25 years ago. A 202-203. Miller did not write anything dealing with underwriters' due diligence. A 196-199.

Given his lack of education or training, Plaintiffs rely on his experience. They say that Miller spent 1972 through 1983 with Howard & Company, Butcher & Singer, and Philadelphia Capital Advisors. Plf. Br. at 3-4. He participated as lead underwriter in exactly *one* IPO during that time, in 1978-79. He was never again involved in underwriter due diligence in connection with an IPO. *Id.* (claiming only that Miller "participated in" or "worked on" certain unidentified offerings); *see also id.* at 5. Thus, Miller's experience consists of *one* actual IPO in 1978-79. A 191; A 195-196. In a classic understatement, Plaintiffs concede that Miller has had no experience with underwriter due diligence "in the last few years" and that his "hands-on involvement in IPOs may have ceased some time ago." Plf. Br. at 13.

Since 1983, Miller's only position has been with the litigation support firm he founded, Philadelphia Investment Banking Company. A 17. He has not been involved with any underwriter due diligence since founding PIBC in 1983. A 195-196. The vast majority of PIBC's revenues come from Miller's role as an expert witness for plaintiffs in securities class action litigation. C 2-4.[3] But testifying in securities cases does not make someone an expert witness. *See generally Elcock v. Kmart Corp.*, 233 F.3d 734, 744 n.5 (3d Cir. 2000) ("the crucible of litigation makes for a poor classroom"); *Thomas J. Kline, Inc. v. Lorrillard, Inc.*, 878 F.2d 791, 800 (4th Cir. 1989) ("it would be absurd to conclude that one can become an expert simply by accumulating experience in testifying").

Miller's experience is thus not only antiquated, it is inadequate. Und. Br. at 5. Even if Miller had conducted substantial due diligence during his brief experience in the late 1970s, that would not make him qualified to offer expert testimony about the custom and

---

[3] Citations to "C" refer to the Appendix to this Brief.

practice of underwriters due diligence in 1998. But that question does not arise, because Miller does *not* have extensive experience. He has had virtually no experience at all. This combination of very limited — and very aged — experience does not qualify him as an expert.

Thus, Plaintiffs' attempt to distinguish the cases cited in the Underwriters' opening brief misses the point, as Miller's qualifications are every bit as "dubious" (Plf. Br. at 15) as the experts in those cases. *See Berry v. Crown Equip. Corp.*, 108 F. Supp. 2d 743, 750 (E.D. Mich. 2000) (in addition to the lapse of time between his practical experience and his testimony, rejected expert had no experience on the type of equipment in question and had never designed any safety product connected to that type of equipment); *Mercado v. Wollard Aircraft Equip. Inc.*, 574 F.2d 654, 655 (1st Cir. 1978) (in addition to lapse of time, rejected expert's experience was limited to work on "a dozen or so" vehicles; furthermore, expert had never taken any courses in auto mechanics); *Higgenbottom v. Noreen*, 586 F.2d 719, 722 (9th Cir. 1978) (rejected expert's experience was limited, as he had installed only four similar fireplaces over 13 years).

Plaintiffs' reliance on *Betterbox Communication v. BB Tech. Inc.*, 300 F.3d 325 (3d Cir. 2002), is also misplaced. The expert in *Betterbox* had four *years* of day-to-day experience running a company that dealt with the specific field at issue in the case. 300 F.3d at 328. Miller was involved in due diligence in one IPO 25 years ago.

Plaintiffs, perhaps recognizing the extremely limited nature of Miller's qualifications, say that this Court should accept Miller's testimony because he has been accepted as an expert witness "in various contested matters involving professional standards, customs and practices within the investment banking community." Plf. Br. at 6.

9

The first flaw with this argument is that Miller has never been accepted as an expert in underwriters' due diligence in connection with an IPO. Accepting him as an expert in any of the several other areas he has testified does not provide support for his testimony in this case. Second, in *Elcock*, 233 F.3d at 744 n.5, the Third Circuit stated that "the mere fact that [the expert] was previously admitted as an expert witness qualified to give testimony on vocational rehabilitation is irrelevant to the determination whether he is qualified to give such testimony in this case."

Moreover, if decisions allowing Miller's testimony are relevant, then Plaintiffs are remiss not to mention the decisions criticizing or rejecting Miller's testimony:

| | |
|---|---|
| *In re Polymedica Corp. Sec. Litig.*, Civ. No. 00-12426 WGY, 2006 WL 2776669 at * 6-7 (D. Mass. Sept. 28, 2006) | Miller's analysis was only "marginally useful." Indeed, "[t]he Court … has serious doubt that Miller's analysis is even of the type that can meet the standard set forth" in prior cases on this question. |
| *In re Safeguard Scientifics*, 2004 WL 2644393 at * 5 | Miller's opinion rejected because it was disclosed for the first time in an opposing affidavit prior to trial, not in his initial, rebuttal, or supplemental expert report. |
| *Krogman v. Sterritt*, 202 F.R.D. 467, 474-77 (N.D. Tex. 2001) | Miller's analysis was not consistent with standard factors and incorrectly considered news events that were not publicly available. |
| *Van De Walle v. Unimation*, Civ. A. No. 7046, 1991 WL 29303 at * 21 (Del. Ch. Mar. 7, 1991) | "Miller's valuation analysis is … flawed in several critical respects and must be rejected on its merits." |

### B.     Miller's Opinion Is Not Based On Sufficient Facts or Data

Although Miller claims to opine on the Underwriters' due diligence, Plaintiffs admit that he ignored every aspect of the Underwriters' due diligence investigation other than potential gray marketing. Plf. Br. at 23-24. His factual basis for his "opinion" is even more limited than the actual scope of his opinion. Miller testified that at the time of his deposition

he had read only one underwriter deposition transcript, skimmed another, and reviewed certain deposition exhibits selected by Plaintiffs' counsel. A 234-242, 256-257.

