# EXHIBIT 440

# KPMG LLP

L-15
1/99

To  Files

From  Manny Fernandez
Dallas



Date  January 15, 1999

Steno  re

Ref  c:\dallas clients\adams\pri_prot.doc

### Adams Golf - Price / Margin Protection Plan

**Background:**

In response to competitive pressures that existed during the latter half of 1998 and to establish a price distinction between the original Tight Lies product line and the new Tight Lies product line to be introduced in 1999, on January 4, 1999, Adams Golf (Adams or the Company) communicated to retailers a decrease in the suggested retail price of its Tight Lies clubs.

In order to protect the existing relationships with select retailers, as part of the change in the pricing structure, Adams issued an unconditional credit of $25 per club, which the retailer had in stock on January 4, 1999, as verified by Adams. The unconditional credit, in effect, decreased the wholesale price of clubs sold to the retailer in 1998, for which the retailer had in stock at the end of the year. Retailer may apply the credit to future orders of Adams products, but in the event no future products are ordered the credit would be satisfied in cash or offset against outstanding account balance, with the retailers not being obligated to purchase any additional products from Adams.

**Issues:**

1. In what accounting and reporting period should the Company record the unconditional credits given to retail customers?
2. Does the application by retailers of the credit toward the orders of Adams product affect the value of amounts recorded as credits?
3. Are there Company precedents relating to returns, allowances or other cooperative arrangements either in policy or practice that would require deferral of revenue upon shipment to retail customers?

**Authoritative Literature:**

Statement of Financial Accounting Concepts No. 5 (Con 5) "Recognition and Measurement in Financial Statements of Business Enterprises"
APB Opinion No. 29 (APB 29) "Accounting for Nonmonetary Transactions"
Statement of Financial Accounting Standards No. 48 (FAS 48) "Revenue Recognition When Right of Return Exists"

KPMG 2100

KPMG LLP

Page 2
Files
January 15, 1999

Analysis of Accounting Literature:

*Issue No. 1*

FASB Statement of Concepts No. 5 (Con 5), paragraph 83 states "Further guidance for recognition of revenues and gains is intended to provide an acceptable level of assurance of the existence and amounts of revenues and gains before they are recognized. . . . recognition involves consideration of two factors, (a) being realized or realizable and (b) being earned. Revenues and gains generally are not recognized until realized or realizable. Revenues and gains are realized when products, merchandise or other assets are exchanged for cash or claims to cash. . . . Revenues are not recognized until earned. An entity's revenue-earning activities involve delivering or producing goods, rendering services, or other activities that constitute its ongoing major or central operations, and revenues are considered to have been earned when the entity has substantially accomplished what it must do to be entitled to the benefits represented by the revenues."

The above guidance indicates the net revenue on 1998 sales was realized and earned, as the product was shipped and exchanged for cash or claims to cash (accounts receivable), Subsequently, a portion of the sales was modified through an unconditional credit to retailers, with the retailer having no additional performance requirement to earn the credit. As the credits issued relate specifically to 1998 sales, and there are no future conditional requirements on the part of the retailer to earn the credit, it is appropriate to record the credit as a reduction of 1998 gross revenues.

Additionally, prior to December 31, 1998, management had approved the plan and committed the entity to the "price / margin protection plan," however, management did not feel it could announce the price protection plan until an existing promotional program expired on December 31, 1998. The new pricing structure was communicated to retailers on the Company's first business day of Calendar 1999.

*Issue No. 2*

APB 29 paragraph 7 describes nonmonetary exchanges as "(a) exchange of product held for sale in the ordinary course of business (inventory) for dissimilar property as a means of selling the product to a customer, (b) exchange of product held for sale in the ordinary course of business (inventory) for similar product to a customer as an accommodation-that is, at least one party to the exchange reduces transportation costs, meets immediate inventory needs, or otherwise reduces costs or facilitates ultimate sale of the product-and, not as a means of selling product to the customer, . . . Accounting for nonmonetary assets <u>acquired</u> in a nonmonetary exchange has sometimes been based on the fair value of the assets relinquished and sometimes on the recorded amount of the assets relinquished."

APB 29 does not apply, as there is not a nonmonetary exchange between the two parties. The initial transaction has been completed between Adams and the retailer, and Adams has subsequently modified the sales price, unconditionally (i.e., the economic value of the transaction) on a monetary basis.

KPMG LLP

Page 3
Files
January 15, 1999

*Issue No. 3*

SFAS 48 paragraph 6, states the criteria that must be met to recognize revenue at the time sales transaction if the right of return exists.

SFAS 48 is not applicable, as retailer customers do not have a right of return, other than for overshipments, misshipments and defective products. The credit given to retailers was a special event and not in any way tied to the normal terms under which products are sold. Analogously, Adams does not participate in co-op advertising programs or other such programs, which would require the deferral of a portion or all of the revenue earned when Adams ships the product to retailers.

**Basis of Conclusions and Consultations:**

The facts and relevant accounting literature were discussed with Rick Ehrman, Adams assurance senior manager, Tom Reedy, SEC Concurring partner on Adams Golf, Sam Ranzilla, Area Risk Management Partner, and Ed Trott, Department of Professional Practice, who concurred with the conclusions included herein.

Agree/w

KPMG 2102