Magnussen, Ryan

# RYAN MAGNUSSEN - APRIL 28, 2006

---

**Page 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

------------------------x

IN RE ADAMS GOLF, INC.            Consolidated
SECURITIES LITIGATION             C.A. No. 99-371 KAJ
                                  Class Action
                                  Jury Trial Demanded

------------------------x

APRIL 28, 2006
9:00 O'CLOCK A.M.

The Deposition of RYAN MAGNUSSEN, taken before Ernest Kuemmel, CSR(A), Examiner, pursuant to Rules 203, 728, 204(1) of the Court of Queen's Bench of Alberta at the offices of Michael C. Dunkley, Calgary, Alberta, on the 28th day of April, A.D. 2006.

*Complimentary Client Copy*

---

**Page 2**

APPEARANCES

FOR THE PLAINTIFFS:

Elizabeth W. Fox, Ms.
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, Pennsylvania   19103

and

Elizabeth A. Leland, Ms.
Keller Rohrback LLP
1201 Third Avenue, Suite 3200
Seattle, Washington   98101-3052


FOR THE DEFENDANTS:
(With the exception of the underwriters)

Michelle A. Reed, Ms. and
Laura Moriaty, Ms.
Akin Gump Strauss Hauer & Feld LLP
300 West 6th Street, Suite 2100
Austin, Texas   78701-3911


OFFICIAL COURT REPORTER:

DONNA GERBRANDT, CSR(A)

---

**Page 3**

1       RYAN CURTIS MAGNUSSEN, sworn, examined
2  by Ms. Leland:
3       Q.   Good morning.
4       A.   Good morning.
5       Q.   Thank you for being here.
6       A.   You're welcome.
7       Q.   My name is Elizabeth Leland. I'm from
8  the law firm of Keller Rohrback in Seattle, and I'm
9  one of the attorneys for the plaintiffs in this
10 case. Could you state your name and your address
11 for the record, please?
12      A.   Ryan Curtis Magnussen. Address is
13 135 Woodmont Drive, Southwest, Calgary, Alberta.
14      Q.   Thank you. Now briefly, without
15 divulging the details of any of our communications,
16 can you tell me how the documents bearing the
17 numbers MCK on the bottom came to be in the
18 plaintiff's attorney's possession?
19      A.   Vance Mackenzie and I had a meeting, I
20 believe -- well, management had a meeting and Vance
21 contacted the Seattle law firm, when we found out
22 that the lawsuit was going on, to offer up any
23 information that we had that might help them to,
24 you know, pursue the case, that helps the case.
25      Q.   And the Seattle law firm took all the

---

**Page 4**

1  documents that were offered?
2       A.   Yeah. I believe it was you came up to
3  our office in Calgary, and I had all my staff
4  supply you with their files from Adams, which you
5  went through and chose whichever documents you
6  wanted.
7       Q.   And that was all the documents that were
8  offered; correct?
9       A.   Yeah.
10      Q.   Okay. Can you give me a brief
11 background of your work history before you became
12 affiliated with WDC Mackenzie?
13      A.   I started work with Sears Canada, and I
14 worked with them for six years. I left as a retail
15 sales manager and I joined a bank, Canada Trust. I
16 became a branch manager at 25, and did that for
17 another seven years. I was one of the top
18 managers. And I decided that, based on how I was
19 successful in business and saw what my customers
20 did, that if I went out and did my own business
21 that I could be successful as well. So that's
22 where we started WDC after that.
23      Q.   And in what year was WDC started?
24      A.   In 1992.
25      Q.   And can you give me a brief background

## 61

1  compete with Adams?
2     A.  Maybe. To the best of my recollection,
3  I didn't pay a lot of attention to what Callaway
4  did, so...
5     Q.  Tell me a little bit about the golf
6  industry and who you would consider Adams Golf
7  competitors in 1998?
8     A.  In '98. Due to the product, design, and
9  innovation it was a top club, top of the market.
10  And so its competitors would have been the
11  Callaway, Taylor Made. The top-end manufacturers.
12     Q.  Can you think of any others?
13     A.  Titleist, Nazumo.
14     Q.  What's that one?
15     A.  Nazumo.
16     Q.  Does that sort of sum up Adams Golf's
17  competition?
18        MS. LELAND:  To the best of your
19  recollection
20     A.  To the best of my recollection, but
21  there are 50 club manufacturers probably out there,
22  and they're all Adams' competition.
23     Q.  MS. REED:  Had any of these
24  other manufacturers experienced gray marketing of
25  their clubs --

## 62

1        MS. LELAND:  Object to form.
2     Q.  MS. REED:  -- in 1998?
3        MS. LELAND:  Object as to form.
4     A.  To the best of my knowledge, yes.
5     Q.  MS. REED:  Which golf
6  manufacturers experienced gray marketing in 1998?
7     A.  Particularly -- in 1998?
8     Q.  Yes.
9     A.  To the best of my knowledge, I don't
10  know.
11     Q.  Or previous to 1998.
12     A.  Titleist, Callaway.
13     Q.  Did Taylor Made --
14     A.  I don't shop at Costco.
15     Q.  Excuse me?
16     A.  I don't shop at Costco, so I don't...
17     Q.  But based on your knowledge from being
18  in the company, were you aware of any other
19  manufacturers that had previously experienced gray
20  marketing in 1998?
21     A.  To the best of my knowledge, the two I
22  mentioned.
23     Q.  Do you know if Taylor Made did?
24     A.  That's... I had a letter -- is it
25  Titleist Kober (phonetic) or is it --

## 63

1        MS. LELAND:  You just answer to
2  the best of your recollection. We're trying to get
3  at what you know, so...
4     A.  Yeah.
5     Q.  MS. REED:  Callaway and
6  Titleist?
7     A.  Yeah.
8     Q.  That's good. And even after gray
9  marketing, would you consider Callaway to be a
10  major name brand club?
11        MS. LELAND:  Object as to form.
12  You can answer.
13     A.  Yes, but it's not comparing apples with
14  apples. You know, one's an established business
15  and one is a new business.
16     Q.  MS. REED:  Even after gray
17  marketing would you consider Titleist to be a major
18  name brand club?
19        MS. LELAND:  Object to form.
20  Yes.
21     A.  The same thing?
22        MS. FOX:  Finish.
23        MS. LELAND:  You go ahead and
24  finish your answer.
25        MS. REED:  Counsel, I would

## 64

1  appreciate it if you wouldn't coach the witness
2  either verbally or through your actions during the
3  Deposition.
4        MS. LELAND:  I'm sorry. I was
5  not coaching the witness, but go ahead and answer
6  the question.
7        THE WITNESS:  Please repeat the
8  question.
9        MS. REED:  I can just move on.
10     Q.  Earlier you had talked about the various
11  products that WDC Mackenzie marketed. Was WDC
12  Mackenzie focussed on selling popular products?
13        MS. LELAND:  Object as to form.
14     A.  Our goal was to gain exclusive Canadian
15  rights to a product so that we had control in
16  Canada of how the product sold and... quickly
17  repeat the question.
18     Q.  MS. REED:  Were you focussed on
19  selling hot or revolutionary products?
20        MS. LELAND:  Object to the form.
21     A.  Again, no. We wanted to get the
22  Canadian distribution for whatever we coul st
23  off, and we had to believe that it had a pro
24  the product had potential in the marketplace. e
25  generally had products that were not in the