IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: ADAMS GOLF, INC., SECURITIES LITIGATION | § § § § | CIVIL ACTION NO. 99-371-KAJ (CONSOLIDATED) |

**ADAMS GOLF DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO STRIKE MILLER AFFIDAVIT AND BROOKS DEPOSITION TESTIMONY**

Of Counsel:
Paul R. Bessette
Jennifer R. Brannen
Michelle A. Reed
Laura Moriaty
Akin Gump Strauss Hauer & Feld LLP
300 West 6th Street, Suite 2100
Austin, Texas 78701

Jeffrey L. Moyer (#3309)
moyer@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

Attorneys for Defendants Adams Golf, Inc., B.H. Adams, Richard H. Murtland, Darl P. Hatfield, Paul F. Brown, Jr., Roland E. Casati, Finis F. Conner, and Stephen R. Patchin

Dated: October 30, 2006

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

I.    NATURE AND STAGE OF THE PROCEEDING ...........................................................1

II.   SUMMARY OF ARGUMENT ..........................................................................................1

III.  STATEMENT OF FACTS .................................................................................................1

IV.   LEGAL STANDARD ........................................................................................................2

V.    THE MILLER AFFIDAVIT IS INADMISSIBLE AND SHOULD BE
      STRICKEN .........................................................................................................................4

      A.   The Miller Affidavit does not satisfy the Rule 26 requirements for rebuttal
           or supplemental reports ...........................................................................................5

      B.   This Court should strike the Miller Affidavit under Rule 37 ..................................5

      C.   This Court should strike the Miller Affidavit under Rule 56 ..................................7

VI.   BROOKS'S TESTIMONY IS INADMISSIBLE AND SHOULD BE STRICKEN ...........9

      A.   Brooks's testimony is inadmissible hearsay ............................................................9

      B.   Brooks's testimony lacks foundation .....................................................................10

VII.  CONCLUSION .................................................................................................................11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Blackburn v. United Parcel Serv., Inc.*,
   179 F.3d 81 (3d Cir. 1999)................................................................................................2

*Cowan v. Prudential Ins. Co.*,
   141 F.3d 751 (7th Cir. 1998) ...........................................................................................4

*In re CitX Corp.*,
   448 F.3d 672 (3d Cir. 2006)........................................................................................4, 8

*In re Paoli R.R. Yard PCB Litig.*,
   35 F.3d 717 (3d Cir. 1994)..............................................................................................3

*In re Safeguard Scientifics*,
   No. 01-3208, 2004 WL 2644393 (E.D. Pa. Nov. 17, 2004) ...............................3, 4, 7, 8

*In re TMI Litig.*,
   992 F. Supp. 997, Rule 26...............................................................................................7

*Pamintuan v. Nanticoke Mem'l Hosp.*,
   192 F.3d 378 (3d Cir. 1999)............................................................................................2

*Pellegrino v. McMillen Lumber Prods. Corp.*,
   16 F. Supp.2d 574 (W.D. Pa. 1996)................................................................................4

*Philbin v. Trans Union Corp.*,
   101 F.3d 957 (3d Cir. 1996)............................................................................................2

*Stein v. Foamex Int'l, Inc.*,
   No. 00-2356, 2001 WL 936566 (E.D. Pa. Aug. 15, 2001) .............................................7

## RULES

Fed. R. Civ. P. 26(a) ............................................................................................... *passim*

Fed. R. Civ. P. 26(e) ............................................................................................... *passim*

Fed. R. Civ. Proc. 37(b)(2)(B) ......................................................................................3,5

Fed. R. Civ. P. 37(c) ....................................................................................................2,3,7

Fed. R. Civ. P. 56(e) ....................................................................................................2,4,8

Fed. R. Evid 602 ............................................................................................................. 2,9,10, 11

Fed. R. Evid. 801(c) .................................................................................................................. 2, 9

Fed. R. Evid. 802 ....................................................................................................................... 2,9

RLF1-3076316-1

## I. NATURE AND STAGE OF THE PROCEEDING

On September 11, 2006, Adams Golf, Inc., B.H. Adams, Richard H. Murtland, Darl P. Hatfield, Paul F. Brown, Jr., Roland E. Casati, Finis F. Conner and Stephen R. Patchin (collectively, "Adams Golf Defendants") filed the Opening Brief in support of their Motion for Summary Judgment. (D.I. 280.) On October 9, 2006, plaintiffs filed their Answering Brief in Response to the Adams Golf Defendants' Motion for Summary Judgment ("Answering Brief"). (D.I. 328.) In the Answering Brief, plaintiffs relied on two new sources: the Affidavit of R. Alan Miller in Support of Plaintiffs' Opposition to the Adams Golf Defendants' Motion for Summary Judgment ("Miller Affidavit"), and excerpts from the deposition of Sandra Brooks. Since plaintiffs had never relied on this evidence before the Answering Brief, the Adams Golf Defendants had no opportunity to move to strike this evidence until now. The Adams Golf Defendants now move to strike the Miller Affidavit and the Brooks deposition excerpts. This is the Adams Golf Defendants' Opening Brief in support of that motion.

