IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: ADAMS GOLF, INC., <br> SECURITIES LITIGATION | § <br> § <br> § <br> § <br> § | CIVIL ACTION NO. 99-371-KAJ <br> (CONSOLIDATED) |

## ADAMS GOLF DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO STRIKE MILLER AFFIDAVIT AND BROOKS DEPOSITION TESTIMONY

Of Counsel:
Paul R. Bessette
Jennifer R. Brannen
Michelle A. Reed
Laura Moriaty
Akin Gump Strauss Hauer & Feld LLP
300 West 6th Street, Suite 2100
Austin, Texas 78701

Jeffrey L. Moyer (#3309)
moyer@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

Attorneys for Defendants Adams Golf, Inc.,
B.H. Adams, Richard H. Murtland, Darl P.
Hatfield, Paul F. Brown, Jr., Roland E. Casati,
Finis F. Conner, and Stephen R. Patchin

Dated: November 21, 2006

RLF1-3085136-1

# TABLE OF CONTENTS

I. PLAINTIFFS HAVE FAILED TO PROVE THE ADMISSIBILITY OF THE MILLER AFFIDAVIT .................................................................................................. 1

    A. Plaintiffs' attempt to circumvent the Federal Rules must fail—both Rule 26 and Rule 56 apply to Miller's Affidavit ................................................................ 1

    B. The Miller Affidavit does not respond to new opinions presented at deposition or summary judgment ............................................................................ 3

    C. The Miller Affidavit contradicts Miller's prior opinions ............................................ 4

    D. The Miller Affidavit has no basis in financial economics ........................................ 5

    E. The Miller Affidavit and plaintiffs' briefing in their entirety demonstrate that there is no genuine issue of material fact and defendants have proven negative causation as a matter of law ................................................................ 7

II. PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT BROOKS'S TESTIMONY IS ADMISSIBLE .................................................................................... 8

    A. BROOKS'S TESTIMONY DOES NOT QUALIFY FOR ANY EXCEPTIONS TO THE HEARSAY RULE ................................................................ 8

        1. Plaintiffs offer Brooks's testimony for the truth of the matter asserted ............................................................................................................. 8

        2. Brooks's statements are not non-hearsay party admissions ........................ 10

        3. Retailers' statements to Brooks are not admissible under either the present-sense-impression or excited-utterance exceptions ........................ 11

    B. Brooks's testimony lacks foundation—she has no personal knowledge of the matters to which she testified .................................................................... 13

III. CONCLUSION .................................................................................................................. 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Collins v. Prudential Inv. & Ret. Servs.*,
   119 F. App'x 371 (3rd Cir 2005) ................................................................................14

*Cummins v. Lyle Indus.*,
   93 F.3d 362 (7th Cir. 1996) .........................................................................................3

*In re Safeguard Scientifics*,
   No. 01-3208, 2004 WL 2644393 (E.D. Pa. Nov. 17, 2004) .................................2, 4

*Lauria v. National R.R. Passenger Corp.*,
   145 F.3d 593 (3d Cir. 1998) ......................................................................................14

*Mahlandt v. Wild Canid Survival & Research Ctr, Inc.*,
   588 F.2d 626 (8th Cir. 1978) ....................................................................................11

*Miller v. Keating*,
   754 F.2d 507 (3d Cir. 1985) ......................................................................................13

*Mills v. Beech Aircraft Corp., Inc.*,
   886 F.2d 758 (5th Cir. 1989) ......................................................................................3

*Prudential Prop. & Cas. Ins. Co. v. Remed Recovery Care*,
   136 F. App'x 489 (3d Cir. 2005) ..............................................................................12

*United States v. Mitchell*,
   145 F.3d 572 (3d Cir. 1998) ......................................................................................12

## STATUTES

Fed. R. Civ. P. 26 ..................................................................................................1, 2, 3

Fed. R. Civ. P. 56(e) ....................................................................................................1

Fed. R. Evid. 803 .......................................................................................................12

Fed. R. Evid. 805 .......................................................................................................11

## PUBLICATIONS

Roger N. Waud, Public Interpretation of Federal Reserve Discount Rate
   Changes: Evidence on the "Announcement Effect," 38 ECONOMETRICA
   248-49 (March 1970) ..................................................................................................6

Plaintiffs ignore evidentiary requirements and discovery obligations in an effort to avoid summary judgment. The Miller Affidavit is inadmissible because it is untimely, contradicts previous testimony, and fails to satisfy the reliability requirements of the Federal Rules of Evidence. The Brooks testimony lacks foundation and is plainly hearsay—no exception applies to allow its admission. Plaintiffs have utterly failed to rebut defendants' negative causation defense with competent summary judgment evidence. Accordingly, the Miller Affidavit and the Brooks testimony should be stricken and summary judgment should be granted.

