IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: ADAMS GOLF, INC., | ) | |
| SECURITIES LITIGATION | ) | C.A. No. 99-371-GMS |
| | ) | (CONSOLIDATED) |

## MEMORANDUM

### I.    INTRODUCTION

Presently before the court are the Adams Golf defendants' and the Underwriter

defendants'[1] motions for summary judgment.  (D.I. 279, 289.)  For the reasons that follow, the

court will deny both of these motions.

### II.    BACKGROUND

#### A.    Factual Background

Much of the factual background of this case has been recited extensively in earlier

opinions.  *See, e.g., In re Adams Golf, Inc. Securities. Litig.*, 381 F.3d 267, 270-73 (3d Cir.

2004); *In re Adams Golf, Inc. Securities Litig.*, 176 F. Supp. 2d 216, 218-21 (D. Del. 2001).[2]  As

such, and because the court writes primarily for the parties, the court will address only the

---

[1] The "Adams Golf defendants" include the following parties: Adams Golf, Inc. ("Adams Golf"), B. H. Adams, Darl P. Hatfield, Richard H. Murtland, Paul R. Brown, Jr., Ronald E. Casati, Finis F. Conner, and Stephen R. Patchin.  The "Underwriter defendants" include the following parties: Lehman Brothers Holdings, Inc., Banc of America Securities LLC, and Ferris Baker Watts, Incorporated.  The claims against Lehman Brothers have been stayed due to that defendant's recent bankruptcy filing.  (D.I. 381.)

[2] This case was originally assigned to the Judge Roderick R. McKelvie on June 23, 1999. (D.I. 12.) When Judge McKelvie retired from the court in 2002, the case was referred to Magistrate Judge Mary Pat Thynge on June 14, 2002. (D.I. 80.) On January 6, 2003, the case was reassigned to Judge Kent A. Jordan. (D.I. 87.) Following Judge Jordan's elevation to the U.S. Court of Appeals for the Third Circuit in December 2006, the case was reassigned to this Judge on February 7, 2008. (D.I. 370.)

relevant facts herein.

In the complaint, the plaintiffs allege that the registration statement and prospectus (collectively, the "Prospectus" or "registration materials") accompanying the initial public offering ("IPO") of Adams Golf common stock in 1998 "contained materially false and misleading statements" in violation of Sections 11 and 12(a)(2) of the Securities Act of 1933 (the "'33 Act"). *See In re Adams Golf*, 381 F.3d at 270. According to the plaintiffs, the Prospectus "failed to disclose that [Adams Golf's] revenues were artificially inflated by a 'gray market' distribution of Adams Golf golf clubs." *Id.* at 271. Specifically, the plaintiffs allege that the Prospectus failed to disclose that Adams Golf's "Tight Lies" golf clubs were being sold across the United States and Canada at Costco and other discount stores at prices close to wholesale, and that this "gray market" problem posed a material risk to Adams Golf's continued profitability. (D.I. 373 at 1.) Additionally, the plaintiffs allege that the Prospectus failed to explain that Adams Golf's "high" sales volume was, in part, the result of a "questionable sales practice" called "double shipping." (*Id.* at 2.) The plaintiffs also allege that the Prospectus failed to disclose the material risks that gray marketing and Adam Golf's questionable sales practices posed to the company, including the risk that the company's sales would decline materially after the IPO. (*Id.*)

### B.    **Procedural Background**

The plaintiffs filed the original complaint in this matter on June 11, 1999. (D.I. 1.) The defendants' filed their motions for summary judgment in this case on September 11, 2006. (D.I. 279, 289.) Briefing on these motions was completed on October 30, 2006. (D.I. 343, 347.) On February 22, 2008, after the case was reassigned to this Judge, the defendants were permitted to

file supplemental statements in further support of their original motions for summary judgment. (D.I. 371-72.) The plaintiffs filed their response to the defendants' supplemental statements on March 7, 2008. (D.I. 373-74.) On February 20, 2009, the court heard oral arguments on the pending summary judgment motions.