Plaintiffs try to buttress his opinion by referring to materials Miller said he relied upon in reaching several of his *other* opinions. But they once again miss the point of Rule 26. Miller had to state what he relied upon to form *this* opinion. And Miller's Reports and his deposition testimony state that the only things Miller relied upon in forming his opinion about underwriters' due diligence were the few depositions and documents that he referred to during his deposition. A 234-42, 256-57, 273.

Just as Miller could not suddenly come up with an opinion that was missing from his Reports, he can not suddenly come up with documents and deposition exhibits to support his claim, when they were never mentioned in his Reports or in his deposition. And based on those very limited materials, it is clear that he lacks an adequate factual basis for his opinion.

### III.     Miller's Legal Opinion in His Rebuttal Report Should Be Excluded

Plaintiffs retreat from Miller's Rebuttal Report and now claim that Miller "did not propose directly or indirectly to assume a judicial function" and that he "is not attempting to opine as to legal standards." Plf. Br. at 18-19. But the Rebuttal Report speaks for itself:

> 25. My understanding is that if a prospectus is found to contain material omissions and/or misrepresentations, the underwriters, in order to escape liability, must demonstrate at a minimum that they performed a reasonable, adequate due diligence investigation and thereafter had reasonable grounds to believe, and did believe, that the prospectus was not misleading. In my opinion, the expert report of Mr. Necarsulmer does not meet the underwriters' burden to demonstrate that the investigation and/or resulting disclosures were reasonable and adequate.

A 62.

Thus, Miller's report does not offer any opinions about whether the due diligence was *in fact* reasonable or unreasonable. Nor does he offer any opinion about whether

Necarsulmer's opinions are correct. He simply states his opinion that Necarsulmer's Rule 26 Report did not meet the burden of proof for a due diligence defense.

First, Miller is mistaken as to the role of an expert's report. It is not the purpose of Necarsulmer's report or testimony to meet — on its own — the Underwriters' burden of proof. The purpose of his report and testimony is to offer assistance to the jury on the standards followed by underwriters conducting due diligence.

Miller's mistaken view regarding the role of Necarsulmer's report leads to Miller's erroneous opinion in Miller's report. Miller does not review the facts. He does not opine that Necarsulmer's description of how due diligence is conducted was incorrect. Miller simply states that based upon Miller's "understanding" of the law, Necarsulmer's report did not meet the burden of proof required to meet the due diligence defense.

But this Court's decision will determine the burden of proof, and the elements necessary to meet that burden of proof under the statute. Those legal issues are not the province of an expert, no matter how experienced Miller may be in securities litigation. Accordingly, this purported opinion should be excluded. *See, e.g., Watkins v. New Castle County*, 374 F. Supp. 2d 379, 392-93 (D. Del. 2005) (holding that "opinions in which [the expert] draws legal conclusions beyond the appropriate standard of reasonable conduct are unhelpful to the jury and he will be precluded from testifying to those"); *Oxford Gene Tech.*, 345 F. Supp. 2d at 443 (holding that the expert "would not be permitted to testify as to the legal standard for willfulness").

## **CONCLUSION**

For the reasons stated above, the opinion testimony of R. Alan Miller concerning the Underwriters' due diligence should be excluded.

| | |
|---|---|
| *Of Counsel*: | POTTER ANDERSON & CORROON LLP |
| Michael J. Chepiga | |
| Paul C. Gluckow | By:  */s/ John E. James* |
| Theodore J. McEvoy |     Robert K. Payson (No. 274) |
| Katherine J. Weall |     John E. James (No. 996) |
| SIMPSON THACHER & BARTLETT LLP |     Hercules Plaza – Sixth Floor |
| 425 Lexington Avenue |     1313 N. Market Street |
| New York, NY  10017-3954 |     Wilmington, DE  19801 |
| Telephone:  (212) 455-2831 |     Telephone:  (302) 984-6000 |
| Facsimile:  (212) 455-2502 |     Facsimile:   (302) 658-1192 |
| | |
| | *Attorneys for Underwriter Defendants* |

Dated:  October 30, 2006
758767/23310

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, John E. James, hereby certify that on October 30, 2006, the within document was electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following attorneys of record stating that the document is available for viewing and downloading from CM/ECF:

>Carmella P. Keener, Esquire
>Rosenthal Monhait Gross & Goddess, P.A.
>919 Market Street, Suite 1401
>Wilmington, DE  19801
>
>Alyssa Schwartz, Esquire
>Richards Layton & Finger
>One Rodney Square
>Wilmington, DE  19801

>  */s/ John E. James*
> John E. James (No. 996)
> Potter Anderson & Corroon LLP
> Hercules Plaza – Sixth Floor
> 1313 North Market Street
> Wilmington, DE  19801
> Telephone:  (302) 984-6000
> E-mail:  jjames@potteranderson.com