## II. SUMMARY OF ARGUMENT

In their Answering Brief, plaintiffs attach a newly created affidavit from their purported expert, R. Alan Miller, that sets out new opinions and data that were not disclosed as required under Federal Rules of Civil Procedure 26(a) and 26(e), and contradicts statements Miller made in his expert report and rebuttal report. Plaintiffs also cite deposition excerpts from Sandra Brooks that include inadmissible hearsay and statements not based on her personal knowledge. None of this is competent summary-judgment evidence.

## III. STATEMENT OF FACTS

The Adams Golf Defendants incorporate by reference the Statement of Facts in the Opening Brief in Support of the Adams Golf Defendants' Motion for Summary Judgment. (D.I. 280 at 5-18.)

## IV. LEGAL STANDARD

Evidence offered in opposition to a summary-judgment motion must be admissible at trial. FED. R. CIV. P. 56(e); *Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 94-95 (3d Cir. 1999); *Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 n.1 (3d Cir. 1996). The evidence cannot be hearsay, and it must come from the witness's own personal knowledge. FED. R. EVID. 801(c) (defining hearsay); FED. R. EVID. 802 (providing that hearsay is generally inadmissible); FED. R. EVID 602 (requiring that evidence must come from a witness's personal knowledge); *Blackburn*, 179 F.3d at 95-96. If the evidence offered is inadmissible, then the Court should strike and refuse to consider it, either in the motion or at a hearing on the motion. *Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999); FED. R. CIV. P. 37(c).

There are additional, specific Federal Rules that govern expert-opinion evidence and whether a court can consider it on a motion for summary judgment. The Federal Rules of Civil Procedure set out disclosure requirements for expert-opinion evidence, specifying when and how expert opinions can be disclosed. FED. R. CIV. P. 26(a), 26(e). Rule 26(a) governs expert-opinion evidence, and requires, in relevant part, that by the close of expert discovery, parties disclose the expert's report, which must include "a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; [and] any exhibits to be used as a summary or in support of the opinions." Rule 26(e) governs when a party can supplement or correct disclosures such as expert reports by providing additional affidavits, and it provides that "[w]ith respect to testimony of an expert from whom a report is required under subdivision (a)(2)(B)…any additions or other changes to [the expert's opinions or report] shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due" (*i.e.*, when discovery closes). Thus, by the time discovery closes, a

party must have disclosed any and all expert opinions, data, and analysis that the party intends to use in a summary-judgment motion.

If a party violates Rule 26, then it is subject to exclusionary sanctions under Rule 37. First, Rule 37 provides that a court can strike any expert-opinion evidence that was not disclosed properly under Rule 26 if the party did not have substantial justification for the failure to disclose. FED. R. CIV. PROC. 37(c)(1). Additionally, Rule 37 allows a court to strike any expert-opinion evidence that is not filed by the expert-discovery deadline set out in a scheduling order. FED. R. CIV. PROC. 37(b)(2)(B). The exclusionary sanctions allowed under Rule 37 are extreme in nature, but they are appropriate when a party has acted in bad faith. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-93 (3d Cir. 1994).[1]

To decide whether such exclusionary sanctions are appropriate, the court should consider: (1) the prejudice or surprise of the party against which the excluded evidence would have been offered, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of Rule 37 sanctions would disrupt the orderly and efficient trial of the case or other cases in the court, and (4) bad faith or willfulness in failing to make a required disclosure or comply with a court order. *See, i.e., id.* at 791. It follows that on a summary-judgment motion, a court should consider only expert-opinion evidence that complies with Rule 26—all proffered expert evidence that fails to meet the disclosure requirements of Rules 26 either in timeliness or content should be struck under Rule 37. *In re Safeguard Scientifics,* No. 01-3208, 2004 WL 2644393, *2 (E.D. Pa. Nov. 17, 2004).