I. **PLAINTIFFS HAVE FAILED TO PROVE THE ADMISSIBILITY OF THE MILLER AFFIDAVIT**

A. **Plaintiffs' attempt to circumvent the Federal Rules must fail—both Rule 26 and Rule 56 apply to Miller's Affidavit**

Plaintiffs have taken the untenable position that Rule 56 alone should apply to the Miller Affidavit without regard to the other Federal Rules of Civil Procedure. (D.I. 358 at 4.) That is not the law. Rule 56 states that "[s]upporting and opposing affidavits shall be made on personal knowledge and shall set forth *such facts as would be admissible* in evidence . . . ." (emphasis added). FED. R. CIV. P. 56(e). Since Miller is Plaintiffs' expert, Rule 26 directly affects the admissibility of Miller's opinions. FED. R. CIV. P. 26(a)(2)(B), (e).

Under Rule 26 all expert reports must be disclosed "at the times and in the sequence directed by the court" in its scheduling order. FED. R. CIV. P. 26(a)(2)(C). A party who makes a disclosure under Rule 26(a) is under a duty to supplement or correct the disclosure or response to include information thereafter acquired if the party learns that the information is incomplete or incorrect. FED. R. CIV. P. 26(e). When, as here, an expert submits a report under Rule 26(a)(2)(B), that expert is under a duty to supplement information contained both in the report and during a deposition. *Id.* The deadline for this additional disclosure is also as directed by the

court in its scheduling order. *Id.*

Plaintiffs cite *In re Safeguard Scientifics*, No. 01-3208, 2004 WL 2644393 (E.D. Pa. Nov. 17, 2004), for the proposition that Rules 26 and 37 do not apply because the Miller Affidavit is not labeled a supplemental or rebuttal report. (D.I. 358 at 4.) That is misleading and a blatant misreading of the case.[1] In *Safeguard*, plaintiffs filed Miller's expert report and a supplemental report. *Safeguard*, 2004 WL 2644393 at *1. Miller was thereafter deposed and then defendants filed a motion for summary judgment. *Id.* The plaintiffs filed a declaration by Miller in response that added facts that were not previously disclosed or that were contradictory to Miller's prior report and testimony. *Id.* at *3. While the court indeed found that the declaration did not constitute a supplemental or rebuttal report, it ***never held*** that Rule 26 was not implicated by the previously undisclosed opinions and analysis. *Id.* In fact, the *Safeguard* Court found that exclusionary sanctions were appropriate because evidence, opinions and analyses were presented for the first time in Miller's declaration in violation of Rule 26(a)(2)(B). *Id.* at *5. Plaintiffs are trying to do the exact same thing again here.

The *Safeguard* court excluded all of the Miller declaration that constituted previously undisclosed opinions and analysis. *Id.* at *5-6. The only portion allowed to remain in evidence were the few items that Miller had addressed previously in his report and in his deposition. *Id.* at *6-8. And even then, the court clarified that it was only admissible for the purpose Miller had specifically addressed originally in his report and would be excluded for all other purposes (*e.g.*, the particular disclosure date would be admitted as to loss causation but not admitted as to damages). *Id.* at *7 ("For the purpose of determining damages, however, Plaintiffs are obviously

---

[1] Plaintiffs know better as *Safeguard* involved plaintiffs' expert (Mr. Miller) and plaintiffs' counsel (Mr. Collins) on an almost identical set of facts.

2

limited to the three disclosure dates identified in ¶ 14 of the Preliminary Report.").