## III.   THE PARTIES' CONTENTIONS

Both sets of defendants in this case contend that there are no issues of material fact, and that, pursuant to Fed. R. Civ. P. 56(c), they are entitled to judgment as a matter of law. Specifically, the Adams Golf defendants contend that they are entitled to summary judgment on their "negative causation" defense because, among other things, the company's stock price decline was caused by factors other than those alleged by the plaintiffs. (D.I. 372 at 1.)  They also contend that they are entitled to summary judgment on the gray marketing issue because: (1) the gray marketing risk was disclosed prior to the IPO, and incorporated into the company's stock price; (2) they had no duty to disclose the gray marketing risk; and (3) the gray marketing risk was immaterial to Adams Golf's IPO. (D.I. 280 at 3-4.)  In addition, the Adams Golf defendants contend that they are entitled to summary judgment on the issue of questionable sales practices, in part, because the plaintiffs have failed to present any evidence that these alleged practices existed at the time of the IPO. (D.I. 372 at 2.)  Finally, the Adams Golf defendants contend that they are entitled to summary judgment on the issue of due diligence because they "conducted a reasonable investigation, and had reasonable grounds to believe" that the Prospectus contained no material misstatements or omissions.  (*Id.*)

For similar reasons, the Underwriter defendants also contend that they are entitled to summary judgment on the issue of due diligence. (D.I. 371 at 1.) In addition, they contend that

3

the plaintiffs' spoliation of documents claim should be dismissed because it lacks merit, and is unsupported by the record in this case. (D.I. 371 at 10.)

On the other hand, the plaintiffs contend that the defendants' motions for summary judgment are "grounded on contested issues of fact" and should, therefore, be denied. (D.I. 373 at 2.) Specifically, the plaintiffs contend that there exist material issues of fact concerning, among other things: materiality, loss causation, competing expert opinions, the duty to disclose, and whether the defendants conducted a "reasonable" due diligence investigation. (*Id.* at 2-3.) Additionally, the plaintiffs allege the Underwriter defendants destroyed and/or failed to preserve key documents "important" to this litigation, and should, therefore, be sanctioned. (D.I. 319 at 1-2.) In the main, the plaintiffs maintain that these issues should be appropriately "left to a fact finder" to decide. (D.I. 373 at 2.)

## IV. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, the court may grant summary judgment only if the moving party shows that there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it might affect the outcome of the suit. *Id.* at 247-48. An issue is "genuine" if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. *Id.* at 249. The moving party bears the initial burden of demonstrating that there are no genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When deciding a motion for summary

4

judgment, the court views the evidence in the light most favorable to the nonmoving party, with all doubts resolved against entry of summary judgment. *See Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 91 (3d Cir. 1999).

## V.   DISCUSSION

After having considered the record in this case, the parties' submissions and arguments, and the applicable law, the court concludes that there are genuine issues of material fact that remain in this case and that should be reserved for trial. Specifically, the court finds that there exist genuine issues of material fact concerning: (A) negative loss causation; (B) gray marketing; (C) questionable sales practices; and (D) due diligence. The court will, therefore, deny the defendants' motions for summary judgment as to these issues.[3]

### A.   Negative Loss Causation

Section 11(e) of the Securities Act provides an affirmative defense to Section 11(a) claims for material misstatements when the defendants can prove that the plaintiffs' damages "resulted from factors other than the material misstatement in the registration statement." *Akerman v. Oryx Communications, Inc.*, 810 F.2d 336, 340 (2d Cir. 1987). This means that the plaintiffs are not entitled to recover damages under Section 11 when the defendants can show that something other than the alleged misstatement or omission caused the stock price decline. *See* 15 U.S.C. § 77k(e). When asserting this defense, it is the defendants that bear the burden of proof. *Id.* at 341; *see also Collins v. Signetics Corp.*, 605 F.2d 110, 114 (3d Cir. 1979) (placing "the burden of affirmatively proving lack of causation on the defendant").