---

[1] In *Paoli*, plaintiffs submitted their report 60 days before the discovery deadline, giving defendants two months to depose or respond to the challenged expert testimony. 35 F.3d at 793. Here, plaintiffs submitted the Miller Affidavit two months *after* the close of discovery.

3

Even without the finding of bad faith necessary to exclude evidence under Rule 37, a court can still strike affidavit testimony to the extent that it conflicts with or dramatically alters previous sworn testimony or an earlier sworn expert report. *Safeguard*, 2004 WL 2644393 at *2. Under the "sham affidavit" doctrine, federal courts routinely hold that Rule 56(e) prohibits affidavits that contradict sworn testimony or previously disclosed reports from being introduced as evidence in opposition to a summary-judgment motion, and thus they strike the affidavits. *See, e.g., In re CitX Corp.*, 448 F.3d 672, 679 (3d Cir. 2006); *Cowan v. Prudential Ins. Co.*, 141 F.3d 751, 756 (7th Cir. 1998). Moreover, if the affidavit introduced in opposition to summary judgment "offers so many new opinions that it dramatically changes the 'flavor and theory' of the case, it must be disregarded..." *Safeguard*, 2004 WL 2644393 at *2 (quoting *Pellegrino v. McMillen Lumber Prods. Corp.*, 16 F. Supp. 2d 574, 583 (W.D. Pa. 1996)). Hence, under Rule 37, a court should strike any expert affidavit offered in opposition to summary judgment that shows a significant change in the expert's opinion or analysis from that expressed in his expert report or deposition.

## V. THE MILLER AFFIDAVIT IS INADMISSIBLE AND SHOULD BE STRICKEN

Plaintiffs submitted the new Miller Affidavit well after the close of expert discovery.[2] (D.I. 328 at 47-49; D.I. 329 at A.80.) In it, Miller created an entirely new "statistical" analysis after doing no statistical analysis at all in his initial report and saying in his rebuttal report that no statistical analysis was appropriate. (Ex. 334; Ex. 335 at 13 ¶ 14.) Now, in response to defendants' effective criticism (*see* D.I. 329 at A.80 at 2 ¶¶ 5-6), Miller has contradicted himself and created a new statistical analysis, which has no basis whatsoever in financial economic theory. (James Aff. II.) He uses a 12-day measurement window and selects the particular start

---

[2] The Scheduling Order set the expert-discovery close on August 11, 2006. (D.I. 243.)

4

date. Why? Because these 12 days represent the largest decline in the Company's stock price, and 12 days is the smallest measurement window for which a regression analysis shows a statistically significant stock-price decline.[3] (James Aff. II at 3-4 ¶¶ 9-11.)

### A. The Miller Affidavit does not satisfy the Rule 26 requirements for rebuttal or supplemental reports

Although plaintiffs attempt to couch the Miller Affidavit as some sort of rebuttal or supplemental report, it is neither. (D.I. 328 at 47.) Rule 26(a)(2)(C) requires that all expert reports be disclosed "at the times and in the sequence directed by the court" in its scheduling order: in this case, the Scheduling Order set the deadline for expert-rebuttal reports as July 28, 2006. (D.I. 243.) Rule 26(e) allows supplemental reports only if the expert's initial report is incomplete or incorrect, and it requires that such reports be disclosed by the expert-discovery deadline. Plaintiffs do not claim that Miller's expert or rebuttal reports were incomplete or incorrect, so the Miller Affidavit is not "supplemental" under Rule 26(e). It is also untimely under Rule 26 because the expert-discovery deadline passed on August 11, 2006.

### B. This Court should strike the Miller Affidavit under Rule 37

This Court should strike the Miller Affidavit under Rule 37, which sets out exclusionary sanctions for violation of both a court order, such as the Scheduling Order, and the Rule 26 disclosure requirements.[4] The opinions and analysis in the Miller Affidavit are entirely new: they were not disclosed in Miller's expert report, his rebuttal report, his deposition testimony, or

---

[3] This cherry-picked twelve-day measurement window, as well as the other substantive deficiencies of Miller's newly introduced affidavit, are fully discussed in the Adams Golf Defendants' Reply in Support of Their Motion to Strike the Expert Testimony of R. Alan Miller and in the Adams Golf Defendants' Reply in Support of Their Motion for Summary Judgment.

[4] Federal Rule of Civil Procedure 37(b)(2)(B) allows a court to prohibit a party from introducing into evidence any information offered in violation of a court order regarding discovery, such as a scheduling order. Federal Rule of Civil Procedure 37(c) allows the court to strike all evidence not disclosed as required under Rules 26(a) and 26(e) from consideration "at a trial, at a hearing, or on a motion" if the party that failed to make the proper disclosure did so "without substantial justification."