Courts uniformly strike such previously undisclosed and contradictory testimony. In *Cummins v. Lyle Indus.*, 93 F.3d 362, 371 (7th Cir. 1996), for example, the court held that it was not an abuse of discretion to exclude an engineer's proposed testimony when the plaintiff failed to timely disclose that the opinion would rely on a cycle life for a limit switch that was not previously disclosed. Similarly, in a Fifth Circuit case, the district court excluded evidence of flight tests performed by plaintiffs' expert because the tests were conducted after discovery and defendants were deprived of the opportunity to analyze and testify about the tests. *Mills v. Beech Aircraft Corp., Inc.*, 886 F.2d 758, 764 (5th Cir. 1989). Here, as in *Safeguard*, *Cummins*, and *Mills*, portions of the Miller Affidavit that contain evidence, opinions or analysis that were not disclosed by the discovery deadline should be excluded.

### B. The Miller Affidavit does not respond to new opinions presented at deposition or summary judgment

Plaintiffs assert that Miller's Affidavit responds to comments made by Dr. James at his deposition and that therefore it was timely under Rule 26.[2] This is wrong. Dr. James submitted his expert report first, and then Miller criticized it in a later rebuttal report. In assessing the validity of Miller's criticisms, Dr. James performed additional analyses and found that the criticisms were invalid. During his deposition, while plaintiffs' counsel was questioning him, Dr. James explained why Miller's criticisms were invalid.[3]

---

[2] Plaintiffs complain that Miller's and James's depositions were held simultaneously, but the reason for that, which they have apparently forgotten, is that they bear the burden of proof on two elements of their claim—materiality and damages—whereas defendants' bear the burden only on their affirmative defense of negative causation.

[3] Plaintiffs claim that Dr. James did not produce "other documents" that he identified at his deposition. (D.I. 358 at 5 n.2.) This, too, is misleading—Dr. James explained that he produced all documents that existed. (James Dep. Tr. 83:13-84:13 (All excerpts of deposition transcripts are attached

3

RLF1-3085136-1

Miller's Affidavit has nothing to do with any "new opinions" Dr. James purportedly expressed at his deposition—as he expressed no new opinions at his deposition.[4] Miller is actually trying to inject into this case an entirely new (but flawed) statistical analysis to establish materiality and damages. (Miller Aff., D.I. 329 at A.80 at 3 ¶ 7 ("This exercise allowed testing of plaintiffs' assertion that the Adams Golf stock price moved in a significant fashion in July 1998 as a result of "leakage" that gray marketing was seriously affecting Adams Golf.").) These new opinions had to be expressed in Miller's initial report. They were not, and now they are waived. *Safeguard*, 2004 WL 2644393 at *5-6.

### C. The Miller Affidavit contradicts Miller's prior opinions

In Miller's rebuttal report, he asserts that event study regression analysis is improper in this case because it is difficult to identify the event date of gray-market disclosures, and because in an IPO case there is no way to use a control period outside of the class period. (Ex. 335 at 2 ¶ 5, at 13 ¶ 14.) Miller did not do an event study or a regression analysis in his initial or rebuttal report. Yet, now, in his Affidavit he purports to do both. (Miller Aff., D.I. 329 at A.80 at 2-4 ¶¶ 6-8.) Miller's position that a statistical regression analysis is now possible directly contradicts his previous testimony and must be stricken.

---

to the Declaration of Laura Moriaty submitted with the Adams Golf Defendants' Reply Brief in Support of Their Motion to Strike Miller Affidavit and Brooks Deposition Testimony.).

[4] The three points that Dr. James raised at his deposition, which plaintiffs incorrectly label as new opinions, are: (1) rumors could impact stock price; (2) two-day event windows are appropriate; and (3) the Miller index may be considered in this case. These are *not* new opinions. Dr. James did not agree that nonpublic information could "leak" into the market—he merely agreed with the proposition that rumors, if they became public as reflected in a news article or another form of public dissemination, could impact stock price. (James Dep. Tr. 125:14-23.) Second, he explained that a two-day event window does not change the results of his regression analysis; he did not assert that there should be some new event window, let alone an absurd 12-day window as Miller asserts here. (James Dep. Tr. 222:8-18, 223:15-224:9.) Finally, in rebuttal to Miller's rebuttal report, Dr. James showed that the Miller Peer Group index did not change his statistical results. (James Dep. Tr. 93:10-94:3.) None of these positions is new, such that Miller was entitled to introduce entirely new opinions and analyses.