---

[3] As to the plaintiffs' spoliation claim, however, the court concludes that the plaintiffs have failed to meet their burden of proof, and finds in favor of the Underwriter defendants. *See* Section E below.

Here, the Adams Golf defendants argue that they are entitled to summary judgment on the issue of negative causation because there are no issues of material fact, and they have proven as a matter of law that "all of [the] plaintiffs' losses resulted from factors other than the alleged omission." (D.I. 372 at 9.) The court, however, disagrees. The court is satisfied that there remain issues of material fact concerning negative loss causation.

For one thing, there exists a factual dispute as to what effect, if any, and to what extent certain class-period disclosures about gray marketing had on the company's stock price decline.[4] Specifically, the Adams Golf defendants argue that these two class-period disclosures did not as a matter of law cause the Adams Golf stock price to decline. (D.I. 280 at 21.) Relying on their expert's analysis, they assert that there were "no statistically significant stock-price reactions" as a result of either of these two disclosures. (*Id.* at 24.) But, the plaintiffs dispute this assertion.[5] On the contrary, the plaintiffs argue the evidence shows that the company's stock price dropped "significantly" after these disclosures, and after the gray marketing problems became known to the market. (D.I. 373 at 1-2.) Relying on their expert's opinion, the plaintiffs contend that the defendants' expert analysis is unreliable, and that it should be disregarded because, among other things, courts have identified it as "inappropriate for use in IPOs," and it relies on "faulty and

---

[4] The first of these class-period disclosures was an August 1, 1998 Golf Pro article. (D.I. 280 at 24.) The second class-period disclosure was an August 28, 1998 Lehman Brothers analyst report. (*Id.* at 25.)

[5] There also exist issues of material fact as to whether the risk of gray marketing was already incorporated into the company's IPO price (as a result of the company issuing a press release disclosing that Costco had improperly obtained some clubs a month before the IPO), and whether Adams Golf's stock traded in an "efficient market." (D.I. 280 at 3.) The parties dispute the significance and relevance of these facts to the issue of negative loss causation, as well as the weight that these facts should be accorded, and what, if any, inferences should be drawn from these facts.

highly debatable" assumptions as to when particular disclosures became available to the market. (*Id.* at 2.)

In addition, as the plaintiffs correctly note, a jury could reasonably accept or reject either parties' take on the evidence, including the conflicting expert opinions in this case. *Cf. Inline Connection Corp. v. AOL Time Warner, Inc.*, 470 F. Supp. 2d 424, 431 (D. Del. 2007) (noting that summary judgment is not appropriate when it is based on the argument that the "parties' experts use[d] different theories, data and reach[ed] different conclusions"). The court also agrees that there exists a jury question as to how much, if any, of the company's stock price decline was caused by issues other than the two class-period disclosures. *See In re Countrywide Financial Corp. Sec, Litig.*, 588 F. Supp. 2d 1132, 1174 (C.D. Cal. 2008) ("It will be the fact-finder's job to determine which losses were proximately caused by [the defendants'] misrepresentations and which are due to extrinsic or insufficiently linked forces[.]") Thus, the court finds that there remain genuine issues of material fact concerning negative loss causation. Moreover, at this point, the court simply cannot conclude as a matter of law that the plaintiffs' losses "resulted from factors other than the material misstatement in the registration statement." *Akerman*, 810 F.2d at 340.

**B.**   **Gray Marketing**

There also remain issues of material fact concerning gray marketing. Particularly, there exist factual disputes as to: (1) whether the defendants had a duty to disclose the risk of gray marketing and (2) whether the gray marketing risk was material.

### *1.*   *Whether the Defendants Had a Duty to Disclose*

Item 503(c) of Regulation S-K requires that the IPO registration materials include a list

"risk factors."[6] 17 C.F.R. § 229.503(c). Item 303(a)(3)(ii) of Regulation S-K requires the

disclosure of "any known trends or uncertainties" that would materially affect the amount of

income from a company's continuing operations.[7] 17 C.F.R. § 229.303(a)(3)(ii). Here, the

Adams Golf defendants contend that they had no duty to disclose the gray marketing risk. (D.I.