5

at any other point before the close of the expert-discovery period. Miller has never before disclosed or even hinted at the analysis in the Miller Affidavit, and defendants have had no opportunity to depose Miller on the subject. Moreover, Miller has not disclosed the purported bases for many of the conclusions in his Affidavit, and defendants have no way to verify their accuracy. For these reasons, the Miller Affidavit significantly prejudices defendants.

Plaintiffs cannot offer any reasonable justification for their failure to comply with the Scheduling Order. Plaintiffs were aware on July 14, 2006 that Dr. Christopher James, the Adams Golf Defendants' expert, conducted an event study and regression analysis. (Ex. 336.) Miller responded to Dr. James's analysis in his rebuttal report, declaring that regression analysis was inappropriate and inaccurate in the context of the facts of this case, and therefore was not reliable. (Ex. 335 at 13 ¶ 14.) Following the filing of Dr. James's rebuttal report on July 28, 2006, plaintiffs had two weeks to file a supplemental affidavit before the close of expert discovery if they thought it was necessary. Dr. James did not offer any new theories during his deposition that had not been disclosed in his initial expert report or his rebuttal report.[5] And plaintiffs had an opportunity to cross-examine James on all issues during the deposition. Plaintiffs thus cannot present a substantial justification for their knowing violation of the Scheduling Order and Rule 26.

---

[5] Miller asserts that Dr. James presented positions that were "new or amplified" in his deposition. (D.I. 329 at A.80 at 1 ¶ 2.) This is incorrect. Dr. James did not agree that nonpublic information could "leak" into the market—he agreed that rumors, if they became public as reflected in a news article or other form of public dissemination, could impact stock price. (James Dep. Tr. 125:14-23.) Second, he explained that a two-day window does not change the results of his regression analysis; he did not assert that there should be some new window, let alone an absurd 12-day window as Miller asserts here. (James Dep. Tr. 222:8-18, 223:15-224:9.) Finally, in rebuttal to Miller's rebuttal report, Dr. James showed that the Miller Peer Group index did not change his statistical results. (James Dep. Tr. 93:10-94:3.) None of these positions is new, such that Miller could introduce an entirely new and unique affidavit.

Plaintiffs have acted in bad faith, and this Court should apply the appropriate sanction under Rule 37. Indeed, Miller and plaintiffs' counsel have tried this underhanded tactic before and another court properly rejected it. In *In re Safeguard Scientifics*, plaintiffs' counsel—same counsel as in this case—had Miller submit a similar late affidavit in support of the plaintiffs' summary-judgment opposition. 2004 WL 2644393, at *3-5 (E.D. Pa. 2004); (Ex. 444.) Since the affidavit there, like the Miller Affidavit here, set out new opinions and analysis on loss causation that were not included in his expert report or mentioned at his deposition, the Court struck the affidavit and all mention of it and held that "any other result 'would effectively circumvent the requirement for the disclosure of a timely and complete expert report.'" *Safeguard*, 2004 WL 2644393, at *5-6 (quoting *Stein v. Foamex Int'l, Inc.*, No. 00-2356, 2001 WL 936566 at *6 (E.D. Pa. Aug. 15, 2001)).

Allowing an expert to amend his report in response to the arguments made by an opposing party in their summary-judgment motion, as plaintiffs' counsel and Miller tried to do both in this case and in *Safeguard*, "would afford litigants an opportunity to 'mold their expert reports to meet [their opponent's] legal challenges.'" *Stein*, No. 00-2365, 2001 WL 936566 at *6 (E.D. Pa. Aug. 15, 2001) (quoting *In re TMI Litig.*, 992 F. Supp. 997, 1005 n.10 (M.D. Pa. 1996)). Rule 26 limits expert discovery for precisely this reason, and the attempt here by plaintiffs' counsel and Miller to again circumvent Rule 26 after the *Safeguard* ruling is bad faith. Therefore, this Court should strike the Miller Affidavit and all references to it under Rule 37(c).