4

Similarly, Miller uses completely different "leakage" dates and event windows in his Affidavit than he uses in his Rebuttal Report. Plaintiffs' response is that it is "difficult to determine precisely when leakage with regard to gray marketing began."[5] (D.I. 358 at 11.) For this reason alone his Affidavit should be stricken—he does not prove that there actually was any leakage, nor does he identify a single date where leakage purportedly occurred. Instead, he merely cherry-picks a start date and an event date—the specific twelve days in July that just happen to reflect the *largest combined dollar decline* in the class period. Miller apparently forgot that he used completely different dates in his prior testimony. (James Aff. II, D.I. 349 at 3-4 ¶¶ 9-11 & James Ex. 17.)

### D.     The Miller Affidavit has no basis in financial economics

Plaintiffs have failed to identify *even one* peer-reviewed financial economic analysis that adopts a twelve-day event window. Instead, they resort to twisting Dr. James's previous publications to suit their needs, regardless of what the publication actually said. The James and Dann article plaintiffs cite has nothing whatsoever to do with a single-company event-study analysis as applicable in this case. **First**, James and Dann identified public disclosures in an event study. In contrast, plaintiffs admit that they have not (and cannot) identify any public disclosures reflecting leakage, and Miller did not conduct an event study.[6] **Second**, James and Dann conducted a completely differently analysis—they examined legislative and regulatory changes across industries, not as it relates to a single company. Legislative and regulatory

---

[5] Plaintiffs also assert that these are the same dates Dr. James used in his rebuttal, but they are wrong again. (D.I. 358 at 11.) Dr. James simply examined the dates that Miller had identified earlier to determine whether his own analysis was affected (July 21 and 22, July 29, August 19, September 10, 1998). (Ex. 340.)

[6] An event study is a statistical analysis that examines residual stock-price movement by date after backing out any market or industry effects. Miller did no such statistical analysis, as he failed to eliminate market or industry effects from his analysis. He did a unscientific "gut check," without identifying any particular dates where he thought gray marketing was material.

5

changes (similar to the merger and acquisition analysis distinguished by MacKinlay in his affidavit) are publicly debated with a sizeable number of people involved and such disclosures are reflected in identifiable publications.[7] Miller, on the other hand, is purporting to examine a discrete piece of information—knowledge of the gray market—and stretching this stale information across time without identifying any public disclosures. **Finally**, James and Dann did a portfolio analysis of *thirty-four* companies over an extended time period. This distinction is critical to the statistical analysis, since any single company will be biased over longer event windows (*i.e.*, firm-specific news will cancel out in portfolio analysis but is impossible to cancel out in a single-company analysis). This is precisely why the academic article cited by plaintiffs specifies that a one- to two-day event window is essential in single-company event studies. (D.I. 328 at 37-38 n.17; James Aff. II, D.I. 349 at 2 ¶ 6.)

Additionally, plaintiffs have no response to defendants' criticism that Miller simply picked the first event window that had statistical significance, regardless of any connection to plaintiffs' allegations. (James Aff. II, D.I. 349 at 4 ¶ 10.) Miller provides no hypothesis to test and provides no explanation for this length. Apparently it is just coincidence that twelve days is the first event-window length that is statistically significant. Finally, plaintiffs cannot explain why a generally-accepted Chow test does not show a difference between the trading periods compared by Miller. (*Id.* at 6 ¶ 15.) That is, the most generally accepted test for examining differences between time periods does not show a statistically significant difference between July and any other period.

---

[7] *See, e.g.*, Roger N. Waud, *Public Interpretation of Federal Reserve Discount Rate Changes: Evidence on the "Announcement Effect,"* 38 ECONOMETRICA 248-49 (March 1970) (noting that "[a]n article on the Committee's policy had appeared in the magazine Business Week shortly after the meeting held on October 25, 1955, and the article contained comments reflecting so closely the substance of the meeting that [the Fed Chairman] did not see how it could have been written without some person who was familiar with what went on at that meeting having discussed the matter").