280 at 3.) They argue that gray marketing was not a "known trend or uncertainty" likely to have

a material impact on the company's future financial results. (*Id.* at 3.) And thus, they had no

duty to disclose the risk of gray marketing under Regulation S-K. (*Id.*) The plaintiffs, however,

contend that the Adams Golf defendants did have a duty to disclose the risk of gray marketing.

(D.I. 328 at 3.) The plaintiffs further argue that, in any event, the defendants were required to

disclose the risk of gray marketing in order to clarify statements they made so the statements

---

[6] Specifically, in relevant part, Item 503(c) requires registrants to:

> [P]rovide under the caption "Risk Factors" a discussion of the most
> significant factors that make the offering speculative or risky. This
> discussion must be concise and organized logically. Do not present
> risks that could apply to any issuer or any offering. Explain how the
> risk affects the issuer or the securities being offered. Set forth each
> risk factor under a subcaption that adequately describes the risk. The
> risk factor discussion must immediately follow the summary section.

17 C.F.R. § 229.503(c).

[7] Item 303(a)(3)(ii) requires registrants to:

> Describe *any known trends or uncertainties* that have had or that the
> registrant reasonably expects will have a material favorable or
> unfavorable impact on net sales or revenues or income from
> continuing operations. If the registrant knows of events that will
> cause a material change in the relationship between costs and
> revenues[.]

17 C.F.R. § 229.303(a)(3)(ii) (emphasis added).

would not be misleading. (*Id.*) Again, as the plaintiffs suggest, a jury could reasonably conclude that the gray marketing risk was, in fact, a known trend or uncertainty likely to have a material impact on the Adams Golf's future revenue, and/or that management's knowledge of the risk of gray marketing rendered the statements the Adams Golf defendants made in their IPO registration materials false and misleading. (*Id.*) As such, the court finds that there remain genuine issues of material fact concerning the duty to disclose.

### 2. *Whether the Gray Marketing Risk Was Material*

In determining whether an omission is material, the court must consider "whether there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly affected the total mix of information made available." *In re Adams Golf*, 381 F.3d at 275 (citing *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002)) (internal quotations omitted). "Materiality is ordinarily an issue left to the fact-finder." *Id.* at 274. The court, however, can rule on materiality as a matter of law if the "omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality." *Klein v. Gen. Nutrition Cos., Inc.*, 186 F.3d 338, 342 (3d Cir. 1999).

Here, the Adams Golf defendants argue that they are entitled to summary judgment on the issue of materiality. (D.I. 280 at 4.) They contend that there are no issues of material fact, and that, under the reasonable investor standard, the gray marketing risk was not material as a matter of law. (*Id.*) The court does not agree. Indeed, there exist disputed issues of fact in this case concerning materiality.

To cite but one example, there exists a clear factual dispute as to the severity and extent

of the gray market problem at the time of the IPO. Specifically, the plaintiffs' argue that, at the time of the IPO, the gray marketing problem was "severe," and that it constituted an "important" risk to Adams Golf.[8] The defendants, on the other hand, argue that the gray marketing risk was "*de minimis*,"[9] as evidenced by the "scant reports from [Adam Golf's] retailers, the low numbers of clubs Costco obtained and sold relative to the [c]ompany's sales, and the controls that [the defendants] established to keep gray marketing from increasing." (D.I. 280 at 41.) Considering these conflicting interpretations of the evidence, the court cannot conclude as a matter of law that the gray marketing risks, and the defendants' alleged failure to disclose these risks, were "so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality." *Klein*, 186 F.3d at 342. The court must, therefore, deny the defendants' motion in this regard.