### C. This Court should strike the Miller Affidavit under Rule 56

The Miller Affidavit also directly contradicts his rebuttal report. Miller said in his rebuttal report that regression analysis was inappropriate and inaccurate in the context of an IPO, but he purports to use a regression analysis in the Miller Affidavit. (Ex. 335 at 13 ¶ 14; D.I. 329 at A.80 at 2-3 ¶ 7.) Miller also found in his rebuttal report that an event study was impossible in

7

this case because "the conditions . . . [that] are necessary for a valid event study—a clear, identifiable discrete one-time disclosure of new information and a clearly associated statistically significant stock price movement—are absent," but in the Miller Affidavit, he purports to use an event study based on the same facts. (Ex. 335 at 2 ¶ 5; D.I. 329 at A.80 at 2-3 ¶¶ 6-8.) Furthermore, Miller's opinion on what an acceptable event window is seems to be ever-changing—in his rebuttal report, he declares that a two-day window is acceptable, later decides that a five-day window will work, and in the Miller Affidavit, he uses a 12-day window. (Ex. 335 at 7 (2 days); Ex. 335 at 20 ¶ 22 (5 days); D.I. 329 at A.80 at 3-4 ¶ 8 (12 days).) Miller also changes the date that he believes information about gray marketing began "leaking" into the market: in the rebuttal report, he asserts that the "leakage" began on July 21, 1998, while in the Miller Affidavit, he decides that it started on July 10, 1998. (Ex. 335 at 20 ¶ 22; D.I. 329 at A.80 at 3-4 ¶ 8.) These significant discrepancies and direct contradictions change Miller's expert opinions and theories significantly.

Since federal courts interpreting Rule 56(e) routinely strike affidavits submitted in opposition to a summary-judgment motion that contradict prior testimony in the case by the affiant, this Court should strike the Miller Affidavit. *See, e.g., CitX*, 448 F.3d at 679. The Miller Affidavit "dramatically changes the 'flavor and theory' of the case" by presenting regression analysis and a purported event study from an expert who had previously opined that such analyses were inappropriate and inapplicable to the facts in question. *See Safeguard*, 2004 WL 2644393 at *2. As a result of the serious discrepancy between the Miller Affidavit and Miller's previous reports, the Court should strike the Miller Affidavit from the plaintiffs' summary-judgment opposition and preclude its use at trial.

8

## VI. BROOKS'S TESTIMONY IS INADMISSIBLE AND SHOULD BE STRICKEN

Plaintiffs quote extensively from the deposition of Sandra Brooks ("Brooks Deposition") in their opposition. All of these deposition excerpts are inadmissible either because they contain hearsay, or because they concern subjects about which Brooks admittedly has no personal knowledge. *See* FED. R. EVID 602, 801(c), 802. Since a court cannot consider inadmissible evidence on a summary-judgment motion, this Court should strike the inadmissible portions of the Brooks Deposition.

### A. Brooks's testimony is inadmissible hearsay

In an effort to show that gray marketing of Adams Golf's clubs occurred and harmed the Company's relationship with its retailers, plaintiffs cite Brooks describing the reactions of Adams Golf's retailers and Adams Golf's director of sales, Mark Gonsalves, upon learning of gray marketing. (D.I. 328 at 8-9.) Most of the quotations are inadmissible hearsay because they are statements made by someone other than Brooks herself, and they are offered to prove the truth of the matter asserted. *See* FED. R. EVID. 801(c). Although Brooks admits she cannot identify with any certainty or specificity which retailers were complaining to her about the presence of Tight Lies in Costco, plaintiffs still cite her quotes about what these unknown retailers told her.[6] (Brooks Dep. Tr. at 12:16-14:1 (apparently quoting an unknown Seattle retailer), 14:17 -15:5 (describing the statements of certain retailers she can only identify as "they"), 16:16-17:7, 17:19-23 (describing how these unidentified retailers told her that they "fe[lt] as though you stabbed them in the back, so...they didn't trust us any more."), 21:22-22:4

---

[6] Plaintiffs are imprecise in their citations of the Brooks Deposition, offering only vague and sometimes inaccurate page citations, rather than page and line citations. As a result, the Adams Golf Defendants have specifically addressed what appear to be the most relevant parts of the cited pages, but to the extent plaintiffs claim that they really intended to cite another part of the page that is still either hearsay or not based on Brooks's personal knowledge, the Adams Golf Defendants hereby move to strike that testimony as well.

9

(stating that although she could not specifically quantify the number of Tight Lies in Costco, there must have been "a lot, just for the fact that, well the people in the Seattle area were telling me that there were hundreds in there."), 68:5-7, 69:7-9, 69:23-70:1, 70:6-12 (further describing unnamed retailers' "disgruntled" complaints when Adams Golf took legal action against Costco as "They were like: too little, too late."), 82:18-22 ("I don't know how many [Tight Lies Costco] had, but according to my clients who told me that they had, you know, in the—a hundred clubs or so sitting right there.").)