### E. The Miller Affidavit and plaintiffs' briefing in their entirety demonstrate that there is no genuine issue of material fact and defendants have proven negative causation as a matter of law

Despite plaintiffs' arguments that there are factual disputes (D.I. 358 at 9), all of the evidence submitted demonstrates that defendants are entitled to summary judgment as a matter of law. Plaintiffs bear the burden on materiality and damages—which they have not met. Miller's opinion does not show that the stock-price moved in response to particular disclosures about gray marketing. Rather, as Dr. James demonstrates, the stock-price did not move in response to such disclosures. Plaintiffs admit that they can only show that "statistically significant price movement occurred during July once trading began on July 10": their analysis has *absolutely no* link to gray marketing. (D.I. 358 at 12.) The only argument purportedly linking the stock-price decline during this period to gray marketing is Miller's "leakage" theory. But this theory has *no* acceptance in financial economics and plaintiffs now admit that they cannot specify "the exact dates on which leakage did or did not occur during July 1998 or during any part of the Class Period." (D.I. 358 at 8.) Importantly, plaintiffs' leakage theory violates the efficient market framework strongly endorsed by the Third Circuit.

Defendants bear the burden on negative causation and have submitted expert testimony that demonstrates that Adams Golf's stock price decline was caused by factors *other than* gray marketing. Dr. James definitively demonstrated that industry-wide decline and loss of market share caused the stock-price to decline throughout the class period.[8] Plaintiffs' expert admits that these factors can affect stock price but he did *no* analysis to determine whether they affected

---

[8] Although plaintiffs criticized Dr. James for using regression analysis, they now admit that regression analysis is proper (though they quibble with Dr. James's particular analysis). (D.I. 358 at 7.) Furthermore, the affidavit of Dr. MacKinlay, who plaintiffs endorse as an expert in the field, demonstrates that Dr. James's analysis was proper and conformed with the generally accepted practice. (MacKinlay Aff., D.I. 325.)

7

Adams Golf's stock price. In the end, the fact that other golf companies' stock declined *more as an absolute percentage* than Adams Golf did in July 1998 underscores the common-sense support for Dr. James's analysis.[9]

## II. PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT BROOKS'S TESTIMONY IS ADMISSIBLE

Plaintiffs cannot show that Brooks's testimony is admissible. They attempt to lump all of her testimony together and paint it with the same broad brush. But despite plaintiffs' attempts to characterize her testimony as non-hearsay or to label it with one of the hearsay exceptions, a careful examination of the actual statements and the propositions that plaintiffs offer them for shows that all the challenged statements are in fact hearsay. Moreover, Brooks does not have the necessary personal knowledge upon which to base her purported opinion testimony.

### A. BROOKS'S TESTIMONY DOES NOT QUALIFY FOR ANY EXCEPTIONS TO THE HEARSAY RULE

#### 1. Plaintiffs offer Brooks's testimony for the truth of the matter asserted

Plaintiffs argue that Brooks's testimony is admissible as non-hearsay because they did not offer it to prove the truth of the matter asserted, which they describe as "the existence of gray marketing," but rather to show that Adams Golf had knowledge and notice of its retailers' complaints about gray marketing. (D.I. 358 at 13; D.I. 358 at 14 (citing D.I. 328 at 8-9).) But plaintiffs mischaracterize their own briefing—a fair reading shows that they cite Brooks's testimony to support their arguments about the *scope and extent* of gray marketing, not only its mere existence.[10]

---

[9] Callaway declined 30.6% compared to AG's 27% (James Aff., D.I. 326 at 2 ¶ 3) and the Miller Peer Group declined 28.7% over same period (*id.*; Exs. 339-40).

[10] Plaintiffs acknowledge that they are using this testimony for purposes other than notice in their Opposition when they assert that certain of Brooks's statements about retailer complaints "are admissible for the truth that the clubs were in Costco in Seattle." (D.I. 358 at 16.)

8

Plaintiffs improperly use Brooks's testimony as evidence of materiality, offering it as proof of the purported spread and severity of gray marketing. Plaintiffs argue that the location, amount, frequency and intensity of the retailer complaints that Brooks speculatively recalls prove that the gray marketing issue was more severe and affected a larger part of the Company's market than the documentary evidence shows, so that at the time of the IPO "it was objectively reasonable to determine that gray marketing would have a material effect on the financial condition of Adams Golf," (D.I. 328 at 51), and that the gray-marketing risk was material under the reasonable-investor standard. (D.I. 328 at 51-54, 57 (citing Brooks Dep. Tr. at 13-18) (emphasis added); *see also* Brooks Dep. Tr. 21:22-22:7, 27:1-3.) This argument is improper because it offers the retailers complaints for the truth of the matter they assert: that gray marketing really was occurring in geographic areas where the complaining retailers claimed it was, and that the gray marketing was as severe as the complaining retailers alleged.