### C.   Questionable Sales Practices

The court finds that there also exist genuine issues of material fact as to whether the defendants' had a duty to disclose alleged "questionable sales practices."[10] (D.I. 373 at 1-2.) The

---

[8] The plaintiffs' expert concluded that gray marketing posed a "material risk" to Adams Golf, citing that: (1) there were "nearly 4,000 clubs that Costco sold at retail pre-IPO"; (2) there were "9,000 clubs in transit to Costco stores or on the Costco store shelves at the time of the IPO"; (3) there were "gray marketers in addition to Costco"; and (4) top Adams Golf management and major customers had expressed "grave concern" about this problem. (D.I. 328 at 3.)

[9] The Adams Golf defendants' expert concluded that there was only a "*de minimis*" amount of gray market sales, and these sales "could not have represented a material risk to the accuracy of Adams Golf's financial statements or its future financial performance and could not have significantly hurt Adams Golf's relationships with its retailers or distributors or harmed its brand image." (D.I. 280 at 47.)

[10] Specifically, the plaintiffs allege that the Adams Golf defendants had a duty to disclose the following "questionable sales practices": (1) "double shipping," (2) "consignment sales or

10

Adams Golf defendants argue that there is "no evidence" in the record that the company engaged in the practice of double shipping. (D.I. 280 at 48.) The plaintiffs argue the contrary. They contend that the company engaged in double shipping, and that the record reflects as much. (D.I. 373 at 3.) To support this contention, the plaintiffs point to both testimonial and documentary evidence that purportedly shows that: (1) certain Adams Golf salespersons were terminated for double shipping; (2) Adams Golf's CEO conducted an investigation into double shipping; (3) certain Adams Golf customers returned "extra clubs" that had not been ordered, consistent with double shipping; and (4) Adams Golf's CEO issued a memorandum expressing "shock" after learning of "double shipments." (*Id.* at 15.) The plaintiffs argue that, in light of these claims, the defendants were, or at least should have been, aware that double shipping was taking place, and that it posed a material risk to the company. (*Id.* at 3, 14-15.) Given the parties' competing interpretations of the summary judgment record, and viewing, as it must, the evidence in the light most favorable to the plaintiffs, the court concludes that there remain underlying factual disputes concerning the issue of questionable sales practices that warrant resolution by a jury.[11]

### D.    Due Diligence

Likewise, the court finds that there exist issues of material fact concerning due diligence. Section 77k of title 15 of the United States Code provides a "due diligence defense" to Section

---

sales with unlimited rights of return," and (3) "failing to maintain an adequate return reserve." (D.I. 280 at 48-52.)

   [11] It strikes the court that these disputes rest largely on factual determinations, for example: (1) whether double shipping actually took place; (2) if so, to what extent it took place; (3) whether the defendants knew about the double shipping; (4) if so, what they knew about it and when did they know it; and (5) whether the defendants had a duty to disclose what they knew, if anything, in the IPO registration materials.

11 claims where a defendant can demonstrate that after a "*reasonable*" investigation, he or she had reasonable grounds to believe, and did believe, that the registration statement was true, and contained no material omissions. 15 U.S.C. § 77k (emphasis added). This statute further provides that the standard of reasonableness that should be used for determining what constitutes reasonable investigation and reasonable grounds for belief is "that required of a prudent man in the management of his own property." *Id.* at § 77k(c). "[S]ummary judgment is generally an inappropriate way to decide questions of reasonableness because 'the jury's unique competence in applying the "reasonable man" standard is thought ordinarily to preclude summary judgment.'" *In re Software Toolworks, Inc. v. PaineWebber, Inc.*, 50 F.3d 615, 621 (9th Cir.1994) (quoting *TSC Industries v. Northway, Inc.*, 426 U.S. 438, 450 n.12 (1976)). This means that, unless the court finds that "no rational jury could conclude that the defendant has not acted reasonably," the motion must be denied. *Id.* at 621.