In an attempt to prove that the Company was unresponsive to the gray-marketing issue, plaintiffs cite Brooks allegedly quoting Mark Gonsalves saying "keep working on it" and "I don't know" in response to Brooks notifying him of the gray-marketing issue. (D.I. 328 at 8 (citing D.I. 329 at A.20 at 18-19, 27.)) This is plainly inadmissible hearsay. Even more egregiously, plaintiffs resort to double hearsay, citing Brooks quoting Katherine East, another Adams Golf salesperson, purportedly describing the complaints East received from retailers. (D.I. 328 at 9 (quoting Brooks Dep. Tr. 20:7-14.)) Plaintiffs cite all of this rampant hearsay to support their argument that Adams Golf knew about extensive gray marketing before the IPO and disregarded it. (D.I. 328 at 8-9, 11.) All of this cited testimony is inadmissible and should be stricken.

### B. Brooks's testimony lacks foundation

Plaintiffs also quote Brooks opining on subjects about which she has no personal knowledge, in violation of Federal Rule of Evidence 602. Plaintiffs cite Brooks's testimony that Mark Gonsalves "blew her off" in response to her informing him that Tight Lies were appearing in Costcos, but she later admitted she had no personal knowledge of what Mark Gonsalves did with the information she gave him about gray marketing. (D.I. 328 at 8; Brooks Dep. Tr. at 14:7-12; 16:4-16:8; 18:3-5; 19:14-19; 62:15-63:2.) To show that Costco sold large numbers of Tight

10

Lies, plaintiffs cite Brooks saying essentially that she had no personal knowledge of how many Tight Lies Costco sold: "I don't have a number to put on it because I wasn't there. I didn't count them. I'm just going by what my people told me." (D.I. 328 at 11; Brooks Dep. Tr. 82:23-83:2.) Then, in trying to show some evidence of the questionable sales practices allegedly perpetrated by salesman Jay Greaney, plaintiffs rely on Brooks's speculations: she claims that Greaney "padded his orders" and double-shipped, but later admits that she has no personal knowledge of this; she is "pretty sure that Mark Gonsalves knew all about" the questionable sales practices and that "the whole inside sales team including Mark…knew about [Jay double shipping]," but afterwards concedes that all she heard was "watercooler" gossip and innuendo. (D.I. 328 at 23 (citing 34:18-22, 77:9-10, 80:4-81:6); Brooks Dep. Tr. 78:2-15, 80:20-81:21.) Since Brooks made these statements without any personal knowledge, they are not admissible as evidence under Federal Rule of Evidence 602, and therefore they cannot be considered on a summary-judgment motion. This Court should strike plaintiffs' quotes from and references to the Brooks Deposition in the Answering Brief and preclude their use at trial.

## VII. CONCLUSION

For the foregoing reasons, this Court should strike the Miller Affidavit and all excerpts from or references to the Brooks Deposition that appear in the Answering Brief and preclude the use of this evidence at trial.

11

/s/ Jeffrey L. Moyer

Of Counsel:

Paul R. Bessette
Jennifer R. Brannen
Michelle A. Reed
Laura Moriaty
Akin Gump Strauss Hauer & Feld LLP
300 West 6th Street, Suite 2100
Austin, Texas 78701

Jeffrey L. Moyer (#3309)
moyer@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

Attorneys for Defendants Adams Golf, Inc.,
B.H. Adams, Richard H. Murtland, Darl P.
Hatfield, Paul F. Brown, Jr., Roland E. Casati,
Finis F. Conner, and Stephen R. Patchin

Dated: October 30, 2006

12

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2006, I have caused the foregoing to be served by Hand Delivery which has also been filed with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Carmella P. Keener
Rosenthal, Monhait & Goddess
919 Market Street, Suite 1401
Wilmington, DE 19801

Robert K. Payson
John E. James
Potter Anderson & Corroon LLP
1313 North Market Street, Hercules Plaza
Wilmington, DE 19801

I hereby certify that on October 30, 2006, I have sent by electronic mail the foregoing document(s) to the following non-registered participants:

Neil Mara
Todd S. Collins
Berger & Montague, PC
1622 Locust Street
Philadelphia, PA 19103

Michael J. Chepiga
Theodore J. McEvoy
Simpson Thacher & Bartlett
425 Lexington Avenue
New York, NY 10017

_____
Jeffrey L. Moyer (#3309)

RLF1-2851933-2