To avoid having this testimony stricken, plaintiffs argue that it only establishes that Adams Golf's management was on notice of complaints from Seattle and Florida (D.I. 358 at 13-14, 16), but this argument misses the point. Notice of those complaints can only possibly have relevance to the materiality determination if there were in fact clubs at Costcos in those locations.[11] In other words, the evidence of retailer complaints is only relevant to the materiality determination if the retailers were telling the truth. Therefore, it is the substance of Brooks's purported statements to Gonsalves about retailer complaints that matters, not the fact that she told him about the complaints. If there were no clubs at those Costcos, the complaints alone

---

[11] Plaintiffs also argue that it is irrelevant which retailers made statements to Brooks because they are not offering this evidence to show gray marketing existed. (D.I. 358 at 14 n.7.) But even if plaintiffs are offering the evidence only to show that Adams Golf was on notice of customer complaints regarding gray marketing, as they claim, it matters that Brooks admits she cannot identify with any certainty or specificity which retailers or how many were complaining about Tight Lies in Costco. (D.I. 358 at 14 n.7 (citing D.I. 351 at 9).)

9

create no duty to disclose.[12]

As a result, plaintiffs cannot deny that they offer these statements for their truth. Notice only matters if the statements were true, and there is no way to allow the testimony in only for the limited purpose of showing notice of an unspecified number of more complaints. This would only confuse the jury, who would also be exposed to the substance of Brooks's testimony about the purported complaints.

### 2. Brooks's statements are not non-hearsay party admissions

Plaintiffs try to use Brooks's own testimony to cast Mark Gonsalves's statements to her as non-hearsay party admissions. To qualify as non-hearsay, the statements must be admissions against Adams Golf's interest. The statements plaintiffs quote—Brooks's recollection that Gonsalves told her to "keep working on it" and "I don't know" are not admissions against Adams Golf's interest.[13] Brooks testified that in response to her concerns about retailer complaints, Gonsalves "said that was another objection that I had to get over and figure out how to work around that." (Brooks Dep. Tr. 14:7-12; *see also* Brooks Dep. Tr. 18:3-5 ("Q: Okay. And he said: Keep working on it? A: Yeah.").) Plaintiffs argue that these statements support Brooks's testimony that Gonsalves "blew her off" when she told him about retailer complaints. (D.I. 328 at 8.) Even if the Court credits Brooks's opinion about Gonsalves, which as discussed below,

---

[12] Plaintiffs argue that defendants have conceded that plaintiffs are using the testimony to show notice because of the statement in the Motion to Strike that "[p]laintiffs cite all of this rampant hearsay to support their argument that Adams Golf *knew* about extensive gray marketing before the IPO and disregarded it." (D.I. 358 at 14-15 (citing Mot. at 10 and adding emphasis).) Plaintiffs added their emphasis in the wrong place—the appropriate word to emphasize is the word "*extensive*." Plaintiffs offer Brooks's testimony to show that gray marketing was more extensive than the documentary evidence demonstrates, so they are in fact offering it to prove the truth of the matter asserted.

[13] It is not entirely clear from the transcript if the phrase "I don't know" is a Gonsalves quote, or if it expresses Brooks's inability to express Gonsalves's attitude toward the situation. The full quote reads: "He didn't really say much. He just kind of blew me off. He never really had a whole lot to say about it. He was just kind of: I don't know." (Brooks Dep. Tr. 19:16-19.)

10

lacks foundation, these statements do not constitute admissions against Adams Golf's interest and thus remain hearsay.

Plaintiffs gloss over the double-hearsay problem presented by Brooks's testimony regarding discussions she purportedly had with another salesperson, Katherine East, regarding clubs in Costco. (D.I. 358 at 15 & n.8; *see also* Brooks Dep. Tr. 19:20-20:22.) Plaintiffs cannot demonstrate that each level of hearsay satisfies a hearsay exception, and thus the testimony is not admissible. FED. R. EVID. 805. Plaintiffs have not demonstrated that East was making statements as an agent of Adams Golf within the scope of her employment when she and Brooks discussed clubs in Costco. *Compare Mahlandt v. Wild Canid Survival & Research Ctr, Inc.*, 588 F.2d 626, 629-30 (8th Cir. 1978) (analyzing statements made by employee to supervisor regarding an injury caused by one of the center's wolves) *with* (Brooks Dep. Tr. 19:24-20:6 ("We hung out. We went to lunch together. We chitchatted. We saw each other on the weekends. . . . we would kind of try to help each other, how to get over the objections we always had.").) But even if the Court determined that East was acting as Adams Golf's agent, whatever East told Brooks that retailers in her region said about Costco remains inadmissible hearsay. These statements are offered for the truth of the matter asserted (*i.e.*, that retailers in "possibly Arizona" complained about clubs in Costco) (D.I. 328 at 9), and plaintiffs have offered no argument that these purported complaints satisfy any hearsay exception.[14]