Here, the plaintiffs contend that the Underwriter defendants did not perform adequate due diligence. (D.I. 374 at 1.) Specifically, they argue that, despite having prior knowledge of gray marketing, the defendants failed to question Adams Golf's management in any detail, or to probe management's statements about gray marketing, or to independently verify the assertions of management concerning this issue. (*Id.* at 13.) The plaintiffs also argue that these defendants failed to conduct a reasonable "independent investigation" of the gray marketing issue, or confirm, in any meaningful way, whether Adams Golf's management made proper disclosures regarding this issue.[12] (*Id.* at 13-14.) Of course, the Underwriter defendants dispute these

---

[12] Specifically, the plaintiffs claim that the Underwriter defendants failed to do these things, despite warnings that Adams Golf clubs were being sold by Costco, and also despite knowing the SEC had asked Adams Golf to consider disclosing its legal dispute with Costco in

contentions. They argue that they did exercise due diligence, and that they conducted a reasonable investigation. (D.I. 290 at 2-3.) Likewise, the Adam Golf defendants argue that they also conducted a reasonable investigation, and had reasonable grounds to believe that the IPO registration materials were accurate, and contained no material omissions. (D.I. 372 at 14-16.) Not surprisingly, the plaintiffs dispute these contentions. The plaintiffs argue that, like the Underwriter defendants, the Adams Golf defendants failed to satisfy their due diligence requirements by, among other things, not conducting a reasonable investigation of gray marketing or adequately investigating the extent of clubs for sale in Costco stores throughout North America. (D.I. 3737 at 25.) Again, in light of these divergent views of the facts and record evidence, the court finds that there remain genuine issues of material fact concerning due diligence.[13] The defendants' motions for summary judgment on this issue must, therefore, be denied.

**E.     The Plaintiffs' Spoliation Claim**

In order to prevail on a claim for spoliation, the party charging spoliation must prove that there was an intentional destruction of documents. *See Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir. 1995). The charging party must also show that there exists "a reasonable possibility, based on concrete evidence rather than a fertile imagination that access to the [lost documents] would have produced evidence favorable to his cause." *In re DaimlerChrysler AG Sec. Litig.*, No. 00-993-JJF, 2003 U.S. Dist. LEXIS 27720, at *7 (D. Del.

---

the IPO registration materials. (D.I. 374 at 14.)

[13] At this stage, based on the present record in this case, the court simply cannot say as a matter of law that "no rational jury" could conclude that the defendants did not act reasonably. *Software Toolworks*, 50 F.3d at 621.

13

·

Nov. 25, 2003) (internal quotations omitted).  Here, the plaintiffs have not made the requisite

showing.   The plaintiffs have failed to point to any "concrete evidence" that suggests that the

lost documents would have been favorable to their case.  *Cf. Schmid v. Milwaukee Elec. Tool

Corp.*, 13 F.3d 76, 80 (3d Cir. 1994) (overturning sanction of judgment in favor of defendant

where defendant did not "come forward with plausible, concrete suggestions as to what that

[lost] evidence might have been").  Furthermore, the plaintiffs have failed to prove that any

documents were intentionally destroyed or otherwise not preserved due to the fault of the

Underwriter defendants.  *See* D.I. 390 at 108-110 (explaining that certain documents were

destroyed as a result of the terrorist attacks of 9-11).  The plaintiffs' spoliation claim must,

therefore, be dismissed.

## VI.    CONCLUSION

For the foregoing reasons, the defendants' motions for summary judgment (D.I. 279, 289)

are denied.

Dated: May 26, 2009

CHIEF, UNITED STATES DISTRICT JUDGE

14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE: ADAMS GOLF, INC.,                )
SECURITIES LITIGATION                   )
                                        )   C.A. No. 99-371-GMS
                                        )   (CONSOLIDATED)
                                        )

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY

ORDERED THAT:

1.   The defendants' motions for summary judgment (D.I. 279, 289) are DENIED.

Dated: May 26, 2009

_____
CHIEF, UNITED STATES DISTRICT JUDGE