### 3.   Retailers' statements to Brooks are not admissible under either the present-sense-impression or excited-utterance exceptions

Plaintiffs do not even try to show that the retailers' statements satisfy the requirements of the present-sense-impression or excited-utterance exceptions. Instead, they simply label certain

---

[14] There is no evidence that East reported these retailer complaints to any member of Adams Golf management, so plaintiffs cannot make the argument that the statements are admissible for notice purposes.

11

statements as such and hope that the Court takes their word for it. (D.I. 358 at 16.) A statement qualifies as a present-sense impression if it describes or explains "an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." FED. R. EVID. 803(1). The Third Circuit and other courts have held that there are three principal requirements for hearsay evidence to be admitted under this exception: (1) the declarant must have personally perceived the event described; (2) the declaration must be an explanation or description of the event rather than a narration; and (3) the declaration and the event described must be contemporaneous. *See, e.g., United States v. Mitchell*, 145 F.3d 572, 576 (3d Cir. 1998).

Rule 803(2) requires that an excited utterance be "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." FED. R. EVID. 803(2). A statement qualifies as an excited utterance if four conditions are satisfied: (1) a startling occasion; (2) a statement relating to the circumstances of the startling occasion; (3) a declarant who appears to have had opportunity to observe personally the events; and (4) a statement made before there has been time to reflect and fabricate. *Prudential Prop. & Cas. Ins. Co. v. Remed Recovery Care*, 136 F. App'x 489, 494 (3d Cir. 2005); *see also Mitchell*, 145 F.3d at 576. Both exceptions share the requirement that the declarant personally perceived the event or condition about which the statement is made. *See Mitchell*, 145 F.3d at 576. And both exceptions have temporal limitations which exclude certain statements. *Id.*

Here, there is no evidence that the retailer complaints were made contemporaneously or before there was time to reflect. (Brooks Dep. Tr. 12:16-23, 14:23-15:5.) There is no evidence that the complaining green-grass accounts personally perceived the clubs at Costco. (Brooks Dep. Tr. 14:23-15:5.) And there is no evidence that the appearance of Adams Golf clubs at

12

Costco qualifies as "a startling occasion" within the meaning of the rule or that any of the retailers were under the "stress of excitement" when they complained. Furthermore, the retailers who complained are all but anonymous, given Brooks's uncertainty about who they were. (Brooks Dep. Tr. 13:2-9, 15:2-11.) The Third Circuit has held that "[a] party seeking to introduce [an anonymous statement] carries a burden heavier than where the declarant is identified to demonstrate the statement's circumstantial trustworthiness." *Miller v. Keating*, 754 F.2d 507, 510 (3d Cir. 1985). "Circumstantial evidence of the declarant's personal perception must not be so scanty as to forfeit the 'guarantees of trustworthiness' which form the hallmark of all exceptions to the hearsay rule." *Id.* at 511. The scanty circumstantial evidence offered in this case does not provide any reason for the Court to admit the challenged statements.

### B. Brooks's testimony lacks foundation—she has no personal knowledge of the matters to which she testified

Plaintiffs assert Brooks had personal knowledge of all statements that they offered into evidence. (D.I. 358 at 13.) In particular, they assert that "Brooks had personal knowledge of how Gonsalves responded to her reports," which establishes a foundation for her to offer her opinion that "Gonsalves blew her off." (D.I. 358 at 17.) But defendants established on cross examination that in fact Brooks has no personal knowledge of what actions Gonsalves or other Company personnel took in response to retailer complaints. (Brooks Dep. Tr. 61:20-63:2.)

Plaintiffs also assert that they did not offer Brooks's testimony as evidence that Costco sold large numbers of clubs, but only to show Adams Golf had knowledge of retailers' complaints about gray marketing. (D.I. 358 at 17-18; see also D.I. 351 at 10-11.) Plaintiffs mischaracterize their own argument. They cited Brooks's testimony in support of the following sentences: "Brooks said the gray marketing caused retailers' sales to decline and 'messed up' their margins. Brooks said that her clients told her that Costco had a hundred clubs sitting in the

13

store, which were continually freshly stocked." (D.I. 328 at 11 (citing Brooks Dep. Tr. 82); *see also* Brooks Dep. Tr. 82:18-83:2.) Brooks has no personal knowledge of how many clubs were in any Costco location, and she never testified that she reported this information to Adams Golf's management. Accordingly, plaintiffs fail to explain how this offer of testimony supports their claim that Adams Golf knew about these complaints. (D.I. 358 at 18.)

Finally, plaintiffs assert that Brooks should be allowed to opine "that Adams Golf had knowledge of double-shipping and/or suspicions of double-shipping" based on her personal knowledge of "conversations regarding double-shipping among Adams Golf sales representatives." Knowledge of scuttlebutt is not personal knowledge of either actual occurrences of double shipping or of what Gonsalves knew. (Brooks Dep. Tr. 34:24-35:12, 78:2-12, 81:7-21 (stating no personal knowledge of double shipping or whether the Company investigated it).) Not surprisingly, plaintiffs cite no case law that supports their argument that rumors and gossip provide an adequate foundation for opinion testimony. *See Lauria v. National R.R. Passenger Corp.*, 145 F.3d 593, 600 (3d Cir. 1998), *superseded by statute on other grounds, Collins v. Prudential Inv. & Ret. Servs.*, 119 F. App'x 371 (3d Cir 2005) (holding that lay opinion testimony must be "'well founded on personal knowledge and susceptible to specific cross-examination . . . an opinion is 'helpful' to the trier of fact . . . if it aids or clarifies an issue that the jury would not otherwise be as competent to understand"). The Court should therefore exclude all of Brooks's purported opinion testimony because she lacks the required personal knowledge.

### III. CONCLUSION

For the foregoing reasons, this Court should strike the Miller Affidavit and all excerpts from or references to the Brooks Deposition that appear in the Answering Brief and preclude the use of this evidence at trial.

14

|  |  |
|---|---|
|  | /s/ Jeffrey L. Moyer |
|  | Jeffrey L. Moyer (#3309) |
| Of Counsel: | moyer@rlf.com |
| Paul R. Bessette | Alyssa M. Schwartz (#4351) |
| Jennifer R. Brannen | schwartz@rlf.com |
| Michelle A. Reed | Richards, Layton & Finger, P.A. |
| Laura Moriaty | One Rodney Square, P.O. Box 551 |
| Akin Gump Strauss Hauer & Feld LLP | Wilmington, Delaware 19899 |
| 300 West 6th Street, Suite 2100 | (302) 651-7700 |
| Austin, Texas 78701 |  |

Attorneys for Defendants Adams Golf, Inc., B.H. Adams, Richard H. Murtland, Darl P. Hatfield, Paul F. Brown, Jr., Roland E. Casati, Finis F. Conner, and Stephen R. Patchin

Dated: November 21, 2006

15

IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2006, I have caused the foregoing to be served by Hand Delivery which has also been filed with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

| | |
|---|---|
| Carmella P. Keener<br>Rosenthal, Monhait, Gross & Goddess<br>919 Market Street, Suite 1401<br>Wilmington, Delaware 19801 | Robert K. Payson<br>John E. James<br>Potter Anderson & Corroon LLP<br>1313 North Market Street, Hercules Plaza<br>Wilmington, Delaware 19801 |

I hereby certify that on November 21, 2006, I have sent by Federal Express the foregoing document(s) to the following non-registered participants:

| | |
|---|---|
| Neil Mara<br>Todd S. Collins<br>Berger & Montague, PC<br>1622 Locust Street<br>Philadelphia, Pennsylvania 19103 | Michael J. Chepiga<br>Theodore J. McEvoy<br>Simpson Thacher & Bartlett<br>425 Lexington Avenue<br>New York, New York 10017 |

/s/ Alyssa M. Schwartz
Alyssa M. Schwartz (#4351)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
schwartz@rlf.com